September 20, 2013

To: The Honorable David C. Bury
From: Willis Hawley, Special Master
Re: Objection of Fisher Plaintiffs to the District's Guidelines for Student
       Rights and Responsibilities


**Overview**

On August 13, 2013, the TUSD Governing Board passed a revision of the
Guidelines for Student Rights and Responsibilities (GSRR) pursuant to a provision
of the Unitary Status Plan. This action followed a lengthy period beginning on
June 22, 2013 of review and comment, interactions with the plaintiffs and the
Special Master, and revisions of revisions. During this period, attempts were made
to address concerns of the Plaintiffs and the Special Master but not all of these
concerns were dealt with. On September 9, 2013, the Fisher Plaintiffs requested
that, pursuant to the provisions of the USP, I advise the Court of their objections
that they do not believe to have been adequately resolved.

The Mendoza Plaintiffs and the Department of Justice, without necessarily
endorsing every provision of the GSRR, chose not to join in the Fisher objection to
the GSRR.

It should be noted that the District has yet to develop regulations governing
implementation by teachers and administrators. Some of the concerns of the
Plaintiffs and the Special Master that they feel were not addressed in the GSRR
can be raised as they review and comment on these regulations.

The Fisher Plaintiffs responded to the initial District proposals for the GSRR on
July 12, 2013. These comments are attached as Attachment A. On August 26,
2013, the Fisher Plaintiffs filed additional comments related to the GSRR.

**Fisher  Concerns in August 26 Comments**

In requesting that their objections to the GSRR be reported to the Court, the Fisher
Plaintiffs identified  the six concerns from their August 26 comments as the focus
of their unresolved objections to the GSRR . Some of these concerns were not
expressed during the comment period provided for in the GSRR but I report them

to the Court nonetheless. These concerns are listed below along with my comments on each.

*Fisher Concern # 1. The TUSD GSRR as approved by the TUSD GB does not address the use or discontinuance of abeyance contracts. In light of the changes in the District's GSRR, the Fisher Plaintiffs believe that the use of abeyance contracts should be discontinued.*

Abeyance contracts that conditionally withhold disciplinary action are meant to provide students with an opportunity to show that they can avoid past negative behaviors and are an integral part of the District's "Restorative Practices" program (provided for in the USP). The Fisher Plaintiffs are concerned that the abeyance contracts will be misused. I believe that this concern is appropriate but can be dealt with by assertive monitoring of the application of the provisions of the GSRR by the Implementation Committee (IC) and by regulations related to implementation.

*Fisher Concern #2. The TUSD GSRR as approved by the TUSD GB does not provide for the continuing training for administrators or specify the consequences for an administrator's failure to adhere to the GSRR. The Fisher Plaintiffs believe the GSRR should include such provisions.*

The training of educators related to the GSRR is provided for in the USP and is part of the District's Project Plans 7 and 12. There is no provision in the GSRR identifying consequences of educators' failure to adhere to the GSRR. However, this would be difficult to specify because the level of failure and consequences would be complicated. But, more relevant, the failure of educators to implement the provisions of the USP should be dealt with as part of the professional disciplinary practices of the District generally. Educators who fail to implement the GSRR fairly can be identified in the monitoring process and in the District's own supervision which involved reviews of data every two months.

*Fisher Concern #3. The TUSD GSRR as approved by the TUSD GB does not provide for the monitoring of administrators generally and administrators responsible for restorative practices in particular. The Fisher Plaintiffs believe that the GSRR should include such provisions.*

The USP provides for this work to be undertaken by the Special Master and the IC. A process for doing that is being initiated in September, 2013.

*Fisher Concern # 4. In practice, in the past, District students have not always been duly apprised of their rights and responsibilities under the District's disciplinary policies and guidelines. For this reason, the Fisher Plaintiffs believe it is necessary to ensure that all District students are duly apprised of their rights and responsibilities under the GSRR.*

The GSRR requires that all students, and their families, be apprised of their rights and responsibilities related to the GSRR. Whether they are so informed will be an issue addressed by the IC and specified in the regulations governing implementation.

*Fisher Concern #5. In practice, in the past, administrators have not held disciplinary hearings for special education students in timely manner, and have thereby inappropriately increased the number of days such students are excluded from the classroom.*

Disciplinary actions for all students, including students with disabilities, should be held in as timely manner. The IC will monitor the overall implementation of the GSRR including, of course, the timeliness and fairness of disciplinary hearings. This concern can be identified in the regulations governing implementation to emphasize its importance.

*Fisher Concern # 6. The hiring or continued employment of disciplinary hearing officers should be informed by past performance. Hearing officers should have experience as both teachers and administrators. Moreover, the Fisher Plaintiffs believe that it would run counter to the intent of the revision of the District's disciplinary policies to hire or employ disciplinary hearing officers previously employed in the criminal justice system as probation officers.*

There is no provision in the USP that would justify requirements for the hiring of hearing officers. The fairness of hearing officers is, of course, a concern and will be  one of the issues addressed in the monitoring process.

**Fisher Comments on July 12, 2013**

On July 12, the Fisher Plaintiffs made 22 comments on the initial proposals for the GSRR. Many of these comments request information and/or clarification. Others are repeated in the August 26 comments noted above. I comment here the Fisher

Plaintiffs' concerns that seem related to the policies and practice that they believe are or should be embodied in the GSRR that I did not address above.

*Fisher Comment Regarding Teacher and Administrator Responsibilities. They recommend that the GSRR specify in greater detail the rights and responsibilities of educators.*

Specific suggestions are not provided. I believe that specific responsibilities are appropriately spelled out in to-be-developed regulations governing the implementation of the GSRR.

*Fisher Comment on the Special Master's Comments. The Fisher Plaintiffs "share concerns communicated in the comments provided by the Special Master and ask that the District provide detailed responses to the comments".*

The District made several changes in the Plan in response to the concerns I expressed. The District did provide the detailed comments requested by the Fisher Plaintiffs. While not all of my concerns were addressed, I believe that the GSRR is sufficiently responsive to my comments at this time.

*Fisher Comments Related to Ensuring Effective Implementation of the GSRR. Fisher Plaintiffs want the District to ensure that the provisions of the GSRR will be honored mentioning parental notification, ending sequential suspensions, sending students home without formally suspending them, and providing disaggregated data on disciplinary action involving students and any actions engaging law enforcement.*

These concerns can be addressed in one or both of two ways: (1) monitoring of reporting and reports of disciplinary action and (2) specification of training provisions and regulations governing implementation. I do not believe that this requires changes in the GSRR.

**Recommendation**

The Fisher Plaintiffs raise several concerns about the GSRR with an emphasis on the possibility or likelihood of inappropriate and discriminatory administration of disciplinary policies by teachers and administrators. The negative behaviors by educators identified by the Fisher Plaintiffs discussed above should not be tolerated. However, the only meaningful way to address these concerns is to ensure

through the monitoring process that the GSRR is implemented fairly and effectively. I will direct the member of the IC monitoring disciplinary policies to pay particular  attention to the concerns about implementation of the GSRR noted by the Fisher Plaintiffs. Moreover, the Plaintiffs and the Special Master will have an opportunity to review and comment on regulations governing implementation and some of the matters commented on by the Fisher Plaintiffs can be revisited in this context.

I believe that the Court need not act to direct the District to revise the GSRR at this time.

Let me acknowledge that my responses to the Fisher concerns place considerable responsibility on the monitoring of the implementation of the GSRR. How well this will work is yet to be determined and whether the monitoring  process is sufficient to ensure fairness and effectiveness of the administration of disciplinary policies and practices should be reviewed by the Plaintiffs at the end of the current academic year.

Comments on the GSRR by the plaintiffs and the Special Master are attached. However, many of the comments on the GSSR took place in meetings and on various versions of the GSSR and are not reflected in the formal comments.

## Attachments

**Attachment A.  Fisher Comments**

**Attachment B.  Mendoza Comments**

**Attachment C.  Department of Justice Comments**

**Attachment D.  Special Master's Comments**

**Attachment E.  District Comments on Fisher Objections**

<u>Attachment A. Fisher Comments</u>

<u>August 26 Comments</u>

1. The TUSD GSRR as approved by the TUSD GB does not address the use or discontinuance of abeyance contracts. In light of the changes in the District's GSRR, the Fisher Plaintiffs believe that the use of abeyance contracts should be discontinued.

2. The TUSD GSRR as approved by the TUSD GB does not provide for the continuing training for administrators or specify the consequences for an administrator's failure to adhere to the GSRR. The Fisher Plaintiffs believe the GSRR should include such provisions.

3. The TUSD GSRR as approved by the TUSD GB does not provide for the monitoring of administrators generally and administrators responsible for restorative practices in particular. The Fisher Plaintiffs believe that the GSRR should include such provisions.

4. In practice, in the past, District students have not always been duly apprised of their rights and responsibilities under the District's disciplinary policies and guidelines. For this reason, the Fisher Plaintiffs believe it is necessary to ensure that all District students are duly apprised of their rights and responsibilities under the GSRR.

5. In practice, in the past, administrators have not held disciplinary hearings for special education students in timely manner, and have thereby inappropriately increased the number of days such students are excluded from the classroom.

6. The hiring or continued employment of disciplinary hearing officers should be informed by past performance. Hearing officers should have experience as both teachers and administrators. Moreover, the Fisher Plaintiffs believe that it would run counter to the intent of the revision of the District's disciplinary policies to hire or employ disciplinary hearing officers previously employed in the criminal justice system as probation officers.

<u>July 12 Comments</u>

## Page 1 of 4 of Fisher Plaintiffs' 07/12/13 comments on TUSD proposed GSSR

**FISHER PLAINTIFFS' 07/12/13 COMMENTS ON TUSD PROPOSED GSRR**

**FISHER COMMENT NUMBER 1**

Overall, the Fisher Plaintiffs are impressed by the District's proposed GSRR. The Fisher Plaintiffs also commend the District for its extensive consultation with multiple nationally recognized experts in disciplinary policy. It is apparent that this collaboration will lead to a much improved disciplinary policy. Within this context, the Fisher Plaintiffs offer the following preliminary comments on what they consider to be a very promising draft of the GSRR.

**FISHER COMMENT NUMBER 2**
Plaintiff review would be greatly facilitated if the District could provide the GSRR in the final format in which they will be distributed. Additionally, the Fisher Plaintiffs believe that the GSRR would benefit from a user-friendly table grouping offenses.

**FISHER COMMENT NUMBER 3**
The coupling of PBIS and RP greatly increases the complexity of the GSRR. Is this increased complexity and the confusion it is likely to create fully justified by the benefits of the two approaches to discipline?

**FISHER COMMENT NUMBER 4**
It would be helpful if the District provided an accounting of all relevant positions provided for in the USP and how those positions will interface with the GSRR.

**FISHER COMMENT NUMBER 5**
Who will ultimately be responsible for training teachers to adhere to the GSRR? It would be helpful if the District were to provide a description of the those positions and the training they will be required to conduct.

**FISHER COMMENT NUMBER 6**
Are the GSRR sufficiently intelligible or is their message diluted by too many and arguably contradictory requirements and expectations and emphases?

## Attachment B. Mendoza Comments: Cover Letter and Redlined Comments

Attached are Mendoza Plaintiffs' comments and revisions to the GSRR, Policy JK and JJJ.  In addition, we make the following points:

- The GSRR needs to use language that is understandable to students and parents.  Its current version is not very user friendly.  Some of our edits attempt to simplify the language and in many places we note that the language needs to be simplified for the audience's comprehension.  We also make organizational suggestions such as noting where subsection headings do not match the content of the section or adding introductory language before launching into the substance so that context is provided.
- We recommend that a definitions section be provided and that the GSRR be reviewed for consistency of use of particular words or terms.
- The District should provide students with a meaningful opportunity to review the GSRR with teachers/administrators and to ask questions.  A classroom setting would be preferable to a large assembly for this purpose.
- We understand that TUSD decided against including a section on administrators/teachers responsibilities in the GSRR.  We recommend including it so that student/parents understand what they are.
- We share the concerns raised by Bill and DOJ that the severity of some Action Levels is disproportionate to the conduct and have noted our concerns on the GSRR.
- For ease of reference we have highlighted our track changes in green.

Regarding Policy JK:  Mendoza Plaintiffs concur with the comments made by DOJ.  We also suggest adding language that provides for the consistent application of disciplinary measures across schools. We have additional comments in the attached.



Tucson Unified School District

**DRAFT GUIDELINES FOR
STUDENT RIGHTS AND RESPONSIBILITIES (GSRR)**

~~The purpose of the Guidelines is to assist students, parents, teachers, staff, and principals in creating and sustaining an environment which will enhance the achievement of a positive learning process. To be fully effective, the Guidelines for Student Rights and Responsibilities addresses:~~
Together, students, parents, teachers, staff, and principals share the responsibility in creating and sustaining an environment that enhances student achievement in the Tucson Unified School District. We ask for the support of students and parents to achieve this goal. The Guidelines for Student Rights and Responsibilities (GSRR) addresses:

- Students' and Parents' ~~The~~ rights and responsibilities ~~of students and parents~~
- Student ~~c~~Conduct which may require discipline
- Administrators' and teachers' ~~Administrative responsibilities for implementing discipline~~
- ~~R~~responsibilities ~~of administrators and teachers~~ to implement discipline, which includes behavioral supports and interventions that address problems and support student success
- Administrative responsibilities for Due Process

> **Comment [n1]:** Is there a more simple way to describe what this means?

Parents and students are expected to read and understand these Guidelines

Please read these Guidelines and develop a thorough understanding of the details. By following the Guidelines, you can help our school district become a safer and more supportive environment for the students and staff.

Governing Laws and Policies
Student discipline is subject to the provisions of Governing Board policies and state and federal laws. Students will be disciplined in accordance with Governing Board Policy JK and its accompanying regulations. Students with disabilities shall be disciplined in accordance with the Individuals with Disabilities Education Act (IDEA), Section 504, and applicable Governing Board Policies and Regulations – JK, Student Discipline; JK-R5, Discipline Of, and Alternative Interim Educational Placements For, Special Education Students; and JK-R6, Discipline, Suspension, Expulsion for 504 Students—as applied to these Guidelines for Student Rights and Responsibilities. Students may also be subject to applicable civil and/or criminal penalties if they violate the law.

These Governing Board Policies and Administrative Regulations are available for review in the principal's office and online at www.tusd1.org. Copies of this booklet are available in Spanish on the reverse side of this booklet and can be obtained online at www.tusd1.org.

Estos Planes de Acción del Consejo Gobernante, y Reglamentos Administrativos se hacen disponibles para revisión en la oficina del director escolar y en www.tusd1.org. Las copias en español de este folleto están disponible al dorso de este folleto y se pueden obtener en línea en www.tusd1.org.

> **Comment [n2]:** This paragraph should be in bold or larger font so that Spanish speaking parents can easily see it.

**TUSD Governing Board:**

---

Formatted: Highlight
Formatted: Highlight
Formatted: Highlight

Formatted: Highlight
Formatted: Highlight

Formatted: Highlight
Formatted: Underline

Adelita Grijalva, President; Kristel Ann Foster, Clerk; Michael Hicks; Cam Juarez;
Dr. Mark Stegeman
**Superintendent:** ~~John J. Pedicone, Ph.D.~~ Helidoro Torres (H.T.) Sanchez, Ed.D.

**TABLE OF CONTENTS:**

SECTION A:  PURPOSE ................................................................................   4

1. ................................................................................................ What Are
   The "Guidelines For Student Rights And Responsibilities"
   And Why Are They Needed? ...............................................   4
2. ................................................................................................When Are
   The Guidelines For Student Rights And Responsibilities
   In Force? ...............................................................................   5

SECTION B:  STUDENT AND PARENT RIGHTS AND RESPONSIBILITIES ...................   6

1. Students Have A Right To ...................................................   6-7
2. Students Have A Responsibility To .....................................   7
3. Parents And Guardians Have A Right To ............................   8
4. Parents And Guardians Have A Responsibility To ..............   8

SECTION C: GENERAL INFORMATION ......................................................   9

1. Equal Education Opportunities & Anti-Harassment Policy
   (Governing Board Policy JB) ..............................................   9
2. Governing Board Position On Gang Behavior And Activity .........   9
3. Student Attendance (Governing Board Policy JE)   ...............   9
4. Dating Abuse (Policy JICL)   ..............................................   9
5. Bullying, Intimidation & Harassment (Policy JICFB) ...........   10
6. School Dress Code (Required At Every School)
   (Governing Board Policy JICA) ...........................................   10
7. Bus Rules ...........................................................................   11
8. Student Use Of Cell Phones And Other Electronic Devices (Policy JICJ) ...................   11
9. Hazing (Policy JICFA) ........................................................   12
10. Restorative Practices ........................................................   13

SECTION D:  KNOW THE ACTIONS   ........................................................   14

1. Conduct Which Must Be Reported To Law Enforcement  .................   14
2. Conduct Which May Be Reported To Law Enforcement   ................   14
3. Due Process For General Education Students    ...............................   14-15
4. Due Process For Exceptional Education Students    .........................   15
5. Out Of School Suspensions   ................................................   15-16
6. Abeyance Contracts ...........................................................   16
7. Positive Behavior Intervention Support (PBIS) ...............................   16
8. Restorative Circles; Restorative Conferences   .............................   16
9. Appeals .............................................................................   17
10. Expulsion .........................................................................   17
11. Principal Application for Waiver Of Mandatory Disciplinary Actions...........................   17

**TABLE OF CONTENTS (CONTINUED):**

ACTION LEVELS (Levels 1-5) ...................................................... 18
- Important Information .......................................................... 19
- Aggression ...................................................................... 20
- Alcohol, Tobacco and Other Drugs Violations................................ 21-22
- Arson .......................................................................... 22
- Attendance Policy Violations (Out of School Suspension Not Permitted) ...... 22-23
- Dishonesty...................................................................... 23
- Harassment and Threat, Intimidation ......................................... 23
- Homicide; Kidnapping........................................................... 24
- Other Violations of School Policies........................................... 24
- School Threat or Interference ................................................ 25
- Sexual Offenses ............................................................... 25
- Technology, Improper Use Of .................................................. 26
- Theft .......................................................................... 26-27
- Trespassing; Vandalism or Criminal Damage.................................... 27
- Weapons and Dangerous Items (Possession Of) ................................. 28

INDEX .............................................................................. 29-30

ANNUAL NOTIFICATION OF PRIVACY RIGHTS OF PARENTS AND STUDENTS
(FERPA) ............................................................................ 31

ANNUAL NOTIFICATION OF RIGHTS UNDER THE PROTECTION OF PUPIL RIGHTS
AMENDMENT (PPRA)................................................................... 32

## SECTION A: PURPOSE

1.  WHAT ARE THE "GUIDELINES FOR STUDENT RIGHTS AND RESPONSIBILITIES"   AND WHY ARE THEY NEEDED?

Students need an environment that is safe and positive for learning.  To help provide and maintain that environment, the Guidelines for Student Rights and Responsibilities:

TUSD is committed to partnering with students and parents to provide an environment that is safe, supportive, and conducive to learning. TUSD is committed to strives to reduce racial and ethnic disparities in the administration of school discipline. To promote and maintain that environment, the Guidelines for Student Rights and Responsibilities:

- Specify the rights and responsibilities of students and parents
- Describe conduct which violates those rights and responsibilities
- Provide guidance and instruction to help students resolve discipline problems in a manner that supports their development
- Strive to standardize those procedures that the schools will use in responding to violations of those rights and responsibilities
- Assure the rights of students and parents are enforced when disciplinary action is taken

At different age levels, sStudents have different levels of rights, responsibilities and learning at different age levels. As students progress through our public schools, it is reasonable to assume that an increase in age and maturity carries with it a greater responsibility for their actions.  Differences in age and maturity are recognized in determining the type of disciplinary action to be taken and the appropriate supports and interventions.  However, the procedures outlined in the Guidelines for Student Rights and Responsibilities apply to all students in Grades K through 12.

Disciplinary consequences must be non-discriminatory, fair, age-appropriate, and correspond to the severity of the student's misbehavior. When considering responses to violations, the District strives to keep students in the classroom whenever practicable. For all but the most severe offenses (Levels 4 and 5 in the "Action Levels" section of this document found at page __), exclusionary consequences such as long-term suspension or expulsions must be limited to instances in which student misbehavior is ongoing or escalating, and only after the District has first implemented and documented that non-exclusionary interventions have been attempted. If exclusionary discipline is imposed, students will have fair due process that includes an opportunity to appeal. For all offenses, disciplinary consequences must be paired with meaningful instruction and supportive guidance (e.g. constructive feedback and re-teaching) so students are offered an opportunity to learn from their behavior and, where practicable, offered an opportunity to continue to participate in the school community.

While prioritizing student, staff, and public safety, the District shall not use serious sanctions for low-level conduct (Action Levels 1-3 described at pages __), shall only involve School Safety and/or Law Enforcement in high-level student discipline (Action Levels 4-5 described at pages __), such as when a student is a danger to him/her self or others (to the extent permitted by law), and shall keep students in the classroom setting whenever practicable as members of the school community.

---

**Formatted:** Highlight

**Comment [n3]:** Does this mean that the GSRR intends to ensure that consistent methods for discipline are applied within and across schools? Saying the following may be more clearly understood: Strive to ensure consistent application of disciplinary actions so that  students from school to school will receive similar actions for similar violations.

**Formatted:** Highlight

**Formatted:** Highlight

**Formatted:** Highlight

**Comment [n4]:** Should this term be defined? Parents/students may not understand this term. Perhaps a definitions section may be warranted.

**Comment [n5]:** See comment above.

**Comment [n6]:** May need to explain further so parents and students understand what this means.

**Comment [n7]:** "Reteaching" needs to be explained.

**Formatted:** Highlight

**Formatted:** Highlight

**Formatted:** Highlight

**Formatted:** Highlight

All district personnel administering discipline to students should be informed if a student is protected as a student with a disability under either Section 504 or IDEA **or** if the student is suspected of having a disability and is being considered for an evaluation for a disability.  There are specific discipline procedures that must be followed for students who are considered disabled under these federal laws, including determining whether the misbehavior is a manifestation of the student's disability.

2.  ~~WHEN ARE THESE GUIDELINES IN FORCE?~~

2.  **WHEN DO THESE GUIDELINES APPLY?**

~~The Guidelines are enforced:~~

During regular school hours
- While being transported on the school bus or other school district-sanctioned transportation
- At times and places where the principal or other school official or employee has jurisdiction over students
- During school-sponsored events
- During field trips
- During athletic functions
- When students are going to and from school ("portal to portal")
- During other activities associated with the school in any way

> **Comment [n8]:** This is too vague and needs to be revised so that students understand when the guidelines apply.

Additionally, the principal is authorized to begin disciplinary action when a student's misconduct away from school has a detrimental effect on the other students, or on the orderly educational process, because the violation is directly connected to prior violations at school, or threatens to produce further violations at school.

*Students or parents of students who believe they have experienced discrimination, harassment, hazing, bullying, or unfair disciplinary actions, may file a complaint with the site Principal, Assistant Principal, the Department of Student Equity at 225-6686,*
*or online at www.tusd1.org/deseg*

> **Formatted:** Highlight

*~~Parents who believe their student has experienced discrimination, harassment, hazing, bullying, or unfair disciplinary actions, may file a complaint with the site Principal, Assistant Principal, the Department of Student Equity at 225-6686, or online at www.tusd1.org/deseg~~*

14

# SECTION B: STUDENT AND PARENT RIGHTS AND RESPONSIBILITIES

> **Comment [NR9]:** This title should be changed to include teacher and administrator rights and responsibilities.

Tucson Unified School District believes that educating a student is a collaborative effort with the student and parent.  To support this collaboration we realize that each party has rights and responsibilities.  **The following** list of identification of these **rights and responsibilities is a general list to provide guidelines, with the**not **inten**ed**tion to be of not being comprehensive or all-inclusive.**  (See Policy JI "Rights and Responsibilities")

> **Formatted:** Highlight

1. **STUDENTS HAVE A RIGHT TO:**
   a. Learn in a safe, clean, orderly and positive environment climate – one that is unbiased, nonjudgmental, and free from prejudice, discrimination, verbal or physical threats and abuse.

   > **Formatted:** Highlight

   b. Receive high quality instruction that is comprehensible and appropriate to their level of academic and linguistic development.
   c. Be expected to achieve at high levels.
   d. Receive differentiated instruction to meet individual needs.

   > **Comment [n10]:** This language should be simplified so that students understand it.

   e. Receive appropriate accommodations to meet individual needs (as supported by documentation)
   f. Express their ideas and perspectives on issues and topics relevant to their education, including school policies and procedures Express their ideas and perspectives on issues and various topics
   g. Participate in student activities.
   h. Be treated with respect, and to be treated as a unique individual with differing needs, learning styles and abilities in a manner that encourages and enhances individual self-esteem.
   i. Be treated in a fair and equitable manner by teachers and administrators
   j. Privacy. (See the "Notification of Privacy Rights of Parents and Students" at page 32)
   k. Due process of law.
   l. SHave school rules that are enforced in a consistent, fair and reasonable manner.

   > **Formatted:** Highlight

   m. Be free to RRequest an interpreter or translator at any step of the disciplinary process.

   > **Formatted:** Highlight

   n. Be free from retaliation, from fear of retaliation, and from sex discrimination and sexual harassment at school, including dating abuse.  A victim of dating abuse has the right to transfer to another school.  (See Policy JICL "Dating Abuse").

   > **Comment [n11]:** Query: Does a victim of sexual harassment have a right to transfer to another school as well?

   o. Receive disciplinary actions that are fair, equitable, non-discriminatory, and are in accordance with the Guidelines for Student Rights and Responsibilities (GSRR).
   p. Have teachers and administrators who will follow all District policies related to known allegations of Discrimination, Harassment, Hazing, Bullying, and incidents that require Mandatory Reporting. Such known allegations or incidents must be reported by teachers to the site administration immediately.

   > **Formatted:** Highlight
   >
   > **Comment [n12]:** This language should be simplified.
   >
   > **Formatted:** Highlight

   q. Be treated in a manner that is respectful of and responsive to their cultural traditions
   r. Administrators who will:
      • model appropriate behavior and expect appropriate behavior from students and teachers.
      • hold students and teachers accountable for student learning.
      • expect parents to be collaborative partners regarding student achievement.
      • work collaboratively with the Department of Student Equity and Intervention.

- host student assemblies or other appropriate meetings to communicate positive core values and behavioral expectations, and to explain the GSRR, Positive Behavioral Interventions and Supports (PBIS), and Restorative Practices (RP) in an age-appropriate manner.
- hold informational sessions for parents at least twice per school year at each school, which shall include information regarding GSRR, PBIS, RP, due process and appeal procedures, and guidance for making parent complaints about student discipline.
- make decisions regarding removing students and/or staff for safety reasons.
- discipline students in accordance with the GSRR.
- Consistently and accurately report discipline consequences for each student in the data base system.

s.   Full access to opportunities within the educational environment without experiencing discrimination on the basis of race, color, religion/religious beliefs, sex, gender, gender identity, age, national origin, sexual orientation, creed, citizenship status, marital status, political beliefs/affiliation, disability, home language, or family, or social or cultural background.  This includes the availability of all support services which promote the development of student potential (See Policy AC "Non-Discrimination", ACA "Sexual Harassment", and JB "Equal Educational Opportunities and Anti-Harassment").

t.   Acquire English language competency and such other languages as may be available at the school for students to study.

u.   Access to a classroom environment that encourages the use of English, promotes appreciation of other languages, and respects students' right to use their native language to facilitate communication and enhance academic achievement.

v.   Access to culturally relevant books and other reading materials for supplementary and recreational use, including materials that may be available in other languages other than English.

w.   Access to non-instructional interpretation services when communicating with the school, and in some cases, to translated copies of certain school forms and documents.

x.   Receive a copy of the Guidelines for Student Rights and Responsibilities (GSRR) at the beginning of each school year, with an opportunity to discuss the handbook and ask questions.

y.   Have a Access to their formal student records, including disciplinary records.

z.   Have a Access to school assignments/homework while serving a disciplinary suspension for the duration of the suspension class period (quarter or semester) and have options for alternative instructional opportunities for any remaining suspension.

**2.  STUDENTS HAVE A RESPONSIBILITY TO:**

a.   Attend school daily according to school district adopted calendar, arrive on time, bring appropriate materials, complete assignments and be prepared to participate in class and complete assignments.

b.   Strive for academic growth and to strive for their personal best.

c.   Participate fully in the classroom, curriculum and learning process during the entire class period.

d.   Uphold an environment that allows fellow students to have an equal access to educational opportunities.

e.   Uphold an environment that allows fellow students to be free from discrimination, harassment, hazing and bullying.

f.   Make up work resulting from an absence.

g.   Respect the rights, feelings, and property of fellow students, parents, school staff, visitors, guests, and school neighbors.

16

h. Conduct themselves ~~properly~~ in an appropriate and respectful manner while on school grounds, school buses, at bus stops, at any school-related activity, and in the classroom, so as not to interfere with the rights of another student to learn and so as to contribute to a safe and orderly environment that is conducive to learning.

**Formatted:** Highlight

i. Display behavior that does not compromise the safety of other students and/or staff.

j. Follow discipline guidelines adopted by the school and district.

k. Protect and take care of the school's property.

l. Abide by the governing board policies and regulations.

m. Assist the school staff in running a safe school, and ~~to~~ help maintain the safety and cleanliness of the school environment.

n. Read and ask questions to understand the information in the Guidelines for Student Rights and Responsibilities handbook (GSRR).

3. **PARENTS AND GUARDIANS HAVE A RIGHT TO:**

a. Receive official reports (quarterly or more frequently) of the student's academic progress, attendance and behavior in a timely manner and on a consistent basis.

**Formatted:** Highlight

b. Request and be granted conferences with teachers, counselors and/or the principal.

c. Receive explanations from teachers about their student's grades and disciplinary procedures.

d. Read all school records pertaining to their student.

e. Receive a copy of the Guidelines for Student Rights and Responsibilities handbook (GSRR).

f. Receive immediately an oral **and** a written notification anytime a student is sent home or removed from their classroom environment for any safety and/or disciplinary reason, this includes short-term and long-term suspensions.

**Formatted:** Highlight

**Comment [n14]:** Parents need to be advised when in school suspensions occur.

g. Request an interpreter or translator at any step of the process.

**Comment [n15]:** Does this refer solely to disciplinary process or more generally? Please clarify what "any step of the process" refers to.

h. Request a review of all disciplinary actions relating to their student.

i. Non-instructional interpretation services when communicating with the school, and in some cases, to translated copies of certain school forms and documents.

**Comment [n16]:** What does "non-instructional interpretation services" mean? Can this be simplified so parents can more readily understand it?

j. Direct their student's education, upbringing and moral or religious training.

**Comment [n17]:** This goes without saying. Why is it included here?

k. Access and review all records relating to their student.

l. Make health care decisions for their students who are under the age of 18 ~~minor child~~.

**Comment [n18]:** This appears to be duplicative of d. above.

m. Access and review all medical records of their students who are under the age of 18 ~~minor child~~ unless otherwise prohibited by law or the parent or guardian is the subject of an investigation of a crime committed against the minor child and a law enforcement official requests that the information not be released.

**Formatted:** Highlight

**Formatted:** Highlight

**Formatted:** Highlight

n. Consent in writing before:

- a biometric scan of the minor child is made.

**Comment [n19]:** Do parents know what this is?

- a record of the minor's blood type or DNA is created, stored or shared.

**Formatted:** Highlight

- genetic testing is conducted on the minor, unless required/authorized by law or court order.
- the state or any of its political subdivisions makes a video or voice recording of the minor, unless the recording is made during or as a part of: a court proceeding; a forensic interview in a criminal or child protective services investigation; or for use solely in any of the following: safety demonstrations, including the maintenance of order and discipline; a purpose related to a legitimate academic or extracurricular activity; a purpose related to regular classroom instruction; security or surveillance of buildings or grounds; or, a photo identification card.

o. Obtain information about a child protective services investigation involving the parent.

**Comment [n20]:** Which parent does this refer to? Can the parent requesting the information obtain information about a CPS investigation that involves the same parent?

p. Be notified promptly if an employee of this state, any political subdivision of this state, any other governmental entity or any other institution suspects that a criminal offense has been committed against the minor child by someone other than a parent, unless the incident has first been reported to law enforcement and notification of the parent would impede a law enforcement or child protective services investigation. This paragraph does not create any new obligation for

TUSD to report misconduct between students at school, such as fighting or aggressive play, that are routinely addressed as student disciplinary matters by the school.

q.  Express appropriately their ideas and perspectives on issues relevant to their child's education, including school policies and procedures.

r.  Be treated in a manner that is respectful of and responsive to their cultural traditions.

**4. PARENTS AND GUARDIANS HAVE A RESPONSIBILITY TO:**

a.  Work with teachers to support student achievement.

b.  Attend parent orientation meetings and visit their child's school.

c.  Be partners with school staff by sharing appropriate ideas for improving student learning and by helping to prevent and/or resolve student discipline problems.

d.  Provide supervision of the student's health, physical and emotional well being, and assume responsibility for the student's timely regular attendance at school.

e.  Promptly provide the school with explanations for student absences or tardiness.

f.  Support Ensure student compliance with school and district policies and regulations.

g.  Read and ask questions to understand the information in the Guidelines for Student Rights and Responsibilities (GSRR)

MENDOZA PLAINTIFFS WOULD LIKE TO SEE THE SECTIONS DEALING WITH TEACHER AND ADMINISTRATOR RIGHTS AND RESPONSIBILITIES THAT WERE INCLUDED IN THE JULY 9 SUBMISSION TO THE GOVERNING BOARD BE INSERTED IN THIS SECTION OR EXPANDED IN THE STUDENT RIGHTS SECTION DEALING WITH THEIR RIGHTS VIS A VIS ADMINISTRATORS AND TEACHERS.

WITH RESPECT TO THE TEACHER RESPONSIBLITIES, THE FOLLOWING SHOULD BE ADDED:

Conduct themselves in a manner that contributes to a positive school climate – one that is unbiased, nonjudgmental, and free from prejudice, discrimination, verbal or physical threats and abuse.

Reference roles of  RPPC and RPPSC in relation to teachers

WITH RESPECT TO ADMINISTRATOR RESPONSIBILITY:
Reference roles of  RPPC and RPPSC in relation to administrators

Ensure that the administration of student discipline does not result in unlawful discrimination or disproportional impact or treatment based on race or ethnicity

That student behavior policies and discipline practices are not considered in isolation but as part of an overall goal of creating an inclusive and supportive environment

g.

**Comment [O21]:** While this is something that surely should be encouraged, we are concerned that saying a parent or a guardian has an affirmative responsibility to participate and be active at a child's school creates a standard (and an opportunity for criticism) that some parents and guardians simply cannot meet.  Why is it necessary?

**Formatted:** Highlight
**Formatted:** Highlight
**Formatted:** Highlight
**Formatted:** Highlight
**Formatted:** Indent: Left:  0.5",  No bullets or numbering
**Formatted:** No bullets or numbering
**Formatted:** Highlight
**Formatted:** Highlight
**Formatted:** No bullets or numbering

## SECTION C: GENERAL INFORMATION

**Comment [NR22]:** Instead of calling this section "General Information" what about calling it "District Policies Related to Student Conduct and Discipline"?

### 1. EQUAL EDUCATIONAL OPPORTUNITIES AND ANTI-HARASSMENT (POLICY JB)

It is the policy of the TUSD to prohibit discriminatory harassment based on real or perceived race, color, religion/religious beliefs, sex, gender, gender identity, age, national origin, sexual orientation, creed, citizenship status, marital status, political beliefs/affiliation, disability, home language, parental status, status with regard to public assistance, limited proficiency in English, or family, social or cultural background, or any other reason not related to the student's individual capabilities or on the basis of association with others identified by these categories. TUSD shall act to investigate all complaints of discriminatory or other harassment, formal or informal, verbal or written, and to discipline or take other appropriate action against anyone who is found to have violated this policy.

### 2. GOVERNING BOARD POSITION ON GANG BEHAVIOR AND ACTIVITY

The behaviors that have become associated with gang activity or membership, especially violence, intimidation, and disrespect will not be tolerated on or near school property or in activities associated with school. In accordance with this position, any students engaging in gang activities will be disciplined to the fullest extent of TUSD policies, and prosecuted, if applicable, according to local ordinances, and state and federal laws.

**Comment [n23]:** This section is much too vague and leaves a lot of room to tag students as gang members without any evidence.

**Gang**: An ongoing, formal or informal organization or group of persons whose members act in concert for antisocial or criminal purposes, and who are identified with a common name, or common signs, colors, or symbols.

**Gang-Related Incident**: An incident is considered gang-related when the participants, whether perpetrators or victims, are identified as gang members or affiliates, and where a reasonable person would conclude that the incident was motivated, in whole or in part, by a desire to promote or otherwise impact gang interests.

**Bias-Related and Hate-Related Incidents**: An incident is considered bias-related or hate-related when a reasonable person would conclude that it was motivated, in whole or in part, by the perpetrator's bias or attitude against an individual victim or group based on perceived or actual personal characteristics. Such characteristics include: ancestry or ethnicity, disability, sex, gender, immigration or citizenship status, race, religion or religious practices, or sexual orientation.

### 3. STUDENT ATTENDANCE (POLICY JE)

Regular attendance is essential for success in school; therefore, absences shall be excused only for necessary and important reasons.  Such reasons include illness, bereavement, other family emergencies, and observance of major religious holidays of the family's faith.  A Parent/Guardian should notify the school prior to the absence/tardy with a call, note or email that his/her child is unable to attend or will be late to school.  The call, note or email must address the date/time and reason for the absence.

### 4. DATING ABUSE (POLICY JICL)

Dating abuse is a pattern of behavior in which one person uses or threatens to use physical, sexual, verbal, or emotional abuse to control the person's former or present dating partner.  Behaviors used may include, but are not limited to, physical abuse, emotional abuse, sexual abuse, and/or threats.  TUSD is committed to maintaining a school campus environment that is safe and secure for all students, and dating abuse will not be tolerated.  TUSD employees aware of dating abuse shall respond in a manner consistent with District training.  Students are encouraged to report all known or suspected instances of dating abuse involving themselves or other students.

**5.  BULLYING, INTIMIDATION AND HARASSMENT (POLICY JICK ~~JICFB~~)**

Bullying is a form of harassment.  Bullying is the repeated intimidation of students by the real or threatened infliction of physical, verbal, written, electronically transmitted, or emotional abuse, or through attacks on the property of another (including verbal taunts, name-calling and put-downs, and extortion of money or possessions).  Students who engage in any act of bullying while at school, at any school function, in connection to or with any District sponsored activity or event, or while en route to or from school, are subject to disciplinary action.

**6.  SCHOOL DRESS CODE (REQUIRED AT EVERY SCHOOL) (POLICY JICA)**

The general guide to acceptable school dress is neatness, cleanliness and appropriateness.  While the school cannot and does not dictate styles, it is expected that students will abide by the following rules demonstrating appropriateness in dress as though this were their daily place of business.

- Shoes are required to be worn in school.
- Hats and sunglasses may be worn outside in the sun for an extended period of time for protection from the sun. A principal in collaboration with School Safety may institute stricter requirements at a high school experiencing safety-related issues.
- No bandannas may be worn.
- Dark glasses may not be worn inside buildings unless a documented health problem exists.
- No gang related apparel or items are allowed.
- Students may not wear clothing or accessories in school buildings or on school grounds that are:
  - Hazardous, damaging, or presenting danger to school property or persons including but not limited to:  extended belts (belts should fit proper length), choke chains, dog collars, wallet chains or any type of spiked apparel or jewelry;
  - Depicting and/or promoting and/or endorsing illegal or violent activities illegal drugs, tobacco or alcohol;
  - Vulgar, obscene, indecent, libelous, or degrading of others on the basis of race, color, religion, ancestry, national origin, sex, gender, sexual orientation or disability; and/or
  - Distracting so as to interfere with the teaching or learning process such as extremely revealing garments including but not limited to short shorts, short skirts, short dresses (must cover buttocks while standing and sitting), tube tops, net tops, swimsuits, strapless tops, spaghetti strap tops, halter tops, muscle shirts, basketball shirts without an accompanying T-shirt, no tights or leggings to be worn as pants, garments with plunging necklines, transparent and see through garments, (midsections must be covered and undergarments shall be completely covered with outer clothing).

Students who violate TUSD's dress standards may be asked to do any of the following depending upon the specific circumstances:

- Turn inappropriate clothing inside out.
- Change into clothing that may be provided by the school.
- Change into other clothing which has been brought to school.
- Remove the jewelry or other accessory.

*NOTE:  These dress guidelines represent the minimum standards.  Individual school sites may adopt additional guidelines which will be distributed to all students at the beginning of each school  year and if amended, at the time they are amended.  Students wearing inappropriate clothing to school are given an

**Comment [n24]:** This is vague and needs to be clarified.

**Comment [n25]:** If this attire is common knowledge to the administration and security staff, a list of gang-related apparel should be developed and utilized as a reference at all schools  for consistent application.

**Formatted:** Highlight

opportunity to change clothing or they will be released from school in the company of the parent/guardian.

## 7. BUS RULES

### Student Behavior Policy

Proper student behavior contributes to the overall safety and comfort of the ride to and from school. Following driver directions and all ridership rules is paramount to maintain a safe and enjoyable ride for all. Infractions will be dealt with through the District-approved Student Conduct policies which include driver interventions, the student's principal, and other administrators as deemed appropriate.

Riding is a privilege; parents and students should discuss and make sure they know the rules:
- Always comply with bus driver's/monitor's directions
- Use classroom voice only (no profanity/loud noises/threats/intimidation)
- Remain seated; keep hands, feet, and head inside bus
- All personal possessions must be under control at all times
- Keep unauthorized materials and substances off bus (animals, glass objects, weapons, illegal substances, or large objects that occupy a seat space)
- No eating or drinking on the bus

AS a last resort, violations of these bus rules may result in the loss of bus privileges for a limited time.

### Safety Precautions for Students
- Know the route to and from the bus stop, safety precautions and common courtesies to be maintained en route and at the bus stop.
- Know the correct bus route number.
- Discuss what to do if the bus is late in the morning or no one is home in the afternoon
- ALWAYS board/depart the bus at the correct stop as known and approved by the parent.

## 8. STUDENT USE OF CELL PHONES AND ELECTRONIC DEVICES (POLICY JICJ)

For purposes of this policy, "electronic devices" include, but are not limited to, cell phones, Mp3 players, iPods, personal digital assistants (PDA's), e-book readers, compact disc players, portable game consoles, cameras, digital scanners, lap top computers, tablet computers and other electronic or battery powered instruments which transmit voice, text, or data from one person to another.

Students may possess and use cellular telephones and/or other electronic signaling devices subject to limitations of this and other policies of the District under the following conditions and guidelines:
- Cell phones and/or electronic devices are to be kept out of view in a student's locker, pocket, or a carrying bag.
- Such devices shall not be turned on or used during instructional time, except as authorized by the teacher.
- The principal shall establish additional guidelines appropriate to campus needs.
- Students violating the policy may have the electronic device confiscated and be subject to disciplinary action. Any search of the contents of an electronic device shall be by an administrator in accordance with the Guidelines for Students Rights and Responsibilities.

21

**Reasonable efforts will be taken to secure property that has been confiscated; however, neither the School District nor the School District Staff is responsible for loss, damage, or theft of any electronic device including but not limited to cell phones, laptops, tablet computers, portable media player brought to school, even if loss, damage or theft results from the device being confiscated.**

**9. HAZING (POLICY JICFA)**

There shall be no hazing, solicitation to engage in hazing, or aiding and abetting another who is engaged in hazing of any person enrolled, accepted for or promoted to enrollment, or intending to enroll or be promoted to District schools within twelve (12) calendar months.  For purposes of this policy a person as specified above shall be considered a "student" until graduation, transfer, promotion or withdrawal from the District school.

"Hazing" means any intentional, knowing or reckless act committed by a student, whether individually or in concert with other persons, against another student, and in which both of the following apply:

- The act was committed in connection with an initiation into, an affiliation with, or the maintenance of membership in any organization that is affiliated with an education institution.
- The act contributes to a substantial risk of potential physical injury, mental harm or degradation, or causes physical injury, mental harm or personal degradation.

"Organization" means an athletic team, association, order, society, corps, cooperative, club, or similar group that is affiliated with an educational institution and whose membership consists primarily of students enrolled at that educational institution.

It is no defense to a violation of this policy if the victim consented or acquiesced to hazing.

In accord with statute, violations of this policy do not include either of the following:
- Customary athletic events, contests or competitions sponsored by an educational institution.
- Any activity or conduct that furthers the goals of a legitimate educational curriculum, a legitimate extracurricular program, or a legitimate military training program.

All students, teachers and staff shall take reasonable measures within the scope of their individual authority to prevent violations of this policy. Students and others may report hazing to any professional staff member. Professional staff members must report the incident to the school administrator or next higher administrative supervisor, in writing, with such details as may have been provided.  A failure by a staff member to timely inform the school administrator or next higher administrative supervisor of a hazing allegation or their observation of an incident of hazing may subject the staff member to disciplinary action in accord with District policies.  The staff member shall preserve the confidentiality of those involved, disclosing the incident only to the appropriate school administrator or next higher administrative supervisor or as otherwise required by law.  Any instance of reported or observed hazing which includes possible child abuse or violations of statutes known to the staff member shall be treated in accord with statutory requirements and be reported to a law enforcement agency.

To assure that students and staff are aware of its content and intent, a notice of this policy and procedure shall be posted conspicuously in each school building and shall be made a part of the Rights and Responsibilities section of the student handbook.  Forms for submitting complaints are to be available to students and staff in the school offices. Disposition of all reports/complaints shall be reported to the

22

**Comment [026]:** Is someone who is suspended "enrolled"?  Is this broad enough to cover such hazing by a suspended student?   Are there any programs that are District supported that are not based in a school?  For example,  extended illness. Are these students still enrolled?

**Comment [NR27]:** This can be interpreted as merely observing hazing may subject staff to discipline.  It should be clarified.

Superintendent. The Superintendent will determine if the policies of the District have been appropriately implemented and will make such reports and/or referrals to the Board as may be necessary.

All violations of this policy shall be treated in accord with the appropriate procedures and penalties provided for in District policies related to the conduct and discipline of students, staff, and others.

**10. POSITIVE BEHAVIORAL INTERVENTIONS AND SUPPORTS; RESTORATIVE PRACTICES**

TUSD has adopted Positive Behavioral Interventions and Supports ("PBIS") and Restorative Practices as school-wide approaches to classroom management and student behavior.

PBIS is a set of strategies and structures to assist schools to establish a positive school culture by constructively teaching school rules and social-emotional skills; positively reinforcing appropriate student behavior; using effective classroom management strategies to provide early intervention for misbehavior; and developing a continuum of graduated and appropriate consequences for more serious and continuous behavior.  PBIS is an evidence-based, proactive, data driven framework that includes a range of tiered interventions designed to prevent problem behavior while teaching socially appropriate behaviors.  The focus of PBIS is creating and sustaining school environments for all students in which appropriate behavior is supported and problem or disruptive behavior is redirected.  This culture is created by:

- Defining and teaching behavioral expectation
- Monitoring and acknowledging appropriate behavior
- Providing corrective and appropriate consequences for behavioral errors
- Providing appropriate services for students who need additional behavioral supports
- Using a team-based management system to oversee the PBIS program
- Using referral data for problem solving

Restorative Practices is a framework to give those affected by conflict the tools and principles needed to resolve problems and build relationships.  They focus on the emotional and social disturbance created by conflict and provide a process for holding students accountable for their actions while building a supportive school environment.  Restorative Practices are an approach that seeks to develop good relationships and restore a sense of community. Restorative Practices:

- focuses on repairing harm caused by an offending behavior, while holding the wrongdoer accountable for his/her actions;
- provides an opportunity for the affected parties (victim, wrongdoer, and community) to identify and address their needs as a result of the offending behavior, and make amends or find a resolution; and
- surrounds the affected parties with a community of care, in which all parties share in the resolution of the problem.

In schools, Restorative Practices provides a proactive approach for building a community of care based on collaboration, mutual understanding, and reciprocated respect. This process holds students accountable for their actions while, at the same time, building a caring school environment. Attention is given to the victim and the wrongdoer, whether they are student or staff.  Restorative Practices allows wrongdoers an opportunity to rejoin the school community after they have made amends. See Section D(8) below for a description of Restorative Practice strategies that may be used by  sites.

23

**Formatted:** Highlight

**Formatted:** Highlight

**Formatted:** Highlight

**Formatted:** Highlight

**Formatted:** Bulleted + Level: 1 + Aligned at: 0.25" + Indent at:  0.5"

All sites shall have or share a Restorative and Positive Practices Site Coordinator ("RPPSC"). A school's learning supports coordinator may be designated to serve as the RPPSC for the site. The RPPSCs shall be responsible for assisting instructional faculty and staff to: (a) effectively communicate school rules; (b) reinforce appropriate student behavior; and (c) use constructive classroom management, positive behavioral interventions and supports, and restorative practices strategies.  The RPPSC shall also be responsible for evaluating their school site's behavior and discipline practices to ensure that they are language-accessible and working with site staff and the District Restorative and Positive Practices Coordinator to develop corrective action plans for administrators or certificated staff as necessary.

**SECTION D: KNOW THE ACTIONS**

ADMINISTERING THE GUIDELINES FOR STUDENT RIGHTS AND RESPONSIBILITIES

This section discusses categories of violations and the possible TUSD actions in response to those violations.  The list of violations and actions in response to them are based on Arizona Department of Education guidelines.  The Arizona Department of Education has developed a list of violations as well as a list of possible actions a school district may take in response to a violation.  TUSD has categorized these possible disciplinary actions into five levels depending on the severity of the violation and then assigned a disciplinary action level to each violation depending on the severity of the violation. By requiring all schools to use these guidelinesIn this way, students from school to school will receive similar disciplinary actions for similar violations.   A major consideration in the application of the Guidelines for Student Rights and Responsibilities is to identify the most appropriate disciplinary action necessary to bring about positive student behavior.  Actions are not to be considered in isolation but rather as part of the overall goal of creating inclusive and supportive environments for students.   At the elementary level, the age and developmental level of the child may be considered in interpreting the severity of the discipline imposed.  Student services personnel, such as counselors, social workers, learning support coordinators, or psychologists, play a vital role in assisting the student in resolving any problems influencing the student's behavior.

1.  CONDUCT WHICH MUST BE REPORTED TO LAW ENFORCEMENT

It is important for all staff, students, and parents to understand that, in addition to taking disciplinary action at the school level, certain criminal behavior must be reported to appropriate law enforcement agencies.  The law requires sSchool officials are required to report the following incidents:

24

| Use or threat to use a deadly weapon or dangerous instrument | Homicide | Burglary in the first degree |
|---|---|---|
| Aggravated Assault resulting in physical injury | Sexual Assault | Arson of an occupied structure |
| Sexual conduct with a minor under 15 years of age | Armed Robbery | Any dangerous crime against minors |
| Possession, use, sale, or attempted sale of illegal drugs | Kidnapping | Bomb threats |

Additionally, pursuant to A.R.S. § 13-3620, school personnel are required to immediately report any reasonable belief of non-accidental physical injury, neglect, or sexually related offense against a minor. "Physical injury" means the impairment of physical condition, and may include any skin bruising, pressure sores, bleeding, failure to thrive, malnutrition, dehydration, burns, fracture of any bone, subdural hematoma, soft tissue swelling, injury to any internal organ or any physical condition that imperils health or welfare.  (See A.R.S. § 13-3623(F)(4))

**Comment [n31]:** This should be explained further to ensure students/parents understand what it means.

2.   CONDUCT WHICH MAY BE REPORTED TO LAW ENFORCEMENT

Additionally, the administrator MAY report to law enforcement agencies other potentially disruptive incidents when necessary to maintain safety.  When appropriate, school officials should utilize supports and interventions that provide guidance and structure to the student and help them to improve their behavior without involving law enforcement.  An administrator must immediately notify an Assistant Superintendent or Director, and the Department of Student Equity and Intervention, when law enforcement is contacted. Incidents that may be reported to law enforcement when necessary to maintain safety include, but are not limited to, the following:

**Comment [n32]:** "School Personnel" was used above to describe what their obligations are regarding mandatory reporting to law enforcement. Consistent terms should be used unless a different meaning is intended in this section.

**Comment [n33]:** See comment above.

**Comment [n34]:** Need to specify who a Director is.

**Comment [n35]:** How is "demonstration" defined?

**Comment [n36]:** Suggestion:  have a list of students' due process rights and a separate one for parents' rights.

**Formatted:** Highlight

**Formatted:** Highlight

| Possession, sale or distribution of dangerous substances, including alcohol, tobacco or legal drugs | | | |
|---|---|---|---|
| Demonstration by students which is likely to create unsafe conditions | | | |
| Threats | Setting off a false fire alarm | Assault | Vandalism |

3.  DUE PROCESS FOR GENERAL EDUCATION STUDENTS

Any student whose conduct may warrant suspension or expulsion will be provided due process.  This is a legal safeguard that protects the rights of students and their parents and is constitutionally guaranteed.

Due process steps include:

- Oral or written notice to the student of the charges against presented to the student;
- An opportunity for the student charged with a violation to present his or her the student's side of the story in an informal hearing or meeting;
- Removing a student from school The allowance, for safety considerations, for a student to be removed from the school prior to an informal hearing;
  -with that hearing to follow as soon as practical;
- Adequate notification of what and to whom? and an opportunity for a fair hearing for whom?;
- Written notification to parents about suspension of student;
- That parents will be informed in writing of all suspensions and that they have the right to a conference with the principal;
- That if parents are not satisfied with any school official's decision they are entitled to request a review by the school official's immediate supervisor;
- Formal due process in long-term suspension and expulsion proceedings
- 

**Comment [n37]:** This bullet is confusing. Which student is being removed? The one who allegedly committed the violation or the victim? Can the language about the hearing following as soon as practical be a separate bullet or is it tied to the removal of a student.  Is a hearing different than an informal hearing or meeting referenced in the bullet above?

**Formatted:** Highlight

**Formatted:** Highlight

**Formatted:** Highlight

**Formatted:** Indent: Left:  0.25", First line: 0.25"

**Comment [n38]:** Is this the same as the first two bullets?

**Formatted:** Highlight

**Formatted:** Highlight

**Comment [n39]:** Do parents receive written notification only when a suspension is involved or do they get notification of the resolution of any disciplinary action?

**Comment [n40]:** This repeats the bullet above.

**Comment [n41]:** What does this mean? Students/parents may not understand the meaning of this.

**Formatted:** Bullets and Numbering

- Students and parents are provided with a fair, impartial and language-accessible proceeding, which complies with applicable state and federal law before exclusionary punishment or discipline is imposed

- A right to appeal disciplinary decisions

*Comment [n42]: Does this apply to all disciplinary decision? If so, it should say so.*

**4. DUE PROCESS FOR STUDENTS WITH 504 PLANS OR IEPs**

Students with disabilities under Section 504 or IDEA (Individuals with Disabilities Education Act) (and students suspected of having a disability) may be disciplined in the same manner as any other student and may be suspended for up to 10 cumulative days of school per school year. If a suspension beyond 10 cumulative days is contemplated, the following ~~procedural safeguards~~ are required ~~that must be followed:~~

A manifestation determination conference must be held prior to the 11th day of suspension

- If the manifestation determination conference concludes that the student's behavior is a manifestation of the student's disability, then no further disciplinary action can be taken. The 504 or IEP team should convene to develop an appropriate behavior plan for the student.

- If the manifestation determination conference concludes that the student's behavior is not a manifestation of the student's disability, the District may impose whatever long-term suspension or expulsion it would impose under the same circumstances if a non-disabled student were the offender. The District has no obligation to continue to provide educational services to a 504 student during the period of a long-term suspension or expulsion. However, the District must continue to provide educational services for students eligible under IDEA. Please refer to the appropriate Governing Board regulations JKA and JKAB and to the Exceptional Education Handbook for specific procedures.

A student with a disability under IDEA may be referred to an Interim Alternative Educational Settings in certain circumstances regarding the use or possession of drugs, weapons, or serious bodily injury. Refer to the Exceptional Education Handbook for specific procedures.

*Comment [n43]: This should be explained in simpler terms.*

*Comment [n44]: See comment above.*

*Comment [n45]: Doesn't this contradict the USP intention of keeping students in school?*

*Comment [n46]: A discussion of in school suspensions is missing. Out of school suspensions needs to be defined.*

*Comment [n47]: How is a short-term suspension defined?*

*Comment [n48]: It would be good to provide examples of when short-term suspensions are imposed.*

*Comment [n49]: To avoid confusion, it would be good to list them here.*

**5.  OUT OF SCHOOL SUSPENSIONS**

**Short-Term Suspension** – A principal or principal's designee may suspend a student from school ~~for up to ten (10)~~ from one (1) to ten (10) school days due to misconduct, depending on the severity of the misconduct. However, principals may take this action only after they ~~have exhausted informal disciplinary strategies~~ have identified, implemented, and documented appropriate behavior interventions for a reasonable duration. (See interventions listed under Action Level 1 at page ___ for examples of appropriate strategies). Such efforts must be made before principals may suspend students for low-level conduct (Action Levels 1-3). Only after implementing interventions with fidelity may a principal reject them as inappropriate in a given situation, and resort to short-term suspension as a consequence.

Conferences to resolve the problem must be scheduled with the parent, student, and other appropriate

*Comment [n50]: Under what circumstances would a student be suspended for low-level misconduct?*

*Comment [n51]: Must the interventions be implemented before suspensions for low-level conduct only or are the interventions required for higher level misconduct as well?*

*Comment [n52]: This sentence needs to be simplified so students/parents understand its meaning.*

school staff members as part of the continuum of supports and interventions implemented to support student success.

**Make-up Work (Short-Term Suspension)**

If students are suspended, they are entitled to complete their coursework to ensure that they do not fall behind academically.  Governing Board Policy Regulation JK-R1, Short Term Suspension states: "The student is allowed access to class assignments and to make up tests upon return to school.  Homework must be made available for the parent to pick up at the school office."  It shall be the parent's and student's School administrators should assist parents and students with the shared responsibility to make arrangements to obtain such assignments and homework and to have completed assignments returned to the school for grading and credit. One set of assignments must be completed and returned before another set of assignments can be picked up.  Students on suspension who successfully complete such assignments shall be allowed a reasonable time to take makeup tests upon returning to school.

Suspended students During the term of the suspension, the student isare prohibited from being on the premises of anyto remain away from all Tucson Unified School District schools and participating in any TUSD activities during the term of the suspension.  If it is necessary to come to a school, the student must make prior arrangements with the principal or principal's designee.

**Long-Term Suspension** – A Hearing Officer may suspend a student from school for up to 180 days.  Long-term suspensions of more than 45 days shall not be imposed except for Violations at Level 5.  Hearing Officers may Principals take this action only after the site administration has when they have exhausted other disciplinary strategies  (See interventions listed under Action Level 1 at page ___ for examples of appropriate strategies), or when they have at least considered those alternatives and rejected them as inappropriate in a given situation.  Conferences to resolve the problem must be are scheduled with the parent, student, and other appropriate school staff members at appropriate times as part of the continuum of supports and interventions implemented to support student success.  Students suspended more than 20 days may have an option to enroll in the "Life Skills" alternative to suspension program.

**Make-up Work (Long-Term Suspension)**

If students are suspended, they are entitled to complete their coursework to ensure that they do not fall behind academically.  School administrators should assist parents and students with the shared responsibility to make arrangements to obtain such class assignments and homework and to have completed assignments returned to the school for grading and credit. One set of assignments must be completed and returned before another set of assignments can be picked up.  Students on suspension who successfully complete such assignments shall be allowed a reasonable time to take makeup tests upon returning to school. Homework will be made available by the student's teachers for the remainder of the grading period.  However, because of the difficulty in students keeping up with class work through homework alone, without an instruction component, after the end of a grading period, students will receive academic support through a TUSD alternative program such as distance learning.

Suspended students are prohibited from being on the premises of any Tucson Unified School District schools and participating in any TUSD activities during the term of the suspension. During the term of the suspension, the student is to remain away from all Tucson Unified School District schools and activities.  If it is necessary to come to a school, the student must make prior arrangements with the principal or principal's designee.

**6.   ABEYANCE CONTRACTS (REGULATION JK-R4) (POLICY JK-R4)**

27

---

Comment [n53]: This should be included in the students' due process rights above.

Formatted: Highlight
Formatted: Highlight
Formatted: Highlight

Comment [n54]: It would be good to begin with a definition of what is a long-term suspension.

Comment [n55]: This is the first mention of a Hearing Officer. It would be helpful to describe the role and context of a Hearing Officer.  What offenses warrant a hearing officer?  What are the procedures for having a hearing? Where are they held? Etc.  Are hearing officers the only persons who can imposed long-term suspensions?

Comment [n56]: Define this term.

Formatted: Highlight

Comment [n57]: A description of this program would be helpful.

Formatted: Highlight
Formatted: Highlight

An administrator may offer to not immediately impose the assigned out-of-school suspension if (1) the administrator believes it is in the best interest of the student and the school community, (2) the student admits to committing the infraction, (3) the student and parent/legal guardian agree to certain conditions, and (4) the student and parent/legal guardian sign a contract, called an abeyance contract.  The term of the abeyance contract may not exceed the maximum suspension term for the offense level. If a student violates his/her abeyance contract with a suspendable offense, the student must serve the remaining term of the initial offense plus the suspension for the additional offense.  These two suspensions would be served concurrently. (The last days of the first suspension would also be the first days of the additional suspension.)

## 7.  POSITIVE BEHAVIOR INTERVENTION SUPPORT (PBIS)

Using Positive Behavior Intervention Support (PBIS) is a strategy to promote success for all students, allows school-wide methods for behavioral systems for appropriate, expected behaviors for students that emphasizes interventions over

Formatted: Highlight

In the Positive Behavior Intervention Support (PBIS) strategy, schools establish three levels of interventions to respond to the progressively more intensive behaviors for students that emphasize interventions over through consequences.  Levels of interventions (Tier 1) is an assessment tool to evaluate these students and match is most resources may be matched.  Tier 1 interventions.  Interventions which have been shown to be successful across age and grade levels include:  mentoring, social skills groups, interest-based clubs, and daily monitoring of selected problem behaviors.  In a handful of situations, when these group supports are not sufficient, highly individualized interventions involving multiple systems and based on data may be implemented.  If the situations involve a victim or multiple victims, Restorative Practices are complementary.

## 8.  RESTORATIVE CIRCLES; RESTORATIVE CONFERENCES

Comment [n58]: This is missing an introductory sentence to say what RCs are and how they fit in to this section of the handbook.

Restorative Practices actions range from informal to formal. In schools, these actions include:

- *Small impromptu circles:* a few people meet to briefly address and resolve a problem; facilitated by teachers, administrators, and/or learning supports coordinators.

- *Group or classroom circles:* a larger group can meet in a large circle or a classroom circle to discuss issues, answer questions, solve problems, or offer feedback; facilitated by teachers, administrators, and/or learning supports coordinators.

Comment [n59]: What is a classroom circle?

- *Formal restorative conferences:* address serious problems of behavior. These conferences may involve wrongdoers, victims, parents, and school administrators. Only those trained in formal conferences can facilitate a formal conference.

*sites may also elect to utilize "Teen Court" (aka "Peer Juries")

Comment [n60]: These terms need definitions.

## 9.  APPEALS

Students and parents/guardians have the right to appeal short-term and long-term suspension decisions; however, there is no appeal from the Governing Board's final decisions regarding long-term suspension appeals or its expulsion decisions.  (See Policy JK and its accompanying regulations for details).

**Comment [n61]:** How is an appeal made and to whom does a student appeal to?  Can students /parents appeal only short and long term suspensions or other actions as well? These details are missing.

**Comment [n62]:** An explanation of the GB's role in appeals is missing.
Also, students' rights to appeal a final decision in state court should be mentioned.

## 10.  EXPULSION

Expulsion is defined as the permanent withdrawal of the privilege of attending a TUSD school unless the Governing Board reinstates the privilege.  A principal may or, in some cases, must request that the Superintendent recommend to the Governing Board the expulsion of a student.  This is the most serious disciplinary step available. As part of its decision to expel, the Governing Board may permit the student to apply for readmission through the Office of Student Equity and Intervention after any period of time it may set. The Governing Board, or designee, may establish further conditions within the readmission process with which the student must comply prior to their admission to the instructional process. During the term of the expulsion, the student is to remain away from all Tucson Unified School District schools and activities.  If it is necessary to come to a school, the student must make prior arrangements with the principal or principal's designee.

**Comment [n63]:** Under what circumstances are students expelled?   What is the role of the GB in expulsions? What due process applies to students/parents? When is it mandatory that a principal recommend expulsion?

Students with disabilities eligible under IDEA who are expelled will continue to be offered educational services, although in an alternative setting.

**Formatted:** Highlight

## 11.  ~~PRINCIPAL~~ APPLICATION FOR WAIVER OF MANDATORY ACTIONS

**Formatted:** Highlight

For violations requiring Action Level 4 or 5 consequences, the principal has the prerogative to seek the waiver of any portion or all of the mandatory disciplinary action through the appropriate Assistant Superintendent.  The principal may seek the waiver and, if granted, the parties directly involved shall be informed of the reasons the waiver was granted.

Waivers may **not** be sought when the prescribed disciplinary action involves the possession of a firearm or the threatening of an educational institution.  Under~~By~~ state law, ~~in such a case,~~ only the Governing Board may de cide, on a case by case basis, whether to impose less than the mandatory penalty.

**Formatted:** Highlight

**ACTION** LEVELS

**Comment [n64]:** Insert paragraph from above at p. 15 that provides introduction of what these are.

The chart below lists actions that may be taken by school administration as the result of a violation.  The Action Level identifies maximum action for violations assigned to that level.  **Actions listed in bold are the minimum or mandatory action for that level of violation.**  Multiple actions may be applied to a single violation. Action Levels are developed with input from students, parents, teachers and community members. **For all violations, parent notification and student conference are mandatory.**

Interventions which have been shown to be successful across age and grade levels include:  mentoring, social skills groups, interest-based clubs, and daily monitoring of selected problem behaviors.

**It will be the policy of TUSD to implement Restorative Practices wherever practicable.**

> Comment [n65]: The table (at least levels 1-5) should fall on one page for ease of understanding.

| LEVEL 1 | o Parent Notification and Conference Request<br>**o Student Conference**<br>o Restorative Circle<br>o Restorative Conference<br>o Confiscation of Contraband<br>o Parent Conference<br>o Student Verbal Apology<br>o Student Written Apology<br>o Warning | o Referred to Outside Agency<br>o Community Service<br>o Detention<br>o Peer mediation<br>o Privileges Suspended<br>o Restitution<br>o Saturday School<br>o Teen Court<br>o Functional Behavioral Assessment | o Meeting With School Counselor<br>o Reassignment To A Different Class<br>o Behavior Contract<br>o Work Detail<br>o Behavior Intervention Group<br>o Threat Assessment<br>o Behavior Intervention Plan<br>o Lunch Detention<br>o Monitoring of selected problem behaviors<br>o Other Action |

> Comment [n66]: Work detail has been misused and should not be included.

| LEVEL 2 | Any mandatory action from the prior level(s) mustalso be imposed.<br>Both mandatory actions from Level 1 must also be imposed in addition to any of the following:<br>o **Restorative Conference and/or Restorative Circle**<br>o Behavior  Contract<br>o Social Skills Groups and/or Mentoring<br>o In School Suspension – Short-Term<br>o Out Of School Suspension and/or Abeyance – Short-Term  (1-3 Days) |

> Formatted: Highlight
> Formatted: Highlight
> Formatted: Highlight

| LEVEL 3 | Any Action from the prior level(s) may also be imposed in addition to any of the following:<br>**o Short-Term In School  Action and/or Abeyance**<br>o **Restorative Conference and/or Restorative  Circle**<br>o In School Suspension<br>o Out Of School Suspension and/or Abeyance – Short-Term  (1-10 Days)<br>o Department of School Safety Contact in Appropriate Circumstances |

> Comment [n67]: What is "short-term in school action"?

> Comment [n68]: What does this mean? Is it saying that Dept of School safety will contact a student in appropriate circumstances? What is the significance of the contact?

| LEVEL 4 | Any Action from the prior level(s) may also be imposed in addition to any of the following:<br>o **Out of School Suspension and/or Abeyance – Long-Term  (11-30 45 Days)**<br>o **Restorative Conference and/or Restorative  Circle**<br>o Restorative Conference and/or Restorative Circle<br>o Removal By Hearing Officer For Likely Injury To Self Or Others<br>o Removal By Student's IEP Team To An Interim Alternative Education Setting |

> Formatted: Highlight

| LEVEL 5 | Any Action from the prior level(s) may also be imposed in addition to any of the following:<br>o   **Out of School Suspension and/or Abeyance – Long-Term  (11-180 Days)**<br>o   **Restorative Conference and/or Restorative Circle (upon re-entry to school)**<br>o   Expulsion |

**IMPORTANT INFORMATION**

- All parent conferences will be made in a the timely lost manner from the date of the misconduct.

- A student who willingly assists or forces another student to commit a violation of these guidelines will be held equally accountable for the violation.

- Attempted violations may require Actions. Administrators will determine the appropriate level of Action to take for an attempted violation. The Action will generally be at a level less than that of the actual violation.

- For repeated and/or multiple offenses, Administrators may apply an Action that is one level higher than the violation warrants that listed, but only after approval from the Department of Student Equity and Intervention. The Department of Student Equity and Intervention will review whether the teachers and/or administrators have attempted to effectively implement interventions to address any underlying or unresolved issues, and will not permit a single type of behavior to be elevated more than one level, regardless of the frequency of occurrence.

- When determining the appropriate level of action to take, administrators may consider a student's claim of self defense, defense of others or defense of property.

- When determining the appropriate action to take, Administrators at the elementary level (Pre-K-5[th] Grade) may consider all violations, *with the exception of possession of firearms or any incidence of threat to an educational institution*, at one level lower than that of the actual violation.

- Administrators may not withdraw a student's open enrollment or magnet status during the school year as a consequence for a discipline violation.

- Students will not receive out of school suspension for attendance violations.

- Law Enforcement Officers, including School Resource Officers, School Safety Officers, and other law enforcement and security personnel shall not be involved in low-level student discipline. Low level offenses are levels 1, 2 and 3. An administrator must immediately notify an Assistant Superintendent or Director and the Department of Student Equity and Intervention when law enforcement is contacted.

**Formatted:** Highlight

**Formatted:** Highlight

**Formatted:** Highlight

**Comment [n69]:** How will DSEI review all the disciplinary actions in practice? Will it be able to handle all reviews in a timely manner?

**Comment [n70]:** Will there be any training that addresses how to determine the credibility of witnesses?

**Comment [n71]:** Is there a way to track this data to ensure it is not occurring and if it is to determine who it is happening to?

**Comment [n72]:** This prohibits school safety officers from working in a preventative mode with the students. School safety officers should be allowed to work at all levels of the discipline continuum; this is how they get to know the students and build trust and prevent escalation.

**The Arizona  Department of Education has identified the following violations:**

| AGGRESSION | |
|---|---|
| *Violation* | *Action Level* |
| **Verbal Provocation**<br>Use of language or gestures that may incite another person or other people to fight. | 1 |
| **Recklessness**<br>Unintentional, careless behavior that may pose a safety or health risk for yourself or for others. | 1 |
| **Minor Aggressive Act**<br>Student engages in non-serious but inappropriate physical contact.<br>**Examples:** hitting, poking, pulling, tripping, or pushing. | 2 |
| **Other Aggression**<br>Includes other acts of aggression not specifically listed within the Aggression section including, but not limited to, serious and inappropriate physical contact.<br>**Examples:** pulling a chair out from underneath another person, or other behaviors that demonstrate low-level hostile behaviors. | 3 |
| **Disorderly Conduct**<br>A person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person:<br>1. Engages in violent or seriously disruptive behavior.<br>2. Uses abusive or offensive language or gestures to any person present in a manner likely to provoke immediate physical retaliation by such person.<br>3. Makes any protracted commotion, utterance or display with the intent to prevent the transaction of the business of a lawful meeting, gathering or procession.<br>4. Refuses to obey a lawful order to disperse issued to maintain public safety. (see A.R.S. §13-2904)<br>5. Recording/distributing fights on any social media outlet. | 3 |
| **Endangerment**<br>A person commits endangerment by endangering **themselves or** another person with a substantial risk of imminent death or physical injury.  (see A.R.S. § 13-1201) | 3 |
| **Fighting**<br>Mutual participation in an incident involving physical violence; does not include verbal confrontation alone. | 3 |
| **Assault**<br>A person commits assault by intentionally, knowingly, or recklessly causing physical injury to another person; knowingly touching another person with the intent to injure, insult or provoke such person., or by threatening to use a deadly weapon or dangerous instrument or a simulated deadly weapon. (see  A.R.S. §13-1203)<br>**Examples:** Restraining, barricading.<br>**Only if the administrator forms a reasonable belief that a student has suffered a non-accidental physical injury and the belief is well documented is a report to law enforcement mandatory.** | 4 |
| **Aggravated Assault**<br>A person commits aggravated assault if the person:<br>1. Causes serious physical injury to another.<br>2. Uses a deadly weapon or dangerous instrument.<br>3. Commits the assault by any means of force that causes temporary but substantial disfigurement, temporary but substantial loss or impairment of any body organ or part or a fracture of any body part.<br>4. Commits the assault while the victim is bound or otherwise physically restrained or while the victim's capacity to resist is substantially impaired.<br>5. Commits assault and the person is in violation of an order of protection.<br>6. Commits the assault knowing or having reason to know that the victim is any of the following: law enforcement officer, prosecutor, firefighter, EMT/Paramedic engaged in official duties, teacher or any school employee on school grounds, on grounds adjacent to the school or in any part of a building or vehicle used for school purposes, teacher or school nurse visiting a private home in the course of the | 5<br><br>**Mandatory report to law enforcement** |

**Comment [n73]:** Governing conduct in a neighborhood or with a family appears to exceed the scope of school district authority.

**Formatted:** Highlight

teacher's or nurse's professional duties or any teacher engaged in any authorized and organized classroom activity held on other than school grounds.  (see A.R.S. § 13-1204)

## ALCOHOL, TOBACCO AND OTHER DRUGS VIOLATIONS

### Definitions

**Drug Violation:** Unlawful use, cultivation, manufacture, distribution, sale, purchase, possession, transportation or importation of any controlled drug or narcotic substance or equipment and devices used for preparing or taking drugs or narcotics. Includes being under the influence of drugs at school, school-sponsored events and on school-sponsored transportation. Includes over-the-counter medications if abused by the student.

**Possession:** knowing exercise of dominion or control over an item.        **Use:** the act of using.

**Sale:** to transfer or exchange an item to another person for anything of value or advantage, present or prospective.

**Share:** to allow another person to use or enjoy something that one possesses.

| Violation | Action Level |
|---|---|
| **Over the Counter Drugs, Inappropriate use of** <br> Medicines that may be purchased directly without a prescription from a health care professional. Inappropriate use includes any use other than that described on the packaging or recommended by a health care professional. | |
| Possession | 2 |
| Use | 2 |
| Sale | 3 |
| Share | 3 |
| **Inhalants** <br> Inhalants include medications, anesthetics, or other compounds in vapor or aerosol form, taken by inhalation. This does NOT include e-cigarettes or hookah sticks. | |
| Possession | 4 |
| Use | 4 |
| Sale | 5 |
| Share | 5 |
| **Unknown Drug** | |
| Possession | 4 |
| Use | 4 |
| Sale | 5 |
| Share | 5 |
| **Substance Represented as of Illicit Drug** <br> A substance that is not an illicit drug but that is represented as, and could be perceived as being, an illicit drug. | |
| Possession | 4 |
| Use | 4 |
| Sale | 5 |
| Share | 5 |
| **Prescription Drugs, Inappropriate use of** <br> Medicines obtained with the lawful prescription of a health care professional.  Inappropriate use includes any use other than that described by the prescription. | **Mandatory report to law enforcement** |
| Possession | 4 |
| Use | 4 |
| Sale | 5 |
| Share | 5 |
| **Illicit Drug** <br> Illicit drugs include dangerous drugs, narcotic drugs, marijuana, and peyote as defined by A.R.S. § 13-3401, and appearing in any form, including seeds, plants, cultivated product, powder, liquid, pills, tablets, etc. | **Mandatory report to law enforcement** |
| Possession | 4 |
| Use | 4 |
| Sale | 5 |
| Share | 5 |
| **Alcohol Violation** <br> The violation of laws or ordinances prohibiting the manufacture, sale, purchase, transportation, possession or use of intoxicating alcoholic beverages or substances represented as alcohol. This includes being intoxicated at school, school-sponsored events and on school-sponsored transportation. | |

**Comment [n74]:** How does possession become inappropriate use of an over the counter drug? If a student is in possession of aspirin, will he be subject to Action Level 2?

**Comment [n75]:** Why can't a student use cough medicine, for example, without punishment? Should it say "Inappropriate Use" instead of "Use"?

**Comment [n76]:** Do these include over the counter drugs?  If so, why are they receiving such a high Action level?

**Comment [n77]:** How is an "unknown drug" defined?  "Unknown" to the TUSD personnel who encounters it? What if a teacher finds a drug, which he can't identify, on a student and it ends up being generic aspirin?  Why does this warrant such a high action level?

| | Possession | 4 |
|---|---|---|
| | Use | 4 |
| | Sale | 5 |
| | Share | 5 |
| **Tobacco Violation**<br>The possession, use, distribution or sale of tobacco products on school grounds (including any device or substance that delivers nicotine such as e-cigarettes, nicotine patches and hookah sticks), at school-sponsored events and on school-sponsored transportation.  (see A.R.S. §36-798.03). | | |
| | Possession | 2 |
| | Use | 2 |
| | Sale | 3 |
| | Share | 3 |
| **Possession of Drug Paraphernalia**<br>Drug paraphernalia means all equipment, products and materials of any kind which are used, intended for use or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a drug in violation of this chapter . (see A.R.S. § 13-3415 ) | | |
| | Possession | 2 |
| | Use | 2 |
| | Sale | 3 |
| | Share | 3 |

| **ARSON** | |
|---|---|
| *Definitions* | |
| **Structure:** a building or place with sides and a floor used for lodging, business, transportation, recreation, or storage<br><br>**Occupied structure**: any structure in which one or more persons is, or is likely to be present, or is so near as to be in equivalent danger at the outset of the fire or explosion.  This includes any dwelling house, whether occupied or not.<br><br>**Property**: anything other than a structure that is owned and has value of any kind (e.g., a backpack, school book, clothing, etc.).<br><br>**Damage**: as used here, means a tangible or visible impairment to a surface.<br><br>**Reckless Burning:** recklessly causing a fire or explosion resulting in damage to a structure, wild land, or property. (see A.R.S. § 13-1702). | |
| *Violation* | *Action Level* |
| **Arson of a Structure or Property**<br>A person commits arson of a structure or property by knowingly and unlawfully damaging a structure or property by knowingly causing a fire or explosion. (see A.R.S. § 13-1703)<br><br>*NOTE:  Burning one's own property is not arson, with the exception of burning one's own property with the knowledge that it will ignite another's property or a structure.  Burning one's own property may, where appropriate, be considered reckless burning.* | **4** |
| **Arson of an Occupied Structure**<br>A person commits arson of an occupied structure by knowingly and unlawfully damaging an occupied structure by knowingly causing a fire or explosion. (see A.R.S. § 13-1704) | **5**<br>**Mandatory report to law enforcement** |
| *NOTE: Administrators may consider acts of arson that are only reckless (as opposed to knowing or intentional), or that damage property with a value under $100, at Level 3.  Please see the definition of Reckless Burning above.* | |

| **ATTENDANCE POLICY VIOLATION (Out of school suspension is not permitted)** | |
|---|---|
| *Violation* | *Action Level* |
| **Other Attendance Violations**<br><br>**Examples:** leaving school, without signing out in the main office; leaving school at lunch, without a pass; obtaining a pass to go to a certain place and not reporting there; becoming ill and going home or staying in the restroom, instead of reporting to the nurse's office; or coming to school, but not attending classes. | **1** |
| **Tardy**<br><br>Arriving at school or class after the scheduled start time. | **1** |

| | |
|---|---|
| **Unexused Absence** | |
| When a student is not in attendance **for an entire day** and does not have an acceptable excuse | **1** |
| **Leaving School Grounds without Permission** | |
| Leaving school grounds or being in an "out-of-bounds" area during regular school hours without permission of the principal or principal designee. | **1** |
| **Truancy** | |
| When a child between 6-16 years of age has an unexcused absence for at least one class period during the day. | **1** |

**Comment [n78]:** This should be defined somewhere.

| **DISHONESTY** | |
|---|---|
| *Violation* | *Action Level* |
| **Cheating** | |
| To intentionally share with another, or take from another, intellectual property for the purpose of deceit or fraud, or to take or steal intellectual property from another with or without their knowledge and present it as the student's own. | **2** |
| **Forgery** | |
| Falsely and fraudulently making or altering a document, including hall passes and parent signatures. | **2** |
| **Lying** | |
| To make an untrue statement with intent to deceive or to create a false or misleading impression. | **2** |
| **Plagiarism** | |
| To steal and pass off the ideas or words of another as one's own, including material obtained online. | **2** |

**Comment [n79]:** This should not warrant a level 2 action.

| **HARASSMENT AND THREAT, INTIMIDATION** | |
|---|---|
| *Violation* | *Action Level* |
| **Threat or Intimidation** | |
| When a person indicates, by words or conduct, the intent to cause physical injury or serious damage to a person or their property, or intentionally places another person in reasonable apprehension of imminent physical injury.  This may include threats or intimidation that occurs online or through a telecommunication device. (see A.R.S. § 13-1202). | **3** |
| **Bullying** | |
| Bullying is the repeated intimidation of students by the real or threatened infliction of physical, verbal, written, electronically transmitted, or emotional abuse, or through attacks on the property of another.  It may include, but not be limited to actions such as verbal taunts, name-calling and put-downs, including ethnically based or sex or gender-based verbal put-downs, and extortion of money or possessions. Bullying can be physical in form (e.g., pushing, hitting, kicking, spitting, stealing); verbal (e.g., making threats, taunting, teasing, name-calling); non-verbal ; cyber-bullying (e.g., text messages, email, social networking); or psychological (e.g., social exclusion, spreading rumors, manipulating social relationships). | **3** |
| **Harassment, nonsexual** | |
| A person commits harassment if, with intent to harass or with knowledge that the person is harassing another person, the person:<br>1. Anonymously or otherwise communicates or causes a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses.<br>2. Follows another person in or about a public place for no legitimate purpose after being asked to desist.<br>3. Repeatedly commits an act or acts that harass another person.<br>4. Surveils or causes another person to surveil a person for no legitimate purpose.<br>5. On more than one occasion makes a false report to a law enforcement, credit or social service agency.  (see A.R.S. § 13-2921)<br><br>*NOTE: Bullying and Sexual Harassment are types of Harassment. Indicate Harassment, nonsexual if the violation is not specifically Bullying or Sexual Harassment, or if the specific type of harassment is not known.* | **3** |
| **Hazing** | |
| "Hazing" means any intentional, knowing or reckless act committed by a student, whether individually or in concert with other persons, against another student, and in which both of the following apply: | **3** |

**Comment [n80]:** What does this mean? It is not clear.

| | |
|---|---|
| 1. The act was committed in connection with an initiation into, an affiliation with or the maintenance of membership in any organization that is affiliated with an educational institution. ("Organization" means an athletic team, association, order, society, corps, cooperative, club or other similar group that is affiliated with the school and whose membership consists primarily of students enrolled at the school.) <br> 2. The act contributes a substantial risk of potential physical injury, mental harm or degradation or causes physical injury, mental harm or personal degradation.  (see A.R.S. § 15-2301) <br><br> *Administrators **may** treat incidents of hazing at a Level 4 as appropriate to the situation, and in conjunction with the Department of Student Equity and Intervention | |

| HOMICIDE; KIDNAPPING | |
|---|---|
| *Violation* | *Action Level* |
| **Homicide** <br> Includes first degree murder, second degree murder, manslaughter or negligent homicide, and intentionally or recklessly causing the death of another person.  (see A.R.S. § 13, Chapter 11) | **5** <br> **Mandatory report to law enforcement** |
| **Kidnapping** <br> Knowingly restraining another person with the intent to hold the victim for ransom, as a shield or hostage; or hold the victim for involuntary servitude; or inflict death, physical injury or a sexual offense on the victim, or to otherwise aid in the commission of a felony; or place the victim or a third person in reasonable apprehension of imminent physical injury to the victim or such third person. (see A.R.S. § 13-1304) | **5** <br> **Mandatory report to law enforcement** |

| OTHER VIOLATIONS OF SCHOOL POLICIES | |
|---|---|
| *Violation* | *Action Level* |
| **Dress Code Violation** <br> Student wears clothing that does not fit within the dress code guidelines stated by school or district policy. | **1** |
| **Parking Lot Violation** <br> **Examples:** unsafe driving in the parking lot, parking in unauthorized areas, parking in fire lanes or disabled persons space/area, parking in two or more parking spaces with one vehicle, excessive audio or radio sound, blocking driveway or access, or littering in a parking lot). | **1** |
| **Public Display of Affection** <br> Inappropriate displays of affection (i.e. kissing) | **1** |
| **Other Violation of School Policies and Regulations** <br> Other violations of written school, or district-wide, policy or regulation. | **2** |
| **Contraband** <br> Items stated in school policy as prohibited because they may disrupt the learning environment. | **2** |
| **Combustible** <br> Student is in possession of substance or object that is readily capable of causing bodily harm or property damage. (e.g. matches, lighters) | **2** |
| **Disruption** <br> Student engages in behavior causing an interruption in a class or activity.  Disruption includes sustained loud talk, yelling, or screaming; noise with materials; horseplay or roughhousing; or sustained out-of-seat behavior. | **2** |
| **Gambling** <br> To play games of chance for money or to bet a sum of money. | **2** |
| **Language, Inappropriate** <br> Delivering verbal messages that include swearing, name calling, or use of words in an inappropriate way. | **2** |
| **Defiance or Disrespect Towards Authority and Non Compliance** <br> Student engages in refusal to follow directions, talks back, or delivers socially rude interactions. | **2** |

**Comment [n81]:** Is littering in an area that is not a parking lot a violation?

**Formatted:** Highlight

**Comment [n82]:** How can the Action Level be a 2 when the violation is undetermined?

36

| Negative Group Affiliation / Illegal Organization | |
|---|---|
| Clubs, fraternities, sororities, anti-social organizations, secret societies, criminal street gangs, and other sets of individuals that are not sanctioned by the Governing Board and which are determined to be disruptive to teaching and learning. This includes wearing of symbolic apparel, making gestures, writing on and marking of property, or altering of personal appearance to symbolize membership in an organization with a history of, or determined to be, a disruption to teaching and learning. | 3 |

**Comment [n83]:** This is very broad and should not hinder students' First Amendment rights.

## SCHOOL THREAT OR INTERFERENCE

### Definitions

Threatening an educational institution (School Threat) means to interfere with or disrupt an educational institution by doing any of the following:

1. For the purpose of causing, or in reckless disregard of causing, interference with or disruption of an educational institution, threatening to cause physical injury to any employee of an educational institution or any person attending an educational institution.
2. For the purpose of causing, or in reckless disregard of causing, interference with or disruption of an educational institution, threatening to cause damage to any educational institution, the property of any educational institution, the property of any employee of an educational institution or the property of any person attending an educational institution.
3. Going on or remaining on the property of any educational institution for the purpose of interfering with or disrupting the lawful use of the property or in any manner as to deny or interfere with the lawful use of the property by others.
4. Refusing to obey a lawful order to leave the property of an educational institution.

*NOTE: "interference with or disruption of" includes only those acts that might reasonably lead to the evacuation or closure of a school property or to the postponement, cancellation, or suspension of any class or other school activity (though actual evacuation, closure, postponement, cancellation or suspension is not required).*

| Violation | Action Level |
|---|---|
| **Fire Alarm Misuse** <br> Intentionally ringing fire alarm when there is no fire. | **4** |
| **Other School Threat** <br> An incident, not coded in the School Threat category, which involves threatening an educational institution. | **5** <br> **Expulsion required by law** |
| **Bomb Threat** <br> Threatening an educational institution by using or threatening to use a bomb, or arson-causing device. | **5** <br> **Expulsion required by law** |
| **Chemical or Biological Threat** <br> Threatening an educational institution by using or threatening to use dangerous chemicals or biological agents. | **5** <br> **Expulsion required by law** |

## SEXUAL OFFENSES

| Violation | Action Level |
|---|---|
| **Harassment, Sexual** <br> Sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other verbal, graphic, written, or physical conduct of a sexual nature where such conduct has the purpose or effect of creating an intimidating, hostile, or offensive educational environment.  Sexual harassment can include nonverbal forms (e.g., "sexting," tweeting, or otherwise sending messages through networking sites and/or telecommunication devices), or physical conduct of a sexual nature. | **3** |
| **Pornography** <br> Pornography is the sexually explicit and obscene depiction of persons, in words or images. <br> **Examples:** viewing and/or sharing nude or sexually-charged images (non-art, non-educational) of  people in books, magazines,  electronic devices, or on the internet; using an electronic device to send or receive nude images, partially-nude images, or images that are sexual in nature ("i.e. sexting"), or drawing nude images, partially-nude images, or images that are sexual in nature that have no redeeming educational value. | **3** |
| **Harassment, Sexual with contact** <br> Sexual harassment that includes physical contact. | **4** |
| **Indecent Exposure or Public Sexual Indecency** | **4** |

| | |
|---|---|
| A violation of A.R.S. § 13-1402 Indecent exposure, § 13-1403 Public sexual indecency, or engaging in other sexual acts.<br><br>**Examples:** public urination, streaking, masturbation, "peeping tom" (including taking photos or videotaping), exposing another student's private parts, or engaging in intercourse, or oral sex. | |
| **Sexual Assault or Rape**<br><br>A violation of A.R.S. § 13-1406 Sexual assault | **5**<br><br>**Mandatory report to law enforcement** |
| **Sexual Abuse or Sexual Conduct with minor, or Child Molestation**<br><br>A violation of A.R.S. § 13-1404 Sexual abuse, § 13-1405 Sexual conduct with a minor, or § 13-1410 Child Molestation. | **5**<br><br>**Mandatory report to law enforcement** |

| TECHNOLOGY, IMPROPER USE OF | |
|---|---|
| *Violation* | *Action Level* |
| **Telecommunication Device**<br><br>**Examples:** use of telecommunication devices (cell phones, pagers, etc.) for non-instructional purpose | **1** |
| **Other Technology**<br><br>**Examples:** Nintendo DS, iPods, MP3 players, etc. | **1** |
| **Computer**<br><br>**Examples:** use of school computers for non-instructional purpose, copyright or trademark infringement, knowingly uploading or downloading destructive or malicious programs or software, loading personal software or disks onto school computers without permission of an administrator, vandalism of computers or computer equipment. | **2** |
| **Network Violation**<br><br>**Examples:** use of computer network for non-instructional purpose, knowingly uploading or downloading destructive or malicious programs or software, sharing passwords, attempting to read, delete, copy or modify the email of other users, accessing secure areas other than for educational purposes, transmitting material information or software in violation of any district policy or regulation, local, state or federal law or regulation, or tampering with or misuse of the computer networking system or taking any other action inconsistent with this regulation will be viewed as a network violation. | **3** |

| THEFT | |
|---|---|
| *Violation* | *Action Level* |
| **Petty Theft**<br><br>Thefts for cash, or property, valued under $100. | **2** |
| **Theft – School Property or Non-School Property**<br><br>A person commits theft if, without lawful authority, the person knowingly:<br>b. Controls property of another with the intent to deprive the other person of such property; or<br>c. Converts for an unauthorized term or use services or property of another entrusted to the defendant or placed in the defendant's possession for a limited, authorized term or use; or<br>d. Obtains services or property of another by means of any material misrepresentation with intent to deprive the other person of such property or services; or<br>e. Comes into control of lost, mislaid or misdelivered property of another under circumstances providing means of inquiry as to the true owner and appropriates such property to the person's own or another's use without reasonable efforts to notify the true owner; or<br>f. Controls property of another knowing or having reason to know that the property was stolen; or<br>g. Obtains services known to the defendant to be available only for compensation without paying or an agreement to pay the compensation or diverts another's services to the person's own or another's benefit without authority to do so. (see A.R.S. § 13-1802) | **3** |
| **Burglary or Breaking and Entering**<br><br>Entering or remaining unlawfully in or on the personal property of another, a classroom, a residential structure or yard or a nonresidential structure or in a fenced commercial property with the intent to commit any theft or | **4** |

| | |
|---|---|
| any felony therein. (see A.R.S. § 13-1506 - § 13-1507) | |
| **Extortion**<br><br>A person commits theft by extortion by knowingly obtaining or seeking to obtain property or services by means of a threat to do in the future any of the following:<br>1. Cause physical injury to anyone by means of a deadly weapon or dangerous instrument.<br>2. Cause physical injury to anyone except as provided in paragraph 1 of this subsection.<br>3. Cause damage to property.<br>4. Engage in other conduct constituting an offense.<br>5. Accuse anyone of a crime or bring criminal charges against anyone.<br>6. Expose a secret or an asserted fact, whether true or false, tending to subject anyone to hatred, contempt or ridicule or to impair the person's credit or business.<br>7. Take or withhold action as a public servant or cause a public servant to take or withhold action.<br>8. Cause anyone to part with any property.   (see A.R.S. § 13-1804) | **4** |
| **Robbery**<br><br>A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property. (see A.R.S. § 13-1902) | **4** |
| **Armed Robbery**<br>A person commits armed robbery if, in the course of committing robbery (see definition above) such person or an accomplice;<br>1. Is armed with a deadly weapon or a simulated deadly weapon; or<br>2. Uses or threatens to use a deadly weapon or dangerous instrument or a simulated deadly weapon.<br>  (see A.R.S. § 13-1904) | **5**<br>**Mandatory report to law enforcement** |
| **Burglary (First Degree)**<br><br>A person commits burglary in the first degree if such person or an accomplice enters or remains unlawfully in or on a residential structure or yard or a nonresidential structure or in a fenced commercial with the intent to commit any theft or any felony therein (see A.R.S. §13-1506-07) and knowingly possesses explosives, a deadly weapon or a dangerous instrument in the course of committing any theft or any felony.<br>(see A.R.S. § 13-1508) | **5**<br>**Mandatory report to law enforcement** |

| TRESPASSING; VANDALISM OR CRIMINAL DAMAGE | |
|---|---|
| *Definitions* | |
| **Criminal damage:** Willful destruction or defacement of school property, commercial property located on school property, or personal property of another person, so as to substantially impair its function or value in an amount of five thousand dollars or more. Administrators may consider acts of vandalism that result in damages exceeding $5,000 in value at a Level 4.<br><br>**Examples:** Substantial destruction of copy machines, school vehicles, student vehicles, or certain technology, science, or computer equipment. | |
| *Violation* | *Action Level* |
| **Trespassing**<br><br>To enter or remain on a public school campus or school board facility without authorization or invitation and with no lawful purpose for entry.  This includes students under suspension or expulsion and unauthorized persons who enter or remain on a campus or school board facility after being directed to leave by the chief administrator or designee of the facility, campus or function. | **2** |
| **Graffiti or Tagging**<br><br>Writing on walls; drawings or words that are painted or sprayed on walls and/ or other surfaces that can be easily removed with soap or cleaner. | **2** |
| **Vandalism of Personal property**<br><br>Willful destruction or defacement of personal property. | **3** |
| **Vandalism of School Property**<br><br>Willful destruction or defacement of school property. | **3** |

**Comment [n84]:** Students have a right to attend public meetings (so long as they are not during school instruction time), including governing board meetings.  This should be clarified so that it cannot be applied to students who attend public meetings, such as GB meetings.

| **Examples:** Destroying school computer records, carving initials or words in desk top, spray painting on walls, or damaging vehicles. | |

| **WEAPONS AND DANGEROUS ITEMS (POSSESSION OF)** | |
|---|---|
| *Violation* | *Action Level* |
| **Dangerous Items**<br><br>Knife with a blade length of less than 2.5 inches, air soft gun, b.b.gun, laser pointer, letter opener, mace/pepper spray, paintball gun, pellet gun, razor blade/box cutter, simulated knife, taser or stun gun, tear gas, firecrackers, smoke and stink bombs, gas, lighter fluid, and other dangerous items (anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury).<br><br>**Mandatory report to law enforcement if under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury.** | **3** |
| **Other Weapons**<br><br>**Examples:** Billy club, brass knuckles, knife with a blade length of at least 2.5 inches, nunchakus.<br><br>**Mandatory report to law enforcement if under the circumstances in which it is used, attempted to be used or threatened to be used the item is readily capable of causing death or serious physical injury.** | **4** |
| **Simulated Firearm**<br><br>Possession of a simulated firearm made of plastic, wood, metal or any other material which is a replica, facsimile, or toy version of a firearm.<br><br>If the simulated firearm is used to threaten or intimidate, the violation will be considered a level 4. | **3** |
| **Firearms**<br><br>Firearm means any loaded or unloaded handgun, pistol, revolver, rifle, shotgun or other weapon that will expel, is designed to expel or may readily be converted to expel a projectile by the action of an explosive. Firearm does not include a firearm in permanently inoperable condition. (see A.R.S. § 13-3101)<br><br>Other Firearms – As defined for the Gun-Free Schools Act (GFSA) – includes - the frame or receiver of any weapon described above; Any firearm muffler or firearm silencer; Any destructive device, which includes: Any explosive, incendiary, or poison gas: Bomb; Grenade; Rocket having a propellant charge of more than four ounces; Missile having an explosive or incendiary charge of more than one-quarter ounce, Mine or similar device. Any weapon which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter.  Any combination or parts either designed or intended for use in converting any device into any destructive device described in the two immediately preceding examples, and from which a destructive device may be readily assembled.   (see 18 U.S.C. 921)<br><br>*NOTE: This definition does not apply to items such as toy guns, colorful plastic water guns, cap guns, bb guns, and pellet guns)* | **5**<br><br>**Expulsion required by law**<br><br>**Mandatory report to law enforcement** |

**INDEX** *REVISE AFTER FINAL REVISIONS*

Abeyance Contracts, 16, 17
Action Levels, 18
Aggression, 20
    Aggravated Assault, 20
    Assault, 20
    Disorderly Conduct, 20
    Endangerment, 20
    Fighting, 20
    Minor Aggressive Act, 20
    Other Aggression, 20
    Recklessness, 20
    Verbal Provocation, 20
Alcohol, Tobacco and other Drugs, 21-22
    Alcohol Violation, 21
    Illicit Drugs, 21
    Inhalants, 21
    Over the Counter Drugs, 21
    Possession of Drug Paraphernalia, 22
    Prescription Drugs, 21
    Substance Represented as of Illicit Drug, 21
    Tobacco Violation, 22
    Unknown Drug, 21
Anti-Harassment Policy, 11
Appeals, 17
Arson, 22
    Arson of an Occupied Structure, 22
    Arson of a Structure or Property, 22
Attendance Policy, 11
Attendance Violation, 22
    Leaving School Grounds, 22
    Other Attendance Violations, 22
    Tardy, 22
    Truancy, 23
    Unexcused Absence, 22
Bus Rules, 10
Bullying, Intimidation & Harassment, 11, 23
Cell Phones, 11

Dating Abuse, 11
Dishonesty, 23
    Cheating, 23
    Forgery, 23
    Lying, 23
    Plagiarism, 23
Dress Code, 9-10
Due Process for General Education Students, 14-15
Due Process for Exceptional Education Students, 15
Expulsions, 17
Gang Activity, 9
General Information, 9-13
    Anti-Harassment Policy, 9
    Governing Board Position, 9
    School Dress Code, 9-10
    Bus Rules, 10
    Student Attendance, 11
    Bullying, Intimidation & Harassment, 11
    Dating Abuse, 11
    Cell Phones, 11
Harassment, Threats and Intimidation, 23
    Bullying, 23
    Harassment, nonsexual, 23
    Hazing, 23
    Threat or Intimidation, 23
Hazing, 12-13, 23
Homicide, 23
Kidnapping, 23
Know the Actions, 18-28
    Abeyance Contracts, 18, 19
    Administration of Guidelines, 14
    Appeals, 17
    Conduct Which Must be Reported, 14
    Conduct Which May be Reported, 14
    Due Process for Students, 14-15
    Expulsions, 17
    Out of School Suspensions, 15-16

Short-Term Suspension, 15
Long-Term Suspension, 16
Principal Application for Waiver, 17
Law Enforcement, Reports to, 14
Other Violations of School Policies, 24
Combustible, 24
Contraband, 24
Defiance or Disrespect, 24
Disruption, 24
Dress Code Violation, 24
Gambling, 24
Language, Inappropriate, 24
Negative Group Affiliation, 24
Other Violation of Policies, 24
Parking Lot Violation, 24
Public Display of Affection, 24
Out of School Suspensions, 15-16
Purpose, 4
What are the Guidelines, 4
When are Guidelines in Force, 4
Rights & Responsibilities, 5-8
Students Have a Right to, 5
Students Have a Responsibility to, 6
Parents/Guardians Have a Right to, 6-7
Parents/Guardians Have a Responsibility to, 7
Teachers Have a Right to, 7
Teachers Have a Responsibility to, 8
Administrators Have a Right to, 8
Administrators Have a Responsibility to, 8

School Threat, 25
Bomb Threat, 25
Chemical or Biological Threat, 25
Fire Alarm Misuse, 25
Other School Threat, 25
Sexual Offenses, 25
Harassment, Sexual, 25
Harassment, Sexual with contact, 25
Indecent Exposure/Public Sexual Indecency, 25
Pornography, 25
Sexual Abuse, 25
Sexual Assault or Rape, 25

Technology, Improper Use of, 26
Computer, 26
Network Violation, 26
Other Technology, 26
Telecommunication Device, 26
Theft, 26-27
Armed Robbery, 27
Burglary or Breaking & Entering, 26
Burglary (First Degree), 27
Extortion, 26
Petty Theft, 26
Robbery, 27
Theft-School/Non-School Property, 26
Trespassing, 27

Vandalism, 27
Graffiti or tagging, 27
Vandalism of Personal Property, 27
Vandalism of School Property, 27
Violations & Actions, 15-28
Aggression, 20
Alcohol, Tobacco & Other Drugs, 21-22
Arson, 22
Attendance Violation, 22-23
Dishonesty, 23
Harassment and Threat, Intimidation, 23
Homicide, 24
Kidnapping, 24
Other Violations of School Policies, 24
School Threat, 25
Sexual Offenses, 25
Technology, Improper Use of, 26
Theft, 26-27
Trespassing, 27
Vandalism or Criminal Damage, 27
Weapons & Dangerous Items, 28
Weapons, 28
Dangerous Items, 28
Firearms, 28
Other Weapons, 28
Simulated Firearms, 28

## TUSD ANNUAL NOTIFICATION OF PRIVACY RIGHTS OF PARENTS AND STUDENTS

The Family Educational Rights and Privacy Act (FERPA) affords parents and "eligible students" (students over 18 years of age, or who attend an institution of postsecondary education) certain rights regarding the student's education records. These rights are:

**(1) The right to inspect and review the student's education records within 45 days from the day TUSD receives a request.**

The parent(s) and/or eligible student may inspect and review student's education records, and TUSD policies and regulations governing use of those records, by making an appointment with the student's school principal. A copy of state and federal statutes and regulations concerning student records is available for reasonable inspection in the Office of the Superintendent or designee, 1010 E. 10th Street, Tucson, Arizona. A list of the types of records maintained, and an explanation of any record, will be provided by appropriate TUSD personnel upon request.

Federal law assumes that both parents are equally entitled to review their child's records. If there is a custody order in place that prohibits the provision of this information to one parent, please provide TUSD with a copy of the custody order, signed by a judge.

**(2) The right to request the amendment of the student's education records that the parent(s) and/or eligible students believes are inaccurate, misleading, or otherwise in violation of the student's privacy rights under FERPA.**

Such a request must be in writing to the student's school principal, must clearly identify the part of the record they want changed, and must specify why it should be changed. If TUSD, decides not to amend the record as requested by the parent(s) and/or eligible student, TUSD will notify the parent(s) and/or eligible student of the decision, and the parent(s) and/or eligible student may further request a hearing regarding the request for amendment, as provided by federal and state statutes, rules and regulations.

**(3) The right to privacy of personally identifiable information in the student's education records, except to the extent that FERPA authorizes disclosure without consent.**

TUSD must obtain the written consent of the parent or eligible student prior to releasing personally identifiable information from the education records of a student, except in circumstances where federal and state law authorize disclosure without consent, such as disclosure to school officials with legitimate educational interests. A school official is a person employed by TUSD as an administrator, supervisor, instructor, or support staff member (including health or medical staff and law enforcement unit personnel); a Governing Board member; a person or company with whom TUSD has outsourced services or functions it would otherwise use its own employees to perform (such as an attorney, auditor, medical consultant, or therapist); a parent or student serving on an official committee, such as a disciplinary or grievance committee; or a parent, student, or other volunteer assisting another school official in performing his or her tasks. A school official has a legitimate educational interest if the official needs to review an education record in order to fulfill his or her professional responsibility.

Upon request, schools will disclose education records, without consent, to officials of another school district in which a student seeks or intends to enroll, or is already enrolled if the disclosure is for purposes of the student's enrollment or transfer.

**(4) The right to file a complaint with the U.S. Department of Education concerning alleged failures by TUSD to comply with the requirements of FERPA.**

Any complaints arising from an alleged violation of these rights may be submitted to the Superior Court of Pima County, Arizona, or to:

The Family Policy Compliance Office
U.S. Dep't of Education
400 Maryland Avenue, SW
Washington, D.C. 20202
(202) 260-3887

Directory Information

FERPA requires that TUSD, with certain exceptions, obtain a parent's/guardian's written consent prior to the disclosure of personally identifiable information from your child's education records. However, TUSD may disclose appropriately designated "directory information" without written consent, unless you have advised TUSD to the contrary in accordance with TUSD procedures (see Administrative Regulation 5130). The primary purpose of directory information is to allow TUSD to include this type of information from your child's education records in certain school publications, such as:

•The annual yearbook;
•Honor roll or other recognition lists;
•Graduation programs; and
•Sports activity sheets showing weight/height of team members.

Directory information, which is information that is generally not considered harmful or an invasion of privacy if released, can also be disclosed to outside organizations without a parent's prior written consent. Outside organizations include, but are not limited to, companies that manufacture class rings or publish yearbooks. In addition, two federal laws require local educational agencies (LEAs) receiving assistance under the *Elementary and Secondary Education Act of 1965* (ESEA) to provide military recruiters, upon request, with the following information – names, addresses and telephone listings – unless parents have advised the LEA that they do not want their student's information disclosed without their prior written consent.

If you do not want TUSD to disclose directory information from your child's education records without your prior written consent, you must notify TUSD on TUSD Form 274, prior to October 1st. TUSD has designated the following information as directory information:

Name, address, parent or guardian telephone listing, email address, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, grade level, enrollment status, degrees (diplomas) and awards received, the most recent previous educational agency or institution attended by the student, personally identifiable photographs, videotapes, films and other visual media, personally identifiable interviews, either audio only or audio and visual, and other similar information.

Under federal law, this information is considered directory information and does not require the written consent of a parent/eligible student to release. If you object to the release of directory information you must notify the principal or designee of the school, in writing, on TUSD Form 274, prior to October 1st. If Form 274 is not received by October 1st, it will be assumed that there is no objection to releasing such information. This procedure shall be done annually. Pursuant to federal law, upon request, TUSD may disclose education records without prior parental/eligible student consent, to officials of another school district in which a student seeks or intends to enroll. For further information, contact the Principal's Office at the school where the student(s) attend in TUSD.

**TUSD ANNUAL NOTIFICATION OF RIGHTS UNDER THE PROTECTION OF PUPIL RIGHTS AMENDMENT (PPRA)**

PPRA affords parents certain rights regarding our conduct of surveys, collection and use of information for marketing purposes, and certain physical exams. These include the right to:

**(1) Consent before students are required to submit to a survey that concerns one or more of the following protected areas ("protected information survey") if the survey is funded in whole or in part by a program of the U.S. Dep't of Education (ED) –**

1. Political affiliations or beliefs of the student or student's parent;
2. Mental or psychological problems of the student or student's family;
3. Sex behavior or attitudes;
4. Illegal, anti-social, self-incriminating, or demeaning behavior;
5. Critical appraisals of others with whom respondents have close family relationships;
6. Legally recognized privileged relationships, such as with lawyers, doctors, or ministers;
7. Religious practices, affiliations, or beliefs of the student or parents; or
8. Income, other than as required by law to determine program eligibility.

**(2) Receive notice and an opportunity to opt a student out of –**

1. Any other protected information survey, regardless of funding;
2. Any non-emergency, invasive physical exam or screening required as a condition of attendance, administered by the school or its agent, and not necessary to protect the immediate health and safety of a student, except for hearing, vision, or scoliosis screenings, or any physical exam or screening permitted or required under State law; and
3. Activities involving collection, disclosure, or use of personal information obtained from students for marketing or to sell or otherwise distribute the information to others.

**(3) Inspect, upon request and before administration or use –**

1. Protected information surveys of students;
2. Instruments used to collect personal information from students for any of the above marketing, sales, or other distribution purposes; and
3. Instructional material used as part of the educational curriculum.

These rights transfer from the parents to a student who is 18 yrs old, or an emancipated minor under State law.

TUSD will develop and adopt policies, in consultation with parents, regarding these rights, as well as arrangements to protect student privacy in the administration of protected information surveys and the collection, disclosure, or use of personal information for marketing, sales, or other distribution purposes.

TUSD will directly notify parents of these policies at least annually at the start of each school year and after any substantive changes. TUSD will also directly notify, such as through U.S. Mail or email, parents of students who are scheduled to participate in the specific activities or surveys noted below and will provide an opportunity for the parent to opt his or her child out of participation of the specific activity or survey.

TUSD will make this notification to parents at the beginning of the school year if the District has identified the specific or approximate dates of the activities or surveys at that time. For surveys and activities scheduled after the school year starts, parents will be provided reasonable notification of the planned activities and surveys listed below and be provided an opportunity to opt their child out of such activities and surveys. Parents will also be provided an opportunity to review any pertinent surveys. Following is a list of the specific activities and surveys covered under this requirement:

•Collection, disclosure, or use of personal information for marketing, sales, or other distribution.
•Administration of any protected information survey not funded in whole or in part by ED.
•Any non-emergency, invasive physical examination or screening as described above.

Parents who believe their rights have been violated may file a complaint with:

Family Policy Compliance Office
U.S. Department of Education
400 Maryland Avenue, SW
Washington, D.C. 2020

44

---

## *YOUR SCHOOL IS A*

# *SAFE-T-ZONE*

---

## *IF YOU SEE IT*

| | |
|---|---|
| ✎ *DRUGS* | ✎ *VIOLENCE* |
| ✎ *FIGHTS* | ✎ *WEAPONS* |
| ✎ *GANGS* | ✎ *NON-STUDENTS* |
| ✎ *ASSAULTS* | ✎ *GRAFFITI* |
| ✎ *TRUANCY* | ✎ *THREATS* |

## R E P O R T   I T!
### CONFIDENTIALITY GUARANTEED

### TELL A SCHOOL OFFICIAL OR CALL

---

### *TUSD SAFETY MESSAGE LINE*
### *584-7680*

---

- MESSAGES CHECKED HOURLY DURING SCHOOL -
- DAILY ON NON-SCHOOL DAYS -

**DISCRIMINATION STATEMENT:** Tucson Unified School District does not discriminate on the basis of race, color, religion/religious beliefs, sex, gender, gender identity, age, national origin, sexual orientation, , creed, citizenship status, marital status, political beliefs/affiliation, disability, home language, or family, social or cultural background in admission or access to, or treatment or employment in, its educational programs or activities.  Inquiries concerning Title VI, Title VII, Title IX, Section 504, and Americans with Disabilities Act may be referred to TUSD's EEO Compliance Officer, 1010 East Tenth Street, Tucson, Arizona 85719, (520) 225-6444, or to the Office for Civil Rights, U.S. Department of Education, 1244 Speer Boulevard, Denver, Colorado 80204.  See Board Policies AC "Non-Discrimination," and ACA "Sexual Harassment" for more information.



Attachment C. Department of Justice Comments:
Overview and Redline Comments

| Subject: | United States' Comments on TUSD Discipline and Extracurricular Policies | Date: | July 14, 2013 |
|---|---|---|---|

## INTRODUCTION

This memorandum summarizes the United States' questions and comments on the District's proposed discipline policies[1] and proposed extracurricular policy, specifically their compliance with USP §§ (VI) and (VIII), respectively. This document is arranged by general comments and then by USP subsection for ease of reference, and is further divided by the items the District was to consider in creating the proposed policies (USP § (VI)(B)(2), among others; and all of (VIII)).

## GENERAL COMMENTS

In addition to the specific questions and comments below, we note that all policies must be available in a language-accessible manner per the requirements of USP § (VII)(D) and Title VI of the Civil Rights Act of 1964 ("Title VI"). We support the District's current practice of printing its Guidelines for Student Rights and Responsibilities ("GSRR," or "code of conduct") in both English and Spanish within the same document, and recommend that the District expand this practice as much as possible. For any documents that the District chooses not to print in dual-language format, we alternatively recommend that the District include a note, *e.g.*, a header or footnote, on all essential documents it distributes indicating in which other languages the document is available.[2]

As a related matter, the policies discussed below do not provide specific information on the availability of translation and interpretation services to assist parents and students in understanding the policies and navigating any communication requirements that the policy sets forth (*e.g.*, requirements that students submit written explanatory excuses from parents for absences). As required by USP § (VII)(D) and Title VI, LEP families should be (a) informed about and (b) able to avail themselves of translation and interpretation services at all relevant stages of the discipline process, among other processes. We therefore recommend including specific information about translation and interpretation services in all of the draft documents, including phone numbers and/or email addresses for district personnel who can assist in connecting families to appropriate services.

---

[1] The United States has no comments on or questions about the document entitled "00 Guidelines – Discipline" or "Policy JKA Corporal Punishment," so those documents are not discussed in this memorandum or provided as email attachments with edits.

[2] For example, a document in English would include a header or footer stating, at a minimum, "Documento disponible en español." Many government agencies use this method to indicate in which language(s) a policy is available.

## COMMENTS BY USP SUBSECTION

### (I)   DISCIPLINE POLICY: GUIDELINES FOR STUDENTS RIGHTS AND RESPONSIBILITIES ("GSRR")[3]

We have two overall comments on the discipline policies.  First, we are concerned that the GSRR and related policies, as drafted, are not in compliance with the USP's requirements to limit exclusionary consequences, ensure that discipline is administered in a fair and non-discriminatory manner, and limit the involvement of law enforcement in student discipline. Overly punitive discipline policies and practices will have an effect that extends into other areas of the USP, including quality of education, because such policies not only make students feel unwelcome in their own schools and disrupt their academic experience, but have significant negative effects on their long-term well-being.  Students who have been suspended are at greater risk of educational failure and of dropping out of school, and students who are suspended or expelled also have an increased likelihood of being involved in the juvenile justice system. (However, rather than reiterate all of our comments in this memo, we have simply referred below to the comments and suggested language we have included in the edited version of the GSRR and Policy JK, which are attached to the email that accompanied this memorandum.)

Second, for clarity, we recommend that the District include a glossary or definition section in the beginning or end of the GSRR; there are many specific terms that it would be helpful to the reader to define..

> A.   *Section (VI)(B)(2)(a)(i): Limit exclusionary consequences and use appropriate positive interventions*

USP § (VI)(B)(2)(a)(i) requires the District to revise the GSSR to: "limit exclusionary consequences to instances in which student misbehavior is ongoing and escalating, and the District has first attempted and documented the types of intervention(s) used in PBIS and/or Restorative Practices, as appropriate."

The policy does not meet this requirement.  The GSRR at present permits significant exclusionary consequences, including out of school suspensions, for low-level infractions.  The GSRR policy appears to permit "work details" as a form of discipline.  During our site visits in May 2012, we observed students of color required to mop floors and take out trash as part of an in school suspension, or students subject to an in-school suspension wearing specially designated clothing and placed in basement classrooms, subjecting them to public humiliation and excluding them from learning. Excluding students from classrooms and placing them on work details does not incorporate and is inconsistent with PBIS.  We have therefore inserted comments and suggested language, along with specific explanations, into the draft GSRR.  *See* Student Handbook 6.21.13 with DOJ comments and edits; and Policy JK Student Discipline 6.21.13 with DOJ comments and edits.

---

[3] These comments and questions refer to two documents provided by the District on June 22, 2013: (1) Policy JK Student Discipline; and (2) Student Handbook 6.21.13.  These policies are attached to the email that accompanied this memorandum with specific edits and comments in addition to the brief comments summarized here.

B.     *Section (VI)(B)(2)(a)(ii): Require non-discriminatory, fair, age-appropriate, and responsive consequences*

USP § (VI)(B)(2)(a)(ii) requires the District to revise the GSSR to: "require the administration of consequences that are non-discriminatory, fair, age-appropriate, and correspond to the severity of the student's misbehavior."

The policy does not meet this requirement. The GSRR at present permits significant exclusionary consequences, including weeks of out-of-school suspension, for relatively low-level infractions. Moreover, the policy permits exclusionary consequences for subjective infractions such as defiance and disrespect, which, without adequate training, are often the sources of discrimination as teachers' and administrators' implicit biases affect decision-making on those referrals. We have therefore inserted comments and suggested language, along with specific explanations, into the draft GSRR. *See* Student Handbook 6.21.13 with DOJ comments and edits; and Policy JK Student Discipline 6.21.13 with DOJ comments and edits.

C.     *Section (VI)(B)(2)(a)(iii): Pair consequences with meaningful instruction*

USP § (VI)(B)(2)(a)(iii) requires the District to revise the GSSR to: "require that consequences are paired with meaningful instruction and supportive guidance (*e.g.*, constructive feedback and reteaching) to offer students an opportunity to learn from their behavior and continue to participate in the school community."

The policy does not fully meet this requirement. The policy still allows highly punitive response to low-level misbehavior, as noted above, but the inclusion some constructive interventions and restorative practices (*see* page 19 of the draft GSRR) is a positive step. We have therefore inserted comments and suggested language, along with specific explanations, into the draft GSRR to ensure full compliance. *See* Student Handbook 6.21.13 with DOJ comments and edits; and Policy JK Student Discipline 6.21.13 with DOJ comments and edits.

D.     *Section (VI)(B)(2)(a)(iv): Limit law enforcement engagement in routine discipline*

USP § (VI)(B)(2)(a)(iv) requires the District to revise the GSSR to: "require that law enforcement officers, including School Resource Officers, School Safety Officers, and other law enforcement and security personnel who interact with students, are not involved in low-level student discipline."

The policy does not meet this requirement. The GSRR at present permits or requires arrest for some infractions for which law enforcement referral seems inappropriate (*e.g.*, possession (without more) of an inhalant such as glue or markers). And although the policy contemplates law enforcement and security personnel involvement in schools, there is no language in the policy which delineates or explains their role. We recommend adding explanatory language such as, "Law enforcement and security personnel working in TUSD schools will provide for and maintain a safe, healthy, and productive learning environment while acting as positive role models for students by working cooperatively with school administrators. Law enforcement and security personnel working in TUSD schools will be expected to contribute to their school communities by serving as educators in addition to their responsibilities to protect the safety of

students and school personnel.  Nothing in the GSRR limits or is intended to limit law enforcement and security personnel working in TUSD schools' role in providing mentoring, informal counseling, education, and support to District students."  In addition to this suggestion, we have also inserted comments and suggested language, along with specific explanations, into the draft GSRR.  *See* Student Handbook 6.21.13 with DOJ comments and edits; and Policy JK Student Discipline 6.21.13 with DOJ comments and edits.

## (II)    **DISCIPLINE POLICY: DUE PROCESS**

      A.    *Section (VI)(B)(2)(b):  Fair, impartial, and language-accessible due process proceedings*

USP § (VIII)(A)(1) requires the District to revise its due process policies for student discipline to: "ensure that students and parents are provided with a fair, impartial, and language-accessible proceeding which complies with applicable state and federal law before exclusionary discipline or punishment is imposed, as well as an opportunity to appeal."

The policy does not meet this requirement, but is on the way to meeting it.  If the changes in the "General Comments" section are implemented, then the policy should be closer to meeting this requirement.  We have also inserted comments and suggested language, along with specific explanations, into the draft GSRR.  *See* Student Handbook 6.21.13 with DOJ comments and edits; and Policy JK Student Discipline 6.21.13 with DOJ comments and edits.

## (III)   **EXTRACURRICULAR POLICY**[4]

      A.    *Section (VIII)(A)(1): Provide students with equitable access to extracurricular activities*

USP § (VIII)(A)(1) requires the District to: "comply with the provisions below [in the subsection] in order to provide students equitable access to extracurricular activities."

The policy can meet this requirement with minimal changes.  At present, the policy only covers (1) competitive interscholastic activities that involve more than one school and (2) continuous/ongoing non-credit extracurricular activities.  These categories cover many of the opportunities in which students participate at school.  However, they do not cover certain non-continuous events or single-school-competition activities (such as homecoming and prom, special field trips, or student government elections) which should properly be covered under the non-discrimination terms of the policy.  The policy should be edited to ensure that those types of opportunities are also included.

The policy also contemplates providing students with supports to ensure they meet the academic requirements to participate in extracurricular activities.  We recommend adding language to the policy requiring, rather than suggesting, that students facing extracurricular ineligibility due to academic concerns receive supports.

---

[4] These comments and questions refer to Policy JJJ Extracurricular Activities provided by the District on June 22, 2013.

Finally, the policy also contemplates excluding students from extracurricular participation "whose behavior presents a problem or jeopardizes school discipline." This language is too vague, and open to subjective interpretation. We recommend replacing this language with explicit references to the GSRR – *i.e.*, students who commit Level 4 or 5 infractions which significantly interfere with others' safety and learning and/or are of a threatening or harmful nature may be excluded from extracurricular activities until they participate in restorative processes or in intensive interventions.

B. *Section (VIII)(A)(2): Provide opportunities for interracial contact in positive settings*

USP § (VIII)(A)(2) requires the District to: "ensure that extracurricular activities provide opportunities for interracial contact in positive settings of shared interest and that students have equitable access to extracurricular activities regardless of racial or ethnic background or ELL status."

The policy meets this requirement. The language of the policy includes an explicit equal access provision, as well as statements reiterating the USP's mandates regarding opportunities for shared interest across racial groups and co-development of leadership and other skills.

C. *Section (VIII)(A)(3): Provide a range of extracurricular activities at each school*

USP § (VIII)(A)(3) requires the District to: "provide a range of extracurricular activities at each School . . . [which] shall provide students opportunities to participate in sports activities at schools at which they are offered, to develop leadership skills, and to pursue curricular interests and programs (*i.e.*, science club or "Junior Achievement")."

The policy may meet this requirement. Its language requires that activities be available equitably, and explains, among other things, that school personnel should support student participation in extracurricular activities as part of improving student engagement and achievement. Because the policy contemplates ranges of extracurricular activities at each school and promotes personnel support of student participation, we will wait for additional details on which activities are made available by campus in the District's forthcoming annual reports.

D. *Section (VIII)(A)(4): Transportation for extracurricular activities*

USP § (VIII)(A)(4) requires the District to: "provide transportation to support student participation in extracurricular activities as specified in Section (III) of [the USP]." USP § (III) requires the District to: "make decisions concerning the availability of transportation services, including, but not limited to, transportation services to support student participation in extracurricular activities, in a manner that promotes the attendance of District students at integrated and magnet schools and programs."

The policy meets this requirement. The language of the policy requires the Superintendent to promulgate regulations to provide transportation to support extracurricular participation "where feasible." As such, we will look for additional details on the availability, in practice, of transportation for extracurricular participation in the District's forthcoming annual reports.

E.     *Section (VIII)(A)(5): After-school tutoring*

USP § (VIII)(A)(3) requires the District to: "offer . . . [after-school tutoring] on an equitable basis in accordance with all other provisions of . . . Section VIII" "if afterschool tutoring is offered to students on a voluntary basis."

The policy meets this requirement. The language of the policy requires the Superintendent to promulgate regulations to provide "equitable access to after-school tutoring where it is offered." As such, we will look for additional details on the availability of after-school tutoring in the District's forthcoming annual reports.



Tucson Unified School District

**DRAFT** GUIDELINES FOR
*STUDENT RIGHTS AND RESPONSIBILITIES* (GSRR)

~~The purpose of the Guidelines is to assist students, parents, teachers, staff, and principals in creating and sustaining an environment which will enhance the achievement of a positive learning process. To be fully effective, the Guidelines for Student Rights and Responsibilities addresses:~~ Together, students, parents, teachers, staff, and principals share the responsibility in creating and sustaining an environment that enhances student achievement in the Tucson Unified School District. We ask for the support of students and parents to achieve this goal. The Guidelines for Student Rights and Responsibilities (GSRR) addresses:

> **Comment [A1]:** To ensure that everyone acting in the role of a parent (grandparent, legal guardian, etc.) is included here, we recommend dropping a footnote defining "parent" (can use the definition in para 44 in the Appendix of the USP).

- The rights and responsibilities of students and parents
- Conduct which may require discipline
- ~~Administrative responsibilities for implementing discipline~~
- Responsibilities of administrators and teachers to implement discipline, which includes behavioral supports and interventions that promote safety ~~that address problems and support~~ and support student success
- Administrative responsibilities for Due Process

~~You are encouraged to read and develop a thorough understanding of the details of these Guidelines.~~ Please read these Guidelines and develop a thorough understanding of the details. By following the Guidelines, you can help our school district become a safer and more supportive environment for the students and staff.

> **Comment [A2]:** We use the term "certificated staff" in the USP to refer to teachers and others like counselors – does this term have the same meaning here?

Student discipline is subject to the provisions of Governing Board policies and state and federal laws. Students will be disciplined in accordance with Governing Board Policy JK and its accompanying regulations. Students with disabilities shall ~~be disciplined in accordance~~ receive discipline consistent with applicable federal and state laws, ~~i~~ including the Individuals with Disabilities Education Act (IDEA)~~, Section 504,~~ and applicable Governing Board Policies and Regulations – JK, Student Discipline; JK-R5, Discipline Of, and Alternative Interim Educational Placements For, Special Education Students; and JK-R6, Discipline, Suspension, Expulsion for 504 Students—as applied to these Guidelines for Student Rights and Responsibilities. Students may also be subject to applicable civil and/or criminal penalties if they violate the law.

These Governing Board Policies and Administrative Regulations are available for review in the principal's office and online at www.tusd1.org. Copies of this booklet are available in Spanish on the reverse side of this booklet and can be obtained online at www.tusd1.org.

Estos Planes de Acción del Consejo Gobernante, y Reglamentos Administrativos se hacen disponibles para revisión en la oficina del director escolar y en www.tusd1.org. Las copias en español de este folleto están disponible al dorso de este folleto y se pueden obtener en línea en www.tusd1.org.

**TUSD Governing Board:**

Adelita Grijalva, President; Kristel Ann Foster, Clerk; Michael Hicks; Cam Juarez;
Dr. Mark Stegeman
**Superintendent:** ~~John J. Pedicone, Ph.D.~~ Helidoro Torres (H.T.) Sanchez, Ed.D.

**TABLE OF CONTENTS:**

SECTION A:  PURPOSE  ......................................................................................  4

   1.   What Are The "Guidelines For Student Rights And Responsibilities"
        And Why Are They Needed?.......................................................................  4
   2.  When Are The Guidelines For Student Rights And Responsibilities
        In Force? ..................................................................................................  5

SECTION B:  STUDENT AND PARENT RIGHTS AND RESPONSIBILITIES ..................  6

   1.  Students Have A Right To ..........................................................................  6-7
   2.  Students Have A Responsibility To.............................................................  7
   3.  Parents And Guardians Have A Right To......................................................  8
   4.  Parents And Guardians Have A Responsibility To.........................................  8

SECTION C: GENERAL INFORMATION ...................................................................  9

   1.  Equal Education Opportunities & Anti-Harassment Policy
       (Governing Board Policy JB)......................................................................  9
   2.  Governing Board Position On Gang Behavior And Activity ...........................  9
   3.  Student Attendance (Governing Board Policy JE)   ....................................  9
   4.  Dating Abuse (Policy JICL)   ....................................................................  9
   5.  Bullying, Intimidation & Harassment (Policy JICFB)  .................................  10
   6.  School Dress Code (Required At Every School)
       (Governing Board Policy JICA)..................................................................  10
   7.  Bus Rules ...............................................................................................  11
   8.  Student Use Of Cell Phones And Other Electronic Devices (Policy JICJ) ........  11
   9.  Hazing (Policy JICFA).............................................................................  12
   10. Restorative Practices ...............................................................................  13

SECTION D:  KNOW THE ACTIONS  ......................................................................  14

   1.  Conduct Which Must Be Reported To Law Enforcement  ............................  14
   2.  Conduct Which May Be Reported To Law Enforcement   ...........................  14
   3.  Due Process For General Education Students   .........................................  14-15
   4.  Due Process For Exceptional Education Students   ....................................  15
   5.  Out Of School Suspensions   ...................................................................  15-16
   6.  Abeyance Contracts ................................................................................  16
   7.  Positive Behavior Intervention Support (PBIS).........................................  16
   8.  Restorative Circles; Restorative Conferences  ..........................................  16
   9.  Appeals ..................................................................................................  17
   10. Expulsion  ...............................................................................................  17
   11. Principal Application for Waiver Of Mandatory Disciplinary Actions...........................  17

**TABLE OF CONTENTS (CONTINUED):**

ACTION LEVELS (Levels 1-5) .......................................................................... 18

- Important Information......................................................................................... 19
- Aggression ......................................................................................................... 20
- Alcohol, Tobacco and Other Drugs Violations................................................. 21-22
- Arson ................................................................................................................. 22
- Attendance Policy Violations (Out of School Suspension Not Permitted) ...... 22-23
- Dishonesty.......................................................................................................... 23
- Harassment and Threat, Intimidation................................................................. 23
- Homicide; Kidnapping....................................................................................... 24
- Other Violations of School Policies.................................................................. 24
- School Threat or Interference ........................................................................... 25
- Sexual Offenses ................................................................................................ 25
- Technology, Improper Use Of ........................................................................... 26
- Theft ................................................................................................................... 26-27
- Trespassing; Vandalism or Criminal Damage .................................................. 27
- Weapons and Dangerous Items (Possession Of) ............................................. 28

INDEX ................................................................................................................. 29-30

ANNUAL NOTIFICATION OF PRIVACY RIGHTS OF PARENTS AND STUDENTS
(FERPA) ............................................................................................................. 31

ANNUAL NOTIFICATION OF RIGHTS UNDER THE PROTECTION OF PUPIL RIGHTS
AMENDMENT (PPRA)....................................................................................... 32

## SECTION A: PURPOSE

1. WHAT ARE THE "GUIDELINES FOR STUDENT RIGHTS AND RESPONSIBILITIES"   AND WHY ARE THEY NEEDED?

~~Students need an environment that is safe and positive for learning.  To help provide and maintain that environment, the Guidelines for Student Rights and Responsibilities:~~
TUSD is committed to partnering with students and parents to provide an environment that is safe, supportive, and conducive to learning, and strives to reduce racial and ethnic disparities in the administration of school discipline. To help promote and maintain that environment, the Guidelines for Student Rights and Responsibilities:

- Specify the rights and responsibilities of students and parents
- Describe conduct which violates those rights and responsibilities
- Provide guidance and instruction to help students resolve discipline problems in a manner that supports their development
- Strive to standardize those procedures  that the schools will use in responding to violations of those rights and responsibilities
- Assure the rights of students and parents when disciplinary action is taken

At different age levels, students have different needs for safety, support, and learning. As students progress through our public schools, it is reasonable to assume that an increase in age and maturity carries with it a greater responsibility for their actions.  Differences in age and maturity are recognized in determining the type of disciplinary action to be taken and the appropriate supports and interventions. However, the procedures outlined in the Guidelines for Student Rights and Responsibilities apply to all students in Grades K through 12.

Disciplinary consequences must be non-discriminatory, fair, age-appropriate, and correspond to the severity of the student's misbehavior. When considering responses to violations, the District strives to keep students in the classroom whenever practicable. For all but the most severe offenses (Levels 4 and 5 in the "Action Levels" section of this document), exclusionary consequences such as long-term suspension or expulsions must be limited to instances in which student misbehavior is ongoing or escalating, and only after the District has first implemented and documented that non-exclusionary interventions have been attempted. If exclusionary discipline is imposed, students will have fair due process that includes an opportunity to appeal.

For all offenses, disciplinary consequences must be paired with meaningful instruction and supportive guidance (e.g. constructive feedback and re-teaching) so offers are offered an opportunity to learn from their behavior and, where practicable, offered an opportunity to continue to participate in the school community.

While prioritizing student, staff, and public safety, the District shall not use serious sanctions for low-level conduct (Action Levels 1-3); shall only involve School Safety and/or Law Enforcement in high-level student discipline (Action Levels 4-5), such as when a student is a danger to self or others (to the extent permitted by law); and shall keep students in the classroom setting whenever practicable as members of the school community.

**Comment [A3]:** In what instance would a Level 1-3 result in a long-term suspension or expulsion? (This language appears to leave open the possibility of administering a long-term suspension for levels 1-3 infractions which are ongoing and escalating.)  We recommend removing any possibility of exclusionary consequences to be administered as responses to at least Level 1-2 infractions except in situations where school safety is at risk.

**Comment [A4]:** We recommend cross-referencing the Due Process  language and policies.

**Comment [A5]:** This is not a meaningful term – should reference specific consequences.

**Comment [A6]:** This should be edited to read "shall only involve School Safety and/or Law Enforcement as required to protect school safety." Per the USP, law enforcement/security otherwise do not have a role in every day student discipline.

55

All district personnel administering discipline to students should be informed if a student is protected as a student with a disability under either Section 504 or IDEA **or** if the student is suspected of having a disability and is being considered for an evaluation for a disability.  There are specific discipline procedures that must be followed for students who are considered disabled under these federal laws, including determining whether the misbehavior is a manifestation of the student's disability.

**2.   WHEN ARE THESE GUIDELINES IN FORCE?**
**2.   WHEN DO THESE GUIDELINES APPLY?**

The Guidelines are enforced:
During regular school hours
- While being transported on the school bus or other school district-sanctioned transportation
- At times and places where the principal or other school official or employee has jurisdiction over students
- During school-sponsored events
- During field trips
- During athletic functions
- When students are going to and from school ("portal to portal")
- During other activities associated with the school in any way

> **Comment [A7]:** This provision is too vague and likely expands school district jurisdiction beyond where the district has legal authority.  If the idea is to capture situations where the District should likely have authority but are not explicitly contemplated by the circumstances described in the bullet points above, the District could include language to that effect (e.g., "In other situations properly within the authority of the District, as determined by the Superintendent on a case by case basis").

Additionally, the principal is authorized to begin disciplinary action when a student's misconduct away from school has a detrimental effect on the other students, or on the orderly educational process, because the violation is directly connected to prior violations at school, or threatens to produce further violations at school.

*Students who believe they have experienced discrimination, harassment, hazing, bullying, or unfair disciplinary actions, may file a complaint with the site Principal, Assistant Principal, the Department of Student Equity at 225-6686, or online at www.tusd1.org/deseg*

*Parents who believe their student has experienced discrimination, harassment, hazing, bullying, or unfair disciplinary actions, may file a complaint with the site Principal, Assistant Principal, the Department of Student Equity at 225-6686, or online at www.tusd1.org/deseg*

| **SECTION B: STUDENT AND PARENT RIGHTS AND RESPONSIBILITIES** |
|---|

Tucson Unified School District believes that educating a student is a collaborative effort with the student and parent.  To support this collaboration we realize that each party has rights and responsibilities.  **The following identification of these rights and responsibilities is a general list to provide guidelines, with the intention of not being comprehensive or all-inclusive.**  (See Policy JI "Rights and Responsibilities")

1. **STUDENTS HAVE A RIGHT TO:**
   a. Learn in a safe, clean, orderly and positive climate – one that is unbiased, nonjudgmental, and free from prejudice, discrimination, verbal or physical threats and abuse.
   b. Receive high quality instruction that is comprehensible and appropriate to their level of academic and linguistic development.
   c. Be expected to achieve at high levels.
   d. Receive differentiated instruction to meet individual needs.
   e. Receive appropriate accommodations to meet individual needs (as supported by documentation)
   f. Express their ideas and perspectives on issues and topics relevant to their education, including school policies and procedures. ~~Express their ideas and perspectives on issues and various topics~~
   g. Participate in student activities.
   h. Be treated with respect, and to be treated as a unique individual with differing needs, learning styles and abilities in a manner that encourages and enhances individual self-esteem.
   i. Be treated in a fair and equitable manner by teachers and administrators
   j. Privacy. (See the "Notification of Privacy Rights of Parents and Students" at page 32)
   k. Due process of law.
   l. Have school rules that are enforced in a consistent, fair and reasonable manner.
   m. Be free to request an interpreter or translator at any step of the disciplinary process.
   n. Be free from retaliation, from fear of retaliation, and from sex discrimination and sexual harassment at school, including dating abuse. A victim of dating abuse has the right to transfer to another school.  (See Policy JICL "Dating Abuse").
   o. Receive disciplinary actions that are fair, equitable, non-discriminatory, and are in accordance with the Guidelines for Student Rights and Responsibilities (GSRR).
   p. Have teachers and administrators who will follow all District policies related to known allegations of Discrimination, Harassment, Hazing, Bullying, and incidents that require Mandatory Reporting. Such known allegations or incidents must be reported by teachers to the site administration immediately.
   q. Be treated in a manner that is respectful of and responsive to their cultural traditions
   r. Administrators who will:
      • model appropriate behavior and expect appropriate behavior from students and teachers.
      • hold students and teachers accountable for student learning.
      • expect parents to be collaborative partners regarding student achievement.
      • work collaboratively with the Department of Student Equity and Intervention.

**Comment [A8]:** This overlaps with (s) below – would recommend figuring out ways to differentiate or combining the two.

**Comment [A9]:** This appears to be covered by subsections (o) and (s) below.

**Comment [A10]:** This overlaps with (r) below – would recommend figuring out ways to differentiate or combining the two.

**Comment [A11]:** Recommend moving this to its own section.  It's confusing where it is – in some instances, it's saying that students have a right to administrations who expect parents to do something, which is just too confusing.  A separate section on administrator rights/responsibilities might be more effective and comprehensible to student and parent readers, and responsive to USP § (VI)(E)(5)..

- host student assemblies to communicate positive core values and behavioral expectations, and to explain the GSRR, Positive Behavioral Interventions and Supports (PBIS), and Restorative Practices (RP) in an age-appropriate manner.
- hold informational sessions for parents at least twice per school year at each school, which shall include information regarding GSRR, PBIS, RP, due process and appeal procedures, and guidance making parent complaints about student discipline.
- make decisions regarding removing students and/or staff for safety reasons.
- discipline students in accordance with the GSRR.

s.   Full access to opportunities within the educational environment without experiencing discrimination on the basis of race, color, religion/religious beliefs, sex, gender, gender identity, age, national origin, sexual orientation, creed, citizenship status, marital status, political beliefs/affiliation, disability, home language, or family, social or cultural background.  This includes the availability of all support services which promote the development of student potential (See Policy AC "Non-Discrimination", ACA "Sexual Harassment", and JB "Equal Educational Opportunities and Anti-Harassment").

t.   Acquire English and such other languages as may be available at the school for students to study.

u.   Access to a classroom environment that encourages the use of English, promotes appreciation of other languages, and respects students' right to use their native language to facilitate communication and enhance academic achievement.

v.   Access to books and other reading materials for supplementary and recreational use, including materials that may be available in other languages.

w.   Access to non-instructional interpretation services when communicating with the school, and in some cases, to translated copies of certain school forms and documents.

x.   Receive a copy of the Guidelines for Student Rights and Responsibilities (GSRR).

y.   Have access to their formal student records.

z.   Have access to school assignments/homework while serving a disciplinary suspension for the duration of the class period (quarter or semester) and have options for alternative instructional opportunities for any remaining suspension.

**2. STUDENTS HAVE A RESPONSIBILITY TO:**

a.   Attend school daily according to the school district's adopted calendar, arrive on time, bring appropriate materials, and be prepared to participate in class and complete assignments.

b.   Strive for academic growth and to strive for their personal best.

c.   Participate fully in the classroom, curriculum, and learning process during the entire class period.

d.   Uphold an environment that allows fellow students to have an equal access to educational opportunities.

e.   Uphold an environment that allows fellow students to be free from discrimination, harassment, hazing and bullying.

f.   Make up work resulting from an absence.

g.   Respect the rights, feelings, and property of fellow students, parents, school staff, visitors, guests, and school neighbors.

h.   Conduct themselves properly in an appropriate and respectful manner while on school grounds, school buses, at bus stops, at any school-related activity, and in the classroom, so as not to interfere with the rights of another student to learn and to contribute to a safe and orderly environment that is conducive to learning.

i.   Display behavior that does not compromise the safety of other students and/or staff.

j.   Follow discipline guidelines adopted by the school and district.

k.   Protect and take care of the school's property.

58

> **Comment [A12]:** We recommend cross referencing relevant OCR agreements.

> **Comment [A13]:** We recommend removing this language in favor of stronger language regarding translation and interpretation requirements, which are mandatory both under the USP and under Title VI.

l.  Abide by the governing board policies and regulations.
m.  Assist the school staff in running a safe school, and to help maintain the safety and cleanliness of the school environment.
n.  Read and ask questions to understand the information in the Guidelines for Student Rights and Responsibilities handbook (GSRR).

**3.  PARENTS AND GUARDIANS HAVE A RIGHT TO:**

a.  Receive official reports (quarterly or more frequently) of the student's academic progress, attendance and behavior on a consistent basis.
b.  Request and be granted conferences with teachers, counselors and/or the principal.
c.  Receive explanations from teachers about their student's grades and disciplinary procedures.
d.  Read all school records pertaining to their student.
e.  Receive a copy of the Guidelines for Student Rights and Responsibilities handbook (GSRR).
f.  Receive immediately an oral *and* a written notification anytime a student is sent home for any safety and/or disciplinary reason, ~~this~~ which includes short-term and long-term suspensions.
g.  Request an interpreter or translator at any step of the process.
h.  Request a review of all disciplinary actions relating to their student.
i.  Non-instructional interpretation services when communicating with the school, and in some cases, to translated copies of certain school forms and documents.
j.  Direct their student's education, upbringing and moral or religious training.
k.  Access and review all records relating to their student.
l.  Make health care decisions for the minor child.
m.  Access and review all medical records of the minor child unless otherwise prohibited by law or the parent is the subject of an investigation of a crime committed against the minor child and a law enforcement official requests that the information not be released.
n.  Consent in writing before:
   •  a biometric scan of the minor child is made.
   •  a record of the minor's blood or DNA is created, stored or shared.
   •  genetic testing is conducted on the minor, unless required/authorized by law or court order.
   •  the state or any of its political subdivisions makes a video or voice recording of the minor, unless the recording is made during or as a part of: a court proceeding; a forensic interview in a criminal or child protective services investigation; or for use solely in any of the following: safety demonstrations, including the maintenance of order and discipline; a purpose related to a legitimate academic or extracurricular activity; a purpose related to regular classroom instruction; security or surveillance of buildings or grounds; or, a photo identification card.
o.  Obtain information about a child protective services investigation involving the parent.
p.  Be notified promptly if an employee of this state, any political subdivision of this state, any other governmental entity or any other institution suspects that a criminal offense has been committed against the minor child by someone other than a parent, unless the incident has first been reported to law enforcement and notification of the parent would impede a law enforcement or child protective services investigation. This paragraph does not create any new obligation for TUSD to report misconduct between students at school, such as fighting or aggressive play, that are routinely addressed as student disciplinary matters by the school.
q.  Express appropriately their ideas and perspectives on issues and topics relevant to their child's education, including school policies and procedures.
r.  Be treated in a manner that is respectful of and responsive to their cultural traditions.

**4.  PARENTS AND GUARDIANS HAVE A RESPONSIBILITY TO:**

a.  Work with teachers to support student achievement.
b.  Attempt to participate and be active at their student's school.

59

**Comment [A14]:** Same note as above re: the definition of parent. If "parent" is defined above as suggested, then the term can be used alone.

**Comment [A15]:** It may be helpful to include a cite to FERPA here, or to the District's FERPA-related policy/guidance.

**Comment [A16]:** We recommend adding ISS – parents should receive notification of all exclusionary discipline, including ISS, OSS, referral to alternative school, and expulsion.

**Comment [A17]:** See comment above re: LEP obligations.

**Comment [A18]:** How is this different from (d)?

**Comment [A19]:** It may be helpful to include a cite to HIPAA here, or to the District's HIPAA-related policy/guidance.

**Comment [A20]:** Same note as above re: the definition of parent.

c.  Be partners with school staff by sharing appropriate ideas for improving student learning and by helping to prevent and/or resolve student discipline problems.

d.  Provide supervision of the student's health, physical and emotional well being, and assume responsibility for the student's timely regular attendance.

e.  Promptly provide the school with explanations for student absences or tardiness.

f.  Ensure student compliance with school and district policies and regulations.

g.  Read and ask questions to understand the information in the Guidelines for Student Rights and Responsibilities (GSRR)

---

## SECTION C: GENERAL INFORMATION

**1.  EQUAL EDUCATIONAL OPPORTUNITIES AND ANTI-HARASSMENT (POLICY JB)**
It is the policy of the TUSD to prohibit discriminatory harassment based on real or perceived race, color, religion/religious beliefs, sex, gender, gender identity, age, national origin, sexual orientation, creed, citizenship status, marital status, political beliefs/affiliation, disability, home language, parental status, status with regard to public assistance, limited proficiency in English, or family, social or cultural background, or any other reason not related to the student's individual capabilities or on the basis of association with others identified by these categories. TUSD shall act to investigate all complaints of discriminatory or other harassment, formal or informal, verbal or written, and to discipline or take other appropriate action against anyone who is found to have violated this policy.

**2.  GOVERNING BOARD POSITION ON GANG BEHAVIOR AND ACTIVITY**
The behaviors that have become associated with gang activity or membership, especially violence, intimidation, and disrespect will not be tolerated on or near school property or in activities associated with school. In accordance with this position, any students engaging in gang activities will be disciplined to the fullest extent of TUSD policies, and prosecuted, if applicable, according to local ordinances, and state and federal laws.

**Gang**: An ongoing, formal or informal organization or group of persons whose members act in concert for antisocial or criminal purposes, and who are identified with a common name, or common signs, colors, or symbols.

**Gang-Related Incident**: An incident is considered gang-related when the participants, whether perpetrators or victims, are identified as gang members or affiliates, and where a reasonable person would conclude that the incident was motivated, in whole or in part, by a desire to promote or otherwise impact gang interests.

**Bias-Related and Hate-Related Incidents**: An incident is considered bias-related or hate-related when a reasonable person would conclude that it was motivated, in whole or in part, by the perpetrator's bias or attitude against an individual victim or group based on perceived or actual personal characteristics. Such characteristics include: ancestry or ethnicity, disability, sex, gender, immigration or citizenship status, race, religion or religious practices, or sexual orientation.

**3.  STUDENT ATTENDANCE (POLICY JE)**
Regular attendance is essential for success in school; therefore, absences shall be excused only for necessary and important reasons.  Such reasons include illness, bereavement, other family emergencies, and observance of major religious holidays of the family's faith.  A Parent/Guardian should notify the school prior to the absence/tardy with a call, note or email that his/her child is unable to attend or will be late to school.  The call, note or email must address the date/time and reason for the absence.

**4.  DATING ABUSE (POLICY JICL)**
Dating abuse is a pattern of behavior in which one person uses or threatens to use physical, sexual, verbal, or emotional abuse to control the person's former or present dating partner.  Behaviors used may include, but are not limited to, physical abuse, emotional abuse, sexual abuse, and/or threats.  TUSD is committed to maintaining a school campus environment that is safe and secure for all students, and dating abuse will not be tolerated.  TUSD employees aware of dating abuse shall respond in a manner consistent with District training.  Students are encouraged to report all known or suspected instances of dating abuse involving themselves or other students.

61

**Comment [A21]:** We recommend limiting this definition to only encompass formal gangs, which come together for criminal purposes.

Here is the state law definition from A.R.S. § 13-105: "Criminal street gang" means an ongoing formal or informal association of persons in which members or associates individually or collectively engage in the commission, attempted commission, facilitation or solicitation of any felony act and that has at least one individual who is a criminal street gang member.

**Comment [A22]:** This is too vague. What does "impact gang interests" mean in this context?  And shouldn't there be more than essentially reasonable suspicion that the incident is gang-related?  We recommend clarifying this definition so it focuses more clearly on actually prohibited behavior, and provides specific examples.

For instance: "Gang-related incident" includes gang recruitment, gang initiation, fights between rival gangs, or other similar behaviors.  "Gang-related activity" does not include non-threatening behavior such as handshakes, signs, or wearing of particular colors.

**Comment [A23]:** See comment above about this standard.  What would be an example of an incident that would be captured under this policy but not a clearer standard?

**Comment [A24]:** This policy should also allow post hoc excuses in cases where parents were unable to communicate to the school prior to their student being absent.

**5.  BULLYING, INTIMIDATION AND HARASSMENT (POLICY JICK JICFB)**

Bullying is a form of harassment.  Bullying is the repeated intimidation of students by the real or threatened infliction of physical, verbal, written, electronically transmitted, or emotional abuse, or through attacks on the property of another.  As part of that abuse, bullying may (including verbal taunts, name-calling and put-downs, and extortion of money or possessions).  Students who engage in any act of bullying while at school, at any school function, in connection to or with any District sponsored activity or event, or while en route to or from school, are subject to disciplinary action.

**6.  SCHOOL DRESS CODE (REQUIRED AT EVERY SCHOOL) (POLICY JICA)**

The general guide to acceptable school dress is neatness, cleanliness and appropriateness.  While the school cannot and does not dictate styles, it is expected that students will abide by the following rules demonstrating appropriateness in dress as though this were their daily place of business.

- Shoes are required to be worn in school.
- Hats and sunglasses may be worn outside in the sun for an extended period of time for protection from the sun. A principal in collaboration with School Safety may institute stricter requirements at a high school experiencing safety-related issues.
- No bandannas may be worn.
- Dark glasses may not be worn inside buildings unless a documented health problem exists.
- No gang related apparel or items are allowed.
- Students may not wear clothing or accessories in school buildings or on school grounds that are:
  - o  Hazardous, damaging, or presenting danger to school property or persons including but not limited to:  extended belts (belts should fit proper length), choke chains, dog collars, wallet chains or any type of spiked apparel or jewelry;
  - o  Depicting and/or promoting and/or endorsing illegal or violent activities illegal drugs, tobacco or alcohol;
  - o  Vulgar, obscene, indecent, libelous, or degrading of others on the basis of race, color, religion, ancestry, national origin, sex, gender, sexual orientation or disability; and/or
  - o  Distracting so as to interfere with the teaching or learning process such as extremely revealing garments including but not limited to short shorts, short skirts, short dresses (must cover buttocks while standing and sitting), tube tops, net tops, swimsuits, strapless tops, spaghetti strap tops, halter tops, muscle shirts, basketball shirts without an accompanying T-shirt, no tights or leggings to be worn as pants, garments with plunging necklines, transparent and see through garments, (midsections must be covered and undergarments shall be completely covered with outer clothing).

Students who violate TUSD's dress standards may be asked to do any of the following depending upon the specific circumstances:

- Turn inappropriate clothing inside out.
- Change into clothing that may be provided by the school.
- Change into other clothing which has been brought to school.
- Remove the jewelry or other accessory.

*NOTE:  These dress guidelines represent the minimum standards.  Individual school sites may adopt additional guidelines.  Students wearing inappropriate clothing to school are given an opportunity to change clothing or they will be released from school in the company of the parent/guardian.

62

**Comment [A25]:** Under Federal standards, harassment does not need to be "repeated" if it is adequately severe.  *See* U.S. Department of Education Office for Civil Rights ("OCR") October 26, 2010 Dear Colleague Letter on harassment.  We recommend removing "repeated."

**Comment [A26]:** This sounds strange without examples.  We recommend adding "(e.g., spray-painting derogatory terms on a student's locker or vehicle)" or similar.

**Comment [A27]:** For McKinney Vento (i.e., homeless, migrant worker, or similar) students, meeting the requirements of the dress code may be impossible.  (For instance, not all students have easy access to cleaning technology.)  We recommend adding language stating that students who cannot afford clothing to meet the dress code will be provided with necessary assistance, and that students will not be disciplined for being financially unable to follow the dress code.

**Comment [A28]:** This is too vague.  We recommend adding examples to clarify (e.g., "wearing colors known to be affiliated with a particular gang, or wearing clothing with illustrations of known gang signs or symbols").

**Comment [A29]:** We recommend adding a statement that even where schools adopt additional specifications, they still have to provide opportunities to change, not administer exclusionary discipline for dress code infractions, and provide McKinney Vento and other at-need students with clothes to meet the dress code.

## 7. BUS RULES

### Student Behavior Policy

Proper student behavior contributes to the overall safety and comfort of the ride to and from school. Following driver directions and all ridership rules is paramount to maintain a safe and enjoyable ride for all. Infractions will be dealt with through the District-approved Student Conduct policies which include driver interventions, the student's principal, and other administrators as deemed appropriate.

Riding is a privilege; parents and students should discuss and make sure they know the rules:
- Always comply with bus driver's/monitor's directions
- Use classroom voice only (no profanity/loud noises/threats/intimidation)
- Remain seated; keep hands, feet, and head inside bus
- All personal possessions must be under control at all times
- Keep unauthorized materials and substances off bus (animals, glass objects, weapons, illegal substances, or large objects that occupy a seat space)
- No eating or drinking on the bus

As a last resort, violations of these bus rules may result in the loss of bus privileges for a limited time.

### Safety Precautions for Students
- Know the route to and from the bus stop, safety precautions and common courtesies to be maintained en route and at the bus stop.
- Know the correct bus route number.
- Discuss what to do if the bus is late in the morning or no one is home in the afternoon
- ALWAYS board/depart the bus at the correct stop as known and approved by the parent.

### 8. STUDENT USE OF CELL PHONES AND ELECTRONIC DEVICES (POLICY JICJ)

For purposes of this policy, "electronic devices" include, but are not limited to, cell phones, Mp3 players, iPods, personal digital assistants (PDA's), e-book readers, compact disc players, portable game consoles, cameras, digital scanners, lap top computers, tablet computers and other electronic or battery powered instruments which transmit voice, text, or data from one person to another.

Students may possess and use cellular telephones and/or other electronic signaling devices subject to limitations of this and other policies of the District under the following conditions and guidelines:
- Cell phones and/or electronic devices are to be kept out of view in a student's locker, pocket, or a carrying bag.
- Such devices shall not be turned on or used during instructional time, except as authorized by the teacher.
- The principal shall establish additional guidelines appropriate to campus needs.
- Students violating the policy may have the electronic device confiscated and be subject to disciplinary action. Any search of the contents of an electronic device shall be by an administrator in accordance with the Guidelines for Students Rights and Responsibilities.

**Reasonable efforts will be taken to secure property that has been confiscated; however, neither the School District nor the School District Staff is responsible for loss, damage, or theft of any**

> **Comment [A30]:** This is too vague. We recommend stating what the maximum bus suspension is. We also recommend thinking carefully about the intersection between bus suspension and the District's USP transportation obligations to students transferring from racially concentrated schools, and whether it may be possible, instead of bus suspension, to move a student to a different bus route.

**electronic device including but not limited to cell phones, laptops, tablet computers, portable media player brought to school, even if loss, damage or theft results from the device being confiscated.**

**9. HAZING (POLICY JICFA)**

There shall be no hazing, solicitation to engage in hazing, or aiding and abetting another who is engaged in hazing of any person enrolled, accepted for or promoted to enrollment, or intending to enroll or be promoted to District schools within twelve (12) calendar months.  For purposes of this policy a person as specified above shall be considered a "student" until graduation, transfer, promotion or withdrawal from the District school.

"Hazing" means any intentional, knowing or reckless act committed by a student, whether individually or in concert with other persons, against another student, and in which both of the following apply:

- The act was committed in connection with an initiation into, an affiliation with, or the maintenance of membership in any organization that is affiliated with an education institution.
- The act contributes to a substantial risk of potential physical injury, mental harm or degradation, or causes physical injury, mental harm or personal degradation.

"Organization" means an athletic team, association, order, society, corps, cooperative, club, or similar group that is affiliated with an educational institution and whose membership consists primarily of students enrolled at that educational institution.

It is no defense to a violation of this policy if the victim consented or acquiesced to hazing.

In accord with statute, violations of this policy do not include either of the following:
- Customary athletic events, contests or competitions sponsored by an educational institution.
- Any activity or conduct that furthers the goals of a legitimate educational curriculum, a legitimate extracurricular program, or a legitimate military training program.

All students, teachers and staff shall take reasonable measures within the scope of their individual authority to prevent violations of this policy. Students and others may report hazing to any professional staff member. Professional staff members must report the incident to the school administrator or next higher administrative supervisor, in writing, with such details as may have been provided.  A failure by a staff member to timely inform the school administrator or next higher administrative supervisor of a hazing allegation or their observation of an incident of hazing may subject the staff member to disciplinary action in accord with District policies.  The staff member shall preserve the confidentiality of those involved, disclosing the incident only to the appropriate school administrator or next higher administrative supervisor or as otherwise required by law.  Any instance of reported or observed hazing which includes possible child abuse or violations of statutes known to the staff member shall be treated in accord with statutory requirements and be reported to a law enforcement agency.

To assure that students and staff are aware of its content and intent, a notice of this policy and procedure shall be posted conspicuously in each school building and shall be made a part of the Rights and Responsibilities section of the student handbook. Forms for submitting complaints are to be available to students and staff in the school offices. Disposition of all reports/complaints shall be reported to the Superintendent.  The Superintendent will determine if the policies of the District have been

appropriately implemented and will make such reports and/or referrals to the Board as may be necessary.

All violations of this policy shall be treated in accord with the appropriate procedures and penalties provided for in District policies related to the conduct and discipline of students, staff, and others.

**10. POSITIVE BEHAVIORAL INTERVENTIONS AND SUPPORTS; RESTORATIVE PRACTICES**

Positive Behavioral Interventions and Supports ("PBIS") is an evidence-based, proactive, data driven framework that includes a range of tiered interventions designed to prevent problem behavior while teaching socially appropriate behaviors.  The focus of PBIS is creating and sustaining school environments for all students in which appropriate behavior is supported and problem or disruptive behavior is redirected.  This culture is created by
- Defining and teaching behavioral expectations
- Monitoring and acknowledging appropriate behavior
- Providing corrective and appropriate consequences for behavioral errors
- Providing appropriate services for students who need additional behavioral supports
- Using a team-based management system to oversee the PBIS program
- Using referral data for problem solving

Restorative Practices is an approach that seeks to develop good relationships and restore a sense of community. Restorative Practices: focuses on repairing harm caused by an offending behavior, while holding the wrongdoer accountable for his/her actions; provides an opportunity for the affected parties (victim, wrongdoer, and community) to identify and address their needs as a result of the offending behavior, and make amends or find a resolution; and surrounds the affected parties with a community of care, in which all parties share in the resolution of the problem.

In schools, Restorative Practices provides a proactive approach for building a community of care based on collaboration, mutual understanding, and reciprocated respect. This process holds students accountable for their actions while, at the same time, building a caring school environment. Attention is given to the victim and the wrongdoer, whether they are student or staff.  Restorative Practices allows wrongdoers an opportunity to rejoin the school community after they have made amends. See Section D(8) below for a description of Restorative Practice strategies that may be used by sites.

All sites shall have or share a Restorative and Positive Practices Site Coordinator ("RPPSC"). A school's learning supports coordinator may be designated to serve as the RPPSC for the site. The RPPSCs shall be responsible for assisting instructional faculty and staff to: (a) effectively communicate school rules; (b) reinforce appropriate student behavior; and (c) use constructive classroom management, positive behavioral interventions and supports, and restorative practices strategies.

| SECTION D: KNOW THE ACTIONS |
|---|

ADMINISTERING THE GUIDELINES FOR STUDENT RIGHTS AND RESPONSIBILITIES

The Arizona Department of Education has developed a list of violations as well as a list of possible actions a school district may take in response to a violation.  TUSD has categorized these possible actions into five levels and then assigned a level to each violation depending on the severity of the violation.  In this way, students from school to school will receive similar actions for similar violations.  A major consideration in the application of the Guidelines for Student Rights and Responsibilities is to identify the most appropriate disciplinary action necessary to bring about positive student behavior.  Actions are not to be considered in isolation but rather as part of the overall goal of creating inclusive and supportive environments for students.  At the elementary level, the age and developmental level of the child may be considered in interpreting the severity of the discipline imposed.  Student services personnel, such as counselors, social workers, learning support coordinators, or psychologists, play a vital role in assisting the student in resolving any problems influencing the student's behavior.

1.   CONDUCT WHICH MUST BE REPORTED TO LAW ENFORCEMENT

It is important for all staff, students, and parents to understand that, in addition to taking disciplinary action at the school level, certain criminal behavior must be reported to appropriate law enforcement agencies.  ~~The law requires s~~School officials are required to report the following incidents:

| Use or threat to use a deadly weapon or dangerous instrument | Homicide | Burglary in the first degree |
|---|---|---|
| Aggravated Assault resulting in physical injury | Sexual Assault | Arson of an occupied structure |
| Sexual conduct with a minor under 15 years of age | Armed Robbery | Any dangerous crime against minors |
| Possession, use, sale, or attempted sale of illegal drugs | Kidnapping | Bomb threats |

> **Comment [A31]:** Per the USP, the District should designate a limited number of individuals responsible for reporting conduct to law enforcement, except in emergencies.  For instance, the principal and an AP responsible for discipline could be designated.  Without limiting the pool of individuals who can report, there can be significant and problematic confusion leading to serious collateral consequences for students.

Additionally, pursuant to A.R.S. § 13-3620, school personnel are required to immediately report any reasonable belief of non-accidental physical injury, neglect, or sexually related offense against a minor.  "Physical injury" means the impairment of physical condition, and may include any skin bruising, pressure sores, bleeding, failure to thrive, malnutrition, dehydration, burns, fracture of any bone, subdural hematoma, soft tissue swelling, injury to any internal organ or any physical condition that imperils health or welfare.  (See A.R.S. § 13-3623(F)(4))

2.   CONDUCT WHICH MAY BE REPORTED TO LAW ENFORCEMENT

Additionally, the administrator MAY report to law enforcement agencies other potentially disruptive incidents when necessary to maintain safety.  When appropriate, school officials should utilize supports and interventions that provide guidance and structure to the student and help them to improve their behavior without involving law enforcement.  An administrator must immediately notify an Assistant Superintendent or Director, and the Department of Student Equity and Intervention, when

> **Comment [A32]:** Same comment as above about who is designated to report.

law enforcement is contacted. Incidents that may be reported to law enforcement when necessary to maintain safety include, but are not limited to, the following:

| Possession, sale or distribution of dangerous substances, including alcohol, ~~tobacco~~ or legal drugs | | | |
|---|---|---|---|
| Demonstration by students which is likely to create unsafe conditions | | | |
| Threats | Setting off a false fire alarm | Assault | Vandalism |

3.  DUE PROCESS ~~FOR GENERAL EDUCATION STUDENTS~~

Any student whose conduct may warrant suspension or expulsion will be provided due process.  This is a legal safeguard that protects the rights of students and their parents and is constitutionally guaranteed.

Due process steps include:

- Oral or written notice of the charges presented to the student;
- An opportunity to present the student's side of the story in an informal hearing or meeting;
- The allowance, for safety considerations, for a student to be removed from the school prior to an informal hearing with that hearing to follow as soon as practical;
- Adequate notification and an opportunity for a fair hearing;
- Written notification to parents about suspension of student;
- That parents will be informed in writing of all suspensions and that they have the right to a conference with the principal;
- That if parents are not satisfied with any school official's decision they are entitled to request a review by the school official's immediate supervisor;
- Formal due process in long-term suspension and expulsion proceedings
- A right to appeal disciplinary decisions

4.  DUE PROCESS FOR STUDENTS WITH 504 PLANS OR IEPs

Students with disabilities under Section 504 or IDEA (and students suspected of having a disability) may be disciplined in the same manner as any other student and may be suspended for up to 10 cumulative days of school per school year.  If a suspension beyond 10 cumulative days is contemplated, special procedures that must be followed.

A manifestation determination conference must be held prior to the 11th day of suspension

- If the manifestation determination conference concludes that the student's behavior is a manifestation of the student's disability, then no further disciplinary action can be taken.  The 504 or IEP team ~~should~~must convene to develop an appropriate behavior plan for the student.
- If the manifestation determination conference concludes that the student's behavior is not a manifestation of the student's disability, the District may impose whatever long-term suspension or expulsion it would impose under the same circumstances if a non-disabled student were the offender. The District has no obligation to continue to provide educational services to a 504 student during the period of a long-term suspension or expulsion. However, the District must continue to provide educational services for students eligible under IDEA.  Please refer to the appropriate Governing Board regulations JKA and JKAB and to the Exceptional Education Handbook for specific procedures.

**Comment [A33]:** We recommend limiting this provision: at present, a student could be referred to law enforcement if a school official determines that their possession of ibuprofen is dangerous.  We assume this is meant to cover, for instance, a student properly prescribed Adderall giving or selling their stimulants to another student who does not have a prescription.  If so, the language should be narrowed.

**Comment [A34]:** This is too vague and has problematic First Amendment implications.  We recommend providing an example or removing this infraction from the list.

**Comment [A35]:** This is too vague and open to subjective interpretation.  Without clarity on what precisely constitutes a threat, the ability to call law enforcement on students who "seem" threatening leaves significant room for implicit bias to affect decision-making in this arena.  We recommend removing this infraction or providing a number of clarifying examples.

**Comment [A36]:** We recommend stating a dollar value here.  Vandalism is a broad category which can include everything from writing on one's desk to destroying valuable media technology.

**Comment [A37]:** These two bullets overlap.  We recommend combining them.

**Comment [A38]:** Or a change in placement.  Need to add language including change of placement in these procedural protections.

A student with a disability under IDEA may be referred to an Interim Alternative Educational Settings in certain circumstances regarding the use or possession of drugs, weapons, or serious bodily injury.  Refer to the Exceptional Education Handbook for specific procedures.

## 5.  OUT OF SCHOOL SUSPENSIONS

**Short-Term Suspension** – A principal or principal's designee may suspend a student from school ~~for up to ten (10)~~ from one (1) to ten (10) school days due to misconduct, depending on the severity of the misconduct.  However, principals may take this action only after they ~~have exhausted informal disciplinary strategies~~ have identified, implemented, and documented appropriate behavior interventions for a reasonable duration. (See interventions listed under Action Level 1 for examples of appropriate strategies.  Such efforts must be made before principals may suspend students for low-level conduct (Action Levels 1-3). Only after implementing interventions with fidelity may a principal reject them as inappropriate in a given situation, and resort to short-term suspension as a consequence. Conferences to resolve the problem must be scheduled with the parent, student, and other appropriate school staff members as part of the continuum of supports and interventions implemented to support student success.

**Make-up Work (Short-Term Suspension)**

If students are suspended, they are entitled to complete their coursework to ensure that they do not fall behind academically.  Governing Board Policy Regulation JK-R1, Short Term Suspension states: "The student is allowed access to class assignments and to make up tests upon return to school.  Homework must be made available for the parent to pick up at the school office."  ~~It shall be the parent's or student's~~ School administrators should assist parents and students with the shared responsibility to make arrangements to obtain such assignments and homework and to have completed assignments returned to the school for grading and credit. One set of assignments must be completed and returned before another set of assignments can be picked up.  Students on suspension who successfully complete such assignments shall be allowed a reasonable time to take makeup tests upon returning to school.  During the term of the suspension, the student is to remain away from all Tucson Unified School District schools and activities.  If it is necessary to come to a school, the student must make prior arrangements with the principal or principal's designee.

**Long-Term Suspension** – A Hearing Officer may suspend a student from school for up to 180 days.  Long-term suspensions of more than 45 days shall not be imposed except for Violations at Level 5.  Hearing Officers may ~~Principals~~ take this action only after the site administration has ~~when they have~~ exhausted other disciplinary strategies (~~S~~see interventions listed under Action Level 1 for examples of appropriate strategies), or when they have at least considered those alternatives and rejected them as inappropriate in a given situation.  Conferences to resolve the problem must be ~~are~~ scheduled with the parent, student, and other appropriate school staff members at appropriate times as part of the continuum of supports and interventions implemented to support student success. Students suspended more than 20 days may have an option to enroll in the "Life Skills" alternative to suspension program.

**Make-up Work (Long-Term Suspension)**

**Comment [A39]:** In what instance would 10 days be appropriate for a Level 1-3 infraction?  We would see some appropriate suspension at Level 3, but we recommend removing any possibility of exclusionary consequences to be administered as responses to Level 1-2 infractions except in situations where school safety is at risk, in line with the USP.

**Comment [A40]:** We recommend that for both short and long-term suspensions, the District make class work and homework available via email/the District website as much as possible.

**Comment [A41]:** In what instance would a suspension of more than 10 and less than 45 days be appropriate for a level 1-4 infraction?  Per the USP, we recommend limiting this type of suspension and only permitting it, if at all, for infractions that significantly interfere with others' safety and learning and are of a threatening or harmful nature.

If students are suspended, they are entitled to complete their coursework to ensure that they do not fall behind academically.  School administrators should assist parents and students with the shared responsibility to make arrangements to obtain such class assignments and homework and to have completed assignments returned to the school for grading and credit. One set of assignments must be completed and returned before another set of assignments can be picked up.  Students on suspension who successfully complete such assignments shall be allowed a reasonable time to take makeup tests upon returning to school. Homework will be made available by the student's teachers for the remainder of the grading period.  However, because of the difficulty in students keeping up with class work through homework alone, without an instruction component, after the end of a grading period, students will receive academic support through a TUSD alternative program such as distance learning.  During the term of the suspension, the student is to remain away from all Tucson Unified School District schools and activities.  If it is necessary to come to a school, the student must make prior arrangements with the principal or principal's designee.

**6.   ABEYANCE CONTRACTS (REGULATION JK-R4) (POLICY JK-R4)**

An administrator may offer to not immediately impose the assigned out-of-school suspension if (1) the administrator believes it is in the best interest of the student and the school community, (2) the student admits to committing the infraction, (3) the student and parent/legal guardian agree to certain conditions, and (4) the student and parent/legal guardian sign a contract, called an abeyance contract.  The term of the abeyance contract may not exceed the maximum suspension term for the offense level. If a student violates his/her abeyance contract with a suspendable offense, the student must serve the remaining term of the initial offense plus the suspension for the additional offense.  These two suspensions would be served concurrently. (The last days of the first suspension would also be the first days of the additional suspension.)

> **Comment [A42]:** Does the District track data on abeyance contracts?

**7.  POSITIVE BEHAVIOR INTERVENTION SUPPORT (PBIS)**

Positive Behavior Intervention Support: builds relationships by focusing on accountability for actions, allowing all voices to be heard and having the opportunity to repair damage by making things right in a fair and restorative way.

In the Positive Behavior Intervention Support (PBIS) system, students, who do not respond to the school wide or classroom supports that are in place for all students, may be evaluated to determine the function of the misbehavior through Functional Behavioral Assessment (FBA) and an intervention may be matched to their circumstance.  Interventions which have been shown to be successful across age and grade levels include:  mentoring, social skills groups, interest-based clubs, daily monitoring of selected problem behaviors.  In a handful of situations, when these group supports are not sufficient, highly individualized interventions involving multiple systems and based on data may be implemented.  If the situations involve a victim or multiple victims, Restorative Practices are complimentary.

**8.  RESTORATIVE CIRCLES; RESTORATIVE CONFERENCES**

Restorative Practices actions range from informal to formal. In schools, these actions include:

- *Small impromptu circles*: a few people meet to briefly address and resolve a problem; facilitated by teachers, administrators, and/or learning supports coordinators.

- *Group or classroom circles:* a larger group can meet in a large circle or a classroom circle to discuss issues, answer questions, solve problems, or offer feedback; facilitated by teachers, administrators, and/or learning supports coordinators.

- *Formal restorative conferences:* address serious problems of behavior. These conferences may involve wrongdoers, victims, parents, and school administrators. Only those trained in formal conferences can facilitate a formal conference.

*sites may also elect to utilize "Teen Court" (aka "Peer Juries")

## 9.  APPEALS

Students and parents/guardians have the right to appeal short-term and long-term suspension decisions; however, there is no appeal from the Governing Board's final decisions regarding long-term suspension appeals or its expulsion decisions.  (See Policy JK and its accompanying regulations for details).

**Comment [A43]:** This is technically inaccurate; a family could sue.  We recommend adding so it reads "no school-district-based appeal" or similar.

## 10.  EXPULSION

Expulsion is defined as the permanent withdrawal of the privilege of attending a TUSD school unless the Governing Board reinstates the privilege.  A principal may or, in some cases, must request that the Superintendent recommend to the Governing Board the expulsion of a student.  This is the most serious disciplinary step available. As part of its decision to expel, the Governing Board may permit the student to apply for readmission through the Office of Student Equity and Intervention after any period of time it may set. The Governing Board, or designee, may establish further conditions within the readmission process with which the student must comply prior to their admission to the instructional process. During the term of the expulsion, the student is to remain away from all Tucson Unified School District schools and activities.  If it is necessary to come to a school, the student must make prior arrangements with the principal or principal's designee.

**Comment [A44]:** Does this provision mean that a student may be expelled for longer than one calendar year?  We recommend changing this provision, as well as the expulsion policy, to make it a rebuttable presumption that students may reenroll after one year of expulsion, as is typical in school districts across the country.

**Comment [A45]:** In what types of situations would this request be mandatory?  In state zero tolerance/mandatory expulsion cases?  Needs further explanation.

Students with disabilities eligible under IDEA will continue to be offered educational services, although in an alternative setting.

## 11.  PRINCIPAL APPLICATION FOR WAIVER OF MANDATORY ACTIONS

For violations requiring Action Level 4 or 5 consequences, the principal has the prerogative to seek the waiver of any portion or all of the mandatory disciplinary action through the appropriate Assistant Superintendent.  The principal may seek the waiver and, if granted, the parties directly involved shall be informed of the reasons the waiver was granted.

Waivers may **not** be sought when the prescribed disciplinary action involves the possession of a firearm or the threatening of an educational institution.  By state law in such a case, only the Governing Board may decide, on a case by case basis, whether to impose less than the mandatory penalty.

**ACTION LEVELS**

The chart below lists actions that may be taken by school administration as the result of a violation.  The Action Level identifies maximum action for violations assigned to that level.  **Actions listed in bold are the minimum – *i.e.,* ~~or~~ mandatory –** action for that level of violation.  Multiple actions may be applied to a single violation. Action Levels are developed with input from students, parents, teachers and community members. **For all violations, parent notification and student conference are mandatory.**

Interventions which have been shown to be successful across age and grade levels include:  mentoring, social skills groups, interest-based clubs, daily monitoring of selected problem behaviors.

**It will be the policy of TUSD to implement Restorative Practices wherever practicable.**

| LEVEL 1 | o **Parent Notification and Conference Request**<br>o **Student Conference**<br>○ Restorative Circle<br>○ Restorative Conference<br>○ Confiscation of Contraband<br>○ Parent Conference<br>○ Student Verbal Apology<br>○ Student Written Apology<br>○ Warning | ○ Referred to Outside Agency<br>○ Community Service<br>○ Detention<br>○ Peer mediation<br>○ Privileges Suspended<br>○ Restitution<br>○ Saturday School<br>○ Teen Court<br>○ Functional Behavioral Assessment | ○ Meeting With School Counselor<br>○ Reassignment To A Different Class<br>○ Behavior Contract<br>○ Work Detail<br>○ Behavior Intervention Group<br>○ Threat Assessment<br>○ Behavior Intervention Plan<br>○ Lunch Detention<br>○ Monitoring of selected problem behaviors<br>○ Other Action |
|---|---|---|---|
| LEVEL 2 | ~~Any mandatory action from the prior level(s) mustalso be imposed.~~<br>Both mandatory actions from Level 1**must** also be imposed.<br>    o **Restorative Conference and/or Restorative Circle**<br>    ○ Behavior  Contract<br>    o **Social Skills Groups and/or Mentoring**<br>    o **In School Suspension – Short-Term**<br>    ○ Out Of School Suspension and/or Abeyance – Short-Term (1-3 Days) | | |
| LEVEL 3 | Any Action from the prior level(s) **may** also be imposed.<br>    o **Short-Term In School  Action and/or Abeyance**<br>    o **Restorative Conference and/or Restorative Circle**<br>    o In School Suspension<br>    o Out-Of-School Suspension and/or Abeyance – Short-Term  (1-10 Days)<br>    o Department of School Safety Contact in Appropriate Circumstances | | |

**Comment [A46]:** The list of corrective strategies/interventions under Level 1 right now is generally good, and should be expanded to be used as responses to all levels of infractions as this sentence suggests.   We also recommend adding the following:
    -Behavior learning packets
    -Time out
    -Check in / check out
    -Reflective essay

**Comment [A48]:** Is this after school detention, if the other detention (in the right-hand column) is lunch detention?

**Comment [A49]:** What does this mean?  We suggest including examples for less obvious strategies.

**Comment [A50]:**  We recommend removing this from the list of corrective strategies.

**Comment [A47]:** This is now repetitive with bullet point 1 above.

**Comment [A51]:** We recommend limiting this provision to ensure that it is not used to bootstrap far more punitive measures into Level 1 responses.  For instance, it could say "Other action not inconsistent with other Level 1 interventions and approved by the RPPSC."

**Comment [A52]:** Does this "short-term" mean 1-3 days, or 1-10 days, as defined above?  If it means 1-10 days, we suggest a lower cap on the maximum suspension, as Level 2s are still low-level, non-threatening infractions.

**Comment [A53]:** We similarly recommend some limits on this consequence.

**Comment [A54]:** 10 days OSS is extremely punitive for some Level 3 infractions (e.g., network violation).  We recommend placing caps on the amount of OSS for those Level 3s that do not implicate school safety, or moving those infractions to Level 2.

| LEVEL 4 | Any Action from the prior level(s) **may** also be imposed.<br>○ **Out of School Suspension and/or Abeyance – Long-Term  (11-~~30 45~~ Days)**<br>○ **Restorative Conference and/or Restorative Circle**<br>○ ~~Restorative Conference and/or Restorative Circle~~<br>○ Removal By Hearing Officer For Likely Injury To Self Or Others<br>○ Removal By Student's IEP Team To An Interim Alternative Education Setting |
|---|---|
| LEVEL 5 | Any Action from the prior level(s) may also be imposed.<br>○ **Out of School Suspension and/or Abeyance – Long-Term  (11-180 Days)**<br>○ **Restorative Conference and/or Restorative Circle (upon re-entry to school)**<br>○ Expulsion |

**Comment [A55]:** 30 days OSS is too punitive for some Level 4 infractions (e.g., mere possession of an inhalant, which could be a glue stick).  As with the above, we recommend placing caps on the amount of OSS for those Level 4s that do not implicate school safety, or moving those infractions to Level 3.

**IMPORTANT INFORMATION**

- All parent conferences will be made in the timeliest manner.

- A student who willingly assists or forces another student to commit a violation of these guidelines will be held equally accountable for the violation.

- Attempted violations may require Actions. Administrators will determine the appropriate level of Action to take for an attempted violation. The Action will generally be at a level less than that of the actual violation.

- For repeated and/or multiple offenses, Administrators may apply an action that is one level higher than that listed, but only after approval from the Department of Student Equity and Intervention. The Department of Student Equity and Intervention will review whether the teachers and/or administrators have attempted to effectively implement interventions to address any underlying or unresolved issues, and will not permit a single type of behavior to be elevated more than one level, regardless of the frequency of occurrence.

- When determining the appropriate level of action to take, administrators may consider a student's claim of self defense, defense of others or defense of property.

- When determining the appropriate action to take, Administrators at the elementary level (Pre-K-5th Grade) may consider all violations, *with the exception of possession of firearms or any incidence of threat to an educational institution*, at one level lower than that of the actual violation.

- Administrators may not withdraw a student's open enrollment or magnet status during the school year as a consequence for a discipline violation.

- Students will not receive out of school suspension for attendance violations.

- Law Enforcement Officers, including School Resource Officers, School Safety Officers, and other law enforcement and security personnel shall not be involved in low-level student discipline. Low level offenses are levels 1, 2 and 3. An administrator must immediately notify an Assistant Superintendent or Director and the Department of Student Equity and Intervention when law enforcement is contacted.

**Comment [A56]:** The policy should also note that if a parent cannot, for work or personal reasons (*e.g.*, required family caretaking activities), participate in an in-person meeting, that the parent may participate in a conference via phone or another accessible mode of communication. We recommend adding language permitting these conferences to take place over the phone. We also recommend adding language stating that students will not be disciplined further merely because their parent cannot participate in a conference.

**Comment [A57]:** Can administrators do so during the summer? Would take this out.

**Comment [A58]:** Do students receive ISS for attendance violations? We would recommend against that except in limited circumstances (e.g., documentation of at least three separate interventions, including, but not limited to, student conferences, parent conferences, changes to class schedules and locker locations, child welfare and attendance intervention, reflective activities, and problem solving activities, prior to considering any exclusionary discipline consequences for tardiness or truancy, or the assignment of detention).

The Arizona  Department of Education has identified the following violations:

## AGGRESSION

| Violation | Action Level |
|---|---|
| **Verbal Provocation**<br>Use of language or gestures that may incite another person or other people to fight. | 1 |
| **Recklessness**<br>Unintentional, careless behavior that may pose a safety or health risk for yourself or for others. | 1 |
| **Minor Aggressive Act**<br>Student engages in non-serious but inappropriate physical contact.<br>**Examples:** hitting, poking, pulling, tripping, or pushing. | 2 |
| **Other Aggression**<br>Includes other acts of aggression not specifically listed within the Aggression section including, but not limited to, serious and inappropriate physical contact.<br>**Examples:** pulling a chair out from underneath another person, or other behaviors that demonstrate low-level hostile behaviors. | 3 |
| **Disorderly Conduct**<br>A person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person:<br>1. Engages in violent or seriously disruptive behavior.<br>2. Uses abusive or offensive language or gestures to any person present in a manner likely to provoke immediate physical retaliation by such person.<br>3. Makes any protracted commotion, utterance or display with the intent to prevent the transaction of the business of a lawful meeting, gathering or procession.<br>4. Refuses to obey a lawful order to disperse issued to maintain public safety. (see A.R.S. §13-2904)<br>5. Recording/distributing fights on any social media outlet. | 3 |
| **Endangerment**<br>A person commits endangerment by endangering **themselves or** another person with a substantial risk of imminent death or physical injury. (see A.R.S. § 13-1201) | 3 |
| **Fighting**<br>Mutual participation in an incident involving physical violence; does not include verbal confrontation alone. | 3 |
| **Assault**<br>A person commits assault by intentionally, knowingly, or recklessly causing physical injury to another person; knowingly touching another person with the intent to injure, insult or provoke such person., or by threatening to use a deadly weapon or dangerous instrument or a simulated deadly weapon. (see A.R.S. §13-1203)<br>**Examples:** Restraining, barricading<br>**Only if the administrator forms a reasonable belief that a student has suffered a non-accidental physical injury is a report to law enforcement mandatory.** | 4 |
| **Aggravated Assault**<br>A person commits aggravated assault if the person:<br>1. Causes serious physical injury to another.<br>2. Uses a deadly weapon or dangerous instrument.<br>3. Commits the assault by any means of force that causes temporary but substantial disfigurement, temporary but substantial loss or impairment of any body organ or part or a fracture of any body part.<br>4. Commits the assault while the victim is bound or otherwise physically restrained or while the victim's capacity to resist is substantially impaired.<br>5. Commits assault and the person is in violation of an order of protection.<br>6. Commits the assault knowing or having reason to know that the victim is any of the following: law enforcement officer, prosecutor, firefighter, EMT/Paramedic engaged in official duties, teacher or any school employee on school grounds, on grounds adjacent to the school or in any part of a building or vehicle used for school purposes, teacher or school nurse visiting a private home in the course of the teacher's or nurse's professional duties or any teacher engaged in any authorized and organized classroom | **5**<br>**Mandatory report to law enforcement** |

**Comment [A59]:** Under the current Levels structure, a student could receive up to a 10-day suspension for pulling a chair out from under someone.  We strongly recommend either providing more serious examples of "other aggression" or moving it to a Level 2 infraction.

**Comment [A60]:** This does not seem applicable in the school context.  We suggest editing to be specific to the school environment.

**Comment [A61]:** We do not understand what these examples mean in this context.

activity held on other than school grounds.  (see A.R.S. § 13-1204)

## ALCOHOL, TOBACCO AND OTHER DRUGS VIOLATIONS

### Definitions

**Drug Violation:** Unlawful use, cultivation, manufacture, distribution, sale, purchase, possession, transportation or importation of any controlled drug or narcotic substance or equipment and devices used for preparing or taking drugs or narcotics. Includes being under the influence of drugs at school, school-sponsored events and on school-sponsored transportation. Includes over-the-counter medications if abused by the student.

**Possession:** knowing exercise of dominion or control over an item.                                     **Use:** the act of using.

**Sale:** to transfer or exchange an item to another person for anything of value or advantage, present or prospective.

**Share:** to allow another person to use or enjoy something that one possesses.

| Violation | Action Level |
|---|---|
| **Over the Counter Drugs, Inappropriate use of**<br>Medicines that may be purchased directly without a prescription from a health care professional. Inappropriate use includes any use other than that described on the packaging or recommended by a health care professional. | |
| Possession | 2 |
| Use | 2 |
| Sale | 3 |
| Share | 3 |
| **Inhalants**<br>Inhalants include medications, anesthetics, or other compounds in vapor or aerosol form, taken by inhalation. This does NOT include e-cigarettes or hookah sticks. | |
| Possession | 4 |
| Use | 4 |
| Sale | 5 |
| Share | 5 |
| **Unknown Drug** | |
| Possession | 4 |
| Use | 4 |
| Sale | 5 |
| Share | 5 |
| **Substance Represented as of Illicit Drug**<br>A substance that is not an illicit drug but that is represented as, and could be perceived as being, an illicit drug. | |
| Possession | 4 |
| Use | 4 |
| Sale | 5 |
| Share | 5 |
| **Prescription Drugs, Inappropriate use of**<br>Medicines obtained with the lawful prescription of a health care professional.  Inappropriate use includes any use other than that described by the prescription. | **Mandatory report to law enforcement** |
| Possession | 4 |
| Use | 4 |
| Sale | 5 |
| Share | 5 |
| **Illicit Drug**<br>Illicit drugs include dangerous drugs, narcotic drugs, marijuana, and peyote as defined by A.R.S. § 13-3401, and appearing in any form, including seeds, plants, cultivated product, powder, liquid, pills, tablets, etc. | **Mandatory report to law enforcement** |
| Possession | 4 |
| Use | 4 |
| Sale | 5 |
| Share | 5 |
| **Alcohol Violation**<br>The violation of laws or ordinances prohibiting the manufacture, sale, purchase, transportation, possession or use of intoxicating alcoholic beverages or substances represented as alcohol. This includes being intoxicated at school, school-sponsored events and on school-sponsored transportation. | |
| Possession | 4 |

**Comment [A62]:** As noted above, these are extremely punitive responses to what may often be a relatively low-level issue (e.g., possession of a marker or glue).

**Comment [A63]:** We recommend that the District reevaluate this infraction.  These substances may in fact be over the counter drugs.  We suggest adding a caveat that the ultimate nature of the substance will determine the response, and an individualized assessment will be conducted.

**Comment [A64]:** Could cover a student selling oregano to another student as a level 5 offense.

**Comment [A65]:** As written, this permits 10-30 day suspensions for possession of a legal drug.  We recommend reducing the consequences/leveled responses.

| | Use | 4 |
|---|---|---|
| | Sale | 5 |
| | Share | 5 |

| **Tobacco Violation** | | |
|---|---|---|
| The possession, use, distribution or sale of tobacco products on school grounds (including any device or substance that delivers nicotine- such as e-cigarettes, nicotine patches and hookah sticks), at school-sponsored events and on school-sponsored transportation.  (see A.R.S. §36-798.03). | | |
| | **Possession** | **2** |
| | Use | 2 |
| | Sale | 3 |
| | Share | 3 |

| **Possession of Drug Paraphernalia** | | |
|---|---|---|
| Drug paraphernalia means all equipment, products and materials of any kind which are used, intended for use or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a drug in violation of this chapter . (see A.R.S. § 13-3415 ) | | |
| | **Possession** | **2** |
| | Use | 2 |
| | Sale | 3 |
| | Share | 3 |

---

## ARSON

| *Definitions* |
|---|
| **Structure:** a building or place with sides and a floor used for lodging, business, transportation, recreation, or storage |
| **Occupied structure:** any structure in which one or more persons is, or is likely to be present, or is so near as to be in equivalent danger at the outset of the fire or explosion.  This includes any dwelling house, whether occupied or not. |
| **Property**: anything other than a structure that is owned and has value of any kind (e.g., a backpack, school book, clothing, etc.). |
| **Damage**: as used here, means a tangible or visible impairment to a surface. |
| **Reckless Burning:** recklessly causing a fire or explosion resulting in damage to a structure, wild land, or property. (see A.R.S. § 13-1702). |

| *Violation* | *Action Level* |
|---|---|
| **Arson of a Structure or Property** <br> A person commits arson of a structure or property by knowingly and unlawfully damaging a structure or property by knowingly causing a fire or explosion. (see A.R.S. § 13-1703) <br><br> *NOTE:  Burning one's own property is not arson, with the exception of burning one's own property with the knowledge that it will ignite another's property or a structure.  Burning one's own property may, where appropriate, be considered reckless burning.* | **4** |
| **Arson of an Occupied Structure** <br><br> A person commits arson of an occupied structure by knowingly and unlawfully damaging an occupied structure by knowingly causing a fire or explosion. (see A.R.S. § 13-1704) | **5** <br> **Mandatory report to law enforcement** |
| *NOTE: Administrators may consider acts of arson that are only reckless (as opposed to knowing or intentional), or that damage property with a value under $100, at Level 3.  Please see the definition of Reckless Burning above.* | |

---

## ATTENDANCE POLICY VIOLATION (Out of school suspension is not permitted)

| *Violation* | *Action Level* |
|---|---|
| **Other Attendance Violations** <br><br> **Examples:** leaving school, without signing out in the main office; leaving school at lunch, without a pass; obtaining a pass to go to a certain place and not reporting there; becoming ill and going home or staying in the restroom, instead of reporting to the nurse's office; or coming to school, but not attending classes. | **1** |
| **Tardy** <br><br> Arriving at school or class after the scheduled start time. | **1** |
| **Unexcused Absence** | **1** |

| | |
|---|---|
| When a student is not in attendance **for an entire day** and does not have an acceptable excuse. | |
| **Leaving School Grounds without Permission**<br><br>Leaving school grounds or being in an "out-of-bounds" area during regular school hours without permission of the principal or principal designee. | 1 |
| **Truancy**<br><br>When a child between 6-16 years of age has an unexcused absence for at least one class period during the day. | 1 |

| **DISHONESTY** | |
|---|---|
| *Violation* | *Action Level* |
| **Cheating**<br><br>To intentionally share with another, or take from another, intellectual property for the purpose of deceit or fraud, or to take or steal intellectual property from another with or without their knowledge and present it as the student's own. | 2 |
| **Forgery**<br><br>Falsely and fraudulently making or altering a document, including hall passes and parent signatures. | 2 |
| **Lying**<br><br>To make an untrue statement with intent to deceive or to create a false or misleading impression. | 2 |
| **Plagiarism**<br><br>To steal and pass off the ideas or words of another as one's own, including material obtained online. | 2 |

**Comment [A66]:** This does not seem like an appropriate Level 2 violation, but rather a Level 1, as it is not nearly as concrete and serious as plagiarism, for instance.

| **HARASSMENT AND THREAT, INTIMIDATION** | |
|---|---|
| *Violation* | *Action Level* |
| **Threat or Intimidation**<br><br>When a person indicates, by words or conduct, the intent to cause physical injury or serious damage to a person or their property, or intentionally places another person in reasonable apprehension of imminent physical injury. This may include threats or intimidation that occurs online or through a telecommunication device. (see A.R.S. § 13-1202). | 3 |
| **Bullying**<br><br>Bullying is the repeated intimidation of students by the real or threatened infliction of physical, verbal, written, electronically transmitted, or emotional abuse, or through attacks on the property of another. It may include, but not be limited to actions such as verbal taunts, name-calling and put-downs, including ethnically based or sex or gender-based verbal put-downs, and extortion of money or possessions. Bullying can be physical in form (e.g., pushing, hitting, kicking, spitting, stealing); verbal (e.g., making threats, taunting, teasing, name-calling); non-verbal/ cyber-bullying (e.g., text messages, email, social networking); or psychological (e.g., social exclusion, spreading rumors, manipulating social relationships). | 3 |
| **Harassment, nonsexual**<br><br>A person commits harassment if, with intent to harass or with knowledge that the person is harassing another person, the person:<br>1. Anonymously or otherwise communicates or causes a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses.<br>2. Follows another person in or about a public place for no legitimate purpose after being asked to desist.<br>3. Repeatedly commits an act or acts that harass another person.<br>4. Surveils or causes another person to surveil a person for no legitimate purpose.<br>5. On more than one occasion makes a false report to a law enforcement, credit or social service agency. (see A.R.S. § 13-2921)<br><br>*NOTE: Bullying and Sexual Harassment are types of Harassment. Indicate Harassment, nonsexual if the violation is not specifically Bullying or Sexual Harassment, or if the specific type of harassment is not known.* | 3 |
| **Hazing**<br><br>"Hazing" means any intentional, knowing or reckless act committed by a student, whether individually or in concert with other persons, against another student, and in which <u>both</u> of the following apply:<br><br>1. The act was committed in connection with an initiation into, an affiliation with or the maintenance of membership in any organization that is affiliated with an educational institution. ("Organization" means an | 3 |

**Comment [A67]:** Recommend conforming this definition to the above definition in prior sections.

athletic team, association, order, society, corps, cooperative, club or other similar group that is affiliated with the school and whose membership consists primarily of students enrolled at the school.).

2. The act contributes a substantial risk of potential physical injury, mental harm or degradation or causes physical injury, mental harm or personal degradation.  (see A.R.S. § 15-2301)

*Administrators **may** treat incidents of hazing at a Level 4 as appropriate to the situation, and in conjunction with the Department of Student Equity and Intervention

## HOMICIDE; KIDNAPPING

| Violation | Action Level |
|---|---|
| **Homicide** <br><br> Includes first degree murder, second degree murder, manslaughter or negligent homicide, and intentionally or recklessly causing the death of another person.  (see A.R.S. § 13, Chapter 11) | **5** <br> **Mandatory report to law enforcement** |
| **Kidnapping** <br><br> Knowingly restraining another person with the intent to hold the victim for ransom, as a shield or hostage; or hold the victim for involuntary servitude; or inflict death, physical injury or a sexual offense on the victim, or to otherwise aid in the commission of a felony; or place the victim or a third person in reasonable apprehension of imminent physical injury to the victim or such third person. (see A.R.S. § 13-1304) | **5** <br> **Mandatory report to law enforcement** |

## OTHER VIOLATIONS OF SCHOOL POLICIES

| Violation | Action Level |
|---|---|
| **Dress Code Violation** <br><br> Student wears clothing that does not fit within the dress code guidelines stated by school or district policy. | **1** |
| **Parking Lot Violation** <br><br> **Examples:** unsafe driving in the parking lot, parking in unauthorized areas, parking in fire lanes or disabled persons space/area, parking in two or more parking spaces with one vehicle, excessive audio or radio sound, blocking driveway or access, or littering. | **1** |
| **Public Display of Affection** <br><br> Inappropriate displays of affection (i.e. kissing) | **1** |
| **Other Violation of School Policies and Regulations** <br><br> Other violations of written school, or district-wide, policy or regulation. | **2** |
| **Contraband** <br><br> Items stated in school policy as prohibited because they may disrupt the learning environment. | **2** |
| **Combustible** <br><br> Student is in possession of substance or object that is readily capable of causing bodily harm or property damage. (e.g. matches, lighters) | **2** |
| **Disruption** <br><br> Student engages in behavior causing an interruption in a class or activity.  Disruption includes sustained loud talk, yelling, or screaming; noise with materials; horseplay or roughousing; or sustained out-of-seat behavior. | **2** |
| **Gambling** <br><br> To play games of chance for money or to bet a sum of money. | **2** |
| **Language, Inappropriate** <br><br> Delivering verbal messages that include swearing, name calling, or use of words in an inappropriate way. | **2** |
| **Defiance or Disrespect Towards Authority and Non Compliance** <br><br> Student engages in refusal to follow directions, talks back, or delivers socially rude interactions. | **2** |
| **Negative Group Affiliation / Illegal Organization** <br><br> Clubs, fraternities, sororities, anti-social organizations, secret societies, criminal street gangs, and other sets of | **3** |

78

**Comment [A68]:** For the subjective offenses enumerated below – defiance, disruption, and disrespect – we recommend prohibiting the use of exclusionary discipline for these offenses, which are the most open to subjective, and discriminatory, interpretation.

**Comment [A69]:** If these are otherwise a Level 1-type behavior, shouldn't they be at Level 1?

**Comment [A70]:** This does not seem like the kind of behavior that should potentially be punishable with ISS or short-term OSS.  We recommend removing this example.

| | |
|---|---|
| individuals that are not sanctioned by the Governing Board and which are determined to be disruptive to teaching and learning. This includes wearing of symbolic apparel, making gestures, writing on and marking of property, or altering of personal appearance to symbolize membership in an organization with a history of, or determined to be, a disruption to teaching and learning. | |

**Comment [A71]:** Does this mean that student could be disciplined for getting a tattoo or piercing? We recommend clarifying what this infraction means more clearly.

## SCHOOL THREAT OR INTERFERENCE

### Definitions

Threatening an educational institution (School Threat) means to interfere with or disrupt an educational institution by doing any of the following:

1. For the purpose of causing, or in reckless disregard of causing, interference with or disruption of an educational institution, threatening to cause physical injury to any employee of an educational institution or any person attending an educational institution.
2. For the purpose of causing, or in reckless disregard of causing, interference with or disruption of an educational institution, threatening to cause damage to any educational institution, the property of any educational institution, the property of any employee of an educational institution or the property of any person attending an educational institution.
3. Going on or remaining on the property of any educational institution for the purpose of interfering with or disrupting the lawful use of the property or in any manner as to deny or interfere with the lawful use of the property by others.
4. Refusing to obey a lawful order to leave the property of an educational institution.

*NOTE: "interference with or disruption of" includes only those acts that might reasonably lead to the evacuation or closure of a school property or to the postponement, cancellation, or suspension of any class or other school activity (though actual evacuation, closure, postponement, cancellation or suspension is not required).*

| Violation | Action Level |
|---|---|
| **Fire Alarm Misuse** <br><br> Intentionally ringing fire alarm when there is no fire. | 4 |
| **Other School Threat** <br><br> An incident, not coded in the School Threat category, which involves threatening an educational institution. | **5** <br> **Expulsion** <br> **required by law** |
| **Bomb Threat** <br><br> Threatening an educational institution by using or threatening to use a bomb, or arson-causing device. | **5** <br> **Expulsion** <br> **required by law** |
| **Chemical or Biological Threat** <br><br> Threatening an educational institution by using or threatening to use dangerous chemicals or biological agents. | **5** <br> **Expulsion** <br> **required by law** |

## SEXUAL OFFENSES

| Violation | Action Level |
|---|---|
| **Harassment, Sexual** <br><br> Sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other verbal, graphic, written, or physical conduct of a sexual nature where such conduct has the purpose or effect of creating an intimidating, hostile, or offensive educational environment.  Sexual harassment can include nonverbal forms (e.g., "sexting," tweeting, or otherwise sending messages through networking sites and/or telecommunication devices), or physical conduct of a sexual nature. | **3** |
| **Pornography** <br><br> Pornography is the sexually explicit and obscene depiction of persons, in words or images. <br><br> **Examples:** viewing and/or sharing nude or sexually-charged images (non-art, non-educational) of people in books, magazines,  electronic devices, or on the internet; using an electronic device to send or receive nude images, partially-nude images, or images that are sexual in nature ("i.e. sexting"), or drawing nude images, partially-nude images, or images that are sexual in nature that have no redeeming educational value. | **3** |
| **Harassment, Sexual with contact** <br><br> Sexual harassment that includes physical contact. | **4** |
| **Indecent Exposure or Public Sexual Indecency** <br><br> A violation of A.R.S. § 13-1402 Indecent exposure, § 13-1403 Public sexual indecency, or engaging in other sexual acts. <br><br> **Examples:** public urination, streaking, masturbation, "peeping tom" (including taking photos or videotaping), | **4** |

| exposing another student's private parts, or engaging in intercourse, or oral sex. | |
|---|---|
| **Sexual Assault or Rape**<br><br>A violation of A.R.S. § 13-1406 Sexual assault | **5**<br>**Mandatory report to law enforcement** |
| **Sexual Abuse or Sexual Conduct with minor, or Child Molestation**<br><br>A violation of A.R.S. § 13-1404 Sexual abuse, § 13-1405 Sexual conduct with a minor, or § 13-1410 Child Molestation. | **5**<br>**Mandatory report to law enforcement** |

| **TECHNOLOGY, IMPROPER USE OF** | |
|---|---|
| *Violation* | *Action Level* |
| **Telecommunication Device**<br><br>**Examples:** use of telecommunication devices (cell phones, pagers, etc.) for non-instructional purpose | **1** |
| **Other Technology**<br><br>**Examples:** Nintendo DS, iPods, MP3 players, etc. | **1** |
| **Computer**<br><br>**Examples:** use of school computers for non-instructional purpose, copyright or trademark infringement, knowingly uploading or downloading destructive or malicious programs or software,  loading personal software or disks onto school computers without permission of an  administrator, vandalism of computers or computer equipment. | **2** |
| **Network Violation**<br><br>**Examples:** use of computer network for non-instructional purpose, knowingly uploading or downloading destructive or malicious programs or software, sharing passwords, attempting to read, delete, copy or modify the email of other users, accessing secure areas other than for educational purposes, transmitting material information or software in violation of any district policy or regulation, local, state or federal law or regulation, or tampering with or misuse of the computer networking system or taking any other action inconsistent with this regulation will be viewed as a network violation. | **3** |

**Comment [A72]:** Some of the behaviors in this section, like using a computer for a non-instructional purpose, are likely common and non-threatening. OSS is therefore likely not an appropriate consequence for this behavior.

| **THEFT** | |
|---|---|
| *Violation* | *Action Level* |
| **Petty Theft**<br><br>Thefts for cash, or property, valued under $100. | **2** |
| **Theft – School Property or Non-School Property**<br><br>A person commits theft if, without lawful authority, the person knowingly:<br>b. Controls property of another with the intent to deprive the other person of such property; or<br>c. Converts for an unauthorized term or use services or property of another entrusted to the defendant or placed in the defendant's possession for a limited, authorized term or use; or<br>d. Obtains services or property of another by means of any material misrepresentation with intent to deprive the other person of such property or services; or<br>e. Comes into control of lost, mislaid or misdelivered property of another under circumstances providing means of inquiry as to the true owner and appropriates such property to the person's own or another's use without reasonable efforts to notify the true owner; or<br>f. Controls property of another knowing or having reason to know that the property was stolen; or<br>g. Obtains services known to the defendant to be available only for compensation without paying or an agreement to pay the compensation or diverts another's services to the person's own or another's benefit without authority to do so. (see A.R.S. § 13-1802) | **3** |
| **Burglary or Breaking and Entering**<br><br>Entering or remaining unlawfully in or on the personal property of another, a classroom, a residential structure or yard or a nonresidential structure or in a fenced commercial property with the intent to commit any theft or any felony therein. (see A.R.S. § 13-1506 - § 13-1507) | **4** |
| **Extortion** | **4** |

| | |
|---|---|
| A person commits theft by extortion by knowingly obtaining or seeking to obtain property or services by means of a threat to do in the future any of the following:<br>1. Cause physical injury to anyone by means of a deadly weapon or dangerous instrument.<br>2. Cause physical injury to anyone except as provided in paragraph 1 of this subsection.<br>3. Cause damage to property.<br>4. Engage in other conduct constituting an offense.<br>5. Accuse anyone of a crime or bring criminal charges against anyone.<br>6. Expose a secret or an asserted fact, whether true or false, tending to subject anyone to hatred, contempt or ridicule or to impair the person's credit or business.<br>7. Take or withhold action as a public servant or cause a public servant to take or withhold action.<br>8. Cause anyone to part with any property.   (see A.R.S. § 13-1804) | |
| **Robbery**<br><br>A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property. (see A.R.S. § 13-1902) | **4** |
| **Armed Robbery**<br>A person commits armed robbery if, in the course of committing robbery (see definition above) such person or an accomplice;<br>1. Is armed with a deadly weapon or a simulated deadly weapon; or<br>2. Uses or threatens to use a deadly weapon or dangerous instrument or a simulated deadly weapon.<br>  (see A.R.S. § 13-1904) | **5**<br>**Mandatory report to law enforcement** |
| **Burglary (First Degree)**<br><br>A person commits burglary in the first degree if such person or an accomplice enters or remains unlawfully in or on a residential structure or yard or a nonresidential structure or in a fenced commercial with the intent to commit any theft or any felony therein (see A.R.S. §13-1506-07) and knowingly possesses explosives, a deadly weapon or a dangerous instrument in the course of committing any theft or any felony.<br>(see A.R.S. § 13-1508) | **5**<br>**Mandatory report to law enforcement** |

| TRESPASSING; VANDALISM OR CRIMINAL DAMAGE | |
|---|---|
| *Definitions* | |
| **Criminal damage:** Willful destruction or defacement of school property, commercial property located on school property, or personal property of another person, so as to substantially impair its function or value in an amount of five thousand dollars or more. Administrators may consider acts of vandalism that result in damages exceeding $5,000 in value at a Level 4.<br><br>**Examples:** Substantial destruction of copy machines, school vehicles, student vehicles, or certain technology, science, or computer equipment. | |
| *Violation* | *Action Level* |
| **Trespassing**<br><br>To enter or remain on a public school campus or school board facility without authorization or invitation and with no lawful purpose for entry.  This includes students under suspension or expulsion and unauthorized persons who enter or remain on a campus or school board facility after being directed to leave by the chief administrator or designee of the facility, campus or function. | **2** |
| **Graffiti or Tagging**<br><br>Writing on walls; drawings or words that are painted or sprayed on walls and/ or other surfaces that can be easily removed with soap or cleaner. | **2** |
| **Vandalism of Personal property**<br><br>Willful destruction or defacement of personal property. | **3** |
| **Vandalism of School Property**<br><br>Willful destruction or defacement of school property.<br><br>**Examples:**  Destroying school computer records, carving initials or words in desk top, spray painting on walls, or damaging vehicles. | **3** |

| | |
|---|---|

> **Comment [A73]:** We suggest that these infractions are placed at different levels based on the monetary value of the damage. Vandalism of a $10 item should not receive the same consequence as vandalism of a $20,000 item.

| WEAPONS AND DANGEROUS ITEMS (POSSESSION OF) | |
|---|---|
| *Violation* | *Action Level* |
| **Dangerous Items**<br><br>Knife with a blade length of less than 2.5 inches, air soft gun, b.b.gun, laser pointer, letter opener, mace/pepper spray, paintball gun, pellet gun, razor blade/box cutter, simulated knife, taser or stun gun, tear gas, firecrackers, smoke and stink bombs, gas, lighter fluid, and other dangerous items (anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury).<br><br>**Mandatory report to law enforcement if under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury.** | 3 |
| **Other Weapons**<br><br>**Examples:** Billy club, brass knuckles, knife with a blade length of at least 2.5 inches, nunchakus.<br><br>**Mandatory report to law enforcement if under the circumstances in which it is used, attempted to be used the item is readily capable of causing death or serious physical injury.** | 4 |
| **Simulated Firearm**<br><br>Possession of a simulated firearm made of plastic, wood, metal or any other material which is a replica, facsimile, or toy version of a firearm.<br><br>**If the simulated firearm is used to threaten or intimidate, the violation will be considered a level 4.** | 3 |
| **Firearms**<br><br>Firearm means any loaded or unloaded handgun, pistol, revolver, rifle, shotgun or other weapon that will expel, is designed to expel or may readily be converted to expel a projectile by the action of an explosive. Firearm does not include a firearm in permanently inoperable condition. (see A.R.S. § 13-3101)<br><br>Other Firearms – As defined for the Gun-Free Schools Act (GFSA) – includes - the frame or receiver of any weapon described above; Any firearm muffler or firearm silencer; Any destructive device, which includes: Any explosive, incendiary, or poison gas: Bomb; Grenade; Rocket having a propellant charge of more than four ounces; Missile having an explosive or incendiary charge of more than one-quarter ounce, Mine or similar device. Any weapon which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter. Any combination or parts either designed or intended for use in converting any device into any destructive device described in the two immediately preceding examples, and from which a destructive device may be readily assembled. (see 18 U.S.C. 921)<br><br>*NOTE: This definition does not apply to items such as toy guns, colorful plastic water guns, cap guns, bb guns, and pellet guns.* | 5<br><br>**Expulsion required by law**<br><br>**Mandatory report to law enforcement** |

**INDEX *REVISE AFTER FINAL REVISIONS***

Abeyance Contracts, 16, 17
Action Levels, 18
Aggression, 20
    Aggravated Assault, 20
    Assault, 20
    Disorderly Conduct, 20
    Endangerment, 20
    Fighting, 20
    Minor Aggressive Act, 20
    Other Aggression, 20
    Recklessness, 20
    Verbal Provocation, 20
Alcohol, Tobacco and other Drugs, 21-22
    Alcohol Violation, 21
    Illicit Drugs, 21
    Inhalants, 21
    Over the Counter Drugs, 21
    Possession of Drug Paraphernalia, 22
    Prescription Drugs, 21
    Substance Represented as of Illicit Drug, 21
    Tobacco Violation, 22
    Unknown Drug, 21
Anti-Harassment Policy, 11
Appeals, 17
Arson, 22
    Arson of an Occupied Structure, 22
    Arson of a Structure or Property, 22
Attendance Policy, 11
Attendance Violation, 22
    Leaving School Grounds, 22
    Other Attendance Violations, 22
    Tardy, 22
    Truancy, 23
    Unexcused Absence, 22
Bus Rules, 10
Bullying, Intimidation & Harassment, 11, 23
Cell Phones, 11

Dating Abuse, 11
Dishonesty, 23
    Cheating, 23
    Forgery, 23
    Lying, 23
    Plagiarism, 23
Dress Code, 9-10
Due Process for General Education Students, 14-15
Due Process for Exceptional Education Students, 15
Expulsions, 17
Gang Activity, 9
General Information, 9-13
    Anti-Harassment Policy, 9
    Governing Board Position, 9
    School Dress Code, 9-10
    Bus Rules, 10
    Student Attendance, 11
    Bullying, Intimidation & Harassment, 11
    Dating Abuse, 11
    Cell Phones, 11
Harassment, Threats and Intimidation, 23
    Bullying, 23
    Harassment, nonsexual, 23
    Hazing, 23
    Threat or Intimidation, 23
Hazing, 12-13, 23
Homicide, 23
Kidnapping, 23
Know the Actions, 18-28
    Abeyance Contracts, 18, 19
    Administration of Guidelines, 14
    Appeals, 17
    Conduct Which Must be Reported, 14
    Conduct Which May be Reported, 14
    Due Process for Students, 14-15
    Expulsions, 17
    Out of School Suspensions, 15-16

Short-Term Suspension, 15
Long-Term Suspension, 16
Principal Application for Waiver, 17
Law Enforcement, Reports to, 14
Other Violations of School Policies, 24
Combustible, 24
Contraband, 24
Defiance or Disrespect, 24
Disruption, 24
Dress Code Violation, 24
Gambling, 24
Language, Inappropriate, 24
Negative Group Affiliation, 24
Other Violation of Policies, 24
Parking Lot Violation, 24
Public Display of Affection, 24
Out of School Suspensions, 15-16
Purpose, 4
What are the Guidelines, 4
When are Guidelines in Force, 4
Rights & Responsibilities, 5-8
Students Have a Right to, 5
Students Have a Responsibility to, 6
Parents/Guardians Have a Right to, 6-7
Parents/Guardians Have a Responsibility to, 7
Teachers Have a Right to, 7
Teachers Have a Responsibility to, 8
Administrators Have a Right to, 8
Administrators Have a Responsibility to, 8

School Threat, 25
Bomb Threat, 25
Chemical or Biological Threat, 25
Fire Alarm Misuse, 25
Other School Threat, 25
Sexual Offenses, 25
Harassment, Sexual, 25
Harassment, Sexual with contact, 25
Indecent Exposure/Public Sexual Indecency, 25
Pornography, 25
Sexual Abuse, 25
Sexual Assault or Rape, 25

Technology, Improper Use of, 26
Computer, 26
Network Violation, 26
Other Technology, 26
Telecommunication Device, 26
Theft, 26-27
Armed Robbery, 27
Burglary or Breaking & Entering, 26
Burglary (First Degree), 27
Extortion, 26
Petty Theft, 26
Robbery, 27
Theft-School/Non-School Property, 26
Trespassing, 27

Vandalism, 27
Graffiti or tagging, 27
Vandalism of Personal Property, 27
Vandalism of School Property, 27
Violations & Actions, 15-28
Aggression, 20
Alcohol, Tobacco & Other Drugs, 21-22
Arson, 22
Attendance Violation, 22-23
Dishonesty, 23
Harassment and Threat, Intimidation, 23
Homicide, 24
Kidnapping, 24
Other Violations of School Policies, 24
School Threat, 25
Sexual Offenses, 25
Technology, Improper Use of, 26
Theft, 26-27
Trespassing, 27
Vandalism or Criminal Damage, 27
Weapons & Dangerous Items, 28
Weapons, 28
Dangerous Items, 28
Firearms, 28
Other Weapons, 28
Simulated Firearms, 28

84

**TUSD ANNUAL NOTIFICATION OF PRIVACY RIGHTS OF PARENTS AND STUDENTS**

The Family Educational Rights and Privacy Act (FERPA) affords parents and "eligible students" (students over 18 years of age, or who attend an institution of postsecondary education) certain rights regarding the student's education records. These rights are:

**(1) The right to inspect and review the student's education records within 45 days from the day TUSD receives a request.**

The parent(s) and/or eligible student may inspect and review student's education records, and TUSD policies and regulations governing use of those records, by making an appointment with the student's school principal. A copy of state and federal statutes and regulations concerning student records is available for reasonable inspection in the Office of the Superintendent or designee, 1010 E. 10th Street, Tucson, Arizona. A list of the types of records maintained, and an explanation of any record, will be provided by appropriate TUSD personnel upon request.

Federal law assumes that both parents are equally entitled to review their child's records. If there is a custody order in place that prohibits the provision of this information to one parent, please provide TUSD with a copy of the custody order, signed by a judge.

**(2) The right to request the amendment of the student's education records that the parent(s) and/or eligible students believes are inaccurate, misleading, or otherwise in violation of the student's privacy rights under FERPA.**

Such a request must be in writing to the student's school principal, must clearly identify the part of the record they want changed, and must specify why it should be changed. If TUSD, decides not to amend the record as requested by the parent(s) and/or eligible student, TUSD will notify the parent(s) and/or eligible student of the decision, and the parent(s) and/or eligible student may further request a hearing regarding the request for amendment, as provided by federal and state statutes, rules and regulations.

**(3) The right to privacy of personally identifiable information in the student's education records, except to the extent that FERPA authorizes disclosure without consent.**

TUSD must obtain the written consent of the parent or eligible student prior to releasing personally identifiable information from the education records of a student, except in circumstances where federal and state law authorize disclosure without consent, such as disclosure to school officials with legitimate educational interests. A school official is a person employed by TUSD as an administrator, supervisor, instructor, or support staff member (including health or medical staff and law enforcement unit personnel); a Governing Board member; a person or company with whom TUSD has outsourced services or functions it would otherwise use its own employees to perform (such as an attorney, auditor, medical consultant, or therapist); a parent or student serving on an official committee, such as a disciplinary or grievance committee; or a parent, student, or other volunteer assisting another school official in performing his or her tasks. A school official has a legitimate educational interest if the official needs to review an education record in order to fulfill his or her professional responsibility.

Upon request, schools will disclose education records, without consent, to officials of another school district in which a student seeks or intends to enroll, or is already enrolled if the disclosure is for purposes of the student's enrollment or transfer.

**(4) The right to file a complaint with the U.S. Department of Education concerning alleged failures by TUSD to comply with the requirements of FERPA.**

Any complaints arising from an alleged violation of these rights may be submitted to the Superior Court of Pima County, Arizona, or to:

The Family Policy Compliance Office
U.S. Dep't of Education
400 Maryland Avenue, SW
Washington, D.C. 20202
(202) 260-3887

Directory Information

FERPA requires that TUSD, with certain exceptions, obtain a parent's/guardian's written consent prior to the disclosure of personally identifiable information from your child's education records. However, TUSD may disclose appropriately designated "directory information" without written consent, unless you have advised TUSD to the contrary in accordance with TUSD procedures (see Administrative Regulation 5130). The primary purpose of directory information is to allow TUSD to include this type of information from your child's education records in certain school publications, such as:

- The annual yearbook;
- Honor roll or other recognition lists;
- Graduation programs; and
- Sports activity sheets showing weight/height of team members.

Directory information, which is information that is generally not considered harmful or an invasion of privacy if released, can also be disclosed to outside organizations without a parent's prior written consent. Outside organizations include, but are not limited to, companies that manufacture class rings or publish yearbooks. In addition, two federal laws require local educational agencies (LEAs) receiving assistance under the *Elementary and Secondary Education Act of 1965* (ESEA) to provide military recruiters, upon request, with the following information – names, addresses and telephone listings – unless parents have advised the LEA that they do not want their student's information disclosed without their prior written consent.

If you do not want TUSD to disclose directory information from your child's education records without your prior written consent, you must notify TUSD on TUSD Form 274, prior to October 1st. TUSD has designated the following information as directory information:

Name, address, parent or guardian telephone listing, email address, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, grade level, enrollment status, degrees (diplomas) and awards received, the most recent previous educational agency or institution attended by the student, personally identifiable photographs, videotapes, films and other visual media, personally identifiable interviews, either audio only or audio and visual, and other similar information.

Under federal law, this information is considered directory information and does not require the written consent of a parent/eligible student to release. If you object to the release of directory information you must notify the principal or designee of the school, in writing, on TUSD Form 274, prior to October 1st. If Form 274 is not received by October 1st, it will be assumed that there is no objection to releasing such information. This procedure shall be done annually. Pursuant to federal law, upon request, TUSD may disclose education records without prior parental/student information, to officials of another school district in which a student seeks or intends to enroll. For further information, contact the Principal's Office at the school where the student(s) attend in TUSD.

**TUSD ANNUAL NOTIFICATION OF RIGHTS UNDER THE PROTECTION OF PUPIL RIGHTS AMENDMENT (PPRA)**

PPRA affords parents certain rights regarding our conduct of surveys, collection and use of information for marketing purposes, and certain physical exams. These include the right to:

**(1) Consent before students are required to submit to a survey that concerns one or more of the following protected areas ("protected information survey") if the survey is funded in whole or in part by a program of the U.S. Dep't of Education (ED) –**

1. Political affiliations or beliefs of the student or student's parent;
2. Mental or psychological problems of the student or student's family;
3. Sex behavior or attitudes;
4. Illegal, anti-social, self-incriminating, or demeaning behavior;
5. Critical appraisals of others with whom respondents have close family relationships;
6. Legally recognized privileged relationships, such as with lawyers, doctors, or ministers;
7. Religious practices, affiliations, or beliefs of the student or parents; or
8. Income, other than as required by law to determine program eligibility.

**(2) Receive notice and an opportunity to opt a student out of –**

1. Any other protected information survey, regardless of funding;
2. Any non-emergency, invasive physical exam or screening required as a condition of attendance, administered by the school or its agent, and not necessary to protect the immediate health and safety of a student, except for hearing, vision, or scoliosis screenings, or any physical exam or screening permitted or required under State law; and
3. Activities involving collection, disclosure, or use of personal information obtained from students for marketing or to sell or otherwise distribute the information to others.

**(3) Inspect, upon request and before administration or use –**

1. Protected information surveys of students;
2. Instruments used to collect personal information from students for any of the above marketing, sales, or other distribution purposes; and
3. Instructional material used as part of the educational curriculum.

These rights transfer from the parents to a student who is 18 yrs old, or an emancipated minor under State law.

TUSD will develop and adopt policies, in consultation with parents, regarding these rights, as well as arrangements to protect student privacy in the administration of protected information surveys and the collection, disclosure, or use of personal information for marketing, sales, or other distribution purposes.

TUSD will directly notify parents of these policies at least annually at the start of each school year and after any substantive changes. TUSD will also directly notify, such as through U.S. Mail or email, parents of students who are scheduled to participate in the specific activities or surveys noted below and will provide an opportunity for the parent to opt his or her child out of participation of the specific activity or survey.

TUSD will make this notification to parents at the beginning of the school year if the District has identified the specific or approximate dates of the activities or surveys at that time. For surveys and activities scheduled after the school year starts, parents will be provided reasonable notification of the planned activities and surveys listed below and be provided an opportunity to opt their child out of such activities and surveys. Parents will also be provided an opportunity to review any pertinent surveys. Following is a list of the specific activities and surveys covered under this requirement:

•Collection, disclosure, or use of personal information for marketing, sales, or other distribution.
•Administration of any protected information survey not funded in whole or in part by ED.
•Any non-emergency, invasive physical examination or screening as described above.

Parents who believe their rights have been violated may file a complaint with:

Family Policy Compliance Office
U.S. Department of Education
400 Maryland Avenue, SW
Washington, D.C. 2020

> ## *YOUR SCHOOL IS A*
> # *SAFE-T-ZONE*

## *IF YOU SEE IT*

- *DRUGS*
- *FIGHTS*
- *GANGS*
- *ASSAULTS*
- *TRUANCY*

- *VIOLENCE*
- *WEAPONS*
- *NON-STUDENTS*
- *GRAFFITI*
- *THREATS*

## R E P O R T   I T!
### CONFIDENTIALITY GUARANTEED

### TELL A SCHOOL OFFICIAL OR CALL

> ### *TUSD SAFETY MESSAGE LINE*
> ### *584-7680*

- MESSAGES CHECKED HOURLY DURING SCHOOL -
- DAILY ON NON-SCHOOL DAYS -

**DISCRIMINATION STATEMENT:** Tucson Unified School District does not discriminate on the basis of race, color, religion/religious beliefs, sex, gender, gender identity, age, national origin, sexual orientation, , creed, citizenship status, marital status, political beliefs/affiliation, disability, home language, or family, social or cultural background in admission or access to, or treatment or employment in, its educational programs or activities.  Inquiries concerning Title VI, Title VII, Title IX, Section 504, and Americans with Disabilities Act may be referred to TUSD's EEO Compliance Officer, 1010 East Tenth Street, Tucson, Arizona 85719, (520) 225-6444, or to the Office for Civil Rights, U.S. Department of Education, 1244 Speer Boulevard, Denver, Colorado 80204.  See Board Policies AC "Non-Discrimination," and ACA "Sexual Harassment" for more information.

<u>Attachment D. Special Master Comments: Cover Letter and Redlined
Comments on the GSSR</u>

July 9, 2012

To: Parties

From: Bill Hawley

Re: Discipline Policy

Attached are my comments on the "Guidelines" and Governing Board
Policy (JK).

Comments on the Guidelines are of three forms—a comment  box, edits in
the text and short paragraphs in the text, usually in CAPS. I hope they are
helpful

Drawing up policies and regulations that are prescriptive while allowing
flexibility is difficult. I have two general observations related to the policies:

>    1.  They seem to allow too much leeway in the use of suspensions,
>    especially out of school suspensions, and in the involvement of law
>    enforcement.
>
>    2.  They do not address how the district can systematically address
>    problems of discipline.  These policies may not be the place to deal
>    with these concerns but understanding that they and the guidelines
>    are interdependent is important and has implications for how policies
>    and regulations are enforced and problems are addressed.

With respect to suspensions and engagement of law enforcement, we know
that suspending a student and placing them in the legal system often has
negative consequences for the student (I have been on a task force for the
Southern Poverty Law Center aptly named the School to Prison Pipeline
Task Force.) Of course, the rights of other students need to be protected but
out of school suspension and the engagement of law enforcement should be
last resort strategies. Under what circumstances, for example, would a level
2 offence warrant suspension from school? You will see my concerns in
these regards in my comments.

With respect to a systematic and systemic approach to reducing discipline problems, it seems worth pointing out—though I apologize if this is gratuitous—that the USP imagines extensive efforts to address problems, including those that are related to the interaction between educators and students and the ways students experience school. The policy does address this under student rights and responsibilities (see my comments there). But parents and students also have the right to benefit from several provisions of Section 6 of the USP (see 6.E.3-5 and 6.F). I mention this not because I doubt that the district will address these provisions but because Governing Board Policy JK and the Guidelines themselves do not reflect a commitment by the District to do all it can to deal with sources of disorder for which it may share some responsibility. For example, the processes laid out in the USP are not mentioned. It seems parents would be reassured to know of the District's comprehensive approach to creating positive learning environments.



*DRAFT GUIDELINES FOR*
*STUDENT RIGHTS AND RESPONSIBILITIES (GSRR)*

~~The purpose of the Guidelines is to assist students, parents, teachers, staff, and principals in creating and sustaining an environment which will enhance the achievement of a positive learning process.  To be fully effective, the Guidelines for Student Rights and Responsibilities addresses:~~
Together, students, parents, teachers, staff, and principals share the responsibility in creating and sustaining an environment that enhances student achievement in the Tucson Unified School District. We ask for the support of students and parents to achieve this goal. The Guidelines for Student Rights and Responsibilities (GSRR) addresses:

- The rights and responsibilities of students and parents
- Conduct which may require discipline
- ~~Administrative responsibilities for implementing discipline~~
- Responsibilities of administrators and teachers to  implement discipline, which includes behavioral supports and interventions that address problems and support student success
- Administrative responsibilities for ~~d~~Due ~~p~~Process

~~You are encouraged to read and develop a thorough understanding of the details of these Guidelines.~~
Please read these Guidelines and develop a thorough understanding of the details. By following the Guidelines, you can help our school district become a safer and more supportive environment for the students and staff.

Student discipline is subject to the provisions of Governing Board policies and state and federal laws. Students will be disciplined in accordance with Governing Board Policy JK and its accompanying regulations. Students with disabilities shall be disciplined in accordance with the Individuals with Disabilities Education Act (IDEA), Section 504, and applicable Governing Board Policies and Regulations – JK, Student Discipline; JK-R5, Discipline Of, and Alternative Interim Educational Placements For, Special Education Students; and JK-R6, Discipline, Suspension, Expulsion for 504 Students—as applied to these Guidelines for Student Rights and Responsibilities. Students may also be subject to applicable civil and/or criminal penalties if they violate the law.

> **Comment [B1]:** Would it help  clarify to insert local, state or federal law?

These Governing Board Policies and Administrative Regulations are available for review in the principal's office and online at www.tusd1.org.  Copies of this booklet are available in Spanish on the reverse side of this booklet and can be obtained online at www.tusd1.org.

Estos Planes de Acción del Consejo Gobernante, y Reglamentos Administrativos se hacen disponibles para revisión en la oficina del director escolar y en www.tusd1.org.  Las copias en español de este folleto están disponible al dorso de este folleto y se pueden obtener en línea en www.tusd1.org.

> **TUSD Governing Board:**
> Adelita Grijalva, President; Kristel Ann Foster, Clerk; Michael Hicks; Cam Juarez;
> Dr. Mark Stegeman

**Superintendent:** ~~John J. Pedicone, Ph.D.~~ Helidoro Torres (H.T.) Sanchez, Ed.D.

**TABLE OF CONTENTS:**

SECTION A:  PURPOSE  ...................................................................................................   4

1. .................................................................................................................... What Are
   The "Guidelines For Student Rights And Responsibilities"
   And Why Are They Needed?.........................................................................   4
2. ..................................................................................................................When Are
   The Guidelines For Student Rights And Responsibilities
   In Force? ......................................................................................................   5

SECTION B:  STUDENT AND PARENT RIGHTS AND RESPONSIBILITIES ...................   6

1.  Students Have A Right To ..............................................................................   6-7
2.  Students Have A Responsibility To .................................................................   7
3.  Parents And Guardians Have A Right To ........................................................   8
4.  Parents And Guardians Have A Responsibility To...........................................   8

SECTION C: GENERAL INFORMATION ....................................................................   9

1.  Equal Education Opportunities & Anti-Harassment Policy
    (Governing Board Policy JB)........................................................................   9
2.  Governing Board Position On Gang Behavior And Activity ............................   9
3.  Student Attendance (Governing Board Policy JE)    ......................................   9
4.  Dating Abuse (Policy JICL)    .......................................................................   9
5.  Bullying, Intimidation & Harassment (Policy JICFB)   ..................................   10
6.  School Dress Code (Required At Every School)
    (Governing Board Policy JICA) ...................................................................   10
7.  Bus Rules .....................................................................................................   11
8.  Student Use Of Cell Phones And Other Electronic Devices (Policy JICJ) ......   11
9.  Hazing (Policy JICFA) ..................................................................................   12
10. Restorative Practices ...................................................................................   13

SECTION D:  KNOW THE ACTIONS  .........................................................................   14

1.  Conduct Which Must Be Reported To Law Enforcement  ...............................   14
2.  Conduct Which May Be Reported To Law Enforcement   ...............................   14
3.  Due Process For General Education Students    ............................................   14-15
4.  Due Process For Exceptional Education Students    ......................................   15
5.  Out Of School Suspensions    ......................................................................   15-16
6.  Abeyance Contracts .....................................................................................   16
7.  Positive Behavior Intervention Support (PBIS)..............................................   16
8.  Restorative Circles; Restorative Conferences  ..............................................   16
9.  Appeals  .......................................................................................................   17
10. Expulsion   ...................................................................................................   17
11. Principal Application for Waiver Of Mandatory Disciplinary Actions...........................   17

**TABLE OF CONTENTS (CONTINUED):**

ACTION LEVELS (Levels 1-5)  ........................................................................................... 18
- Important Information.......................................................................................................... 19
- Aggression ........................................................................................................................... 20
- Alcohol, Tobacco and Other Drugs Violations.................................................................... 21-22
- Arson  ................................................................................................................................... 22
- Attendance Policy Violations (Out of School Suspension Not Permitted) ......................... 22-23
- Dishonesty............................................................................................................................ 23
- Harassment and Threat, Intimidation................................................................................... 23
- Homicide; Kidnapping.......................................................................................................... 24
- Other Violations of School Policies..................................................................................... 24
- School Threat or Interference  ............................................................................................. 25
- Sexual Offenses  .................................................................................................................. 25
- Technology, Improper Use Of ............................................................................................. 26
- Theft ..................................................................................................................................... 26-27
- Trespassing; Vandalism or Criminal Damage ..................................................................... 27
- Weapons and Dangerous Items (Possession Of)  ................................................................ 28

INDEX .......................................................................................................................................... 29-30

ANNUAL NOTIFICATION OF PRIVACY RIGHTS OF PARENTS AND STUDENTS
(FERPA) ....................................................................................................................................... 31

ANNUAL NOTIFICATION OF RIGHTS UNDER THE PROTECTION OF PUPIL RIGHTS
AMENDMENT (PPRA)................................................................................................................. 32

## SECTION A: PURPOSE

1. WHAT ARE THE "GUIDELINES FOR STUDENT RIGHTS AND RESPONSIBILITIES" AND WHY ARE THEY NEEDED?

Students need an environment that is safe and positive for learning.  To help provide and maintain that environment, the Guidelines for Student Rights and Responsibilities:

TUSD is committed to partnering with students and parents to provide an environment that is safe, supportive, and conducive to learning, and strives to reduce racial and ethnic disparities in the administration of school discipline. To help promote and maintain that environment, the Guidelines for Student Rights and Responsibilities:

- Specify the rights and responsibilities of students and parents
- Describe conduct which violates those rights and responsibilities
- Provide guidance and instruction to help students resolve discipline problems in a manner that supports their development
- Strive to standardize those procedures  that the schools will use in responding to violations of those rights and responsibilities
- Assure the rights of students and parents when disciplinary action is taken

At different age levels, students have different needs for safety, support, and learning. As students progress through our public schools, it is reasonable to assume that an increase in age and maturity carries with it a greater responsibility for their actions.  Differences in age and maturity are recognized in determining the type of disciplinary action to be taken and the appropriate supports and interventions. However, the procedures outlined in the Guidelines for Student Rights and Responsibilities apply to all students in Grades K through 12.

Disciplinary consequences must be non-discriminatory, fair, age-appropriate, and correspond to the severity of the student's misbehavior. When considering responses to violations, the District strives to keep students in the classroom whenever practicable. For all but the most severe offenses (Levels 4 and 5 in the "Action Levels" section of this document), exclusionary consequences such as long-term suspension or expulsions must be limited to instances in which student misbehavior is ongoing or escalating, and only after the District has first implemented and documented that non-exclusionary interventions have been attempted. If exclusionary discipline is imposed, students will have fair due process that includes an opportunity to appeal. For all offenses, disciplinary consequences must be paired with meaningful instruction and supportive guidance (e.g. constructive feedback and re-teaching) so students are offered an opportunity to learn from their behavior and, where practicable, offered an opportunity to continue to participate in the school community.

While prioritizing student, staff, and public safety, the District shall not use serious sanctions for low-level conduct (Action Levels 1-3), shall only involve School Safety and/or Law Enforcement in high-level student discipline (Action Levels 4-5), such as when a student is a danger to self or others (to the extent permitted by law), and shall keep students in the classroom setting whenever practicable as members of the school community.

> **Comment [B2]:** This last clause opens the door to suspension for continuing low level misbehavior. Why is it necessary since the document is relatively explicit later. too open-ended.

93

All district personnel administering discipline to students should be informed if a student is protected as a student with a disability under either Section 504 or IDEA **or** if the student is suspected of having a disability and is being considered for an evaluation for a disability.  There are specific discipline procedures that must be followed for students who are considered disabled under these federal laws, including determining whether the misbehavior is a manifestation of the student's disability.

2.   WHEN ARE THESE GUIDELINES IN FORCE?

**2.   WHEN DO THESE GUIDELINES APPLY?**

The Guidelines are enforced:

During regular school hours

- While being transported on the school bus or other school district-sanctioned transportation
- At times and places where the principal or other school official or employee has jurisdiction over students
- During school-sponsored events
- During field trips
- During athletic functions
- When students are going to and from school ("portal to portal")
- During other activities associated with the school in any way

Additionally, the principal is authorized to begin disciplinary action when a student's misconduct away from school has a detrimental effect on the other students, or on the orderly educational process, because the violation is directly connected to prior violations at school, or threatens to produce further violations at school.

*Students who believe they have experienced discrimination, harassment, hazing, bullying, or unfair disciplinary actions, may file a complaint with the site Principal, Assistant Principal, the Department of Student Equity at 225-6686, or online at www.tusd1.org/deseg*

*Parents who believe their student has experienced discrimination, harassment, hazing, bullying, or unfair disciplinary actions, may file a complaint with the site Principal, Assistant Principal, the Department of Student Equity at 225-6686, or online at www.tusd1.org/deseg*

## SECTION B: STUDENT AND PARENT RIGHTS AND RESPONSIBILITIES

Tucson Unified School District believes that educating a student is a collaborative effort with the student and parent.  To support this collaboration we realize that each party has rights and responsibilities.  **The following identification of these rights and responsibilities is a general list to provide guidelines, with the intention of not being comprehensive or all-inclusive.**  (See Policy JI "Rights and Responsibilities")

1.  **STUDENTS HAVE A RIGHT TO:**

    a.  Learn in a safe, clean, orderly and positive climate – one that is unbiased, nonjudgmental, and free from prejudice, discrimination, verbal or physical threats and abuse.

    b.  Receive high quality instruction that is comprehensible and appropriate to their level of academic and linguistic development.

    c.  ~~Be expected to achieve at high~~ levels.

    d.  ~~Receive differentiated instruction to meet individual needs.~~ )Be taught in ways that are responsive to their racial, ethnic, linguistic and cultural backgrounds. (This, obviously, is specified in the USP).

    e.  Have access to quality learning resources, including learning technology (specified in the USP)

    f.  Receive appropriate accommodations to meet individual needs (as supported by documentation)

    g.  Express their ideas and perspectives on issues and topics relevant to their education, including school policies and procedures. ~~Express their ideas and perspectives on issues and various topics~~

    h.  Participate in student activities, including extracurricular activities.

    i.  Be treated with respect, and to be treated as a unique individual with differing needs, expereinces ~~learning styles and~~ abilities in a manner that encourages and enhances individual self-esteem.

    j.  Be treated in a fair and equitable manner by teachers and administrators

    k.  Privacy. (See the "Notification of Privacy Rights of Parents and Students" at page 32)

    l.  Due process of law.

    m.  Have school rules that are enforced in a consistent, fair and reasonable manner.

    n.  Be free to request an interpreter or translator at any step of the disciplinary process.

    o.  Be free from retaliation, from fear of retaliation, and from sex discrimination and sexual harassment at school, including dating abuse.  A victim of dating abuse has the right to transfer to another school.  (See Policy JICL "Dating Abuse").

    p.  Receive disciplinary actions that are fair, equitable, non-discriminatory, and are in accordance with the Guidelines for Student Rights and Responsibilities (GSRR).

    q.  Have teachers and administrators who will follow all District policies related to known allegations of Discrimination, Harassment, Hazing, Bullying, and incidents that require Mandatory Reporting. Such known allegations or incidents must be reported by teachers to the site administration immediately.

    r.  Be treated in a manner that is respectful of and responsive to their cultural traditions

    s.  Administrators who will:
        - model appropriate behavior and expect appropriate behavior from students and teachers.
        - hold students and teachers accountable for student learning.
        - expect parents to be collaborative partners regarding student achievement.

95

---

**Comment [B3]:** This section excludes some things that are important opportunities to learn. I get the idea but where to draw the line? See examples. And what about the opportunity to attend and integrated school?

**Comment [B4]:** This is unnecessary and the syntax is awkward, it would follow from b..

**Comment [B5]:** We do  not use the idea of differentiated instruction in the USP because it can lead to different levels of cognitive demand—such as inappropriate ability grouping

**Comment [B6]:** We want to discourage a focus on learning styles, a concept rejected by most cognitive psychologists and its use can lead to stereotyping and the dumbing down of the curriculum.

**Comment [B7]:** What about a section on Teachers who will:

- work collaboratively with the Department of Student Equity and Intervention.
- host student assemblies to communicate positive core values and behavioral expectations, and to explain the GSRR, Positive Behavioral Interventions and Supports (PBIS), and Restorative Practices (RP) in an age-appropriate manner.
- hold informational sessions for parents at least twice per school year at each school, which shall include information regarding GSRR, PBIS, RP, due process and appeal procedures, and guidance making parent complaints about student discipline.
- make decisions regarding removing students and/or staff for safety reasons.
- discipline students in accordance with the GSRR.

t.   Full access to opportunities within the educational environment without experiencing discrimination on the basis of race, color, religion/religious beliefs, sex, gender, gender identity, age, national origin, sexual orientation, creed, citizenship status, marital status, political beliefs/affiliation, disability, home language, or family, social or cultural background.  This includes the availability of all support services which promote the development of student potential (See Policy AC "Non-Discrimination", ACA "Sexual Harassment", and JB "Equal Educational Opportunities and Anti-Harassment").

u.   Acquire English and such other languages as may be available at the school for students to study.

v.   Access to a classroom environment that encourages the use of English, promotes appreciation of other languages, and respects students' right to use their native language to facilitate communication and enhance academic achievement.

w.   Access to books and other reading materials for supplementary and recreational use, including materials that may be available in other languages.

x.   Access to non-instructional interpretation services when communicating with the school, and in some cases, to translated copies of certain school forms and documents.

y.   Receive a copy of the Guidelines for Student Rights and Responsibilities (GSRR).

z.   Have access to their formal student records.

aa.   Have access to school assignments/homework while serving a disciplinary suspension for the duration of the class period (quarter or semester) and have options for alternative instructional opportunities for any remaining suspension.

## 2.   STUDENTS HAVE A RESPONSIBILITY TO:

a.   Attend school daily according to school district adopted calendar, arrive on time, bring appropriate materials, and be prepared to participate in class and complete assignments.

b.   Strive for academic growth and to strive for their personal best.

c.   Participate fully in the classroom, curriculum and learning process during the entire class period.

d.   Make positive contributions to an Uphold an environment that allows fellow students to have an equal access to educational opportunities.

e.   Make positive contributions to Uphold an environment that allows fellow students to be free from discrimination, harassment, hazing and bullying.

f.   Make up work resulting from an absence.

g.   Respect the rights, feelings, and property of fellow students, parents, school staff, visitors, guests, and school neighbors.

h.   Conduct themselves properly in an appropriate and respectful manner while on school grounds, school buses, at bus stops, at any school-related activity, and in the classroom, so as not to interfere with the rights of another student to learn and to contribute to a safe and orderly environment that is conducive to learning.

i.   Display behavior that does not compromise the safety of other students and/or staff.

j.   Follow discipline guidelines adopted by the school and district.

**Comment [B8]:** Uphold seems too passive. We want students to be active in promoting productive school environments

    k.  Protect and take care of the school's property.
    l.  Abide by the governing board policies and regulations.
    m.  Assist the school staff in running a safe school, and to help maintain the safety and cleanliness of the school environment.
    n.  Read and ask questions to understand the information in the Guidelines for Student Rights and Responsibilities handbook (GSRR).

**3.  PARENTS AND GUARDIANS HAVE A RIGHT TO:**
    a.  Receive official reports (quarterly or more frequently) of the student's academic progress, attendance and behavior on a consistent basis.
    b.  Request and be granted conferences with teachers, counselors and/or the principal.
    c.  Receive explanations from teachers about their student's grades and disciplinary procedures.
    d.  Read all school records pertaining to their student.
    e.  Receive a copy of the Guidelines for Student Rights and Responsibilities handbook (GSRR).
    f.  Receive immediately an oral ***and*** a written notification anytime a student is sent home for any safety and/or disciplinary reason, this includes short-term and long-term suspensions.
    g.  Request an interpreter or translator at any step of the process.
    h.  Request a review of all disciplinary actions relating to their student.
    i.  Non-instructional interpretation services when communicating with the school, and in some cases, to translated copies of certain school forms and documents.
    j.  Direct their student's education, upbringing and moral development. or religious training.
    k.  Access and review all records relating to their student.
    l.  Make health care decisions for the minor child.
    m.  Access and review all medical records of the minor child unless otherwise prohibited by law or the parent is the subject of an investigation of a crime committed against the minor child and a law enforcement official requests that the information not be released.
    n.  Consent in writing before:
        • a biometric scan of the minor child is made.
        • a record of the minor's blood or DNA is created, stored or shared.
        • genetic testing is conducted on the minor, unless required/authorized by law or court order.
        • the state or any of its political subdivisions makes a video or voice recording of the minor, unless the recording is made during or as a part of: a court proceeding; a forensic interview in a criminal or child protective services investigation; or for use solely in any of the following: safety demonstrations, including the maintenance of order and discipline; a purpose related to a legitimate academic or extracurricular activity; a purpose related to regular classroom instruction; security or surveillance of buildings or grounds; or, a photo identification card.
    o.  Obtain information about a child protective services investigation involving the parent.
    p.  Be notified promptly if an employee of this state, any political subdivision of this state, any other governmental entity or any other institution suspects that a criminal offense has been committed against the minor child by someone other than a parent, unless the incident has first been reported to law enforcement and notification of the parent would impede a law enforcement or child protective services investigation. This paragraph does not create any new obligation for TUSD to report misconduct between students at school, such as fighting or aggressive play, that are routinely addressed as student disciplinary matters by the school.
    q.  Express appropriately their ideas and perspectives on issues and topics relevant to their child's education, including school policies and procedures.
    r.  Be treated in a manner that is respectful of and responsive to their cultural traditions.

**4.  PARENTS AND GUARDIANS HAVE A RESPONSIBILITY TO:**
    a.  Work with teachers to support student achievement.

97

**Comment [B9]:** These last four words seem unnecessary and to suggest that this means something different than "quarterly or more frequently"

**Comment [B10]:** There is no choice between moral and religious. Could a parent decide to direct religious training that wasn't moral? Training is a peculiar word here. Development?

b.  Attempt to participate and be active at their student's school.

c.  Be partners with school staff by sharing appropriate ideas for improving student learning and by helping to prevent and/or resolve student discipline problems.

d.  Provide supervision of the student's health, physical and emotional well being, and assume responsibility for the student's timely regular attendance.

e.  Promptly provide the school with explanations for student absences or tardiness.

f.  Ensure student compliance with school and district policies and regulations.

g.  Read and ask questions to understand the information in the Guidelines for Student Rights and Responsibilities (GSRR)

g. h. Reinforce the importance of their students' adherence to the values and behaviors promoted by and described in  the GSRR

---

## SECTION C: GENERAL INFORMATION

---

**1.  EQUAL EDUCATIONAL OPPORTUNITIES AND ANTI-HARASSMENT (POLICY JB)**
It is the policy of the TUSD to prohibit discriminatory harassment based on real or perceived race, color, religion/religious beliefs, sex, gender, gender identity, age, national origin, sexual orientation, creed, citizenship status, marital status, political beliefs/affiliation, disability, home language, parental status, status with regard to public assistance, limited proficiency in English, or family, social or cultural background, or any other reason not related to the student's individual capabilities or on the basis of association with others identified by these categories. TUSD shall act to investigate all complaints of discriminatory or other harassment, formal or informal, verbal or written, and to discipline or take other appropriate action against anyone who is found to have violated this policy.


**2.  GOVERNING BOARD POSITION ON GANG BEHAVIOR AND ACTIVITY**
The behaviors that have become associated with gang activity or membership, especially violence, intimidation, and disrespect will not be tolerated on or near school property or in activities associated with school. In accordance with this position, any students engaging in gang activities will be disciplined to the fullest extent of TUSD policies, and prosecuted, if applicable, according to local ordinances, and state and federal laws.

**Gang**: An ongoing, formal or informal organization or group of persons whose members act in concert for antisocial or criminal purposes, and who are identified with a common name, or common signs, colors, or symbols.

**Gang-Related Incident**: An incident is considered gang-related when the participants, whether perpetrators or victims, are identified as gang members or affiliates, and where a reasonable person would conclude that the incident was motivated, in whole or in part, by a desire to promote or otherwise impact gang interests.

**Bias-Related and Hate-Related Incidents**: An incident is considered bias-related or hate-related when a reasonable person would conclude that it was motivated, in whole or in part, by the perpetrator's bias or attitude against an individual victim or group based on perceived or actual personal characteristics. Such characteristics include: ancestry or ethnicity, disability, sex, gender, immigration or citizenship status, race, religion or religious practices, or sexual orientation.

> **Comment [B11]:** Is sex different than gender?


**3.  STUDENT ATTENDANCE (POLICY JE)**
Regular attendance is essential for success in school; therefore, absences shall be excused only for necessary and important reasons.  Such reasons include illness, bereavement, other family emergencies, and observance of major religious holidays of the family's faith.  A Parent/Guardian should notify the school prior to the absence/tardy with a call, note or email that his/her child is unable to attend or will be late to school.  The call, note or email must address the date/time and reason for the absence.


**4.  DATING ABUSE (POLICY JICL)**
Dating abuse is a pattern of behavior in which one person uses or threatens to use physical, sexual, verbal, or emotional abuse to control the person's former or present dating partner.  Behaviors used may include, but are not limited to, physical abuse, emotional abuse, sexual abuse, and/or threats.  TUSD is committed to maintaining a school campus environment that is safe and secure for all students, and dating abuse will not be tolerated.  TUSD employees aware of dating abuse shall respond in a manner consistent with District training.  Students are encouraged to report all known or suspected instances of dating abuse involving themselves or other students.

**5. BULLYING, INTIMIDATION AND HARASSMENT (POLICY ~~JICK~~ ~~JICFB~~)**
Bullying is a form of harassment. Bullying is the repeated intimidation of students by the real or threatened infliction of physical, verbal, written, electronically transmitted, or emotional abuse, or through attacks on the property of another (including verbal taunts, name-calling and put-downs, and extortion of money or possessions). Students who engage in any act of bullying while at school, at any school function, in connection to or with any District sponsored activity or event, or while en route to or from school, are subject to disciplinary action. **While online bullying is dealt with elsewhere, this section seems to allow it by not disallowing it.**

**6. SCHOOL DRESS CODE (REQUIRED AT EVERY SCHOOL) (POLICY JICA)**
The general guide to acceptable school dress is neatness, cleanliness and appropriateness. While the school cannot and does not dictate styles, it is expected that students will abide by the following rules demonstrating appropriateness in dress as though this were their daily place of business.

> **Comment [B12]:** How would this apply to the dress code in a traditional magnet school where a version of uniforms might be required? (the dictation of styles?)

- Shoes are required to be worn in school.
- Hats and sunglasses may be worn outside in the sun for an extended period of time for protection from the sun. A principal in collaboration with School Safety may institute stricter requirements at a high school experiencing safety-related issues.
- No bandannas may be worn.
- Dark glasses may not be worn inside buildings unless a documented health problem exists.
- No gang related apparel or items are allowed.
- Students may not wear clothing or accessories in school buildings or on school grounds that are:
  - Hazardous, damaging, or presenting danger to school property or persons including but not limited to: extended belts (belts should fit proper length), choke chains, dog collars, wallet chains or any type of spiked apparel or jewelry;
  - Depicting and/or promoting and/or endorsing illegal or violent activities, illegal drugs, tobacco or alcohol;
  - Vulgar, obscene, indecent, libelous, or degrading of others on the basis of race, color, religion, ancestry, national origin, sex, gender, sexual orientation or disability; and/or
  - Distracting so as to interfere with the teaching or learning process such as extremely revealing garments including but not limited to short shorts, short skirts, short dresses (must cover buttocks while standing and sitting), tube tops, net tops, swimsuits, strapless tops, spaghetti strap tops, halter tops, muscle shirts, basketball shirts without an accompanying T-shirt, no tights or leggings to be worn as pants, garments with plunging necklines, transparent and see through garments, (midsections must be covered and undergarments shall be completely covered with outer clothing).

> **Comment [B13]:** The wording here seems to allow short shorts and skirts that do not cover buttocks. I suspect that is not the intent.

Students who violate TUSD's dress standards may be asked to do any of the following depending upon the specific circumstances:

> **Comment [B14]:** A common problem in dress codes is the display on clothing of religious or political advocacy. The policy seems mute on this and this seems—to me—a right students have so long as the messages are not prohibited by the provisions above.

- Turn inappropriate clothing inside out.
- Change into clothing that may be provided by the school.
- Change into other clothing which has been brought to school.
- Remove the jewelry or other accessory.

*NOTE:  These dress guidelines represent the minimum standards.  Individual school sites may adopt additional guidelines.  Students wearing inappropriate clothing to school are given an opportunity to change clothing or they will be released from school in the company of the parent/guardian.

**7. BUS RULES**

**Student Behavior Policy**
Proper student behavior contributes to the overall safety and comfort of the ride to and from school. Following driver directions and all ridership rules is paramount to maintain a safe and enjoyable ride for all. Infractions will be dealt with through the District-approved Student Conduct policies which include driver interventions, the student's principal, and other administrators as deemed appropriate.

Riding is a privilege; parents and students should discuss and make sure they know the rules:
•   Always comply with bus driver's/monitor's directions
•   Use classroom voice only (no profanity/loud noises/threats/intimidation)
•   Remain seated; keep hands, feet, and head inside bus
•   All personal possessions must be under control at all times
•   Keep unauthorized materials and substances off bus (animals, glass objects, weapons, illegal substances, or large objects that occupy a seat space)
•   No eating or drinking on the bus

AS a last resort, violations of these bus rules may result in the loss of bus privileges for a limited time.

**Safety Precautions for Students**
•   Know the route to and from the bus stop, safety precautions and common courtesies to be maintained en route and at the bus stop.
•   Know the correct bus route number.
•   ~~Know~~Discuss what to do if the bus is late in the morning or no one is home in the afternoon
•   ALWAYS board/depart the bus at the correct stop as known and approved by the parent.

**8. STUDENT USE OF CELL PHONES AND ELECTRONIC DEVICES (POLICY JICJ)**
For purposes of this policy, "electronic devices" include, but are not limited to, cell phones, Mp3 players, iPods, personal digital assistants (PDA's), e-book readers, compact disc players, portable game consoles, cameras, digital scanners, lap top computers, tablet computers and other electronic or battery powered instruments which transmit voice, text, or data from one person to another.

Students may possess and use cellular telephones and/or other electronic signaling devices subject to limitations of this and other policies of the District under the following conditions and guidelines:
•   Cell phones and/or electronic devices are to be kept out of view in a student's locker, pocket, or a carrying bag.
•   Such devices shall not be turned on or used during instructional time, except as authorized by the teacher.
•   The principal shall establish additional guidelines appropriate to campus needs.

- Students violating the policy may have the electronic device confiscated and be subject to disciplinary action. Any search of the contents of an electronic device shall be by an administrator in accordance with the Guidelines for Students Rights and Responsibilities.

**Reasonable efforts will be taken to secure property that has been confiscated; however, neither the School District nor the School District Staff is responsible for loss, damage, or theft of any electronic device including but not limited to cell phones, laptops, tablet computers, portable media player brought to school, even if loss, damage or theft results from the device being confiscated.**

**9. HAZING (POLICY JICFA)**

There shall be no hazing, solicitation to engage in hazing, or aiding and abetting another who is engaged in hazing of any person enrolled, accepted for or promoted to enrollment, or intending to enroll or be promoted to District schools within twelve (12) calendar months.  For purposes of this policy a person as specified above shall be considered a "student" until graduation, transfer, promotion or withdrawal from the District school.

"Hazing" means any intentional, knowing or reckless act committed by a student, whether individually or in concert with other persons, against another student, and in which both of the following apply:

- The act was committed in connection with an initiation into, an affiliation with, or the maintenance of membership in any organization that is affiliated with an education institution.
- The act contributes to a substantial risk of potential physical injury, mental harm or degradation, or causes physical injury, mental harm or personal degradation.

"Organization" means an athletic team, association, order, society, corps, cooperative, club, or similar group that is affiliated with an educational institution and whose membership consists primarily of students enrolled at that educational institution.

It is no defense to a violation of this policy if the victim consented or acquiesced to hazing.

In accord with statute, violations of this policy do not include either of the following:
- Customary athletic events, contests or competitions sponsored by an educational institution.
- Any activity or conduct that furthers the goals of a legitimate educational curriculum, a legitimate extracurricular program, or a legitimate military training program.

All students, teachers and staff shall take reasonable measures within the scope of their individual authority to prevent violations of this policy. Students and others may report hazing to any professional staff member. Professional staff members must report the incident to the school administrator or next higher administrative supervisor, in writing, with such details as may have been provided.  A failure by a staff member to timely inform the school administrator or next higher administrative supervisor of a hazing allegation or their observation of an incident of hazing may subject the staff member to disciplinary action in accord with District policies.  The staff member shall preserve the confidentiality of those involved, disclosing the incident only to the appropriate school administrator or next higher administrative supervisor or as otherwise required by law.  Any instance of reported or observed hazing which includes possible child abuse or violations of statutes known to the staff member shall be treated in accord with statutory requirements and be reported to a law enforcement agency.

**Comment [B15]:** Really? Could an administrator go through the emails of a student in search of some evidence in the absence of just cause. I do not remember the Guidelines speaking to this question of search so how could the behavior be constrained by the Guidelines. Don't we teach about the fourth amendment?

To assure that students and staff are aware of its content and intent, a notice of this policy and procedure shall be posted conspicuously in each school building and shall be made a part of the Rights and Responsibilities section of the student handbook.  Forms for submitting complaints are to be available to students and staff in the school offices. Disposition of all reports/complaints shall be reported to the Superintendent.  The Superintendent will determine if the policies of the District have been appropriately implemented and will make such reports and/or referrals to the Board as may be necessary.

All violations of this policy shall be treated in accord with the appropriate procedures and penalties provided for in District policies related to the conduct and discipline of students, staff, and others.

**10. POSITIVE BEHAVIORAL INTERVENTIONS AND SUPPORTs ANDS: RESTORATIVE PRACTICES**

> **Comment [B16]:** The current wording implies that PBIS is restorative practices.

Positive Behavioral Interventions and Supports ("PBIS") is an evidence-based, proactive, data driven framework that includes a range of tiered interventions designed to prevent problem behavior while teaching socially appropriate behaviors.  The focus of PBIS is creating and sustaining school environments for all students in which appropriate behavior is supported and problem or disruptive behavior is redirected.  This culture is created by
- Defining and teaching behavioral expectation
- Monitoring and acknowledging appropriate behavior
- Providing corrective and appropriate consequences for behavioral errors
- Providing appropriate services for students who need additional behavioral supports
- Using a team-based management system to oversee the PBIS program
- Using referral data for problem solving

Restorative Practices is an approach that seeks to develop good relationships and restore a sense of community. Restorative Practices: focuses on repairing harm caused by an offending behavior, while holding the wrongdoer accountable for his/her actions; provides an opportunity for the affected parties (victim, wrongdoer, and community) to identify and address their needs as a result of the offending behavior, and make amends or find a resolution; and surrounds the affected parties with a community of care, in which all parties share in the resolution of the problem.

In schools, Restorative Practices provides a proactive approach for building a community of care based on collaboration, mutual understanding, and reciprocated respect. This process holds students accountable for their actions while, at the same time, building a caring school environment. Attention is given to the victim and the wrongdoer, whether they are student or staff.  Restorative Practices allows wrongdoers an opportunity to rejoin the school community after they have made amends. See Section D(8) below for a description of Restorative Practice strategies that may be used by sites.

All sites shall have or share a Restorative and Positive Practices Site Coordinator ("RPPSC"). A school's learning supports coordinator may be designated to serve as the RPPSC for the site. The RPPSCs shall be responsible for assisting instructional faculty and staff to: (a) effectively communicate school rules; (b) reinforce appropriate student behavior; and (c) use constructive classroom management, positive behavioral interventions and supports, and restorative practices strategies.

THIS SECTION AND SUBSEQUENT ONES DRAW ATTENTION TO THE NEED TO MERGE THE TWO IDEAS. PBIS HAS A REASONABLE RESEARCH BASE AND IS MORE

COMPREHENSIVE THAN RP. RP CAN BE A USEFUL TOOL WITHIN PBIS BUT THE USP BASICALLY ADDED PBIS IN WITHOUT RECONCILING THE TWO.THERE SHOULD BE CONSISTENCY IN HOW THESE TOOLS ARE USED THROUGHOUT THE DISTRICT.       The guidelines seems to imply at times that these are different strategies from which one might choose.  IT MAY BE TOO LATE TO HANDLE THIS IN THE CURRENT GUIDELINES BUT THE TRAINING CAN GO ON IN AN INTEGRATED WAY. SINCE PBIS IS THE MOTHER SHIP, SO TO SPEAK, I SUGGEST REORDERING THE TITLE OF THE school-level support PEOPLE  TO "POSITIVE AND RESTORATIVE PRACTICES SITE COORDINATOR".

---

**SECTION D: KNOW THE ACTIONS**

ADMINISTERING THE GUIDELINES FOR STUDENT RIGHTS AND RESPONSIBILITIES

The Arizona Department of Education has developed a list of violations as well as a list of possible actions a school district may take in response to a violation.  TUSD has categorized these possible actions into five levels and then assigned a level to each violation depending on the severity of the violation.  In this way, students from school to school will receive similar actions for similar violations. A major consideration in the application of the Guidelines for Student Rights and Responsibilities is to identify the most appropriate disciplinary action necessary to bring about positive student behavior. Actions are not to be considered in isolation but rather as part of the overall goal of creating inclusive and supportive environments for students.  At the elementary level, the age and developmental level of the child may be considered in interpreting the severity of the discipline imposed.  Student services personnel, such as counselors, social workers, learning support coordinators, or psychologists, play a vital role in assisting the student in resolving any problems influencing the student's behavior.

1.   CONDUCT WHICH MUST BE REPORTED TO LAW ENFORCEMENT

It is important for all staff, students, and parents to understand that, in addition to taking disciplinary action at the school level, certain criminal behavior must be reported to appropriate law enforcement agencies.  ~~The law requires s~~School officials are required to report the following incidents:

| | | |
|---|---|---|
| Use or threat to use a deadly weapon or dangerous instrument | Homicide | Burglary in the first degree |
| Aggravated Assault resulting in serious physical injury | Sexual Assault | Arson of an occupied structure |
| Sexual conduct with a minor under 15 years of age | Armed Robbery | Any dangerous crime against minors |
| Possession, use, sale, or attempted sale of illegal drugs | Kidnapping | Bomb threats |

**Comment [B17]:** See definition on p.23

Additionally, pursuant to A.R.S. § 13-3620, school personnel are required to <u>immediately</u> report any reasonable belief of non-accidental physical injury, neglect, or sexually related offense against a minor. "Physical injury" means the impairment of physical condition, and may include any skin bruising, pressure sores, bleeding, failure to thrive, malnutrition, dehydration, burns, fracture of any bone, subdural hematoma, soft tissue swelling, injury to any internal organ or any physical condition that imperils health or welfare.  (See A.R.S. § 13-3623(F)(4))

2.   CONDUCT WHICH MAY BE REPORTED TO LAW ENFORCEMENT

THIS SECTION SEEMS TO ALLOW ENGAGEMENT OF LAW ENFORCEMENT FOR REASONS THAT DO NOT WARRANT SUCH DRASTIC ACTION. SEE HIGHLIGHTED ITEMS. SHOULDN'T SUCH ENGAGEMENT REQUIRE APPROVAL BEFORE LAW ENFORCEMENT IS ENGAGED? HARD TO UNDO the effects of engaging law ENFORCEMENT..

Additionally, the administrator **MAY** report to law enforcement agencies other potentially disruptive incidents when necessary to maintain safety.  When appropriate, school officials should utilize supports and interventions that provide guidance and structure to the student and help them to improve their behavior without involving law enforcement.  An administrator must immediately notify an Assistant Superintendent or Director, and the Department of Student Equity and Intervention, when law enforcement is contacted. Incidents that may be reported to law enforcement when necessary to maintain safety include, but are not limited to, the following:

| Possession, sale or distribution of dangerous substances, including alcohol, ~~tobacco~~ or legal drugs | | | |
| Demonstration by students which is likely to create unsafe conditions | | | |
| Threats | Setting off a false fire alarm | Assault | Vandalism |

3.   DUE PROCESS FOR GENERAL EDUCATION STUDENTS

Any student whose conduct may warrant suspension or expulsion will be provided due process.  This is a legal safeguard that protects the rights of students and their parents and is constitutionally guaranteed.

Due process steps include:

- Oral or written notice of the charges presented to the student;
- An opportunity for students to present their ~~student's~~ side of the story in an informal hearing or meeting;
- The allowance, for safety considerations, for a student to be removed from the school prior to an informal hearing with that hearing to follow as soon as practical;
- Adequate notification and an opportunity for a fair hearing;
- Written notification to parents about suspension of student;
- That parents will be informed in writing of all suspensions and that they have the right to a conference with the principal;
- That if parents are not satisfied with any school official's decision they are entitled to request a review by the school official's immediate supervisor;
- Formal due process in long-term suspension and expulsion proceedings
- A right to appeal disciplinary decisions TO WHOM?

4.   DUE PROCESS FOR STUDENTS WITH 504 PLANS OR IEPs

**Formatted:** Highlight

**Comment [B18]:** SOME OF THESE CONDITONS REQUIRE ACTION—SEE ABOVE. WOULD ONE CALL LAW ENFORCEMENT IF A STUDENT SHARED AN ASPIRIN/ SILLY AS IT SOUNDS, THESE THINGS HAPPEN. NEED FOR CLARIFICATION

**Formatted:** Highlight

**Formatted:** Highlight

**Formatted:** Highlight

**Comment [B19]:** THIS WORDING SUGGESTS THAT STUDENTS THEMSELVES MAY NOT HAVE THE RIGHT TO PRESENT THEIR SIDE OF THE STORY.

**Comment [B20]:** INCOMPLETE SENTENCE?

Students with disabilities under Section 504 or IDEA (and students suspected of having a disability) may be disciplined in the same manner as any other student and may be suspended for up to 10 cumulative days of school per school year.  If a suspension beyond 10 cumulative days is contemplated, special procedures that must be followed.

A manifestation determination conference must be held prior to the 11th day of suspension

- If the manifestation determination conference concludes that the student's behavior is a manifestation of the student's disability, then no further disciplinary action can be taken.  The 504 or IEP team should convene to develop an appropriate behavior plan for the student.
- If the manifestation determination conference concludes that the student's behavior is not a manifestation of the student's disability, the District may impose whatever long-term suspension or expulsion it would impose under the same circumstances if a non-disabled student were the offender. The District has no obligation to continue to provide educational services to a 504 student during the period of a long-term suspension or expulsion. However, the District must continue to provide educational services for students eligible under IDEA.  Please refer to the appropriate Governing Board regulations JKA and JKAB and to the Exceptional Education Handbook for specific procedures.

A student with a disability under IDEA may be referred to an Interim Alternative Educational Settings in certain circumstances regarding the use or possession of drugs, weapons, or serious bodily injury.  Refer to the Exceptional Education Handbook for specific procedures.

**5. OUT OF SCHOOL SUSPENSIONS**

**Short-Term Suspension** – A principal or principal's designee may suspend a student from school for up to ten (10) from one (1) to ten (10) school days due to misconduct, depending on the severity of the misconduct.  However, principals may take this action only after they have exhausted informal disciplinary strategies have identified, implemented, and documented appropriate behavior interventions for a reasonable duration. (See interventions listed under Action Level 1 for examples of appropriate strategies).  Such efforts must be made before principals may suspend students for low-level conduct (Action Levels 1-3). Only after implementing interventions with fidelity may a principal reject them as inappropriate in a given situation, and resort to short-term suspension as a consequence. Conferences to resolve the problem must be scheduled with the parent, student, and other appropriate school staff members as part of the continuum of supports and interventions implemented to support student success.

**Make-up Work (Short-Term Suspension)**
If students are suspended, they are entitled to complete their coursework to ensure that they do not fall behind academically.  Governing Board Policy Regulation JK-R1, Short Term Suspension states: "The student is allowed access to class assignments and to make up tests upon return to school.  Homework must be made available for the parent to pick up at the school office."  It shall be the parent's and student's School administrators should assist parents and students with the shared responsibility to make arrangements to obtain such assignments and homework and to have completed assignments returned to

> **Comment [B21]:** Why should any suspension be warranted by level one and two offenses? See comments on Action Levels

> **Comment [B22]:** This policy should provide for such information to be communicated online.

the school for grading and credit. One set of assignments must be completed and returned before another set of assignments can be picked up or provided online.  Students on suspension who successfully complete such assignments shall be allowed a reasonable time to take makeup tests upon returning to school.  During the term of the suspension, the student is to remain away from all Tucson Unified School District schools and activities.  If it is necessary to come to a school, the student must make prior arrangements with the principal or principal's designee.

**Long-Term Suspension** – A Hearing Officer may suspend a student from school for up to 180 days. Long-term suspensions of more than 45 days shall not be imposed except for Violations at Level 5. Hearing Officers may Principals take this action only after the site administration has when they have exhausted other disciplinary strategies (Ssee interventions listed under Action Level 1 for examples of appropriate strategies), or when they have at least considered those alternatives and rejected them as inappropriate in a given situation.  Conferences to resolve the problem must be are scheduled with the parent, student, and other appropriate school staff members at appropriate times as part of the continuum of supports and interventions implemented to support student success. Students suspended more than 20 days may have an option to enroll in the "Life Skills" alternative to suspension program.

**Make-up Work (Long-Term Suspension)**
If students are suspended, they are entitled to complete their coursework to ensure that they do not fall behind academically.  School administrators should assist parents and students with the shared responsibility to make arrangements to obtain such class assignments and homework and to have completed assignments returned to the school for grading and credit. One set of assignments must be completed and returned before another set of assignments can be picked up or provided online. Students on suspension who successfully complete such assignments shall be allowed a reasonable time to take makeup tests upon returning to school.  Homework will be made available by the student's teachers for the remainder of the grading period.  However, because of the difficulty in students keeping up with class work through homework alone, without an instruction component, after the end of a grading period, students will receive academic support through a TUSD alternative program such as distance learning.  During the term of the suspension, the student is to remain away from all Tucson Unified School District schools and activities.  If it is necessary to come to a school, the student must make prior arrangements with the principal or principal's designee.

**6.   ABEYANCE CONTRACTS (REGULATION JK-R4) (POLICY JK-R4)**
An administrator may offer to not immediately impose the assigned out-of-school suspension if (1) the administrator believes it is in the best interest of the student and the school community, (2) the student admits to committing the infraction, (3) the student and parent/legal guardian agree to certain conditions, and (4) the student and parent/legal guardian sign a contract, called an abeyance contract.  The term of the abeyance contract may not exceed the maximum suspension term for the offense level. If a student violates his/her abeyance contract with a suspendable offense, the student must serve the remaining term of the initial offense plus the suspension for the additional offense.  These two suspensions would be served concurrently. (The last days of the first suspension would also be the first days of the additional suspension.)

**7.   POSITIVE BEHAVIOR INTERVENTION SUPPORT (PBIS)**

107

~~Positive Behavior Intervention Support: builds relationships by focusing on accountability for actions, allowing all voices to be heard and having the opportunity to repair damage by making things right in a fair and restorative way.~~

In the Positive Behavior Intervention Support (PBIS) system, students, who do not respond to the school wide or classroom supports that are in place for all students, may be evaluated to determine the function of the misbehavior through Functional Behavioral Assessment (FBA) and an intervention may be matched to their circumstance.  Interventions which have been shown to be successful across age and grade levels include:  mentoring, social skills groups, interest-based clubs, daily monitoring of selected problem behaviors.  In a handful of situations, when these group supports are not sufficient, highly individualized interventions involving multiple systems and based on data may be implemented.  If the situations involve a victim or multiple victims, Restorative Practices are complimentary.

> **Comment [B23]:** I don't know what this sentence means? And, is the last word complementary?

## 8.  RESTORATIVE CIRCLES; RESTORATIVE CONFERENCES

Restorative Practices actions range from informal to formal. In schools, these actions include:

- *Small impromptu circles*: a few people meet to briefly address and resolve a problem; facilitated by teachers, administrators, and/or learning supports coordinators.

- *Group or classroom circles:* a larger group can meet in a large circle or a classroom circle to discuss issues, answer questions, solve problems, or offer feedback; facilitated by teachers, administrators, and/or learning supports coordinators.

- *Formal restorative conferences:* address serious problems of behavior. These conferences may involve wrongdoers, victims, parents, and school administrators. Only those trained in formal conferences can facilitate a formal conference.

*sites may also elect to utilize "Teen Court" (aka "Peer Juries")

SEE EARLIER POINT ABOUT THE PATCHWORK WAY PBIS AND RP ARE PRESENTED. And shouldn't  the heading above be restorative practices (of which circles and conference are a part0/

## 9.  APPEALS

Students and parents/guardians have the right to appeal short-term and long-term suspension decisions; however, there is no appeal from the Governing Board's final decisions regarding long-term suspension appeals or its expulsion decisions.  (See Policy JK and its accompanying regulations for details).

## 10.  EXPULSION

Expulsion is defined as the permanent withdrawal of the privilege of attending a TUSD school unless the Governing Board reinstates the privilege.  A principal may or, in some cases, must request the Superintendent recommend to the Governing Board the expulsion of a student.  This is the most serious disciplinary step available. As part of its decision to expel, the Governing Board may permit the student to apply for readmission through the Office of Student Equity and Intervention after any period of time it may set. The Governing Board, or designee, may establish further conditions within the readmission process with which the student must comply prior to their admission to the instructional process. During

the term of the expulsion, the student is to remain away from all Tucson Unified School District schools and activities.  If it is necessary to come to a school, the student must make prior arrangements with the principal or principal's designee.

Students with disabilities eligible under IDEA will continue to be offered educational services, although in an alternative setting.

## 11.  PRINCIPAL APPLICATION FOR WAIVER OF MANDATORY ACTIONS

For violations requiring Action Level 4 or 5 consequences, the principal has the prerogative to seek the waiver of any portion or all of the mandatory disciplinary action through the appropriate Assistant Superintendent.  The principal may seek the waiver and, if granted, the parties directly involved shall be informed of the reasons the waiver was granted.

Waivers may **not** be sought when the prescribed disciplinary action involves the possession of a firearm or the threatening of an educational institution.  By state law in such a case, only the Governing Board may decide, on a case by case basis, whether to impose less than the mandatory penalty.

**ACTION LEVELS**
The chart below lists actions that may be taken by school administration as the result of a violation.  The Action Level identifies maximum action for violations assigned to that level.  **Actions listed in bold are the minimum or mandatory action for that level of violation.**  Multiple actions may be applied to a single violation. Action Levels are developed with input from students, parents, teachers and community members. **For all violations, parent notification and student conference are mandatory.**

Interventions which have been shown to be successful across age and grade levels include:  mentoring, social skills groups, interest-based clubs, daily monitoring of selected problem behaviors.

**It will be the policy of TUSD to implement Restorative Practices wherever practicable.**

**This section need some editing for consistency. As with levels 3-5, level 2 should have the phrase "Any action from the prior levels may also be imposed". Then, items previously mentioned should not be mentioned again (why include some and not others?).**

109

> **Comment [B24]:** True but seems like an afterthought. And does this mean other interventions are not. Incorporate these techniques in the tables— some of them are there anyway under different names and the same names

| LEVEL 1 | o **Parent Notification and Conference Request**<br>o **Student Conference**<br>o Restorative Circle<br>o Restorative Conference<br>o Confiscation of Contraband<br>o Parent Conference<br>o Student Verbal Apology<br>o Student Written Apology<br>o Warning | o Referred to Outside Agency<br>o Community Service<br>o Detention<br>o Peer mediation<br>o Privileges Suspended<br>o Restitution<br>o Saturday School<br>o Teen Court<br>o Functional Behavioral Assessment | o Meeting With School Counselor<br>o Reassignment To A Different Class<br>o Behavior Contract<br>o Work Detail<br>o Behavior Intervention Group<br>o Threat Assessment<br>o Behavior Intervention Plan<br>o Lunch Detention<br>o Monitoring of selected problem behaviors<br>o Other Action |
|---|---|---|---|
| LEVEL 2 | colspan... |

**LEVEL 2**
Any mandatory action from the prior level(s) mustalso be imposed.
Both mandatory actions from Level 1 **must** also be imposed. Shouldn't this be true--parent notification-- for all actions?
o **Restorative Conference and/or Restorative Circle**
o Behavior Contract
o Social Skills Groups and/or Mentoring WHY WOULDN'T THESE BE USEFUL FOR LEVEL ONE— ARE RESTORATIVE CONFERENCES, ETC, SOCIAL SKILLS GROUPS OR THE EQUIVALENT?
o In School Suspension – Short-Term
o Out Of School Suspension and/or Abeyance – Short-Term (1-3 Days) WHAT LEVEL TWO OFFENSE WARRANTS OUT OF SCHOOL SUSPENSION?

> **Formatted:** Highlight

**LEVEL 3**
Any Action from the prior level(s) may also be imposed.
o **Short-Term In School Action and/or Abeyance**
o **Restorative Conference and/or Restorative Circle**
o In School Suspension
o Out Of School Suspension and/or Abeyance – Short-Term (1-10 Days)
o Department of School Safety Contact in Appropriate Circumstances

> **Comment [B25]:** WHAT IS A SHORT TERM ACTION
> **Comment [B26]:** ALREADY INCLUDED IN THE FIRST LINE OF THE SUBSECTION.

**LEVEL 4**
Any Action from the prior level(s) may also be imposed.
o **Out of School Suspension and/or Abeyance – Long-Term  (11-30 45 Days)**
o **Restorative Conference and/or Restorative Circle**
o Restorative Conference and/or Restorative Circle
o Removal By Hearing Officer For Likely Injury To Self Or Others
o Removal By Student's IEP Team To An Interim Alternative Education Setting

**LEVEL 5**
Any Action from the prior level(s) may also be imposed.
o **Out of School Suspension and/or Abeyance – Long-Term  (11-180 Days)**
o **Restorative Conference and/or Restorative Circle (upon re-entry to school)**
o Expulsion

**IMPORTANT INFORMATION**

- All parent conferences will be made in the timeliest manner.

- A student who willingly assists or forces another student to commit a violation of these guidelines will be held equally accountable for the violation.

- Attempted violations may require Actions. Administrators will determine the appropriate level of Action to take for an attempted violation. The Action will generally be at a level less than that of the actual violation.

- For repeated and/or multiple offenses, Administrators may apply an action that is one level higher than that listed, but only after approval from the Department of Student Equity and Intervention. The Department of Student Equity and Intervention will review whether the teachers and/or administrators have attempted to effectively implement interventions to address any underlying or unresolved issues, and will not permit a single type of behavior to be elevated more than one level, regardless of the frequency of occurrence.

- When determining the appropriate level of action to take, administrators may consider a student's claim of self defense, defense of others or defense of property.

- When determining the appropriate action to take, Administrators at the elementary level (Pre-K-5th Grade) may consider all violations, *with the exception of possession of firearms or any incidence of threat to an educational institution*, at one level lower than that of the actual violation.

- Administrators may not withdraw a student's open enrollment or magnet status during the school year as a consequence for a discipline violation.

- Students will not receive out of school suspension for attendance violations.

- Law Enforcement Officers, including School Resource Officers, School Safety Officers, and other law enforcement and security personnel shall not be involved in low-level student discipline. Low level offenses are levels 1, 2 and 3. An administrator must immediately notify an Assistant Superintendent or Director and the Department of Student Equity and Intervention when law enforcement is contacted.

**The Arizona  Department of Education has identified the following violations:**

| Violation | Action Level |
|---|---|
| **AGGRESSION** | |
| **Verbal Provocation**<br>Use of language or gestures that may incite another person or other people to fight. | **1** |
| **Recklessness**<br>Unintentional, careless behavior that may pose a safety or health risk for yourself or for others. | **1** |
| **Minor Aggressive Act**<br>Student engages in non-serious but inappropriate physical contact.<br>**Examples:** hitting, poking, pulling, tripping, or pushing. | **2** |
| **Other Aggression**<br>Includes other acts of aggression not specifically listed within the Aggression section including, but not limited to, serious and inappropriate physical contact.<br>**Examples:** pulling a chair out from underneath another person, or other behaviors that demonstrate low-level hostile behaviors. | **3** |
| **Disorderly Conduct**<br>A person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person:<br>1. Engages in violent or seriously disruptive behavior.<br>2. Uses abusive or offensive language or gestures to any person present in a manner likely to provoke immediate physical retaliation by such person.<br>3. Makes any protracted commotion, utterance or display with the intent to prevent the transaction of the business of a lawful meeting, gathering or procession.<br>4. Refuses to obey a lawful order to disperse issued to maintain public safety. (see A.R.S. §13-2904)<br>5. Recording/distributing fights on any social media outlet | **3** |
| **Endangerment**<br>A person commits endangerment by endangering **themselves or** another person with a substantial risk of imminent death or physical injury.  (see A.R.S. § 13-1201) | **3** |
| **Fighting**<br>Mutual participation in an incident involving physical violence; does not include verbal confrontation alone**.** | **3** |
| **Assault**<br>A person commits assault by intentionally, knowingly, or recklessly causing physical injury to another person; knowingly touching another person with the intent to injure, insult or provoke such person., or by threatening to use a deadly weapon or dangerous instrument or a simulated deadly weapon. (see  A.R.S. §13-1203)<br>**Examples:** Restraining, barricading.<br>**Only if the administrator forms a reasonable belief that a student has suffered a non-accidental physical injury is a report to law enforcement mandatory.** | **4** |
| **Aggravated Assault**<br>A person commits aggravated assault if the person:<br>1. Causes serious physical injury to another.<br>2. Uses a deadly weapon or dangerous instrument.<br>3. Commits the assault by any means of force that causes temporary but substantial disfigurement, temporary but substantial loss or impairment of any body organ or part or a fracture of any body part.<br>4. Commits the assault while the victim is bound or otherwise physically restrained or while the victim's capacity to resist is substantially impaired.<br>5. Commits assault and the person is in violation of an order of protection.<br>6. Commits the assault knowing or having reason to know that the victim is any of the following: law enforcement officer, prosecutor, firefighter, EMT/Paramedic engaged in official duties, teacher or any school employee on school grounds, on grounds adjacent to the school or in any part of a building or vehicle used for school purposes, teacher or school nurse visiting a private home in the course of the teacher's or nurse's professional duties or any teacher engaged in any authorized and organized classroom | **5**<br>**Mandatory report**<br>**to law enforcement** |

> **Comment [B27]:** Is this an ADE requirement or added by the consultants? In any event, it seems inappropriate and a violation of student rights. For example, students may want to complain about the violence in their school and share a video.

| | |
|---|---|
| activity held on other than school grounds.  (see A.R.S. § 13-1204) | |

## ALCOHOL, TOBACCO AND OTHER DRUGS VIOLATIONS

### *Definitions*

**Drug Violation:** Unlawful use, cultivation, manufacture, distribution, sale, purchase, possession, transportation or importation of any controlled drug or narcotic substance or equipment and devices used for preparing or taking drugs or narcotics. Includes being under the influence of drugs at school, school-sponsored events and on school-sponsored transportation. Includes over-the-counter medications if abused by the student.

**Possession:** knowing exercise of dominion or control over an item.                                    **Use:** the act of using.

**Sale:** to transfer or exchange an item to another person for anything of value or advantage, present or prospective.

**Share:** to allow another person to use or enjoy something that one possesses.

| *Violation* | *Action Level* |
|---|---|
| **Over the Counter Drugs, Inappropriate use of** <br> Medicines that may be purchased directly without a prescription from a health care professional. Inappropriate use includes any use other than that described on the packaging or recommended by a health care professional. | |
| **Possession** | **2** |
| **Use** | **2** |
| **Sale** | **3** |
| **Share** | **3** |
| **Inhalants** <br> Inhalants include medications, anesthetics, or other compounds in vapor or aerosol form, taken by inhalation. This does NOT include e-cigarettes or hookah sticks. | |
| **Possession** | **4** |
| **Use** | **4** |
| **Sale** | **5** |
| **Share** | **5** |
| **Unknown Drug** | |
| **Possession** | **4** |
| **Use** | **4** |
| **Sale** | **5** |
| **Share** | **5** |
| **Substance Represented as of Illicit Drug** <br> A substance that is not an illicit drug but that is represented as, and could be perceived as being, an illicit drug. | |
| **Possession** | **4** |
| **Use** | **4** |
| **Sale** | **5** |
| **Share** | **5** |
| **Prescription Drugs, Inappropriate use of** <br> Medicines obtained with the lawful prescription of a health care professional.  Inappropriate use includes any use other than that described by the prescription. | **Mandatory report to law enforcement** |
| **Possession** | **4** |
| **Use** | **4** |
| **Sale** | **5** |
| **Share** | **5** |
| **Illicit Drug** <br> Illicit drugs include dangerous drugs, narcotic drugs, marijuana, and peyote as defined by A.R.S. § 13-3401, and appearing in any form, including seeds, plants, cultivated product, powder, liquid, pills, tablets, etc. | **Mandatory report to law enforcement** |
| **Possession** | **4** |
| **Use** | **4** |
| **Sale** | **5** |
| **Share** | **5** |
| **Alcohol Violation** <br> The violation of laws or ordinances prohibiting the manufacture, sale, purchase, transportation, possession or use of intoxicating alcoholic beverages or substances represented as alcohol. This includes being intoxicated at school, school-sponsored events and on school-sponsored transportation. | |
| **Possession** | **4** |

| | Use | 4 |
|---|---|---|
| | Sale | 5 |
| | Share | 5 |
| **Tobacco Violation**<br>The possession, use, distribution or sale of tobacco products on school grounds (including any device or substance that delivers nicotine- such as e-cigarettes, nicotine patches and hookah sticks), at school-sponsored events and on school-sponsored transportation.  (see A.R.S. §36-798.03). | | |
| | **Possession** | **2** |
| | Use | 2 |
| | Sale | 3 |
| | Share | 3 |
| **Possession of Drug Paraphernalia**<br>Drug paraphernalia means all equipment, products and materials of any kind which are used, intended for use or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a drug in violation of this chapter . (see A.R.S. § 13-3415 ) | | |
| | **Possession** | **2** |
| | Use | 2 |
| | Sale | 3 |
| | Share | 3 |

| **ARSON** | |
|---|---|
| *Definitions* | |
| **Structure:** a building or place with sides and a floor used for lodging, business, transportation, recreation, or storage | |
| **Occupied structure:** any structure in which one or more persons is, or is likely to be present, or is so near as to be in equivalent danger at the outset of the fire or explosion.  This includes any dwelling house, whether occupied or not. | |
| **Property**: anything other than a structure that is owned and has value of any kind (e.g., a backpack, school book, clothing, etc.). | |
| **Damage:** as used here, means a tangible or visible impairment to a surface. | |
| **Reckless Burning:** recklessly causing a fire or explosion resulting in damage to a structure, wild land, or property. (see A.R.S. § 13-1702). | |
| *Violation* | *Action Level* |
| **Arson of a Structure or Property**<br>A person commits arson of a structure or property by knowingly and unlawfully damaging a structure or property by knowingly causing a fire or explosion. (see A.R.S. § 13-1703)<br><br>*NOTE:  Burning one's own property is not arson, with the exception of burning one's own property with the knowledge that it will ignite another's property or a structure.  Burning one's own property may, where appropriate, be considered reckless burning.* | **4** |
| **Arson of an Occupied Structure**<br><br>A person commits arson of an occupied structure by knowingly and unlawfully damaging an occupied structure by knowingly causing a fire or explosion. (see A.R.S. § 13-1704) | **5**<br>**Mandatory report to law enforcement** |
| *NOTE: Administrators may consider acts of arson that are only reckless (as opposed to knowing or intentional), or that damage property with a value under $100, at Level 3.  Please see the definition of Reckless Burning above.* | |

| **ATTENDANCE POLICY VIOLATION (Out of school suspension is not permitted)** | |
|---|---|
| *Violation* | *Action Level* |
| **Other Attendance Violations**<br><br>**Examples:** leaving school, without signing out in the main office; leaving school at lunch, without a pass; obtaining a pass to go to a certain place and not reporting there; becoming ill and going home or staying in the restroom, instead of reporting to the nurse's office; or coming to school, but not attending classes. | **1** |
| **Tardy**<br><br>Arriving at school or class after the scheduled start time. | **1** |
| **Unexcused Absence** | **1** |

| | |
|---|---|
| When a student is not in attendance **for an entire day** and does not have an acceptable excuse. | |
| **Leaving School Grounds without Permission**<br><br>Leaving school grounds or being in an "out-of-bounds" area during regular school hours without permission of the principal or principal designee. | **1** |
| **Truancy**<br>When a child between 6-16 years of age has an unexcused absence for at least one class period during the day. | **1** |

| **DISHONESTY** | |
|---|---|
| *Violation* | *Action Level* |
| **Cheating**<br><br>To intentionally share with another, or take from another, intellectual property for the purpose of deceit or fraud, or to take or steal intellectual property from another with or without their knowledge and present it as the student's own. | **2** |
| **Forgery**<br><br>Falsely and fraudulently making or altering a document, including hall passes and parent signatures. | **2** |
| **Lying**<br>To make an untrue statement with intent to deceive or to create a false or misleading impression. | ~~2~~1 |
| **Plagiarism**<br>To steal and pass off the ideas or words of another as one's own, including material obtained online. | **2** |

**Comment [B28]:** So, a student who lies by saying something like I was late because my mom didn't get me to school on time, or my computer crashed, is committing a level 2 offense?

| **HARASSMENT AND THREAT, INTIMIDATION** | |
|---|---|
| *Violation* | *Action Level* |
| **Threat or Intimidation**<br><br>When a person indicates, by words or conduct, the intent to cause physical injury or serious damage to a person or their property, or intentionally places another person in reasonable apprehension of imminent physical injury.  This may include threats or intimidation that occurs online or through a telecommunication device. (see A.R.S. § 13-1202). | **3** |
| **Bullying**<br><br>Bullying is the repeated intimidation of students by the real or threatened infliction of physical, verbal, written, electronically transmitted, or emotional abuse, or through attacks on the property of another.  It may include, but not be limited to actions such as verbal taunts, name-calling and put-downs, including ethnically based or sex or gender-based verbal put-downs, and extortion of money or possessions. Bullying can be physical in form (e.g., pushing, hitting, kicking, spitting, stealing); verbal (e.g., making threats, taunting, teasing, name-calling); non-verbal; cyber-bullying (e.g., text messages, email, social networking); or psychological (e.g., social exclusion, spreading rumors, manipulating social relationships). | **3** |
| **Harassment, nonsexual**<br><br>A person commits harassment if, with intent to harass or with knowledge that the person is harassing another person, the person:<br>1. Anonymously or otherwise communicates or causes a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses.<br>2. Follows another person in or about a public place for no legitimate purpose after being asked to desist.<br>3. Repeatedly commits an act or acts that harass another person.<br>4. Surveils or causes another person to surveil a person for no legitimate purpose.<br>5. On more than one occasion makes a false report to a law enforcement, credit or social service agency.  (see A.R.S. § 13-2921)<br><br>*NOTE: Bullying and Sexual Harassment are types of Harassment.  Indicate Harassment, nonsexual if the violation is not specifically Bullying or Sexual Harassment, or if the specific type of harassment is not known.* | **3** |
| **Hazing**<br><br>"Hazing" means any intentional, knowing or reckless act committed by a student, whether individually or in concert with other persons, against another student, and in which **both** of the following apply:<br><br>1. The act was committed in connection with an initiation into, an affiliation with or the maintenance of membership in any organization that is affiliated with an educational institution.  ("Organization" means an | **3** |

115

| | |
|---|---|
| athletic team, association, order, society, corps, cooperative, club or other similar group that is affiliated with the school and whose membership consists primarily of students enrolled at the school.). <br> 2. The act contributes a substantial risk of potential physical injury, mental harm or degradation or causes physical injury, mental harm or personal degradation.  (see A.R.S. § 15-2301) <br><br> *Administrators **may** treat incidents of hazing at a Level 4 as appropriate to the situation, and in conjunction with the Department of Student Equity and Intervention | |

### HOMICIDE; KIDNAPPING

| Violation | Action Level |
|---|---|
| **Homicide** <br><br> Includes first degree murder, second degree murder, manslaughter or negligent homicide, and intentionally or recklessly causing the death of another person.  (see A.R.S. § 13, Chapter 11) | **5** <br> **Mandatory report to law enforcement** |
| **Kidnapping** <br><br> Knowingly restraining another person with the intent to hold the victim for ransom, as a shield or hostage; or hold the victim for involuntary servitude; or inflict death, physical injury a sexual offense on the victim, or to otherwise aid in the commission of a felony; or place the victim or a third person in reasonable apprehension of imminent physical injury to the victim or such third person. (see A.R.S. § 13-1304) | **5** <br> **Mandatory report to law enforcement** |

### OTHER VIOLATIONS OF SCHOOL POLICIES

| Violation | Action Level |
|---|---|
| **Dress Code Violation** <br><br> Student wears clothing that does not fit within the dress code guidelines stated by school or district policy. | **1** |
| **Parking Lot Violation** <br><br> **Examples:** unsafe driving in the parking lot, parking in unauthorized areas, parking in fire lanes or disabled persons space/area, parking in two or more parking spaces with one vehicle, excessive audio or radio sound, blocking driveway or access, or littering. | **1** |
| **Public Display of Affection** <br><br> Inappropriate displays of affection (i.e. kissing) | **1** |
| ~~Other Violation of School Policies and Regulations~~ THIS IS PECULIAR. IT APPEARS IN A SECTION OF THE ABOUT THE  SAME NAME. WHY IS IT NECESSARY? <br><br> Other violations of written school, or district-wide, policy or regulation. | **2** |
| **Contraband** <br><br> Items stated in school policy as prohibited because they may disrupt the learning environment. | **2** |
| **Combustible** <br><br> Student is in possession of substance or object that is readily capable of causing bodily harm or property damage. (e.g. matches, lighters) | **2** |
| **Disruption** <br><br> Student engages in behavior causing an interruption in a class or activity.  Disruption includes sustained loud talk, yelling, or screaming; noise with materials; horseplay or roughhousing; or sustained out-of-seat behavior. | **2** |
| **Gambling** <br><br> To play games of chance for money or to bet a sum of money. | **2** |
| **Language, Inappropriate** <br><br> Delivering verbal messages that include swearing, name calling, or use of words in an inappropriate way. | **2** |
| **Defiance or Disrespect Towards Authority and Non Compliance** | **2** |

| | |
|---|---|
| Student engages in refusal to follow directions, talks back, or delivers socially rude interactions | |
| **Negative Group Affiliation / Illegal Organization**<br><br>Clubs, fraternities, sororities, anti-social organizations, secret societies, criminal street gangs, and other sets of individuals that are not sanctioned by the Governing Board and which are determined to be disruptive to teaching and learning. This includes wearing of symbolic apparel, making gestures, writing on and marking of property, or altering of personal appearance to symbolize membership in an organization with a history of, or determined to be, a disruption to teaching and learning. | **3** |

**Comment [B29]:** THIS SECTION, BY LISTING THINGS LIKE NAME CALLING AS #2 OFFENCES, LEGITIMATES SUSPEN SION FOR SUCH ACTIONS AND ILLUSTRATES WHY SUSPENSION SHOULD NOT BE AN OPTION FOR LEVEL 2 OFFENSES.

## SCHOOL THREAT OR INTERFERENCE

### Definitions

Threatening an educational institution (School Threat) means to interfere with or disrupt an educational institution by doing any of the following:

1. For the purpose of causing, or in reckless disregard of causing, interference with or disruption of an educational institution, threatening to cause physical injury to any employee of an educational institution or any person attending an educational institution.
2. For the purpose of causing, or in reckless disregard of causing, interference with or disruption of an educational institution, threatening to cause damage to any educational institution, the property of any educational institution, the property of any employee of an educational institution or the property of any person attending an educational institution.
3. Going on or remaining on the property of any educational institution for the purpose of interfering with or disrupting the lawful use of the property or in any manner as to deny or interfere with the lawful use of the property by others.
4. Refusing to obey a lawful order to leave the property of an educational institution.

*NOTE: "interference with or disruption of" includes only those acts that might reasonably lead to the evacuation or closure of a school property or to the postponement, cancellation, or suspension of any class or other school activity (though actual evacuation, closure, postponement, cancellation or suspension is not required).*

| Violation | Action Level |
|---|---|
| **Fire Alarm Misuse**<br><br>Intentionally ringing fire alarm when there is no fire. | **4** |
| **Other School Threat**<br><br>An incident, not coded in the School Threat category, which involves threatening an educational institution. | **5**<br>**Expulsion**<br>**required by law** |
| **Bomb Threat**<br><br>Threatening an educational institution by using or threatening to use a bomb, or arson-causing device. | **5**<br>**Expulsion**<br>**required by law** |
| **Chemical or Biological Threat**<br><br>Threatening an educational institution by using or threatening to use dangerous chemicals or biological agents. | **5**<br>**Expulsion**<br>**required by law** |

## SEXUAL OFFENSES

| Violation | Action Level |
|---|---|
| **Harassment, Sexual**<br><br>Sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other verbal, graphic, written, or physical conduct of a sexual nature where such conduct has the purpose or effect of creating an intimidating, hostile, or offensive educational environment.  Sexual harassment can include nonverbal forms (e.g., "sexting," tweeting, or otherwise sending messages through networking sites and/or telecommunication devices), or physical conduct of a sexual nature. | **3** |
| **Pornography**<br><br>Pornography is the sexually explicit and obscene depiction of persons, in words or images.<br><br>**Examples:** viewing and/or sharing nude or sexually-charged images (non-art, non-educational) of  people in books, magazines,  electronic devices, or on the internet; using an electronic device to send or receive nude images, partially-nude images, or images that are sexual in nature ("i.e. sexting"), or drawing nude images, partially-nude images, or images that are sexual in nature that have no redeeming educational value. | **3** |
| **Harassment, Sexual with contact**<br><br>Sexual harassment that includes physical contact. | **4** |

| | |
|---|---|
| **Indecent Exposure or Public Sexual Indecency**<br><br>A violation of A.R.S. § 13-1402 Indecent exposure, § 13-1403 Public sexual indecency, or engaging in other sexual acts.<br><br>**Examples**: public urination, streaking, masturbation, "peeping tom" (including taking photos or videotaping), exposing another student's private parts, or engaging in intercourse, or oral sex. | **4** |
| **Sexual Assault or Rape**<br><br>A violation of A.R.S. § 13-1406 Sexual assault | **5**<br>**Mandatory report to law enforcement** |
| **Sexual Abuse or Sexual Conduct with minor, or Child Molestation**<br><br>A violation of A.R.S. § 13-1404 Sexual abuse, § 13-1405 Sexual conduct with a minor, or § 13-1410 Child Molestation. | **5**<br>**Mandatory report to law enforcement** |

| TECHNOLOGY, IMPROPER USE OF | |
|---|---|
| *Violation* | *Action Level* |
| **Telecommunication Device**<br><br>**Examples:** use of telecommunication devices (cell phones, pagers, etc.) for non-instructional purpose | **1** |
| **Other Technology**<br><br>**Examples:** Nintendo DS, iPods, MP3 players, etc. | **1** |
| **Computer**<br><br>**Examples:** use of school computers for non-instructional purpose, copyright or trademark infringement, knowingly uploading or downloading destructive or malicious programs or software,  loading personal software or disks onto school computers without permission of an  administrator, vandalism of computers or computer equipment. | **2** |
| **Network Violation**<br><br>**Examples:** use of computer network for non-instructional purpose, knowingly uploading or downloading destructive or malicious programs or software, sharing passwords, attempting to read, delete, copy or modify the email of other users, accessing secure areas other than for educational purposes, transmitting material information or software in violation of any district policy or regulation, local, state or federal law or regulation, or tampering with or misuse of the computer networking system or taking any other action inconsistent with this regulation will be viewed as a network violation. | **3** |

| THEFT | |
|---|---|
| *Violation* | *Action Level* |
| **Petty Theft**<br><br>Thefts for cash, or property, valued under $100. | **2** |
| **Theft – School Property or Non-School Property**<br><br>A person commits theft if, without lawful authority, the person knowingly:<br>b. Controls property of another with the intent to deprive the other person of such property; or<br>c. Converts for an unauthorized term or use services or property of another entrusted to the defendant or placed in the defendant's possession for a limited, authorized term or use; or<br>d. Obtains services or property of another by means of any material misrepresentation with intent to deprive the other person of such property or services; or<br>e. Comes into control of lost, mislaid or misdelivered property of another under circumstances providing means of inquiry as to the true owner and appropriates such property to the person's own or another's use without reasonable efforts to notify the true owner; or<br>f. Controls property of another knowing or having reason to know that the property was stolen; or<br>g. Obtains services known to the defendant to be available only for compensation without paying or an agreement to pay the compensation or diverts another's services to the person's own or another's benefit without authority to do so. (see  A.R.S. § 13-1802) | **3** |
| **Burglary or Breaking and Entering** | **4** |

| | |
|---|---|
| Entering or remaining unlawfully in or on the personal property of another, a classroom, a residential structure or yard or a nonresidential structure or in a fenced commercial property with the intent to commit any theft or any felony therein. (see A.R.S. § 13-1506 - § 13-1507) | |
| **Extortion**<br><br>A person commits theft by extortion by knowingly obtaining or seeking to obtain property or services by means of a threat to do in the future any of the following:<br>1. Cause physical injury to anyone by means of a deadly weapon or dangerous instrument.<br>2. Cause physical injury to anyone except as provided in paragraph 1 of this subsection.<br>3. Cause damage to property.<br>4. Engage in other conduct constituting an offense.<br>5. Accuse anyone of a crime or bring criminal charges against anyone.<br>6. Expose a secret or an asserted fact, whether true or false, tending to subject anyone to hatred, contempt or ridicule or to impair the person's credit or business.<br>7. Take or withhold action as a public servant or cause a public servant to take or withhold action.<br>8. Cause anyone to part with any property.   (see A.R.S. § 13-1804) | **4** |
| **Robbery**<br><br>A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property. (see A.R.S. § 13-1902) | **4** |
| **Armed Robbery**<br>A person commits armed robbery if, in the course of committing robbery (see definition above) such person or an accomplice;<br>1. Is armed with a deadly weapon or a simulated deadly weapon; or<br>2. Uses or threatens to use a deadly weapon or dangerous instrument or a simulated deadly weapon.<br>  (see A.R.S. § 13-1904) | **5**<br>**Mandatory report to law enforcement** |
| **Burglary (First Degree)**<br><br>A person commits burglary in the first degree if such person or an accomplice enters or remains unlawfully in or on a residential structure or yard or a nonresidential structure or in a fenced commercial with the intent to commit any theft or any felony therein (see A.R.S. §13-1506-07) and knowingly possesses explosives, a deadly weapon or a dangerous instrument in the course of committing any theft or any felony.<br>(see A.R.S. § 13-1508) | **5**<br>**Mandatory report to law enforcement** |

## TRESPASSING; VANDALISM OR CRIMINAL DAMAGE

*Definitions*

**Criminal damage:** Willful destruction or defacement of school property, commercial property located on school property, or personal property of another person, so as to substantially impair its function or value in an amount of five thousand dollars or more. Administrators may consider acts of vandalism that result in damages exceeding $5,000 in value at a Level 4.

**Examples:** Substantial destruction of copy machines, school vehicles, student vehicles, or certain technology, science, or computer equipment.

| *Violation* | *Action Level* |
|---|---|
| **Trespassing**<br><br>To enter or remain on a public school campus or school board facility without authorization or invitation and with no lawful purpose for entry.  This includes students under suspension or expulsion and unauthorized persons who enter or remain on a campus or school board facility after being directed to leave by the chief administrator or designee of the facility, campus or function. | **2** |
| **Graffiti or Tagging**<br><br>Writing on walls; drawings or words that are painted or sprayed on walls and/ or other surfaces that can be easily removed with soap or cleaner. | **2** |
| **Vandalism of Personal property**<br><br>Willful destruction or defacement of personal property. | **3** |
| **Vandalism of School Property** | **3** |

| | |
|---|---|
| Willful destruction or defacement of school property.<br><br>**Examples:** Destroying school computer records, carving initials or words in desk top, spray painting on walls, or damaging vehicles. | |

## WEAPONS AND DANGEROUS ITEMS (POSSESSION OF)

| Violation | Action Level |
|---|---|
| **Dangerous Items**<br><br>Knife with a blade length of less than 2.5 inches, air soft gun, b.b.gun, laser pointer, letter opener, mace/pepper spray, paintball gun, pellet gun, razor blade/box cutter, simulated knife, taser or stun gun, tear gas, firecrackers, smoke and stink bombs, gas, lighter fluid, and other dangerous items (anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury).<br><br>**Mandatory report to law enforcement if under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury.** | **3** |
| **Other Weapons**<br><br>**Examples:** Billy club, brass knuckles, knife with a blade length of at least 2.5 inches, nunchakus.<br><br>**Mandatory report to law enforcement if under the circumstances in which it is used, attempted to be used or threatened to be used the item is readily capable of causing death or serious physical injury.** | **4** |
| **Simulated Firearm**<br><br>Possession of a simulated firearm made of plastic, wood, metal or any other material which is a replica, facsimile, or toy version of a firearm.<br><br>If the simulated firearm is used to threaten or intimidate, the violation will be considered a level 4. | **3** |
| **Firearms**<br><br>Firearm means any loaded or unloaded handgun, pistol, revolver, rifle, shotgun or other weapon that will expel, is designed to expel or may readily be converted to expel a projectile by the action of an explosive. Firearm does not include a firearm in permanently inoperable condition. (see A.R.S. § 13-3101)<br><br>Other Firearms – As defined for the Gun-Free Schools Act (GFSA) – includes - the frame or receiver of any weapon described above; Any firearm muffler or firearm silencer; Any destructive device, which includes: Any explosive, incendiary, or poison gas: Bomb; Grenade; Rocket having a propellant charge of more than four ounces; Missile having an explosive or incendiary charge of more than one-quarter ounce, Mine or similar device. Any weapon which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter. Any combination of parts either designed or intended for use in converting any device into any destructive device described in the two immediately preceding examples, and from which a destructive device may be readily assembled. (see 18 U.S.C. 921)<br><br>*NOTE: This definition does not apply to items such as toy guns, colorful plastic water guns, cap guns, bb guns, and pellet guns)* | **5**<br>**Expulsion required by law**<br><br>**Mandatory report to law enforcement** |

**INDEX *REVISE AFTER FINAL REVISIONS***

Abeyance Contracts, 16, 17
Action Levels, 18
Aggression, 20
    Aggravated Assault, 20
    Assault, 20
    Disorderly Conduct, 20
    Endangerment, 20
    Fighting, 20
    Minor Aggressive Act, 20
    Other Aggression, 20
    Recklessness, 20
    Verbal Provocation, 20
Alcohol, Tobacco and other Drugs, 21-22
    Alcohol Violation, 21
    Illicit Drugs, 21
    Inhalants, 21
    Over the Counter Drugs, 21
    Possession of Drug Paraphernalia, 22
    Prescription Drugs, 21
    Substance Represented as of Illicit Drug, 21
    Tobacco Violation, 22
    Unknown Drug, 21
Anti-Harassment Policy, 11
Appeals, 17
Arson, 22
    Arson of an Occupied Structure, 22
    Arson of a Structure or Property, 22
Attendance Policy, 11
Attendance Violation, 22
    Leaving School Grounds, 22
    Other Attendance Violations, 22
    Tardy, 22
    Truancy, 23
    Unexcused Absence, 22
Bus Rules, 10
Bullying, Intimidation & Harassment, 11, 23

Cell Phones, 11
Dating Abuse, 11
Dishonesty, 23
    Cheating, 23
    Forgery, 23
    Lying, 23
    Plagiarism, 23
Dress Code, 9-10
Due Process for General Education Students, 14-15
Due Process for Exceptional Education Students, 15
Expulsions, 17
Gang Activity, 9
General Information, 9-13
    Anti-Harassment Policy, 9
    Governing Board Position, 9
    School Dress Code, 9-10
    Bus Rules, 10
    Student Attendance, 11
    Bullying, Intimidation & Harassment, 11
    Dating Abuse, 11
    Cell Phones, 11
Harassment, Threats and Intimidation, 23
    Bullying, 23
    Harassment, nonsexual, 23
    Hazing, 23
    Threat or Intimidation, 23
Hazing, 12-13, 23
Homicide, 23
Kidnapping, 23
Know the Actions, 18-28
    Abeyance Contracts, 18, 19
    Administration of Guidelines, 14
    Appeals, 17
    Conduct Which Must be Reported, 14
    Conduct Which May be Reported, 14
    Due Process for Students, 14-15

Expulsions, 17
    Out of School Suspensions, 15-16
        Short-Term Suspension, 15
        Long-Term Suspension, 16
    Principal Application for Waiver, 17
Law Enforcement, Reports to, 14
Other Violations of School Policies, 24
    Combustible, 24
    Contraband, 24
    Defiance or Disrespect, 24
    Disruption, 24
    Dress Code Violation, 24
    Gambling, 24
    Language, Inappropriate, 24
    Negative Group Affiliation, 24
    Other Violation of Policies, 24
    Parking Lot Violation, 24
    Public Display of Affection, 24
Out of School Suspensions, 15-16
Purpose, 4
    What are the Guidelines, 4
    When are Guidelines in Force, 4
Rights & Responsibilities, 5-8
    Students Have a Right to, 5
    Students Have a Responsibility to, 6
    Parents/Guardians Have a Right to, 6-7
    Parents/Guardians Have a Responsibility to, 7
    Teachers Have a Right to, 7
    Teachers Have a Responsibility to, 8
    Administrators Have a Right to, 8
    Administrators Have a Responsibility to, 8


School Threat, 25
    Bomb Threat, 25
    Chemical or Biological Threat, 25
    Fire Alarm Misuse, 25
    Other School Threat, 25
Sexual Offenses, 25
    Harassment, Sexual, 25
    Harassment, Sexual with contact, 25
    Indecent Exposure/Public Sexual Indecency, 25
    Pornography, 25
    Sexual Abuse, 25

    Sexual Assault or Rape, 25
Technology, Improper Use of, 26
    Computer, 26
    Network Violation, 26
    Other Technology, 26
    Telecommunication Device, 26
Theft, 26-27
    Armed Robbery, 27
    Burglary or Breaking & Entering, 26
    Burglary (First Degree), 27
    Extortion, 26
    Petty Theft, 26
    Robbery, 27
    Theft-School/Non-School Property, 26
Trespassing, 27


Vandalism, 27
    Graffiti or tagging, 27
    Vandalism of Personal Property, 27
    Vandalism of School Property,  27
Violations & Actions, 15-28
    Aggression, 20
    Alcohol, Tobacco & Other Drugs, 21-22
    Arson, 22
    Attendance Violation, 22-23
    Dishonesty, 23
    Harassment and Threat, Intimidation, 23
    Homicide, 24
    Kidnapping, 24
    Other Violations of School Policies, 24
    School Threat, 25
    Sexual Offenses, 25
    Technology, Improper Use of, 26
    Theft, 26-27
    Trespassing, 27
    Vandalism or Criminal Damage, 27
    Weapons & Dangerous Items, 28
Weapons, 28
    Dangerous Items, 28
    Firearms, 28
    Other Weapons, 28
    Simulated Firearms, 28

**TUSD ANNUAL NOTIFICATION OF PRIVACY RIGHTS OF PARENTS AND STUDENTS**

The Family Educational Rights and Privacy Act (FERPA) affords parents and "eligible students" (students over 18 years of age, or who attend an institution of postsecondary education) certain rights regarding the student's education records.  These rights are:

**(1) The right to inspect and review the student's education records within 45 days from the day TUSD receives a request.**

The parent(s) and/or eligible student may inspect and review student's education records, and TUSD policies and regulations governing use of those records, by making an appointment with the student's school principal.  A copy of state and federal statutes and regulations concerning student records is available for reasonable inspection in the Office of the Superintendent or designee, 1010 E. 10th Street, Tucson, Arizona.  A list of the types of records maintained, and an explanation of any record, will be provided by appropriate TUSD personnel upon request.

Federal law assumes that both parents are equally entitled to review their child's records. If there is a custody order in place that prohibits the provision of this information to one parent, please provide TUSD with a copy of the custody order, signed by a judge.

**(2) The right to request the amendment of the student's education records that the parent(s) and/or eligible students believes are inaccurate, misleading, or otherwise in violation of the student's privacy rights under FERPA.**

Such a request must be in writing to the student's school principal, must clearly identify the part of the record they want changed, and must specify why it should be changed.  If TUSD, decides not to amend the record as requested by the parent(s) and/or eligible student, TUSD will notify the parent(s) and/or eligible student of the decision, and the parent(s) and/or eligible student may further request a hearing regarding the request for amendment, as provided by federal and state statutes, rules and regulations.

**(3) The right to privacy of personally identifiable information in the student's education records, except to the extent that FERPA authorizes disclosure without consent.**

TUSD must obtain the written consent of the parent or eligible student prior to releasing personally identifiable information from the education records of a student, except in circumstances where federal and state law authorize disclosure without consent, such as disclosure to school officials with legitimate educational interests. A school official is a person employed by TUSD as an administrator, supervisor, instructor, or support staff member (including health or medical staff and law enforcement unit personnel); a Governing Board member; a person or company with whom TUSD has outsourced services or functions it would otherwise use its own employees to perform (such as an attorney, auditor, medical consultant, or therapist); a parent or student serving on an official committee, such as a disciplinary or grievance committee; or a parent, student, or other volunteer assisting another school official in performing his or her tasks. A school official has a legitimate educational interest if the official needs to review an education record in order to fulfill his or her professional responsibility.

Upon request, schools will disclose education records, without consent, to officials of another school district in which a student seeks or intends to enroll, or is already enrolled if the disclosure is for purposes of the student's enrollment or transfer.

**(4) The right to file a complaint with the U.S. Department of Education concerning alleged failures by TUSD to comply with the requirements of FERPA.**

Any complaints arising from an alleged violation of these rights may be submitted to the Superior Court of Pima County, Arizona, or to:

The Family Policy Compliance Office
U.S. Dep't of Education
400 Maryland Avenue, SW
Washington, D.C. 20202
(202) 260-3887

Directory Information

FERPA requires that TUSD, with certain exceptions, obtain a parent's/guardian's written consent prior to the disclosure of personally identifiable information from your child's education records. However, TUSD may disclose appropriately designated "directory information" without written consent, unless you have advised TUSD to the contrary in accordance with TUSD procedures (see Administrative Regulation 5130). The primary purpose of directory information is to allow TUSD to include this type of information from your child's education records in certain school publications, such as:

- The annual yearbook;
- Honor roll or other recognition lists;
- Graduation programs; and
- Sports activity sheets showing weight/height of team members.

Directory information, which is information that is generally not considered harmful or an invasion of privacy if released, can also be disclosed to outside organizations without a parent's prior written consent. Outside organizations include, but are not limited to, companies that manufacture class rings or publish yearbooks. In addition, two federal laws require local educational agencies (LEAs) receiving assistance under the *Elementary and Secondary Education Act of 1965* (ESEA) to provide military recruiters, upon request, with the following information – names, addresses and telephone listings – unless parents have advised the LEA that they do not want their student's information disclosed without their prior written consent.

If you do not want TUSD to disclose directory information from your child's education records without your prior written consent, you must notify TUSD on TUSD Form 274, prior to October 1st.  TUSD has designated the following information as directory information:

Name, address, parent or guardian telephone listing, email address, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, grade level, enrollment status, degrees (diplomas) and awards received, the most recent previous educational agency or institution attended by the student, personally identifiable photographs, videotapes, films and other visual media, personally identifiable interviews, either audio only or audio and visual, and other similar information.

Under federal law, this information is considered directory information and does not require the written consent of a parent/eligible student to release. If you object to the release of directory information you must notify the principal or designee of the school, in writing, on TUSD Form 274, prior to October 1st.  If Form 274 is not received by October 1st, it will be assumed that there is no objection to releasing such information. This procedure shall be done annually.  Pursuant to federal law, upon request, TUSD may disclose education records without prior parental/eligible student consent, to officials of another school district in which a student seeks or intends to enroll. For further information, contact the Principal's Office at the school where the student(s) attend in TUSD.

**TUSD ANNUAL NOTIFICATION OF RIGHTS UNDER THE PROTECTION OF PUPIL RIGHTS AMENDMENT (PPRA)**

PPRA affords parents certain rights regarding our conduct of surveys, collection and use of information for marketing purposes, and certain physical exams. These include the right to:

**(1) Consent before students are required to submit to a survey that concerns one or more of the following protected areas ("protected information survey") if the survey is funded in whole or in part by a program of the U.S. Dep't of Education (ED) –**

1. Political affiliations or beliefs of the student or student's parent;
2. Mental or psychological problems of the student or student's family;
3. Sex behavior or attitudes;
4. Illegal, anti-social, self-incriminating, or demeaning behavior;
5. Critical appraisals of others with whom respondents have close family relationships;
6. Legally recognized privileged relationships, such as with lawyers, doctors, or ministers;
7. Religious practices, affiliations, or beliefs of the student or parents; or
8. Income, other than as required by law to determine program eligibility.

**(2) Receive notice and an opportunity to opt a student out of –**

1. Any other protected information survey, regardless of funding;
2. Any non-emergency, invasive physical exam or screening required as a condition of attendance, administered by the school or its agent, and not necessary to protect the immediate health and safety of a student, except for hearing, vision, or scoliosis screenings, or any physical exam or screening permitted or required under State law; and
3. Activities involving collection, disclosure, or use of personal information obtained from students for marketing or to sell or otherwise distribute the information to others.

**(3) Inspect, upon request and before administration or use –**

1. Protected information surveys of students;
2. Instruments used to collect personal information from students for any of the above marketing, sales, or other distribution purposes; and
3. Instructional material used as part of the educational curriculum.

These rights transfer from the parents to a student who is 18 yrs old, or an emancipated minor under State law.

TUSD will develop and adopt policies, in consultation with parents, regarding these rights, as well as arrangements to protect student privacy in the administration of protected information surveys and the collection, disclosure, or use of personal information for marketing, sales, or other distribution purposes.

TUSD will directly notify parents of these policies at least annually at the start of each school year and after any substantive changes. TUSD will also directly notify, such as through U.S. Mail or email, parents of students who are scheduled to participate in the specific activities or surveys noted below and will provide an opportunity for the parent to opt his or her child out of participation of the specific activity or survey.

TUSD will make this notification to parents at the beginning of the school year if the District has identified the specific or approximate dates of the activities or surveys at that time. For surveys and activities scheduled after the school year starts, parents will be provided reasonable notification of the planned activities and surveys listed below and be provided an opportunity to opt their child out of such activities and surveys. Parents will also be provided an opportunity to review any pertinent surveys. Following is a list of the specific activities and surveys covered under this requirement:

•Collection, disclosure, or use of personal information for marketing, sales, or other distribution.
•Administration of any protected information survey not funded in whole or in part by ED.
•Any non-emergency, invasive physical examination or screening as described above.

Parents who believe their rights have been violated may file a complaint with:

Family Policy Compliance Office
U.S. Department of Education
400 Maryland Avenue, SW
Washington, D.C. 2020

---

## *YOUR SCHOOL IS A*

# *SAFE-T-ZONE*

---

## *IF YOU SEE IT*

| | |
|---|---|
| ✎ *DRUGS* | ✎ *VIOLENCE* |
| ✎ *FIGHTS* | ✎ *WEAPONS* |
| ✎ *GANGS* | ✎ *NON-STUDENTS* |
| ✎ *ASSAULTS* | ✎ *GRAFFITI* |
| ✎ *TRUANCY* | ✎ *THREATS* |

## R E P O R T   I T!
### CONFIDENTIALITY GUARANTEED

### TELL A SCHOOL OFFICIAL OR CALL

---

### *TUSD SAFETY MESSAGE LINE*
### *584-7680*

---

- MESSAGES CHECKED HOURLY DURING SCHOOL -
- DAILY ON NON-SCHOOL DAYS -

**DISCRIMINATION STATEMENT:** Tucson Unified School District does not discriminate on the basis of race, color, religion/religious beliefs, sex, gender, gender identity, age, national origin, sexual orientation, , creed, citizenship status, marital status, political beliefs/affiliation, disability, home language, or family, social or cultural background in admission or access to, or treatment or employment in, its educational programs or activities.  Inquiries concerning Title VI, Title VII, Title IX, Section 504, and Americans with Disabilities Act may be referred to TUSD's EEO Compliance Officer, 1010 East Tenth Street, Tucson, Arizona 85719, (520) 225-6444, or to the Office for Civil Rights, U.S. Department of Education, 1244 Speer Boulevard, Denver, Colorado 80204.  See Board Policies AC "Non-Discrimination," and ACA "Sexual Harassment" for more information.

E. District Response to Fisher Objections



## Desegregation Administration

P O Box 40400, Tucson, AZ 85717-0400 · phone (520) 225-6067 · fax (520) 225-6058

**Samuel E. Brown, Desegregation Director**
**Norma Faras, Sr. Program Coordinator - Richard Haan, Sr. Program Coordinator**

MEMORANDUM

DATE:         September 13, 2013

TO:           Dr. Willis Hawley, Special Master

FROM:         Samuel E. Brown, Desegregation Director

SUBJ:         GSRR Objections from the Fisher Plaintiffs

### A.  Background

On June 22, 2013, the Parties were provided with a revised version of the Guidelines for Student Rights and Responsibilities (GSRR, aka Student Handbook). Pursuant to the USP, the Parties had 30 days to provide input on the development of the revised GSRR prior to the Governing Board voting to approve it on July 23, 2013. The District, in an attempt to ensure collaboration and communication between all stakeholders (Parties, Staff, and Governing Board), requested that the Parties send preliminary comments by July 8 – sixteen days after the GSRR was submitted.

On July 12, 2013, Counsel Salter submitted a set of 22 preliminary comments on July 12. Actionable input related to the GSRR is identified in **bold,** non-actionable input (as relates to revising the GSRR) is indicated by "N/A."

|    | Issue | District Response |
|----|-------|-------------------|
|    | Introductory comment | N/A |
| 1. | | |
| 2. | Plaintiff review of the final document. | District sent 7.23.13 Board-Approved version to the Parties on 8.1.13; and send the 8.13.13 Board-Approved version to the Parties on 8.14.13. |
|    | **User-Friendly table grouping offenses.** | **Followed: Added to the GSRR.** |
| 3. | Whether PBIS/RP should be combined, and confusion it creates. | N/A, mandated by the USP |
| 4. | Request for information about staff. | N/A |
| 5. | Request for information about training/staff. | N/A |
| 6. | **Message dilution and contradictory requirements.** | **Followed. Clarified contradictions and inconsistencies in 8.13.13** |

| | | version. |
|---|---|---|
| 7. | Request for information about monitoring. | N/A |
| 8. | Request for information about accountability. | N/A |
| 9. | **Request for information about expert feedback.** | **Followed. Process in place to do so in future.** |
| 10. | **Provide more clarity.** | **Followed. Clarified contradictions and inconsistencies in 8.13.13 version.** |
| 11. | **Provide detailed comments to the Special Master comments.** | **Somewhat Followed. Detailed comments were provided to the Special Master, not the Parties.** |
| 12. | **Increase description of teacher and administrator rights and responsibilities.** | **Did not follow.** |
| 13. | **In the GSRR, describe discipline monitoring and implementation** | **Did not follow.** |
| 14. | **In the GSRR, describe how District will correct the alleged past practice of sending students home w/o notifying their parents** | **Did not follow.** |
| 15. | **In the GSRR, describe how District will correct the alleged past practice of sending students home w/o suspending them** | **Did not follow.** |
| 16. | **In the GSRR, describe how District will correct the alleged past practice of sequential imposition of ISS and OSS** | **Did not follow.** |
| 17. | **Dating Abuse language should be amended.** | **Somewhat followed, language stems from policy currently under review to align to GSRR and to this comment.** |
| 18. | **Clearer detail and guidance for staff.** | **Followed: Added to GSRR** |
| 19. | Request for information about police involvement | N/A |
| 20. | **Use of cellphones by staff; confiscation of items** | **Somewhat followed: incorporated this comment into our training, reviewing policy language on confiscation of items** |
| 21. | Request for information on staff that apply discipline; and monitoring to ensure they are following their duties | N/A |
| 22. | Request for changes to our monitoring process | N/A |

While these 22 comments do include some implied concern about monitoring and implementation, the District determined those concerns were more appropriately addressed in other activities and should not be described in the GSRR.  At this time, the Fisher Plaintiffs raised no concerns about abeyances, timeliness of special education hearings, or hearing officers. By July 22, 2013, the District had not received any additional comments or input from the Fisher Plaintiffs. Thus, the District only received preliminary comments from the Fisher Plaintiffs.

On July 23, 2013, the Governing Board approved the GSRR. The approval was subject to some minor revisions based on Board comments. The Board-approved version was not sent to the parties as staff scheduled a meeting with the Special Master, at his request, to address remaining concerns during his visit the following week. The following week, the Special Master visited Tucson and met with staff on the GSRR to consider additional changes to clarify inconsistencies.  On August 1, after meeting with the Special Master, the District sent the revised version to the parties (including the Board and Special Master revisions).

On August 7, after meeting with the representative from the Department of Justice, the District made further clarifying revisions. On August 13, the Governing Board approved the final version of the GSRR which included the revisions made as a result of further consultation with the Special Master and the DOJ.

On August 26, 2013, the Fisher Plaintiff submitted comments on the GSRR. These comments, though they came after the item had already been approved, were technically within 30 days of the submission of the revised version on August 1, 2013. Arguably, there is still confusion about whether parties get 30 days to review an item – as described in the USP, or if parties get 30 days to review each version of an item – as could also be inferred from the USP.

On September 9, 2013, within 30 days of the approval of the GSRR on August 13, 2013, Counsel Salter for the Fisher Plaintiffs wrote a request to file an objection to the GSRR. This was clearly later than 30 days from the first set of preliminary comments on July 26, 2013, but within 30 days of their subsequent comments on August 26, 2013. Counsel Salter states:

> *I write to inform you that the Fisher Plaintiffs herewith object to the version of the Guidelines for Student Rights and Responsibilities (GSRR) that was approved by the Tucson Unified School District (TUSD) Governing Board (GB) on 08/13/13. As you are aware, Section I (D) (1) of the Unitary Status Plan (USP) provides in relevant part that:*

> *If any disagreements cannot be resolved within thirty (30) days from the date Plaintiffs provide their comments to the District, the Special Master shall report such disagreements to the Court together with his recommendation concerning how the disagreement(s) should be resolved.  The Special Master's report shall include as attachments all submissions made to him by the Parties with respect to the item(s) in issue.  The Court may order additional briefing as it deems appropriate (at pages 6-7 of 02/20/13 order approving USP emphasis added).*

> *In timely compliance with these requirements (see your email of 09/04/13), please find attached hereto two documents (originally submitted to you and TUSD on 07/12/13 and 08/26/13) containing the Fisher Plaintiffs' unresolved and outstanding comments, recommendations and objections regarding the GSRR.*

> *I submit these two documents in the understanding that they will be entered into record as is (without modification, abbreviation or reformatting) as attachments to your report and recommendations to the Court.*

> *Additionally, and please let me know if you or any of the parties disagree, I interpret the governing language of the USP to require the attachment to your report of all submissions to you on the GSRR by all parties (to ensure that the Court benefits from the full spectrum of plaintiff feedback on the disputed review item).*

The Fisher Objections were as follows:

> *FISHER COMMENTS ON TUSD GSRR AS APPROVED BY TUSD GB:*

> 1. *The TUSD GSRR as approved by the TUSD GB does not address the use or discontinuance of abeyance contracts. In light of the changes in the District's GSRR, the Fisher Plaintiffs believe that the use of abeyance contracts should be discontinued.*

> 2. *The TUSD GSRR as approved by the TUSD GB does not provide for the continuing training for administrators or specify the consequences for an administrator's failure to adhere to the GSRR. The Fisher Plaintiffs believe the GSRR should include such provisions.*

3. *The TUSD GSRR as approved by the TUSD GB does not provide for the monitoring of administrators generally and administrators responsible for restorative practices in particular. The Fisher Plaintiffs believe that the GSRR should include such provisions.*

4. *In practice, in the past, District students have not always been duly apprised of their rights and responsibilities under the District's disciplinary policies and guidelines. For this reason, the Fisher Plaintiffs believe it is necessary to ensure that all District students are duly apprised of their rights and responsibilities under the GSRR.*

5. *In practice, in the past, administrators have not held disciplinary hearings for special education students in timely manner, and have thereby inappropriately increased the number of days such students are excluded from the classroom.*

6. *The hiring or continued employment of disciplinary hearing officers should be informed by past performance. Hearing officers should have experience as both teachers and administrators. Moreover, the Fisher Plaintiffs believe that it would run counter to the intent of the revision of the District's disciplinary policies to hire or employ disciplinary hearing officers previously employed in the criminal justice system as probation officers.*

## B. District Response

#1: Abeyances are a powerful tool to give students a second chance – a fundamental tenet of Restorative Practices –in lieu of excluding them from the classroom or from school. The District is anxious to discuss alleged abuse of this tool, as any item in the GSRR may be abused by an administrator and we all should be concerned with abuse.  But, eliminating an entire worthwhile Restorative Practice based on alleged past abuse is not aligned with the GSRR or the USP. This conversation would have been helpful to have during the first 30 days of comments, before the GSRR was approved by the Governing Board, but the District acknowledges it may be a potential issue for discussion and action outside – but aligned with – the actual language of the GSRR.

#2-4: The training, monitoring, and outreach of the GSRR, discipline practices, PBIS, RP, etc. is currently being developed, rolled-out, and implemented. Nothing in the USP requires or even implies that the GSRR should include explanations about these activities, only that the District complies with these requirements. Further, the July Report explains these activities in detail.

#5: This comment is outside of the scope of discussions about the GSRR, this is an appropriate consideration when we review and revise policies and regulations, and this is a comment about an alleged practice that, even if true, there is no evidence that is so widespread or pervasive that it should be systematically addressed.

#6: How or who the District hires as hearing officers is outside of the scope of discussions about the GSRR.

The GSRR is one piece of the USP's discipline section. Other pieces: training, monitoring, hearing officers, etc. are all things that can be addressed, but none of which are required by the USP to be stated or explained in the GSRR.  We are now in the process of aligning the discipline and inclusive school environments policies to the GSRR (as approved by the Board).  While it is certainly the parties' prerogative to raise objections, before we initiate a court report and recommendation, and more litigation, I would just like to point out that we have time (and the District has the will) to discuss and potentially to address most if not all of these issues raised in the upcoming comment and review period about the related policies and regulations.