1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                          **DISTRICT OF ARIZONA**

8   Roy and Josie Fisher, et al.,                      )
                                                        )
9                   Plaintiffs,                         )
    v.                                                  )
10                                                      )
    United States of America,                          )
11                                                      )
                    Plaintiff-Intervenor,               )
12                                                      )
    v.                                                  )
13                                                      )
    Anita Lohr, et al.,                                 )   CV 74-90  TUC DCB
14                                                      )   (lead case)
                    Defendants,                         )
15                                                      )
    and                                                 )
16                                                      )
    Sidney L. Sutton, et al.,                           )
17                                                      )
                    Defendants-Intervenors,             )
18  _____)
                                                        )   **ORDER**
19  Maria Mendoza, et al.,                              )
                                                        )
20                  Plaintiffs,                         )
                                                        )
21  United States of America,                           )
                                                        )
22                  Plaintiff-Intervenor,               )
                                                        )   CV 74-204 TUC DCB
23  v.                                                  )   (consolidated case)
                                                        )
24  Tucson Unified School District No. One, et al., )
                                                        )
25                  Defendants.                         )
    _____)

26

27

28

1    On June 3, 2014, the Special Master filed a Report and Recommendation (R&R)

2 (Doc. 1612) relating to TUSD's Action Plan for Recruitment and Retention, which is

3 TUSD's implementation plan for the Unitary Status Plan (USP), § IV, Administrators and

4 Certificated Staff, subsection C, Outreach and Recruitment, and subsection F, Retention..

5    Section IV.C.3 requires the following:

6    By April 1, 2013, the District shall develop and implement a plan to recruit
     qualified African American and Latino candidates for open administrator
7    and certificated staff positions. The plan shall be developed by the District
     recruiter with the input of a racially and ethnically diverse recruitment team
8    comprised of school-level and district-level administrators, certificated staff
     and human resources personnel. The plan shall address any and all
9    disparities identified in the Labor Market Analysis.

10   a. The District recruiter, with input from the recruitment team, shall take the
     following steps to implement the recruitment plan, and shall modify it
11   annually based on a review of the previous year's recruiting data and the
     effectiveness of past recruiting practices in attracting qualified African
12   American and Latino candidates and candidates with Spanish language
     bilingual certifications. The recruitment plan shall:

13
         i. Establish a nationwide recruiting strategy, based at
14       minimum on the outcome of the Labor Market Analysis, which
         shall include specific techniques to recruit African American and
15       Latino candidates and candidates with Spanish language bilingual
         certifications from across the country, including through: (i)
16       advertising job vacancies on national websites and publications,
         including career websites, national newspapers, education
17       publications, and periodicals targeting African American and
         Latino communities; (ii) recruiting at Historically Black Colleges
18       and Universities ("HBCUs"), through the Hispanic Association of
         Colleges and Universities ("HACU"), and at other colleges and
19       universities with teacher preparation programs serving significant
         numbers of African American and/or Latino students, including
20       providing vacancy announcements to campus career services
         offices; and (iii) attending local and state-wide job, diversity, and
21       education fairs and/or expos;

22       ii. Create a process to invite retired African American and
         Latino administrators and certificated staff to be considered for
23       open positions for which they are qualified;

24       iii. Incorporate strategies for building and utilizing
         partnerships with local employers that recruit nationally to promote
25       TUSD employment opportunities to their prospective employees
         and their families;

26

27

28                                           2

1

2

3

          iv. Develop local programs to identify and support local high school, college and university students to interest them in teaching careers, including, for college and university students, exploring and promoting opportunities for teaching in the District; and

4

          v. Encourage and provide support for African American and Latino non-certificated staff (e.g., paraprofessionals) who are interested in pursuing certification.

