1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**

7                        **DISTRICT OF ARIZONA**

8   Roy and Josie Fisher, et al.,                    )
9                    Plaintiffs,                      )
                                                      )
10  v.                                                )
    United States of America,                         )
11                                                    )
                    Plaintiff-Intervenor,             )
12                                                    )
    v.                                                )
13                                                    )
    Anita Lohr, et al.,                               )      CV 74-90  TUC DCB
14                                                    )      (lead case)
                    Defendants,                       )
15                                                    )
    and                                               )
16                                                    )
    Sidney L. Sutton, et al.,                         )
17                                                    )
                    Defendants-Intervenors,           )
18  ─────────────────────────────────────────────)      **ORDER**
19  Maria Mendoza, et al.,                            )
20                   Plaintiffs,                       )
                                                      )
21  United States of America,                         )
22                   Plaintiff-Intervenor,            )
                                                      )      CV 74-204 TUC DCB
23  v.                                                )      (consolidated case)
                                                      )
24  Tucson Unified School District No. One, et al.,  )
25                   Defendants.                       )
    ─────────────────────────────────────────────)
26
27
28

The Boundary Review Process: USP § II.D, E and X.E.3

On April 26, 2013, the Court approved boundary changes related to school closures which occurred in 2013. The Court acted on limited information, but the District assured "the Court it was moving forward under the USP with a comprehensive review of boundaries, clustering or pairing schools and otherwise examining boundaries; . . . ." (Order (Doc. 1468) at 4.) At the time, the Plaintiffs Fisher objected to the boundary changes because TUSD failed to make the requisite boundary change assessment, pursuant to the USP § II.D: Attendance Boundaries, Feeder Patterns, and Pairing and Clustering.

> 1. All schools in the District shall have an attendance boundary unless the District has specifically designated a school to have no attendance boundary.

> 2. The District shall review and/or redraw its attendance boundaries when it opens a new school; closes, repurposes or consolidates a school; alters the capacity of a school; or designates a school without an attendance boundary. The Parties anticipate that such changes may result in the redrawing of some attendance boundaries. When the District draws attendance boundaries, it shall consider the following criteria: (i) current and projected enrollment; (ii) capacity; (iii) compactness of the attendance area; (iv) physical barriers; (v) demographics (i.e., race, ethnicity, growth projections, socioeconomic status); and (vi) effects on school integration. In applying these criteria, the District shall propose and evaluate various scenarios with, at minimum, the Plaintiffs and the Special Master in an effort to increase the integration of its schools.

> 3. By April 1, 2013, the District shall review its current attendance boundaries and feeder patterns and, as appropriate, amend such boundaries and patterns and/or provide for the pairing and/or clustering of schools to promote integration of the affected schools.

As is evident from today's date, the April 1, 2013, deadline proscribed in the USP has been extended, with TUSD submitting the Boundary Review Process to the Plaintiffs in summary fashion for consideration on September 16, 2013, with the detailed plan following on February 27, 2014. On March 6, 2014, the Fisher Plaintiffs requested an R&R, which in spite of further revisions the Fisher Plaintiffs continued to press and the Special Master filed the R&Rb on May 27, 2014.

2

1    The Implementation Addendum, filed by TUSD on June 20, 2014, (Doc. 1627) at

2  9), reflects that Final Approval is scheduled for June 2, 2014, which coincides with the June

3  date proposed in § VI, General Timeline, for Final Board Approval of TUSD's proposed

4  Boundary Review Process.  (R&R (1601), Ex. A (Doc. 1613): (TUSD Boundary Review

5  Process.)  Because Board approval is not required for the process, the Court understands the

6  June 2, 2014, deadline to be the date for Board Approval of actual boundary changes.  It

7  appears that this date is past; in its Objection to the R&R the District reports that the

8  Boundary Review Process is well under way. (Objection (Doc. 1614) at 1 n.2.)  The

9  Boundary Review Process also serves to inform the magnet plan mandated pursuant to USP

10 § II.E.3, [1] but the Boundary Review Process § VI, General Timeline, does not reflect

11 deadlines which must be met for the Boundary Review Process to serve this purpose.

