1

2

3

4

5

6              **UNITED STATES DISTRICT COURT**

7                    **DISTRICT OF ARIZONA**

8  Roy and Josie Fisher, et al.,                )
                                                )
9              Plaintiffs,                       )
   v.                                           )
10                                              )
   United States of America,                    )
11                                              )
               Plaintiff-Intervenor,            )
12                                              )
   v.                                           )
13                                              )
   Anita Lohr, et al.,                          )     CV 74-90  TUC DCB
14                                              )     (lead case)
               Defendants,                      )
15                                              )
   and                                          )
16                                              )
   Sidney L. Sutton, et al.,                    )
17                                              )
               Defendants-Intervenors,          )
18  _____)
                                                )     **ORDER**
19  Maria Mendoza, et al.,                       )
                                                )
20             Plaintiffs,                       )
                                                )
21  United States of America,                    )
                                                )
22             Plaintiff-Intervenor,            )
                                                )     CV 74-204 TUC DCB
23  v.                                          )     (consolidated case)
                                                )
24  Tucson Unified School District No. One, et al., )
                                                )
25             Defendants.                       )
   _____)

26

27

28

1        <u>Report and Recommendation: Advanced Learning Experiences</u>

2        On August 13, 2014, the Special Master filed a Report and Recommendation (R&R)

3   (Doc. 1645) relating to the Unitary Status Plan (USP) Section V, Quality of Education,

4   subsection A, Access to and Support in Advanced Learning Experiences (ALEs), which

5   requires TUSD to improve the academic achievement of African American and Latino

6   students and ensure they have equal access to the District's ALEs.  (USP[1] (Doc. 1713) §

7   V.A.1.)

8        The R&R was requested by the Plaintiffs Mendoza and joined in by the Fisher

9   Plaintiffs.  The Plaintiffs' objections are limited to the annual goals set by TUSD, not the

10  specifics of the detailed plan of action to be undertaken to increase the numbers of these

11  students, and ELL students, in ALEs.  (USP § V.A.2-5.)  At issue is subsection 2.a, as

12  follows:

13      By [July 1,][2] 2013, the District shall hire or designate a District Office
        employee to be the Coordinator of Advanced Learning Experiences
14      ("ALEs"), <u>ALEs shall include Gifted and Talented ("GATE") programs,
        Advanced Academic Courses ("AACs"), and University High School</u>
15      <u>("UHS"). AACs shall include Pre-Advanced Placement ("Pre-AP")
        courses, which were formerly referred to as "Honors," "Accelerated," or</u>
16      <u>"Advanced," and any middle school course offered for high school
        credit; Advanced Placement ("AP") courses; Dual-Credit courses; and</u>
17      <u>International Baccalaureate ("IB") courses.</u>  The ALE Coordinator shall
        have responsibility for: reviewing and assessing the District's existing
18      ALEs, developing an ALE Access and Recruitment Plan, assisting
        appropriate District departments and schools sites with the
19      implementation of the ALE Access and Recruitment Plan,<u> and
        developing annual goals, in collaboration with relevant staff, for progress</u>
20      <u>to be made in improving access for African American and Latino
        students to ALE programs. These goals shall be shared with the Plaintiffs</u>
21      <u>and the Special Master and shall be used by the District to evaluate
        effectiveness.</u>
22
    (USP § V.a.2.a) (emphasis added).
23

24      _____

25      [1]The Revised USP (Doc. 1713), filed November 6, 2014, was revised to correct
    typographical errors; the USP was originally filed, as approved by the Court on February 20,
26  2013 (Doc. 1450).

27      [2]Date changed by agreement of the Parties and Special Master.

28                                    2

1    To implement Section V of the USP, TUSD prepared the ALE Access and

2  Recruitment Plan (ALE Action Plan).  The subsection challenged by the Plaintiffs is

3  Section II, Annual Goals and Progress Monitoring, which provides, as follows:

4      In creating annual goals for progress monitoring, the District has used the
       "20% Rule", which was presented by Donna Ford, Ph.D. of Vanderbilt

5      University to the United States District Court For The Northern District
       of Illinois Eastern Division in *Mcfadden v. Board of Education for*

6      *Illinois School District U-16*. Dr. Ford further explains the rule and how
       it should be used in districts working to eliminate discrimination in her

7      book, *Recruiting and Retaining Culturally Different Students in Gifted
       Education* (2013).

8
       In that book, Dr. Ford offers a relatively simple rule for identifying

9      discrimination in the data. According to her, discrimination <u>may</u> be
       occurring if any subgroup has a participation rate in something deemed

10     desirable (like ALEs) that is 20% less than their enrollment rate in the
       district. "For example, if Black students are 10% of a school district, then

11     they should be at least 8% of ALEs… If Hispanic students are 40% of a
       school district, then they should be at least 32% of ALEs)." <u>Thus, goals</u>

12     <u>in this plan will be designed to increase all minority subgroup (sic) to a</u>
       <u><20% threshold within five years, using SY 2012-13 as the baseline year</u>

13     <u>for both White and minority subgroups.</u>

14  (ALE Action Plan (Doc. 1645-2), Ex. A at § II) (emphasis added).

