# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Roy and Josie Fisher, et al., | |
|     Plaintiffs, | |
| v. | |
| United States of America, | |
|     Plaintiff-Intervenor, | |
| v. | CV 74-90 TUC DCB (Lead Case) |
| Anita Lohr, et al., | |
|     Defendants, | |
| and | |
| Sidney L. Sutton, et al., | |
|     Defendants-Intervenors, | |
| Maria Mendoza, et al., | |
|     Plaintiffs, | |
| United States of America, | |
|     Plaintiff-Intervenor, | CV 74-204 TUC DCB (Consolidated Case) |
| v. | |
| Tucson Unified School District No. One, et al., | |
|     Defendants. | |

# SPECIAL MASTER'S RESPONSE TO FISHER REQUEST FOR REPORT AND RECOMMENDATION ON APPOINTMENT OF CRPI DIRECTOR

## Introduction

In December 2014, the District announced the appointment of the Director for Culturally Responsive Pedagogy and Instruction (CRPI).  In response to the Special Master's request for information, the District provided numerous documents related to the appointment (*see* Exhibit A).  On January 15, 2015, the Fisher plaintiffs requested a Report and Recommendation challenging this appointment (*see* Exhibit B).  Because objections to this appointment were based in part on misinformation provided by the District, before submitting a Report and Recommendation, the Special Master summarized his findings and shared them with the parties to determine whether the Fisher plaintiffs still wanted to pursue an R&R (*see* Exhibit C).  After reviewing these findings, the Fisher plaintiffs renewed their request for an R&R on February 10, 2015, asking that the appointment be negated (*see* Exhibit D).

There appear to be two reasons why this appointment could be denied:

1. The candidate did not meet the minimal qualifications set forth in the job description.
2. The process for recruitment was so flawed as to result in *de facto* discrimination; that is, the process significantly limited or discouraged qualified candidates – in this case, given the Fisher objections, African American candidates.

## Qualifications

It is clear that the candidate appointed, Lorenzo Lopez Jr., does not meet the qualifications set out in the job description shared with the plaintiffs and with the Special Master that was used by the Fisher plaintiffs in their initial request for an R&R.  However, the District now asserts and

provides documentation (*see* Exhibits E) evidencing that the job description posted on its website to which the job announcement referred interested candidates was a job description proposed by the consultant used by the District (and recommended by the Special Master), Dr. Jacqueline Jordan Irvine.  As the February 3, 2015 communication from the District shows, the job description that was posted and used by the interview committee, and to which interested candidates responded, is significantly different from the job description that the District previously had previously.  The experience requirement in the posted job description includes:

- Experience in instruction and culturally responsive pedagogy as well as related areas in curriculum and ethnic/cultural studies.
- Five years of any combination of teaching and administrative/supervisory program management experience in a K-12 educational setting.
- Verbal and written communication skills in English and demonstrated ability to read written/graphic and oral instructions.

Of the seven preferred requirements for the position, Mr. Lopez clearly meets four of these requirements. Accordingly, Mr. Lopez clearly meets the qualifications required of the appointee to this position (*see* Exhibits F-1, F.2 and A).

The Fisher plaintiffs assert that the District cannot be trusted so they question whether the job description posted was in fact the same one as the District says it posted.  The Special Master concludes that the evidence presented by the District on this point is convincing.

The Fisher plaintiffs also claim that the Mr. Lopez lacks the qualifications required by the USP.  Section V.E.4.c. of the USP states:

> The CRPI Director shall have experience developing and teaching curriculum focused on the African American <u>and/or</u> Latino social, cultural and historical experience at the secondary level (emphasis added).

The Fisher plaintiffs claim that Mr. Lopez does not have experience working with African-American students. Neither the USP does not require nor the job description requires such experience.

The USP also calls for the CRPI Director to carry out certain supervisory responsibilities. The Fisher plaintiffs claim that this would require that he have an administrator's credential. However, this position is a staff rather than a line position. This means, among other things, that Mr. Lopez's supervisory authority is limited. For example, teachers are evaluated by and report to school principals. In general, the administrative credential is required for administrators who have responsibility for teachers and students, but that this is not the case here.

