1

2

3

4

5

6
**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

7

8
Roy and Josie Fisher, et al.,

9
                Plaintiffs,

10
     v.

11
United States of America,

12
                Plaintiff-Intervenor,

13
     v.

14

15
Anita Lohr, et al.,

16
                Defendants,

17
     and

18
Sidney L. Sutton, et al.,

19
                Defendants-Intervenors,

CV 74-90 TUC DCB
(Lead Case)

20
Maria Mendoza, et al.,

21
                Plaintiffs,

22
United States of America,

23
                Plaintiff-Intervenor,

24
     v.

25
Tucson Unified School District No. One, et al.,

26
                Defendants.

CV 74-204 TUC DCB
(Consolidated Case)

27

28

1

2

### NOTICE OF FILING BY SPECIAL MASTER OF REPORT
### AND RECOMMENDATIONS RELATING TO DIETZ NARA

3

4

The Special Master hereby respectfully submits the attached Report and

Recommendations relating to the Dietz NARA and recommends Court approval of the District's

5

proposal.

6

On May 9, 2015 TUSD submitted a proposal to the Court to approve the location of two

7

portable classroom buildings on the Dietz K-8 campus to be used beginning in August 2015 (*see*

8

9

Exhibit A).  Both the Fisher and the Mendoza Plaintiffs oppose the District's Dietz proposal.  The

Department of Justice has no objection.  For the reasons set forth herein, including the undisputed

10

fact that the introduction of portables at Dietz will have no effect on the racial composition of the

11

12

school or of any other school, the Special Master recommends that the Court approve the

District's proposal.

13

14

**Procedural History**

15

On April 14, 2015, the District administration submitted to the Governing Board a

16

proposal for locating portable buildings on the Dietz campus, and the Board then approved the

17

proposal.  On May 1, the District submitted this proposal to the Plaintiffs and the Special Master

18

along with the required Desegregation Impact Analysis and requested approval in order to avoid

19

20

burdening the Court with a contested Notice and Request for Approval (NARA) (Exhibit B).  On

May 15, the Mendoza Plaintiffs expressed their objections (Exhibit C) as did the Fisher Plaintiffs

21

22

expressed their objections (Exhibit D).  Also on May 15, the Department of Justice indicated that

23

it had no objection to the District's proposal (Exhibit E).

24

On May 17, the Special Master sent a memo to the parties indicating what his response to

25

26

the proposal and the objections would be if he were to submit a Report and Recommendation to

the Court on this matter (Exhibit F).  The Special Master asked the Fisher and Mendoza Plaintiffs

27

28

to examine his conclusions and decide whether they wished him to proceed with an R&R.

Neither set of Plaintiff responded.  On May 22, the District submitted the NARA to the Court (Exhibit G).

### Analysis of Objections

Fisher Objections

The Fisher Plaintiffs raise four objections to placing portables at Dietz.  The Special Master's response to each of these objections is as follow:

1.  The Fisher Plaintiffs claim that the District's assertion that the student population will increase at Dietz is incorrect.  In fact, the District makes no such assertion. Rather, it asserts that the population at Dietz has already increased beyond predictions and explains why this occurred.  This increase in the student population, and in particular among students with special needs, is one of the justifications for the proposed portables.

2.  The Fisher Plaintiffs argue that the court order relating to school closures February 2013, which limited the use of portables in receiving schools, applies to the Dietz portables.  However, no students from closed schools still attend Dietz, and no student will be learning in Dietz portables for any extended period of time during the school day (*see* Exhibit A, p.5, Section 3a).

3.  The Fisher Plaintiffs claim that the land mass at Dietz is inadequate to support portables and link this claim to an assertion that middle school students at Dietz are receiving an inferior education.  No evidence is provided to support this claim (although Dietz is a C school) or to suggest that the introduction of portables would make things worse.  One of the reasons given for adding the portables is to increase student access to a broader curriculum and to provide enrichment activities intended to increase student performance.

4.       The Fisher Plaintiffs argue that inadequate attention was given to the District-wide impact of placing portables at Dietz. A related argument is made by the Mendoza plaintiffs and is addressed below. The educational opportunities that will be offered or facilitated by the addition of the portables at Dietz do not appear to be unique – similar programs are available at a number of other schools.

**Mendoza Objections**

A primary concern of the Mendoza Plaintiffs is that the introduction of CORE enrichment courses that will be offered in the portables should be offered throughout the District and, in particular, should be available in West Side schools. This concern was based, at least to some extent, on misinformation initially provided by the District. In the NARA submitted to the Court, the District corrects earlier information and indicates that the program at issue, which seeks to facilitate the transition of students from self-contained classrooms to classrooms that focus on particular subjects, exists at five West Side K-8 schools, one Central school, and one school on the East Side. This does not suggest that students in West Side schools are disadvantaged because some do not offer this program. Moreover, it is not clear that the program makes a substantial difference in student outcomes.

That there is variation in educational offerings across the District is not, in itself, evidence of discrimination or inequitable distribution of resources. Most school districts struggle with finding a balance between the need for common programs districtwide, especially with respect to core academic curricula, and the desirability of allowing for variation that is responsive to:

- differences in student needs
- the availability of community resources that support different opportunities
- unique capabilities of faculty
- traditions
- physical space and facilities
- experimenting with new ideas that might have district-wide usefulness.

