**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Roy and Josie Fisher, et al.,          )<br>                    )<br>            Plaintiffs,          )<br>v.                              )<br>                    )<br>United States of America,       )<br>                    )<br>            Plaintiff-Intervenor, )<br>                    )<br>v.                              )<br>                    )<br>Anita Lohr, et al.,             )<br>                    )<br>            Defendants,         )<br>                    )<br>and                             )<br>                    )<br>Sidney L. Sutton, et al.,       )<br>                    )<br>            Defendants-Intervenors, )<br>_____)<br>                    )<br>Maria Mendoza, et al.,          )<br>                    )<br>            Plaintiffs,          )<br>                    )<br>United States of America,       )<br>                    )<br>            Plaintiff-Intervenor, )<br>                    )<br>v.                              )<br>                    )<br>Tucson Unified School District No. One, et al., )<br>                    )<br>            Defendants.         )<br>_____) | CV 74-90  TUC DCB<br>(lead case)<br><br><br><br><br>**ORDER**<br><br><br><br><br>CV 74-204 TUC DCB<br>(consolidated case) |

On May 8, 2015, the Defendant Tucson Unified School District (the District) submitted a Notice and Request for Approval (NARA) of Portable Classrooms at Dietz K-8 School. The Government does not object, but both Fisher and Mendoza Plaintiffs oppose the proposal. The District filed a Reply to the Fisher and Mendoza Objections. On May 27, 2015, the Special Master filed a Report and Recommendation (R&R). (Doc. 1805.) He recommends the Court approve the District's proposal to put two double-portable buildings (four classrooms) at Dietz K-8 School. The Special Master also reports problems with the consultation process because it allows Board action to be taken on a proposal governed by the USP prior to the parties having an opportunity to review the proposal and provide input and comment. He asks the Court to once again direct the parties to develop a viable procedure for addressing the comment and review provisions in the USP, including discussions of whether specific timelines should be shortened.

The Dietz k-8 School was initially planned as a self-contained K-8 model, with students in grades 6-8 staying with a single teacher throughout the year. A new principal at Dietz, however, developed a middle school model, with students transitioning between teachers while maintaining a "smallschool" community and culture. TUSD explains: "Many parents are attracted to this model for the social and academic benefits it provides. Research supports the social and academic benefits of the K-8 model, generally, but particularly in urban school districts" (NARA (Doc1798), Desegregation Impact Analysis (DIA) (Doc. 1798-1) at 33.)[1]

---

[1]The Fisher Plaintiffs reurge their concern raised in 2013, when the District closed several schools for fiscal reasons. (Objection (Doc. 1802) at 8-9 (citing Objection (Doc. 1424) at12 (the District should not close middle schools and convert elementary schools to K-8 schools until it can show that such a shift will not result in more students attending less diverse schools for the 6th through 8th grades). Now, the District is in better position to assess school closures and consolidations than it was in 2013. As the Court understands it, there are currently no plans for future school closures so the District has a set number of schools making up a system of school services ranging from elementary K-6, K-8, middle and high schools  The District now has a Boundary Plan, a school specific Magnet Plan, and an array

2

The District wants to use some of the portable building space to offer a 6th grade CORE enrichment class to increase access to 7th and 8th grade electives.

The remainder of portable building space will be used for support services for its Exceptional Education (ExEd) students, such as IEP meetings and other meetings between staff with families and students, for small group instruction, for testing space, and to serve as a "home base" for ExEd CCS teachers. (NARA (Doc. 1798 at 5.)

None of the space in the portable buildings will be used as home-room type class rooms for housing a specific group of students all day or even for a significant portion of the day. *Id.* The DIA reflects that the District considered enrollment projections, capacity changes, impacts to the racial and ethnic make-up of Dietz, and concluded that the impact from the portable buildings would cause "'virtually no change to the racial-ethnic composition of Dietz." (Reply (Doc. 1804) (citing and quoting DIA (Doc. 1798-1) at 26.)

The Fisher Plaintiffs are concerned that the estimate for needed future space will not materialize because Dietz is a C school. The Mendoza Plaintiffs complain the District fails to explain why the alleged benefits of a K-8 program should be offered at Dietz and not some other school. (Mendoza Objection (Doc. 1801) at 7 (noting Roberts-Naylor and Secrist have 16% African American students and Drachman, Roberts-Naylor and Utterback have higher concentrations of Latino students)). The Mendoza Plaintiffs are concerned with the increase in the number of ExEd students at Dietz and question whether minority students are improvidently funneled there.

---

of other plans developed to move the District forward toward the most practicable unitary plan it believes it can attain under the USP. The District should in the future, in respect to proposed grade changes, include in the DIA an analysis which reflects whether improvements in the quality of education for students at one school might dis-serve desegregation of the District as a whole. *See e.g.* (Order (Doc. 1799) at 4-6 (explaining lack of comprehensive information as part of the reason for denying Fruchthendler-Sabino NARA).

There is no dispute that CORE enrichment classes should improve the academic standing of the school and enhance the quality of education at Dietz, which is a school with a 50% Latino student population and a 14% African American student population. (Reply (1804) at 6.) The question of whether additional portables will or will not be needed in the future at Dietz remains to be answered another day. Whether there are racial disparities in ExEd in TUSD is being monitored and tracked pursuant to the USP § V.D.1.