5

6

Section F, Retention, requires the following:

7

1. The District shall adopt measures intended to increase the retention of African American and Latino administrators and certificated staff, including, but not limited to, doing and/or taking into account the following:

8

9

a. Commencing with the effective date of this Order, on an ongoing basis, evaluating whether there are disparities in the attrition rates of African American and Latino administrators or certificated staff compared to other racial and ethnic groups. If disparities are identified, the District shall, on an ongoing basis, assess the reason(s) for these disparities and develop a plan to take appropriate corrective action. If a remedial plan to address disparate attrition is needed, it shall be developed and implemented in the semester subsequent to the semester in which the attrition concern was identified;

10

11

12

13

14

b. Surveying teachers each year using instruments to be developed by the District and disaggregating survey results by race, ethnicity, and school site to assess teachers' overall job satisfaction and their interest in continuing to work for the District. These surveys shall be anonymous; and

15

16

c. Conducting biannual focus groups of representative samples of District certificated staff to gather perspectives on the particular concerns of these staff in hard-to-fill positions (e.g., ELL and special education teachers) and/or who have been hired to fulfill a need specifically identified in this Order.

17

18

19

TUSD initially proposed a summary draft of the Outreach, Recruitment and

20

Retention (ORR) Plan in July 2013, and after revisions to flesh out the details of the ORR

21

Plan in February, March, and April, 2014, the Plaintiffs Mendoza, with Plaintiffs Fisher

22

joining, (R&R (Doc. 1612), Ex. B), asked the Special Master for a R&R to the District's

23

April 24, 2014, version of the Plan, *id.*, Ex. A-4.  Apparently, there was another version, May

24

5, 2014, without substantive changes, and subsequent to the R&R, on May 22, 2014, TUSD

25

agreed to further changes,  *id.*, Ex. F:ORR, which the Special Master concluded resolves

26

some of the issues he had raised in the R&R on behalf of the class-Plaintiffs.  The class-

27

28

3

1  Plaintiffs would not agree to withdrawal of the R&R, therefore, the Special Master noted

2  areas needing resolution and those he considered moot.  In addition to the Special Master's

3  recommendations, the Plaintiffs Mendoza filed objections to the R&R for omissions of two

4  issues: 1) retention provisions aimed at attrition disparity, and 2) advertising outreach

5  provisions.  Because TUSD's Objection was limited to the R&R, the Court calls for a Reply

6  to the Plaintiffs' objections related to omissions in the R&R.

7       The Plaintiff Intervenor, the United States Department of Justice (DOJ), did not seek

8  a R&R on the ORR Plan, but did make comments to the initial summary draft of the ORR

9  Plan: IV.C.3; IV.C.3.a.i-v.  Three of the DOJ comments are echoed in the issues raised by

10  the class-Plaintiffs in the R&R as unresolved.  The Court finds the DOJ comments helpful.

11       The R&R addressed seven issues, three of which are now moot because of the May

12  22, 2014, changes made by TUSD.  The three moot issues are: 1) the District will not assert

13  in the ORR Plan that it is not required to develop a retention plan; 2) the District clarified its

14  commitment to nondiscriminatory hiring, and 3) "diversity" in the ORR Plan is defined as

15  racial and ethnic diversity.  The remaining four issues from the R&R, which the Court

16  resolves now  are as follows: 1) the quality and usefulness of the LMA; 2) the composition

17  of the Recruitment and Retention Advisory Committee; 3) incentives for recruiting and

18  retaining teachers with Spanish bilingual certification, and 4) support for African American

19  and Latino Non-certified staff to attain certification.

20       The Court considers *de novo* the express provisions of the USP and whether the

21  ORR Plan satisfies the USP program mandates to the extent practicable.  *Fisher v. TUSD*,

22  652 F.3d 1131, 1135-1136 (9th Cir. 2011) (citing *Missouri v. Jenkins*, 515 U.S. 70, 89 (1995);

23  *Freeman v. Pitts*, 503 U.S. 467, 492 (1992); *Bd. of Ed. of Okla. City Public Schs. v. Dowell*,

24  498 U.S. 237, 249–50 (1991), *see also Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S.