12    The Court adopts in part the recommendation of the Special Master to approve the

13 Boundary Review Process, but rejects the Special Master's recommendation to direct the

14 parties to meet to attempt to settle disputed language in the Boundary Review Process and

15 to stipulate to procedures for the exchange of by TUSD to Plaintiffs.  The Court adopts the

16 Boundary Review Process, as proposed by TUSD and attached, here, including Governing

17 Board Policies JR and JC-R.[2]  TUSD shall re-file the approved Boundary Review Process,

18

19    [1]The District shall develop . . a Magnet School Plan . . . ensuring that this Plan aligns

20 with [the District's] other student assignment strategies . . . The District shall at a minimum:
   (I) consider how, whether, and where to add new sites to replicate successful programs

21 and/or add new magnet themes and additional dual language programs, focusing on which

22 geographic area(s) of the District are best suited for new programs to assist the District in
   meeting its desegregation obligations. . . (iv) determine if each magnet school or school with

23 a magnet program shall have an attendance boundary . . .   The Magnet School Plan shall, at

24 a minimum, set forth a process and schedule to: (viii) make changes to the theme(s),
   programs, boundaries, and admissions criteria for existing magnet schools and programs. .

25 .." USP § II.E.

26    [2]The Court refers to the Boundary Review Process as reflected in the document filed

27 by TUSD on May 27, 2014. (Doc. 1613-1), attached here.

28                                        3

with an updated timeline for any now past benchmark dates and deadlines relevant for coordinating the boundary review process with development of the magnet plan. The Court addresses the procedures for Plaintiffs to request information and TUSD to respond.

Fisher Objections: Special Master Recommendations

First, the Fisher Plaintiffs object that the Boundary Committee, established to assist TUSD in developing the boundary plan, is comprised of 24 members, 16 of whom are District employees. There is an Advisory Team as well, which is also comprised of District employees plus external consultants. The Fisher Plaintiffs are concerned that parents and community stakeholders have inadequate representation in the boundary review process. The Special Master notes that these committees are not components of the USP, but that the Boundary Committee should be comprised of between 15-25 members whose racial composition generally reflects the racial composition of the population living in TUSD. The Court agrees that even if the Boundary Committee is not required by the USP, its composition should be consistent with the goals of the USP provisions applicable to reviewing and redrawing TUSD's attendance boundaries, II.D.2 and .3. The Special Master's recommendations would be one way to ensure such consistency.

The Boundary Review Process, Governing Board Policy JC-R, suggests the same by its criteria that members of the Boundary Committee be one or more of the following: a TUSD parent; represent a reasonable mix of the diversity and ethnicity of the affected communities; be a staff member of a school in the potentially affected area, or be an interested member of the community. (JC-R at 2.) The purpose of the Governing Board's policy is to provide a process for boundary changes that includes notification and involvement of stakeholders to improve decisions and create support for boundary changes. (JC-R at 1.) Given the expressed goal by the TUSD Governing Board that parents and community stakeholders will have adequate representation in the boundary review process. The Court leaves it to TUSD to ensure that it applies the committee criteria adopted by the

1   Board in JC-R to accomplish a reasonable mix of diversity and ethnicity of the affected

2   communities on the Boundary Committee and to ensure that the Boundary Committee is

3   distinguishable by its emphasis on stakeholder members from the Advisory Team

4   Committee, which is comprised of TUSD staff and external professional members. Plaintiffs

5   may bring any perceived failure in this regard to the Court's attention should future redress

6   become necessary.

7       Second, as they did when TUSD proposed boundary changes in response to 2013

8   school closures, the Fisher Plaintiffs complain that Governing Board Policy JC-R, School

9   Attendance Boundaries for the Planning and Student Assignment Department, does not

10  satisfy the USP criteria specified in § II.D.2, which are as follows: (i) current and projected

11  enrollment; (ii) capacity; (iii) compactness of the attendance area; (iv) physical barriers; (v)

12  demographics (i.e., race, ethnicity, growth projections, socioeconomic status); and (vi)

13  effects on school integration. And in applying these criteria, JC-R fails to require the District

14  to propose and evaluate various scenarios with, at minimum, the Plaintiffs and the Special

15  Master in an effort to increase the integration of its schools. The Special Master proposes the

16  parties be given an opportunity to reconcile the language used in JC-R with the criteria

17  specified in the USP.

18      The Court has reviewed the language and finds it fully complies with the criteria in

19  the USP.  Subsequent to the Court's approval of the 2013 school-closure boundary changes,

20  on February 5, 2014, the Board revised JC-R.  The Policy JC-R does not include "growth

21  projections," but it includes current and projected enrollment and current and projected

22  development patterns and  the other "examples" of demographics expressly included in the

23  USP: race, ethnicity, and socioeconomic status.  The District's policy requires TUSD to

24  consider its boundaries' effects on school desegregation whereas the USP calls for

25  consideration of various scenarios' efforts to increase integration. (R&R (Doc. 1601, Ex. A

26

27

28                                                 5

(Doc. 1613): Boundary Review Process.) In the context of the JC-R, the Court finds no distinction between the USP goal of desegregation and the District's goal of integration.