15    The 20 % Rule, therefore, sets a goal at a sum certain number NOT less than the

16  minority groups' enrollment rate District-wide.  Using the base line years proposed by

17  TUSD, SY 2012-13 to the end of SY 2017-18,[3] TUSD's goal for increasing GATE

18  services is 0.19 % per year for African American students and for Latino students 0.29 %

19  per year.  For AAC, TUSD's goal is .09 % per year for African American Students.

20  (ALE Plan § II.A and B.)  The 20 % Rule is already satisfied for AAC for Latino

21  students. *Id.* TUSD does not apply the 20% Rule to ELLs. UHS is not at issue, here.

22    Plaintiffs and the Special Master believe that the annual goals are too low and

23  should be increased, especially because participation among African-American and

24  Latino students, as of SY 2012-13, is relatively close to being not less than 20 % of the

25

26    [3]The tentative end date for attaining unitary status is the end of SY 2016-17.  (USP

27  (Doc. 1713) at 60, ¶ XI.A.2.)

28                                    3

1    minority students' enrollment district-wide.  For example: African American students

2    make up 5.8% of the district-wide student population, with the less than 20% goal being

3    4.64% and the current participation level being 3.7%, therefore, TUSD needs to increase

4    GATE participation for African American students by 1%.  The same percentage increase

5    is required for Hispanic students in GATE programs.  For AACs, African American

6    students make up 6.2%[4] of the district-wide student population, with the less than 20%

7    goal being 4.96% and the current participation level being 4.5%, therefore, TUSD needs

8    to increase AAC participation by half a percent.  There is no need to increase

9    participation by Hispanic students in AACs.  (R&R (Doc. 1645), Ex. A: ALE Action Plan

10   at 14.)

11          The Special Master recommends an admittedly arbitrary 15 % increase, instead

12   of less than 20%.  Plaintiffs rely on the USP's requirement that the strategies identified in

13   the ALE Plan must "increase the number of African American and Latino students,

14   including ELL Students, enrolling in ALEs."  USP § V.2.c; USP § V.3.a.i (specifying

15   measures for increasing GATE services); USP § V.4.a.i (same for AACs).  Plaintiffs

16   suggest equal access goals should mirror the percentage of these students in the general

17   student body.  For example, parity would be reached for African American Students, who

18   make up 10 % of the student body, when they make up 10 % of the ALE participants.

19          The Plaintiffs and the Special Master believe goals should be program specific.

20   There are eleven programs: three GATE programs (Self-contained; pull-out, and

21   resource) and eight AACs (Advanced Placement (AP); Advanced Pre-AP; Honors Pre-

22   AP; Dual-Credit; IB; Dual language; UHS, and middle school courses for high school

23   credit).  They are all very different from each other.  For example, GATE pull-outs

24   _____

25          [4]The Court does not understand why the percentages for the minority students district-
     wide for SY 2012-2013 is reported differently for GATE (5.8% African American; 61.8%
26   Hispanic) and AACs (6.2% African American; 59.6% Hispanic).  (R&R (Doc. 1645), Ex.
     A: ALE Action Plan at 14.)
27

28                                              4

1   provide students with the program less than half a day once a week, whereas, a self-

2   contained GATE is virtually full time.  According to Plaintiffs and the Special Master,

3   program effectiveness must be examined by the outcome of student participation in each

4   AAC program.  (R&R (Doc. 1645) at 3.)

5          TUSD disagrees.  According to TUSD setting separate goals for each ALE

6   program "will mean that ALE programs will be competing against each other for

7   students."  (Objection (Doc. 1654) at 5.)  It would warp incentives by pushing students

8   towards ALE programs falling short of the 20% Rule rather than towards the program

9   best fitting their needs.  *Id.*  "For example, if 10 Latino students who previously have not

10  participated in ALE's choose to enroll in International Baccalaureate ("IB") courses,

11  rather than AP courses, and as a result TUSD misses the participation target the Special

12  Master would impose for AP courses, the District will be penalized for failing to meet

13  that target, despite the fact it is increasing overall Latino ALE participation in compliance

14  with the USP's unambiguous directive."  *Id.*  For example, assuming that a full time

15  GATE program is superior to a once a week GATE program,[5] "the District may spend

16  time and resources recruiting a fifth grade Latina student for GATE testing and