### **Process**

Those aspects of the appointment process specified in the USP – a standard set of questions and racially diverse search and interview committees – are met. However, the selection process was flawed in significant respects. Too little time was given for responses, the position statement says nothing of the unique and important role to be played and fails to anticipate concerns that might be expected given the attacks by the state, and it was not sent to sources with great potential to yield candidates. And, while it may be pro forma, neither the job announcement nor the job description included a statement that TUSD is an equal opportunity employer, a phrase or its equivalent that is a common code for welcoming diverse applicants.

The Fisher plaintiffs argue that these flaws explain why only three African Americans applied. The issue is whether these flaws affected the quality and diversity of the candidate pool to the extent that it is likely that highly qualified African American candidates would have applied had the process been implemented more effectively. There is no way, of course, to know with certainty the answer to this question.

A better search process would almost certainly have yielded a larger and more diverse pool. The District asserts that this search was posted for a month, a much longer period than is common. While it is disturbing that job announcements for key positions typically provide only a week for responses, it suggests that there was no intent to limit the applications so as to favor "internal" candidates.

The initial information provided by the District about where the job announcement was publicized indicated that it was sent to the National Association of State Boards of Education. The Fisher plaintiffs rightfully point out that the sending of the job announcement to this organization would not be appropriate. However, it turns out that the position announcement was sent to the National Association of Black Educators, a more likely source of applicants though hardly the best place to advertise such a position.

Few candidates would have experience in developing and teaching culturally relevant courses or have CRP expertise for both Latino and African American students (that is apparently the case for teachers who taught culturally relevant courses in TUSD). And, because much of the success of the MAS program – which is used as justification for the inclusion of the requirement for CRC courses in the USP – had to do with the role teachers played, Mr. Lopez, having worked as a teacher in the MAS program, brings experience to the position an external candidate would be unlikely to have.

Since no African American candidates completed the application (only three African American individuals expressed interest), there was no qualified African American candidate and, therefore, no overt discrimination. One candidate was offered another position in TUSD and the candidate accepted the offer. Unfortunately, there was no effort to discover why the other two African American candidates (one local and one external) who expressed some interest did not follow through and complete the application.

## **Recommendation**

The Special Master recommends that the appointment of Mr. Lopez to be the CPRI Director be sustained. While the process was flawed, and while it is conceivable that a new search would yield candidates with experience in culturally relevant curriculum and culturally responsive pedagogy dealing with both Latino and African American students, that probability is not great.  Moreover, there has not been a permanent CRPI Director since the USP was approved, and it is important that the responsibilities of the person holding this position be implemented. The District has conveyed to the Special Master its commitment to engage a panel of experts to review the CRC courses and the elements of professional development particularly relevant to CRP.  It is also prepared to engage an African American expert on CRP who would advise Mr. Lopez on the aspects of CRP that are especially important to the success of African American students.

                                        Respectfully submitted,

                                        _____/s/_____
                                        Willis D. Hawley
                                        Special Master

Dated:  February 25, 2015

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2015, I electronically submitted the foregoing **SPECIAL MASTER'S RESPONSE TO FISHER REQUEST FOR REPORT AND RECOMMENDATION ON APPOINTMENT OF CRPI DIRECTOR** for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

J. William Brammer, Jr.
wbrammer@rllaz.com

Oscar S. Lizardi
olizardi@rllaz.com

Michael J. Rusing
mrusing@rllaz.com

Patricia V. Waterkotte
pvictory@rllaz.com

Rubin Salter, Jr.
rsjr@aol.com

Kristian H. Salter
kristian.salter@azbar.org

Zoe Savitsky
Zoe.savitsky@usdoj.gov

Anurima Bhargava
Anurima.bhargava@usdoj.gov

Lois D. Thompson
lthompson@proskauer.com

Andrew H. Marks for
Dr. Willis D. Hawley,
Special Master