Finding the right balance requires analyses that determine that the variation among schools does not result in differences in educational opportunities and outcomes by race, ethnicity and language facility.  There is no reason to believe that the introduction of portables at Dietz would have invidious consequences for Latino or African-American students elsewhere in the District.  And, 65% of the students at Dietz are Latino or African-American.

The Mendoza Plaintiffs also expressed concern that placing services that address the needs of special education students in portables might stigmatize the students or provide them with inadequate facilities.  The District's counter-argument is that student privacy will be enhanced as will space for developing Individual Educational Programs (IEPs) required by law, teacher planning and family conferences, and this contention seems reasonable.  The District also points out that many students who are not special-education students will be using the portables.  Moreover, most of the instruction that special education students experience will be in regular classrooms.  In short, stigmatization is unlikely, and portables should allow for meeting the needs of special education students more appropriately.

**<u>Recommendation</u>**

The Special Master recommends that the Court approve the District's request to install two portables, each of which has two classroom sized spaces, at the Dietz K-8 School.

**<u>Comment on the Need to improve the Consultation Process</u>**

That this relatively minor matter – the installation of two portable classroom facilities that will have no effect on integration – made its way to the Court and consumed many hours of time by all the parties and the Special Master with the attendant costs is bleak testimony to the continuing absence of trust and goodwill among the parties and the failure to develop a viable process for approving actions by the District that are subject to the provisions of the USP.  On this matter and others, the Plaintiffs object to the District taking action without adequate prior

CROWELL
& MORING LLP
ATTORNEYS AT LAW

; CASE NO.

consultation.  The District appears to believe that it must fully develop proposals (*see* Exhibit G, p.4, lines 7-10) before consultation and that it is often desirable to get approval of the Governing Board for such consultation, as is the case in the Dietz issue.  And in some cases, the District engages in what can only be seen as preliminary implementation, as in the matter of the Fructhendler/Sabino restructuring that was recently before the Court.

It seems likely that the District considers consultation with the Plaintiffs and the Special Master a burden, one that impedes its responsibility to get on with the complex task of meeting the needs of its students.  The District identifies what it believes to be good ideas and wants, understandably, to implement them expeditiously.

Even though the USP does not require consultation prior to the District's submission of a proposal to the Governing Board, such submissions suggests that the District does not see consultation as productive in shaping its proposals and further does not believe that the Board should be considering the positions of the Plaintiffs or the Special Master when it makes its decisions.  When the District moves forward in developing a proposal without consultation, not only does it deny itself the benefit of input from the Plaintiffs and the Special Master, but it engages staff in the development of proposals in which they become invested, thus making acceptance of "external" input more difficult.  When such matters go to the Board for action and approval is given, this signals to the community that something is about to be done and puts the Plaintiffs and the Special Master in a position of undermining public confidence in the District and/or in the USP.

The Court is not unaware of this problem and has consistently urged the parties and the Special Master to work collaboratively.  From time to time, the parties pledge to work together more constructively and do so.  But, this commitment is not consistently applied, and each time it is not, the situation can be perceived by the Plaintiffs as a lack of goodwill on the part of the

District.

On the face of it, the solution seems relatively simple.  When a significant proposal for new or revised District-wide policies and practices that would fall under provisions for comment and review provided for in the USP is being seriously considered by the District, the District should share these ideas with the Plaintiffs and ask for a one week turnaround for comments.  If this feedback suggests that conflict might occur, a telephone conference should be scheduled and the matter discussed.  A proposal could then be formalized and the procedures outlined in the USP followed.  Arguably, the USP provides for relatively extensive periods of comment and the parties should discuss whether specific timelines should be shortened.  The District should not take an action item to the Board about which there is continuing consultation although it surely should inform the Board of issues about which it would need to make a decision during study sessions.  At the study sessions, the District should provide the Board with information about the dispositions of the Plaintiffs and the Special Master.  Policies would not be enacted by the Board before Court approval in those instances in which the Plaintiffs have requested that a Report and Recommendation be made to the Court by the Special Master.

The Special Master urges the Court to require the parties to, once again, develop a viable procedure for addressing the comment and review provisions of the USP and to make a report to the Court about the results of this effort.

Respectfully submitted,


_____/s/_____
Willis D. Hawley
Special Master

Dated:  May 27, 2014

1

## <u>CERTIFICATE OF SERVICE</u>

2

3   I hereby certify that on, May 27, 2014, I electronically submitted the foregoing **NOTICE OF FILING BY SPECIAL MASTER OF REPORT AND RECOMMENDATIONS RELATING TO DIETZ NARA** for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4

5

6   J. William Brammer, Jr.
    wbrammer@rllaz.com
7

8   Oscar S. Lizardi
    olizardi@rllaz.com
9

    Michael J. Rusing
10  mrusing@rllaz.com

11  Patricia V. Waterkotte
    pvictory@rllaz.com
12

13  Rubin Salter, Jr.
    rsjr@aol.com
14

15  Kristian H. Salter
    kristian.salter@azbar.org
16
    Zoe Savitsky
17  Zoe.savitsky@usdoj.gov

18  Anurima Bhargava
    Anurima.bhargava@usdoj.gov
19

20  Lois D. Thompson
    lthompson@proskauer.com
21

22                                              _____
                                                Andrew H. Marks for
23                                              Dr. Willis D. Hawley,
                                                Special Master
24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

; CASE NO.