The Court approves the NARA for the two portable buildings to be added at Dietz K-8 School. The Court turns to the harder question of whether this Court should "order the District to not implement any future NARA proposal before obtaining the required approval, and direct the District to clearly indicate in publicly available documents that any item approved by its Governing Board in preparation of implementation of pending NARA proposals are subject to Court approval." (Mendoza Objection (Doc. 1801) at 2.) Alternatively, the Court considers whether it should, as recommended by the Special Master, direct the parties "to, once again, develop a viable procedure for addressing the comment and review provisions of the USP and to make a report to the Court about the results of this effort." (R&R (Doc. m1805) at 7.) The concern is that the USP calls for the parties to work together to implement the USP, with the District having the benefit of input from the Plaintiffs before it acts. The Special Master put it best: "The fact that the Board takes action signals to the community its intent to go forward . . . The purposes of review under NARA include providing the District with input with respect to its decisions, not simply to allow for a veto. The District includes the Board." (Fisher Objection (Doc. 1802) at 4 (quoting Special Master 5/8/15 email)).

This is true. In both this proposal and the Fruchthendler-Sabino Honors program proposal, "the Board [did] not have the benefit of any perspective that the plaintiffs and the Special Master might offer." *Id.* There is, however, nothing wrong with the Board leading in the implementation of the USP. In fact the Board is responsible for leadership in respect

4

to all the District's efforts, including those undertaken to implement the USP. But, when the Board acts without considering input from the Plaintiffs and the Special Master, especially if it acts even before the preparation of the DIA, the Board has not acted consistently with the USP requirement that it consider the impact of its proposals in respect to its obligations under the USP.

The Court refers to the USP NARA provision which requires "the District to provide the Special Master with notice and seek approval of certain actions regarding changes to the District's assignment of students and its physical plant, . . . [and to] also provide notice and a request for approval regarding the closing or opening of magnet schools or programs and attendance boundary changes . . . . [*And,*] [*i*]*n order to assess the District's plans in these regards*, the District shall submit with each request for approval, a Desegregation Impact Analysis, ("DIA"), that will assess the impact of the requested action on the District's obligation to desegregate and shall specifically address how the proposed change will impact the District's obligations under [the USP.]" (USP (Doc. 1713) , § X.2.C) (emphasis added). Without the DIA, the Board cannot assess the impact of an action on its obligation to desegregate nor address how its proposed change will impact its obligations under the USP. The Court agrees with the Special Master that the Board should have the advantage of the information contained in the DIA when considering an action that will require a NARA.

The Court turns to the expedited nature of most of the NARA proposals. This NARA is a good example. On **April 14, 2015**, without the benefit of the DIA, the Board moved to add two portable buildings at Dietz K-8 School by approving a procurement contract for $225,000 to Kitttle Design & Construction to move the portables. (NARA (Doc. 1798-1), Ex. 2: Board agenda action item)). **May 1, 2015**, the District submitted the proposal, including the DIA, to the Plaintiffs and Special Master and requested their approval to avoid a contested NARA. Here, within 17 days of the Board's action, the DIA had been prepared and the NARA was submitted to the parties and Special Master for review and comment.

Preparing the DIA was not overly burdensome nor time consuming. The Special Master recommends: "When a significant proposal for new or revised District-wide policies and practices that would fall under provisions for comment and review provided for in the USP is being seriously considered by the District, the District should share these ideas with the Plaintiffs and ask for a one week turnaround for comments." (R&R (Doc. 1805) at 7.)

In this case, it would have taken approximate 24 days for staff to prepare the DIA, submit the proposal and DIA to Plaintiffs and the Special Master for a one-week turn-around review and comment period, before the Board considered the matter. In this way, the Board has the proposal with the DIA and a general idea of the parties and Special Master's positions and/or concerns. The Court finds this is in keeping with the USP's mandate that the DIA be used to assess the District's plans in regard to it's obligations under the USP. It creates an informational imbalance if only the parties and the Special Master have the benefit of the DIA to assess a proposed plan. The Court has found the DIAs to be extremely helpful. The Board is at a disadvantage if it must assess and commit to a project prior to preparation of the DIA. After-the-fact preparation of the DIA delays meaningful discussions and is contrary to the usual expedited nature of NARAs.

**Accordingly,**

**IT IS ORDERED** that the NARA (Doc. 1798) to add two portable buildings at Dietz K-8 School is APPROVED.

**IT IS FURTHER ORDERED** that the Special Master's R&R (Doc. 1805) is ADOPTED as described below.

**IT IS FURTHER ORDERED** that the District shall prepare a DIA and allow a one-week turnaround review and comment period and for both the DIA and comments to be presented to the Board when it is assessing whether or not to approve a proposal governed by NARA provisions.

**IT IS FURTHER ORDERED** that within 30 days of the filing date of this Order the Special Master and the parties shall work together to develop viable procedure(s) for the

6

comment and review provisions which are required under the USP when a significant proposal for new or revised District-wide policies and practices are seriously being considered by the District, with the goal being to improve communications and expedited decision-making, including judicial determinations. Within 45 days of the filing date of this Order, the Special Master shall file a status report, including any recommendations.

DATED this 11th day of June, 2015.

David C. Bury
United States District Judge

7