25  1, 12 (1971) (quoting *Brown v. Board of Ed., Brown II*, 349 U.S. 249, 299 (1955) ("'School

26  authorities have the primary responsibility for elucidating, assessing, and solving these

27

28                                          4

1  problems; courts [ ] have to consider whether the action of school authorities constitutes good

2  faith implementation of the governing constitutional principles.'") The ultimate inquiry is

3  whether the constitutional violator, here TUSD, has complied in good faith with the

4  desegregation decree, here the USP, to eliminate the vestiges of past discrimination to the

5  extent practicable. *Id.*, *see also Green v. County School Bd. of New Kent, Va.*, 391 U.S. 430,

6  435 (1968).

7          In its review, the Court considers the R&R, including the attached briefs presented

8  in the first instance to the Special Master regarding the questions addressed in the R&R, and

9  the parties' Objections. The Court may call for further briefing in the event it determines

10  additional information is required to decide the issues and may, *sua sponte*, set a matter for

11  hearing. Here, the Court finds no additional briefing or oral argument is necessary regarding

12  the parties' objections to the R&R, adopts the R&R, and approves the ORR Plan, with the

13  revisions described below to clarify that the focus of the ORR Plan is to recruit qualified

14  African American and Latino candidates for open administrator and certificated staff

15  positions, and candidates with Spanish language bilingual certification. The Court calls for

16  a Reply from TUSD to the Mendoza Plaintiffs' objection that the R&R omitted a

17  recommendation regarding omissions by TUSD from the ORR of the specific requirements,

18  mandated in the USP, for an annual retention review and revision provision aimed at attrition

19  disparity and the advertising outreach provision.

20                          1) The Labor Market Analysis (LMA)

21          The USP requires the District "to develop and implement a plan to recruit qualified

22  African American and Latino candidates for open administrator and certificated staff

23  positions. . . . The plan shall address any and all disparities identified in the Labor Market

24  Analysis." USP § IV.C.3. The ORR Plan shall "establish a nationwide recruiting strategy,

25  based at minimum on the outcome of the Labor Market Analysis," and the ORR Plan shall

26  include all the specifics set out in subsections (i) through (v) of the USP. *Id.*

27

28                                              5

1    The Special Master concluded: that regardless of any results from the LMA, the

2    District is not released from its responsibility to undertake aggressive efforts to increase the

3    numbers of African American and Latino educators, as expressly required pursuant to

4    specific strategies set out in the USP.  (R&R at 4.)  According to the Special Master, the

5    purpose of the LMA is to identify the potential pool of candidates from which the District

6    might recruit so as to determine whether its efforts at recruitment are adequate to address

7    disparities between the composition of the professional staff of the district and the pools of

8    potential candidates. *Id.* (emphasis added).  In other words, TUSD must develop a plan to

9    implement the agreed to strategies for recruiting administrators and certified staff, and if

10   any disparities are identified in the LMA, TUSD must also address them.

11   The USP included: "The District hired an outside expert to undertake a Labor

12   Market Analysis to determine the expected number of African American and Latino

13   administrators and certified staff in the District, based on the number of African American

14   and Latino administrators and certified staff in the State of Arizona, in a four-state region,

15   a six-state region and the United States."  USP (Doc. 1450), § IV.C.2.  In the context of the

16   USP § IV, the expected number refers to the number of candidates which might be recruited

17   in Arizona, in a four-state region, a six-state region and the United States.

18   In accordance with the USP, the ORR Plan requires TUSD to analyze the findings

19   of the LMA, (R&R (Doc. 1612, Ex. F: ORR § III.A.2), develop a nationwide recruiting

20   strategy based, at minimum, on the outcome of the LMA, and includes specific techniques

21   to recruit African American and Latino candidates, and candidates with Spanish language

22   bilingual certifications from across the country, *id.* A.4.  According to TUSD, it "hired [the]

23   outside consultant to undertake a labor market analysis ("LMA") that compares the actual

24   number of African-American and Latino administrators and certified staff [in TUSD] to

25   the statistical expectation [for such staff] using various demographic group availability rates

26   derived from labor market data."  (R&R (Doc. 1612), Ex. F: ORR § VI.A.2.)  According to

27

28                                              6

1   TUSD's analysis of the findings of the LMA, it "revealed no negative disparities in hiring

2   between TUSD's workforce and the local and state labor markets. (See Appendix A for a