The USP requires TUSD to "propose and evaluate various scenarios with, <u>at minimum</u>, the Plaintiffs and the Special Master in an effort to increase the integration of its schools." USP § II.D.2. The Boundary Review Process "includes multiple opportunities for the Plaintiffs and Special Master to receive and comment on information as the District develops scenarios (rather than waiting to involve them after scenarios have already been developed) and to be involved in the evaluation of options before recommendations are presented to the Board." (R&R (Doc. 1601), Ex. A (Doc. 1613): Boundary Review Process § IV.) Additionally, the usual review and comment provisions apply after the District makes recommendations to the Board and again after the Board approves any recommendations. *Id.*

Based on the Boundary Review Process, approved as attached here, TUSD has clarified the involvement by the Special Master and Plaintiffs with the Advisory Team as early as March as the Team develops and evaluates potential options, including various desegregation scenarios. *Id.* § IV. The Court finds there is no need for the parties to meet and stipulate to clarification of the terms "options" and "scenarios." To the extent the Plaintiffs challenge TUSD's addition of criteria not specified in the USP, TUSD added student transportation, a *Green* factor, and fiscal impacts, which are relevant to determine whether boundary changes are being made to the extent practicable to address integration. The Court finds no merit to the Fisher Plaintiffs' assertion that the Boundary Review Process criteria are out of sync with the USP.

Third, the Fisher Plaintiffs challenge the District's policy allowing students who have been moved because of school closings to remain in their new school if the boundaries of that school are changed again. As this Court previously noted: "School policies must yield to the Constitution where they stand to impede or otherwise limit the implementation of the

USP." (Order (Doc. 1468) at 5.)  Plaintiffs make no such showing.  The Court directs the District to include the further movement of this protected group of students as one possible scenario in its Boundary Review Process.  At this time, the Court is persuaded by the Special Master's report that the effect of the policy to <u>not</u> move students a second time "seems relatively small and does not outweigh the potential educational costs to students reassigned for a second time over two years." (R&R (Doc. 1601) at 7.)  As the Special Master noted, this Court's decision in April, 2013, considered the educational hazard of forced student mobility. The Court makes the same consideration, now.  But if the integration scenarios reflect a second move is so advantageous to integration as to offset the negative educational costs to students of a second move, then TUSD should reconsider the policy against moving these students a second time.

Finally, the Fisher Plaintiffs assert the District has impeded their ability to contribute to the development of the boundary plan by not providing information in a timely fashion or providing incomplete information.  On the other hand, the Special Master recognizes that "the development by the District of requested information can be time and resource consuming so that the review and comment processes get extended." (R&R (Doc 1601) at 6.)  The Special Master notes that communication, especially obtaining timely information from TUSD, is a continuing problem, which this Court previously instructed him to address with the parties to improve the review processes  required by USP § X.E.3. (Order (Doc. 1476), filed June 7, 2013, at 2-3).  The Special Master recommends that the Court require the parties to work together to reach an agreement for "more effective and efficient ways to provide the plaintiffs with information that would result in less contentious and better informed collaboration." *Id.* at 9.

The Court afforded the parties such an opportunity a year ago.  The Court agrees that procedures should be clarified for better more efficient and effective communications between the parties.  The USP provides for the "Plaintiffs to request additional information

from the District should any Plaintiff determine that such additional information is necessary to assess whether the District is complying in good faith with its desegregation obligations and the terms of [the USP]." Plaintiffs must make such requests no more than seven (7) days after the provision of items pursuant to I(D)(1), which requires input and review by the Plaintiffs before TUSD puts into practice or use any new or amended plans, policies, procedures or other significant change required by the USP. Plaintiffs have no more than thirty (30) days after the provision of the District's Annual Report to request additional information. USP § X.E.3.

Pursuant to § X.E.3, the Plaintiffs make a request for information to the Director of Desegregation with copies to the Special Master and all Parties. Should the District believe that any request is unduly burdensome or otherwise inappropriate, the Special Master shall determine the feasibility of the request and the time for compliance. Such determinations of the Special Master may be appealed to the Court, pursuant to the terms of the January 2012 Order.[3] *Id.* The Special Master reports that the District has been unwilling to use this provision, but has nevertheless refused to comply with requests for information. The Court does not read the USP to require some formalized request from the District to trigger the Special Master's responsibility to decide whether a request for information is relevant or unduly burdensome and the time for compliance.