17

18      [5]TUSD challenges this assumption, but the challenge appears to be based on student
    choices to remain in a neighborhood school with a pull-out program rather than travel away
19  from home to attend a self-contained GATE program.  "TUSD's data shows that the
    percentage of African American and Latino students participating in 'more intensive and
20  more rigorous' ALE is lower than the percentage of African American and Latino students
    involved in 'limited programs taught by a teacher who visits their school once a week.'"
21  (Objection (Doc. 1654) at 5.)  The superiority between the two types of GATE programs is
    important and should be based on academic benefit to a student not transportation
22  considerations. Assuming a "more intensive and more rigorous" ALE is academically more
23  beneficial to students, the question of equity must consider the location of these programs
    and whether transportation burdens fall disproportionately on African-American and Latino
24  students.  The Court assumes the ALE Access and Recruitment Plan will gather and review
    data which will enable the District to consider this aspect of equal access.  By this footnote,
25  the Court does not mean to suggest any outcome– only that transportation burdens must be
26  considered. *Green v. County School Bd of New Kent*, 391 U.S. 430, 435, 436-37(1968).

27

28                                              5

1  placement.  [She] then may be offered placement at a self-contained GATE program at a

2  school 10 miles away from her home.  The student may decide instead to stay at her home

3  school and receive GATE 'pull out' services, as do many students.  The District has, in

4  this example, successfully recruited, tested, and offered a Latina student self-contained

5  GATE placement, and the student has selected GATE placement that meets her needs.

6  The District should not be penalized because this student has chosen one GATE service

7  over another.  Students and their parents have many reasons for selecting particular

8  ALE's, and the District must be permitted to offer this flexibility to serve the varying

9  needs of its students." (Objection (Doc. 1654) at 6.)

10      The Special Master concludes that TUSD does not want to apply the less than

11  20% Rule to all eleven ALE programs to avoid accountability.  True, TUSD does not

12  want to be "penalized" for individual programs that fail to satisfy the 20% Rule, if it

13  increases the overall participation in ALEs by African American and Latino students.

14  The Court does not, however, believe that TUSD can avoid accountability because it

15  agrees to gather and tabulate all the relevant data necessary to assess each ALE program,

16  individually, in respect to the 20 % Rule.  TUSD cannot avoid the numbers, which will or

17  will not equal less than 20% of the enrollment rates in the District for African American

18  and Latino students, including ELLS.  The problem will not be accountability as long as

19  relevant data is gathered and Plaintiffs and the Special Master are free to point out any

20  individual program where discrimination may exist.  The Court notes that the 20% Rule is

21  based on the percentage of African American and Latino students, including ELLS

22  enrolled in the District, which changes annually.  Consequently, the annual goal must

23  adjust accordingly.

24      As the Court sees it, the problem is that the 20% Rule is an over-simplistic

25  measurement for effectiveness, especially if TUSD intends to apply it to determine

28      6

1   unitary status.[6]   The Court is not inclined, without full briefing, to consider whether the

2   20% Rule, establishing a floor, satisfies the USP mandate to increase the number of

3   minority students participating in ALEs, which suggests a goal somewhere in the ceiling.

4   Because TUSD is close to satisfying the 20% Rule, the Court believes the less than 20%

5   mark can be hit sooner than later, especially by the USP target date: SY 2016-17.  This is

6   certainly true in the elementary grades where the pool of potential participants is limited

7   by the district-wide number of minority students, as compared to upper-grades where

8   ALE participants are limited by the number of minority students drawn into the pipeline

9   in elementary school.  TUSD may use the 20% Rule as an annual goal for GATE and

10  AACs, but it must reach this minimum standard as soon as practicable, and report data for

11  the 20% Rule for all ALEs so the Parties and Special Master can consider whether

12  discrimination <u>may</u> exist in each individual ALE program.

13       In short, TUSD may apply the "less than" 20% Rule each year as a rule-of-

14  thumb[7] to red-flag areas of concern, including participation by ELL students in ALE

15  programs, which may warrant further inquiry or improvement.  However, as TUSD's

16  GATE example illustrates, there are other variables which must factor into TUSD's

17  assessment regarding the effectiveness of the ALE Access and Recruitment Plan.  For

18

19       [6]TUSD's argument that any goal to improve participation by ELL students in ALEs
    is "unattainable," also, suggests it may believe it has attained unitary status in regard access
20  to ALEs by ELL students.  *See* (Objection (Doc. 1654) at 9-10 (listing multiple of reasons,
    such as ELL student's limited proficiency in English and the need for these students to attend
21  two or four-hour pull out English language classes, for why it is "simply impossible for some
    ELL students to participate in some ELL classes that are English-intensive, and the new
22  'common core' standards in Arizona have made even math courses increasingly language-
23  rich.").