3   Summary of Preliminary Findings)." *Id.*

4        As noted by the Special Master, a LMA can include a multitude of factors relevant

5   to determining successful recruiting strategies aimed at a specific pool of employees. (R&R

6   (Doc. 1612) at 5.)[1] Here, the LMA looked at whether the racial/ethnic statistical composition

7   of employees in TUSD is reflective of this particular demographic group's representation in

8   the relevant external labor market.  According to the LMA, the conclusion is that where the

9   compositions are close it can be found that the employer's employment of that racial/ethnic

10  group is consistent with their availability in the geographic area.  The LMA concluded that

11  the numbers of racial/ethnic employees in TUSD are close to the percent of like racial/ethnic

12  employees in Arizona. (R&R (Doc. 1612), Ex. A-4: LMA at 1.)  But, the LMA did not stop

13  with concluding TUSD's employment of racial/ethnic employees is consistent with their

14  availability in the geographic study areas.  It went further to conclude: "The data fail to

15  produce any evidence whatsoever that these demographic groups are underrepresented in the

16  District's workforce." *Id.* at 18.

17       "In light of the findings of the LMA, TUSD has developed a nationwide outreach

18  and recruiting strategy to <u>enhance</u> the racial and ethnic diversity of TUSD's workforce by

19  focusing on "Hard-to-Fill Content Areas, Critical Needs Subject Areas, and staffing Hard-to-

20  Fill sites." (R&R (Doc. 1612), Ex. F: ORR § VI.A.2) (emphasis added).  Critical Needs

21  Subject Areas are areas required for graduation (core subjects) and/or required by state or

22  federal law, for which there have been an inadequate pool of qualified candidates.  Such

23

24       [1]Generally, a LMA identifies the area within which employers compete for labor,
25  survey that labor market to determine typical salaries and ancillary pay considerations to
    recommend salary structures and ancillary pay considerations that will enable an employer
26  to effectively compete for employees in the geographic labor market within specific job
27  classifications.

28                                              7

1   subject areas are assessed annually.  For school year 2013-14, critical needs subject areas

2   included exceptional education, math, and science.  *Id.* at § IV: Definitions.  Hard-to-Fill

3   Content Areas are specialized content areas within the TUSD curriculum for which there are,

4   or have been, an inadequate pool of qualified candidates. For school year 2013-14, hard-to-

5   fill content areas included: dual language and Culturally Relevant Courses (CRCs).  *Id.*  A

6   "Hard to Fill Site" is a school where traditionally there have been insufficient applicants for

7   instructional vacancies to meet staffing needs.  *Id.*

8           There are two problems with TUSD's use of the LMA.  First, using the LMA to

9   determine disparities in <u>hiring</u> between TUSD's workforce and the local and state labor

10  markets goes beyond the scope of the use described for the LMA in the USP § IV.C.2 and

11  the ORR, § VI.A.2.  Both described the LMA in the context of identifying potential pools of

12  candidates in Arizona, in a four-state region, a six-state region, and the United States, from

13  which the District might recruit to determine whether its recruitment efforts were adequate.

14  In this context, the USP requires that the nationwide <u>recruiting</u> strategy should be based at

15  a minimum on the LMA.  The Court finds no requirement nor allowance in the USP for the

16  District to make a "disparity" determination, except pursuant to Subsection E, Assignment

17  of Administrators and Certificated Staff, which requires:

18          The District [to] identify significant disparities (*i.e.*, more than a 15
        percentage point variance) between the percentage of African American or
19      Latino certificated staff or administrators at an individual school and
        district-wide percentages for schools at the comparable grade level
20      (Elementary School, Middle School, K-8, High School). The assessment of
        significant disparities shall also take into account the percentage of African
21      American and Latino students on each school campus. The District shall
        assess the reason(s) for the disparities and shall review and address, to the
22      extent relevant and practicable, its hiring and assignment practices,
        including enforcing hiring policies and providing additional targeted
23      training to staff members involved in hiring and assignment.