The Court has three concerns: 1) prompt and full disclosure should be made by TUSD to ensure effective review and comments by Plaintiffs; 2) TUSD's responsibility to timely respond to requests for information should not be unduly burdensome so as to impede

---

[3]This Court has previously explained that the time-frames established in the January 2012 Appointment Order for judicial review of the Special Master's Initial Report and proposed USP, which at the time of the Appointment Order were tasks delegated to the Special Master to draft, and the Special Master's Final Report of Unitary Status are not applicable to procedures for judicial  review of R&Rs related to Action Plans and Implementation Plans, which are to be considered on an expedited basis, pursuant to the USP § I.D.1.

1   the timely implementation of the USP, and 3) resolution related to requests for data or

2   information should be expedited so as to not bog down implementation of any USP plan,

3   policy, or other provision. Accordingly, the Court affirms the 7-day[4] time frame established

4   in the USP for Plaintiffs to request information. In the future, all requests for information

5   shall be made through the Special Master to the Director of Desegregation, TUSD. The

6   Special Master shall in his discretion forward a request in its entirety or limit it for relevancy

7   or burdensomeness, and shall include a time for compliance. In the event, TUSD does not

8   timely comply with full disclosure, the Special Master shall first confer with the Director of

9   Desegregation to attempt to resolve the dispute, and if unsuccessfully resolved then file a

10  Motion to Compel the disclosure of information with the Court. All such disputes shall be

11  resolved by the Court on an expedited bases as is this Court's general practice for addressing

12  discovery disputes between parties so as to not delay the progress of a case.

13          Given the directive above, the Court finds that the Special Master's recommendation

14  is moot in respect to the parties meeting and engaging in discussions to stipulate to

15  procedures for requesting and responding to requests for information. The Court notes that

16  in the Special Master's First Annual Report on the Status of Progress in Implementing the

17  Unitary Status Plan for the Tucson Unified School District, the Special Master made only one

18  recommendation: "that the Court direct the parties to work with the Special Master to

19  develop a stipulation addressing this problem." (First Annual Report (Doc. 1641) at 7.)

20  /////

21  /////

22  /////

23  /////

24

25

26          [4]The Court affirms the 30-days time frame to request information after the District

27  tenders its Annual Reports.

28                                          9

1   Given the directive above related to procedures for review and comment, pursuant to USP

2   § X.E.3, the Court finds the recommendation in the First Annual Report is moot.

3         **Accordingly,**

4         **IT IS ORDERED** that the R&R (Doc. 1601) is adopted in part in respect to the

5   recommendation to approve the Boundary Review Process, as attached.  The R&R is MOOT

6   in all other parts.

7         **IT IS FURTHER ORDERED** that within 7 days of the filing date of this Order,

8   TUSD shall file the Approved Boundary Review Process, with an updated § VI, General

9   Timeline, for any now past deadlines and to identify deadlines relevant to coordinating the

10   boundary review process with development of the magnet plan.

11         **IT IS FURTHER ORDERED** that, pursuant to the USP § X.E.3, any Plaintiff may

12   make a request for information to TUSD, with copies to the Special Master and all Parties,

13   and, thereafter, the Special Master shall transmit the request to the Director of Desegregation,

14   in its entirety or at the discretion of the Special Master the request may be limited for

15   relevancy or burdensomeness, and shall include a time for compliance.  In the event, TUSD

16   does not timely comply with full disclosure, the Special Master shall first confer with the

17   Director of Desegregation to resolve the dispute, and then, if necessary, file a Motion to

18   Compel the disclosure of information with the Court.  All such disputes shall be resolved by

19   the Court on an expedited bases so as to not delay the progress of the case.

20         **IT IS FURTHER ORDERED** that the parties are not precluded from stipulating

21   to further details necessary to implement the procedures set forth, here, for requesting and

22   responding to requests for information.

23   /////

24   /////

25   /////

26   /////

27

28                    10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IT IS FURTHER ORDERED** that the recommendation in the Special Master's First Annual Report on the Status of Progress in Implementing the Unitary Status Plan for the Tucson Unified School District (Doc. 1641) is MOOT.

DATED this 27th day of August, 2014.

David C. Bury
United States District Judge

11