24       [7]*See* (R&R (Doc. 1645) at 5, Ex. C: TUSD responses to Mendoza Ps at 3 ¶ 3a
25  (referring to 20% Rule as "rule-of-thumb"), *see also* (R&R ("Doc. 1645) at 5) (Special
    Master disputing that the 20% Rule is "research-based" and that: "Moreover, Dr. Ford, in
26  testimony in an Illinois case, says that the less that the (sic) 20 percent guideline should be
27  a minimal measure of equal access."

28                                                7

1  example, TUSD must consider the feasibility[8] of neighborhood access for minority

2  students to self-contained or more rigorous GATE programs.  Certainly, goals for

3  increasing participation at the elementary grade levels will be easier to attain than

4  increasing participation in higher grade levels which requires the District to build a pipe-

5  line.  TUSD suggests it is not possible to place ELL students in ALEs, yet ELLs were

6  expressly identified in the USP for increased participation.  All of these variables require

7  a flexible measurement of success depending on the individual ALE.

8       The Court agrees with the District that flexibility is necessary, but does not agree

9  with the District that flexibility can be found in the 20% Rule.  It is instead an imprecise

10  standard, merely a rule-of-thumb, which may suggest discrimination depending on

11  multiple variables.  This is obvious from TUSD's objections to applying the 20% Rule to

12  ELLs or individual ALEs, and TUSD's failure to make grade distinctions.  Given that the

13  ALE Action Plan's annual goals result in total increases of participation by minorities in

14  ALEs of zero to one percent, the Court assumes the 20% Rule will not be the sole basis

15  for determining unitary status in respect to USP § V, Access to and Support in Advanced

16  Learning Experiences (ALEs), because if it is– unitary status could certainly be had by

17  the end of SY 2016-17, or sooner.  Instead, TUSD proposes an end-date of SY 2017-

18  2018.  The Court rejects this.  Instead, TUSD should establish the end-goal(s) for

19  improving access for African American and Latino students to ALE programs to attain

20  unitary status by SY 2016-17 and work backwards to set the annual goals.

21       TUSD should provide the Plaintiffs with a 20% Rule Report for each individual

22  ALE program, by grade level.  TUSD should begin consulting with the Plaintiffs and the

23  Special Master regarding how to comprehensively measure the effectiveness of the ALE

24  Action Plan to determine whether TUSD has attained unitary status in regard to the

25

26       [8]By feasibility, the Court means resource availability to meet transportation, staffing,
27  recruiting, funding, etc., needs for proposed programs.

28                                    8

1   District's responsibility to ensure to the extent practicable that African American and

2   Latino students have equal access to the District's Advanced Learning Opportunities.

3   Subsequently, TUSD should set the requisite annual goals, necessary, to attain unitary

4   status by the end of SY 2016-17, pursuant to the ALE Action Plan.

5          **Accordingly,**

6          **IT IS ORDERED** that the Special Master's R&R (Doc. 1645) is adopted in part

7   and rejected in part.

8          **IT IS FURTHER ORDERED** approving the 20% Rule as a rule-of-thumb

9   annual goal to be met as soon as practicable but no later than the USP target date: SY

10  2016-17.  TUSD has agreed to categorize GATE programs by the amount of time students

11  are engaged in them in a typical week and for all AAC programs to break data down by

12  school level– elementary, middle, K-8, and high school.  It shall report the 20% Rule goal

13  in the same way. Within 20 days of the filing date of this Order, TUSD shall provide

14  Plaintiffs and the Special Master with a 20% Rule Report for all eleven ALEs.

15         **IT IS FURTHER ORDERED** that TUSD shall develop goals for increasing

16  participation of ELL students in specific ALE programs, where practicable, and provide

17  explanation to the Plaintiffs and the Special Master as to how these goals were derived.

18  Within 20 days of the filing date of this Order, TUSD shall complete this ELL

19  Supplement to the ALE Action Plan Report and provide it to the Plaintiffs and Special

20  Master for review and comment.

21         **IT IS FURTHER ORDERED** that TUSD shall, in consultation with the

22  Plaintiffs and the Special Master, develop the comprehensive goals for attaining unitary

23  status by ensuring that African American and Latino students have equal access to the

24  District's Advanced Learning Opportunities.   Withing 60 days of the filing date of this

25  Order, TUSD shall file a Supplement to the ALE Action Plan, which shall include these

26  unitary status goals and annual goals for attaining unitary status by the end of SY 2016-

27

28                                           9

17.  THERE SHALL BE NO EXTENSIONS OF TIME FOR FILING THE

SUPPLEMENT TO THE ALE ACTION PLAN.  Plaintiffs and the Special Master may

file objections within 14 days of the filing date of the Supplement ALE Action Plan.

TUSD may file a Reply within 7 days of the filing date of any Objection.

DATED this 13th day of February, 2015.

David C. Bury
United States District Judge