24  (USP (Doc. 1450) § IV.E.)  The Annual Report filed by TUSD, July 31, 2014, reflects that

25  the District completed compiling data for this disparity assessment in July and is currently

26  identifying and analyzing significant disparities.  (Annual Report (Doc. 1641) at 25-26.)

27

28                                              8

1    Here, § IV.C.3.a, Outreach and Recruitment, of the USP expressly requires TUSD's

2  annual review of recruiting data to assess the "effectiveness" of past recruiting practices in

3  "attracting" qualified African American and Latino candidates, and candidates with Spanish

4  language bilingual certifications. *See also*, USP § IV.I.3, Professional Support, charged: "By

5  July 1, 2013, "the District shall develop and implement a plan for the identification and

6  development of prospective administrative leaders, specifically designed to increase the

7  number of African American and Latino principals, assistant principals, and District Office

8  administrators." *Id.* (emphasis added).[2] The Court finds these provisions provide the relevant

9  sufficiency markers for the ORR Plan, not whether there is a racial/ethnic disparity in the

10 TUSD work force.

11   Second, the LMA is not a legitimate basis for TUSD to shift outreach and

12 recruitment from a plan developed "to recruit qualified African American and Latino

13 candidates for open administrator and certificated staff positions" to a plan "aligned with

14 TUSD's general recruiting practices, with a particular focus on recruiting and retaining

15 qualified individuals from historically underrepresented groups and qualified individuals to

16 fill hard-to-fill positions." (R&R (Doc. 1612), Ex. F: ORR § II, Overview.)  The ORR Plan

17 "Overview" does not mention the USP goal.

18   The Executive Summary reflects the ORR Plan will focus on "two separate but

19 interrelated objectives, . . . : (1) fulfilling general human resources needs, and (2) fulfilling

20 specific USP-related human resources needs." *Id.* § III.  The latter objective is mandated by

21 the USP.  The former, while it is interrelated to the extent it is benefitted indirectly from the

22 latter, cannot stand on equal footing as an objective for allocation of resources authorized

23 under the USP "to recruit qualified African American and Latino candidates for open

24 administrator and certificated staff positions."  The Court finds that the ORR Plan must be

25

26   [2]The Court discusses the second part of this Professional Support provision below in

27 the context of TUSD' proposed financial incentives.

28                                              9

1  revised to make it clear the plan is aimed at this express objective, not at improving ethnic

2  and racial diversity, generally, nor recruiting, generally, for hard-to-fill[3] positions.

3        Given the limited use of the LMA, the Court adopts the recommendation of the

4  Special Master.   The Court does not order a new LMA and finds that the LMA does not

5  release the District from implementing the ORR Plan to <u>recruit qualified African American</u>

6  <u>and Latino candidates for open administrator and certificated staff positions</u> and instead

7  implement an ORR Plan to enhance racial and ethnic diversity by recruiting for "Hard-to-Fill

8  Content Areas, Critical Needs Subject Areas, and staffing Hard-to-Fill sites." Additionally,

9  the Court finds that the LMA may not be applied to change the focus of the ORR Plan to

10  address two objectives, one of which is not part of the USP, instead of focusing on the one

11  objective mandated by the USP: "<u>to recruit qualified African American and Latino</u>

12  <u>candidates for open administrator and certificated staff positions</u>."

13        The Court turns to the class-Plaintiffs concerns that the LMA is flawed.  Plaintiffs'

14  complain that a number of questions remain which must be answered to determine the

15  integrity of the study's data and, correspondingly, the integrity of any analysis. To the extent

16  the ORR Plan, includes: "Analyzing the findings of the [LMA]," (R&R (Doc. 1612), Ex. F:

17  ORR § III.A.2, TUSD shall respond to Plaintiffs' questions and produce any data relevant

18  to the those findings.  The Court notes that TUSD appears to have answered the questions,

19  which Plaintiffs Mendoza assert remain unanswered.  (Mendoza Objection (Doc. 1620) at

20  3-4; R&R (Doc. 1612), Ex. A-3.)  Plaintiffs may always seek to compel answers and/or

21  discovery by way of a Motion to Compel, which may be a better method for briefing the

22  specific deficiencies related to TUSD's answers.[4]  As noted by the Special Master, a better

23

24        [3]The Court uses the term hard-to-fill, here, to refer to: critical needs subject areas, hard
     to fill content areas and hard-to-fill sites.  ORR § IV: Definitions.

25

26        [4]The Plaintiff Intervenor, the United States, did not object to the Special Master's
     recommendation to not require a new LMA, but noted that TUSD still, as of 6/10/2014, had
27  not provided requested data concerning adding comparative Metropolitan Statistical Areas

28                                          10

1  LMA would require gathering of more and/or different data and require continual updating.

2  He offers some suggestions: analysis of differences in salary and other benefits that influence

3  recruitment; quality of life, including economic considerations in the social context, and time

4  specific analysis because resources change as geographic locals experience economic

5  difficulties and reduce staff or vice a versa.  In the event TUSD chooses to update the LMA,

6  it should afford the Special Master and the Plaintiffs an opportunity to submit suggestions

7  regarding the scope and use for any future LMA.

8                          2) Recruitment and Retention Advisory Committee

9         The Special Master asks that TUSD align the membership of the Recruitment and

10  Retention Committee with the USP and clarify whether the newly identified Committee

11  members will influence the selections of 2014 recruitment and retention efforts.  In respect

12  to the ORR Plan the USP requires: "input of a racially and ethnically diverse recruitment

13  team comprised of school-level and district-level administrators, certificated staff and human

14  resources personnel."

15         TUSD responds that it has so aligned the membership by adding six Latino members,

16  where there was previously only one, for a total of seven Latino members on the 15 member

17  committee.  (TUSD Objection (Doc. 1625) at 9 (citing R&R (Doc. 1612), Ex. E: 2014-15

18  Advisory Committee.)  It appears that the composition of the Recruitment and Retention

19  Advisory Committee has been amended to include community members and a member from

20  Pima Community College (PCC).  The ORR Plan should note that the changed composition,

21  while not provided for in the USP, corresponds to strategies reflected in the USP §IV.C.3.ii

22  and .iii and the ORR Plan, § VI, Outreach and Recruitment, subsections 6, Partnership with

23  Local Employers and 7, Local Programs, Colleges and Universities.  TUSD clarifies: "The

24  newly selected Committee members will influence recruitment and retention efforts for

25

26  to the LMA, which it first requested 2/27/2013, and again requested when it reviewed the

27  summary LMA, 8/26/2013.  (DOJ Objection (Doc. 1621)).

28                                              11

1  school year 2014-15." *Id.* at 9-10.  There is no objection to this change in the composition

2  of the Committee from that which was specified in the USP.

3          The Court finds that TUSD has addressed the imbalance in the Committee objected

4  to by Plaintiffs Mendoza and made the clarification sought by the Special Master.  The Court

5  finds the Special Master's recommendation related to Recruitment and Retention Advisory

6  Committee is moot.

7          3) Incentives: Recruiting/Retaining Teachers with Spanish Bilingual Certification

8          The Special Master notes that the USP is replete with requirements to recruit and

9  retain teachers with Spanish bilingual certification.  *See* USP § IV.B.1 (Personnel: TUSD to

10  hire or designate human resource person to be responsible for regular review of applicant

11  pool to ensure TUSD is considering African American and Latino candidates, candidates

12  with demonstrated success in engaging African American and Latino students, and

13  candidates with Spanish language bilingual certifications at the school sites and at the

14  District level); § IV.C.3.a (Outreach and Recruitment: requiring annual review of recruiting

15  data and effectiveness of past recruiting practices in attracting qualified African American

16  and Latino candidates, and candidates with Spanish language bilingual certifications); *id.* at

17  (i) (nationwide recruiting strategy shall include specific techniques to recruit African

18  American and Latino candidates, and candidates with Spanish language bilingual

19  certifications); § IV.D.1 (Hiring: TUSD to maintain database of all applicants for

20  administrative and certificated staff positions, including all certifications (e.g. bilingual

21  certification . . .)); § IV.E.3 (Assignment of Administrators and Certificated Staff: TUSD to

22  address disparities or address resource needs at a particular campus, TUSD to offer voluntary

23  reassignment of bilingual personnel to campuses with increased numbers of ELL students

24  or to dual language programs).

25          The ORR Plan mirrors the USP emphasis on recruiting and retaining teachers with

26  Spanish bilingual certification.  *See* ORR § III.A.3: (Outreach and Recruitment: TUSD to

27

28                                                12

1  review and modify as needed to continually strengthen the Plan's effectiveness in attracting,

2  and retaining, qualified African American and Latino candidates, candidates with

3  demonstrated success in engaging African American and Latino students, and candidates

4  with Spanish language bilingual certifications); *id.* at A.4 (nationwide recruiting strategy

5  shall include specific techniques to recruit African American and Latino candidates, and

6  candidates with Spanish language bilingual certifications); § VI.3 (Annual Review and

7  Process for Modification: data to be collected and disaggregated by race/ethnicity where

8  applicable, including Critical Needs (Math, Science, Exceptional Education, ELL/Dual

9  language (including candidates with Spanish language bilingual certifications), etc., *but see*

10 (§ IV Definitions: Critical Needs Subject Areas for school year 2013-14 of exceptional

11 education, math, and science, not including ELL/Dual language or candidates with Spanish

12 language bilingual certifications).

13         At the urging of the Mendoza Plaintiffs, TUSD added two advertising sites,

14 exclusively aimed at recruiting bilingual candidates: the National Association for Bilingual

15 Education (NABSE) and the Arizona Association for Bilingual Education (NABE).  TUSD

16 commits to annually evaluating and modifying on an ongoing bases the in-person recruiting

17 strategies as to effectiveness in attracting diverse candidates, including African American and

18 Latino candidates, and candidates with Spanish language bilingual certifications.

19         Not required, expressly, by any provision of the USP, TUSD intends to offer

20 recruiting incentives of financial reimbursements and stipends, "targeting" African American

21 and Latino candidates.  ORR § VI.A.4.c.  The incentives are to be utilized as recruitment

22 tools and are, therefore, not available to all incoming or existing administrators or teachers.

23 *Id.* TUSD established the incentives for candidates beginning Spring, 2014, with a relocation

24 reimbursement to out-of-state, new-to-TUSD, incoming administrators and teachers filling

25 a position qualifying for a recruitment and retention incentive.  The recruitment and retention

26 incentives are financial stipends for the following: 1) Dual language/Bilingual (new or

27

28                                                  13

1    existing teachers with a bilingual certification teaching in a dual-language classroom); 2)

2    Culturally Relevant Courses (CRCs) (incoming or existing CRC teachers meeting certain

3    specified qualifications); 3) Hard-to-Fill Sites (new or existing teachers who voluntarily

4    move to Hard-to-Fill Sites, and 4) Critical Needs (new or existing teachers teaching in critical

5    needs subject areas, which for school year 2013-14 are exceptional education, math, and

6    science.

7         Again, the Court is concerned that each incentive be clearly linked to the USP

8    objectives of <u>recruiting qualified African American and Latino candidates for open</u>

9    <u>administrator and certificated staff positions, and candidates with Spanish language bilingual</u>

10   <u>certifications</u>. While recruiting qualified teachers is notably an important goal, alone, it is

11   insufficient for allocation of resources limited for the purpose of implementing the USP.  The

12   Court notes that the USP § IV, Professional Support, I.3. requires the ORR Plan "to propose

13   methods for 'growing your own,' including the possibility of financial support to enable

14   current African American and Latino employees to receive required certifications and

15   educational degrees needed for such promotions." *Id.*   Accordingly, TUSD should link any

16   financial incentives to the USP § IV.I.3 or show why financial incentives are better used as

17   alternatively proposed in ORR Plan § VI.A.4.c.  As an aside, the Court questions whether

18   ORR Plan § VI.B.b, Other Measures, Encourage Prospective Leaders to Become Leaders,

19   satisfies USP § IV, Professional Support, I.3, requiring growing-your-own methods.  This

20   section of the ORR Plan references § V: Methods for Growing Our Own, but the Court has

21   reviewed the ORR Plan attached at exhibit F to the R&R and finds no mention of any

22   Growing-Our-Own methods.

23        The Court finds that the ORR Plan must be revised to clarify the links between the

24   incentives and a USP goal, and TUSD should explain why it chose to use financial

25   incentives, alternatively, for recruitment rather than as proposed in the USP as a possible

26   method of enabling current noncertificated African American and Latino employees to

27

28                                              14

1   receive required certifications and educational degrees needed for promotions to

2   administrators or certified staff. *Id.* TUSD should also include the Methods for Growing

3   Our Own in § V, if there was an oversight or provide the Court with a copy of the ORR Plan

4   that includes it, if the copy provided by the Special Master is inaccurate.

5                    4) Certification of Non-certified African American and Latino Staff

6          The Special Master does not take issue with the ORR Plan for supporting

7   noncertified staff in obtaining certification. Neither Plaintiff objected to the Special

8   Master's position on this subject. The USP, however, required TUSD to consider financial

9   incentives here. Therefore, TUSD must explain why it chose to not use financial incentives,

10  here, and instead added financial incentives, *sua sponte*, as a recruitment method.

11                    5) Plaintiffs' Objections to Omissions in the Special Master's R&R

12         Plaintiffs complain that the R&R omitted any recommendation to the ORR Plan for

13  failing to include the requirement pursuant to the USP § IV.F.1.a: "If disparites [in attrition

14  rates for African American or Latino administrators or certificated staff] are identified, the

15  District shall . . . develop a plan to take appropriate corrective action. If a remedial plan to

16  address disparate attrition is needed, it shall be developed and implemented in the semester

17  subsequent to the semester in which the attrition concern was identified." Plaintiffs complain

18  that the ORR Plan does not reflect that remedial measures are mandatory and required the

19  very semester following the semester in which a disparity is found to exist.

20         Additionally, Plaintiffs complain that the ORR advertising plan is limited to certain

21  express publications, ORR § VI.A.4.a,[5] when it should instead reflect the USP's requirement

22  that TUSD advertise job vacancies "on national websites and publications, including career

23

24  _____

25         [5]Appendix B, with additional entities being considered for future recruitment
26  advertising, is not attached to the ORR Plan filed with the R&R for the Court's review. *See*
    (R&R (Doc. 1612) at Ex. F: ORR.) The Court assumes the addition sought by Plaintiffs
27  Mendoza is not contained in Appendix B.

28                                              15

1   websites, national newspapers, education publications, and periodicals targeting African

2   American and Latino communities."  USP § IV.C.3.a.i.

3        TUSD did not respond to Plaintiffs' Objection to the R&R.  Because TUSD has not

4   had an opportunity to respond to Plaintiffs' Objection in respect to omissions in the Special

5   Master's R&R, the Court calls for a Reply.

6        **Accordingly,**

7        **IT IS ORDERED** that the Court adopts the Report and Recommendation (Doc.

8   1612) in Part as to the limited use for the LMA.  The remainder of the Special Master's

9   recommendations require no action by the Court.

10       **IT IS FURTHER ORDERED** that within 21 days of the filing date of this Order

11  TUSD shall file a Reply to the Mendoza Plaintiffs Objection to omissions in the R&R.

12       **IT IS FURTHER ORDERED** that TUSD shall have 21 days from the filing date

13  of this Order to revise the ORR Plan to conform to the findings and directives of the Court

14  made herein, including providing an explanation for the use of financial incentives, if used

15  alternatively to the USP proposal to consider financial incentives in the context of a "Grow

16  Your Own" program.  Any objection may be filed within 14 days of the filing of the revised

17  ORR.  The Court shall rule, thereafter, to adopt the ORR Plan for implementation in TUSD.

18

19       DATED this 20th day of August, 2014.

20

21

22

23

24                              David C. Bury
                          United States District Judge
25

26

27

28                                  16