**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Roy and Josie Fisher, et al., <br>            Plaintiffs, <br>    v. <br> United States of America, <br>            Plaintiff-Intervenor, <br>    v. <br> Anita Lohr, et al., <br>            Defendants, <br>    and <br> Sidney L. Sutton, et al., <br>            Defendants-Intervenors, | CV 74-90 TUC DCB <br> (Lead Case) |
| Maria Mendoza, et al., <br>            Plaintiffs, <br> United States of America, <br>            Plaintiff-Intervenor, <br>    v. <br> Tucson Unified School District No. One, et al., <br>            Defendants. | CV 74-204 TUC DCB <br> (Consolidated Case) |

**SPECIAL MASTER'S REPORT AND RECOMMENDATIONS**
**REGARDING THE REVISION OF TUSD'S COMPREHENSIVE MAGNET PLAN**

**Overview**

This report has six sections: (1) background; (2) objections rendered moot by recent changes in the District's Comprehensive Magnet Plan ("CMP") and by stipulations made by the District; (3) objections of the Fisher plaintiffs (4) objections of the Mendoza plaintiffs; (5) recommendations made by the plaintiffs that are not specific objections to the CMP; and (6) recommendations and clarifications. In a briefing schedule agreed to by the parties, the Special Master is to submit a Report and Recommendation to the Court on July 9, 2015. The parties have until July 20 to file their comments on the Special Master's recommendations to the Court. There are no further briefings provided for. Given that the magnet plan affects schools and programs in the coming school year, which begins the first full week of August, the Special Master respectfully requests that the Court expedite its review of this R&R.

**Background**

The District submitted its revised CMP on June 11, 2015 (*see* Exhibit A, Doc 1803). This version of the plan did not include plans for each of the District's magnet schools and programs. On June 18, 2015, the Fisher and Mendoza plaintiffs both expressed objections to this version of the CMP (*see* Exhibits B and C, Docs 1813 and 1815). The District responded to these objections on June 26, 2015 (*see* Exhibits D-1 and D-2, Docs 1819 and 1820). To its comments on the objections in Document 2019, the District attached another version of the revised CMP to which the Mendoza plaintiffs directed their objections filed on June 30 (*see* Exhibit G, Doc 1822). The District has stated that this amended version of the CMP seeks to incorporate some of the stipulations to which the District agreed in order to address concerns of the plaintiffs and the Special Master (*see* Exhibit H). On June 18, 2015, the Department of Justice urged approval of

the CMP arguing that the District has met the provisions of the USP and relevant court orders. On this basis, the Department of Justice recommends that objections by the plaintiffs and the Special Master relating to program content should not be considered by the Court (*see* Exhibit E, Doc 1814).

On June 19, 2015, the District submitted plans for each of the magnet schools (*see* Exhibit F, Doc 1816). As noted, the Mendoza plaintiffs filed objections to what they call "the further Revised Comprehensive Magnet Plan" on June 30, 2015 (*see* Exhibit G). The Fisher plaintiffs and the Department of Justice did not file objections to the individual school plans. On June 24, 2015, the District submitted a list of stipulations identifying changes in the CMP that it agreed to implement (*see* Exhibit H). The Special Master notes that the provisions of this stipulation by the District are inconsistent with some provisions of the District's site plans for individual schools and the overall plan. This can be attributed in part to last-minute changes made in school level plans as a result of discussions aimed at resolving differences between the Special Master and the District. The Special Master recommends herein that the Court require the District to amend the CMP in all its parts to coincide with the stipulations in Exhibit H.

On July 7, 2015, the District responded to the Mendoza plaintiffs' June 30 objections confirming some but not all of the stipulations in Exhibit H (*see* Exhibit I). That same day the District confirmed by email that it would be funding professional learning communities in ways that maintain teachers in classrooms during the school day (*see* Exhibit J) thereby addressing one of the concerns of the Mendoza plaintiffs.

The Special Master submitted several memoranda to the parties regarding specific aspects of the CMP and objections by the plaintiffs. These memoranda are not included in this R&R because relevant arguments in those memoranda are repeated here in the sections below.

**Plaintiff Objections Rendered Moot**

The Fisher and Mendoza plaintiffs argue that the selection of Ochoa Elementary School as a "lighthouse school" is inappropriate. The District has withdrawn this proposal (*see* Exhibits F and H). In its initial identification of Ochoa as a lighthouse school, the District identified this selection as an "exclusionary option." The Fisher plaintiffs ask for criteria for eligibility as an exclusionary option seemingly objecting to this categorization. However, there is now no such option nor will there be in the future so there are no criteria.

The Fisher plaintiffs object to the continuation of magnet funding beyond the year in which the school loses magnet status. The District agrees with this position but also asserts, consistent with the proposal of the Fisher plaintiffs, that funding for the schools that lose magnet status can exceed the formula-plus criterion for funding in order to assure that student needs are being met, particularly in schools losing magnet status because of low student achievement. The Fisher plaintiffs argue that the CMP appears to indicate the schools cannot lose magnet status until the end of the 2016-17 school year. But this is not what the CMP provides. The District agrees with the schedule for review of magnet status and potential recommendations by the Special Master for withdrawal of magnet status with respect to integration. This can occur as soon as September of each year. With respect to student academic achievement, review and recommendations by the Special Master will be provided as soon as data from assessments of student academic performance are available. The Special Master notes that should recommendations be made to the Court for withdrawal of magnet status, the parties could object to any such recommendation. This is not in dispute.

The Mendoza plaintiffs object to school level plans that appear to give noncertified instructional assistants responsibility for implementing activities intended to improve the

academic performance of underachieving students. The District has agreed that instructional assistants will not be used for this purpose (*see* Exhibit H).

The Mendoza plaintiffs ask for clarification of what it means when the CMP calls for the assessment of the achievement gap between an ethnic group and the group with the highest level performance in a given school or program. This confusion occurs because examples provided for in the plan focus on white students as the highest achieving students in school. However, the District asserts that the plan means what it says -- if there is any ethnic group whose achievement is higher than whites, the achievement of that level of the ethnic group would be the reference point (*see* Exhibit H).

The Mendoza plaintiffs object to the lack of clarity about whether students who are participating in after-school, weekend, or summer programs specified in the academic achievement plans for individual magnet schools will be provided free transportation. The District has stipulated that such transportation will be provided (*see* Exhibits H &I) although, again, the plan remains unclear in this respect.

The Mendoza plaintiffs object to the fact that some school goals for student achievement are lower than those that they are now achieving whereas proposed goals should be set at least as high as those already achieved. The District has agreed that this concern of the Mendoza plaintiffs is valid. This will require another change in the portion of the CMP that deals with the school level plans.

Both the Fisher and Mendoza plaintiffs object in Exhibits B and C to the fact that the CMP does not include plans or budgets for schools or programs. As noted, on June 19, 2015, the District submitted a revised version CMP that includes school-level plans and budgets. The Mendoza plaintiffs are concerned that by providing time during the school day for teachers to engage in professional learning communities by having substitutes or teaching assistants take

-5-

over teachers' class for two hours a week, student learning time would be reduced. However, the District has agreed to pay teachers overtime in connection with the Wednesday afternoon meeting time for teachers, so this issue is moot (*see* Exhibit J).

**Additional Fisher Plaintiff Objections**

The Fisher plaintiffs assert that the District should have ended magnet status in some schools before now and that continuing to support schools that the District has identified as problematic is wasteful and unproductive. It is not clear that this is an objection to the CMP and no specific schools are identified to lose status. While the loss of magnet status in those schools previously identified as problematic is likely, the court order requiring revision of the CMP establishes the process for withdrawal of magnet status. Schools should be given the opportunity to meet the goals set forth by the Court in its January 2015 order.

In the June 11 version of the CMP, the District establishes three categories of schools — one of which was "problematic." In their objection, the Fisher plaintiffs request a significant amount of information relating to schools in this "problematic" category saying that because they did not have adequate information about the characteristics of the schools formerly determined to be problematic, this undermines their ability to evaluate the plan. But the District has eliminated these categories (although the formatting of the plan continues to group the schools in what appears to be the likelihood of having their magnet status withdrawn). The CMP sets forth the criteria that schools must meet to maintain their magnet status. Having the detailed information that the Fisher plaintiffs have requested does not seem relevant to the criteria or processes to be used in determining magnet status and how this information would inform their decision about the magnet plan is not specified. All schools are vulnerable to some extent on at least one of the criteria; some schools are vulnerable on most of the criteria. The plan does provide information relating to the status of each school with respect to integration and achievement goals. This

information would allow readers of the plan to estimate how likely it is that schools will maintain their magnet status over the next two years. It should be noted that the Fisher plaintiffs assert that five schools appear vulnerable to losing status in the next school year. As noted, if any school fails to meet even one of the criteria set forth in the CMP, it could lose its magnet status. More than five schools appear unlikely to achieve the goals set forth in the CMP during the 2015-16 school year.

*Special Master's Recommendation:* There is no need for the Court to act on these two objections/concerns of the Fisher plaintiffs.

**Additional Mendoza Plaintiff Objections**

1. <u>Creating a Magnet School Focused on Gifted and Talented Education at Tully</u>

The Mendoza plaintiffs are concerned that establishing a gifted and talented (GATE) program at Tully that does not require test-based admission might stigmatize students in such a program. At the same time, the Mendoza plaintiffs argue that the District has taken a deficit approach to many proposed strategies for reducing achievement gaps. GATE could not be categorized as a deficit approach. There is good reason to believe that, given quality teaching, almost all students would benefit from the type of instruction and curriculum found in GATE programs. Other Advanced Learning Experiences in the District do not require that students be tested before being admitted to them -- *e.g.,* Advanced Placement courses -- and no one argues that students in such courses are stigmatized by their presence therein.

The Mendoza plaintiffs argue that because GATE programs are offered elsewhere in the District in non-magnet schools, the provision of the USP that defines magnet schools as having unique themes and programs should apply. Aside from the fact that the GATE program at Tully would be unique because it does not require admission tests, the Mendoza plaintiffs strongly support both Davis and Roskruge dual language magnet programs despite the fact that there are

other schools in the District that offer dual language learning opportunities to students. The Mendoza plaintiffs appear to object to the provision of the CMP that provides that Tully be exempted from the provisions of the plan governing maintenance of magnet status. The reason for this exemption is that the coming year is a start-up year and the first year of full operation will be 2016-17. Parents who send their students to Tully should not have to worry that the school will lose magnet status in the short run.

The challenge at Tully is to ensure that the GATE program there is fully and rigorously implemented. The budget for the Tully magnet has been increased in the latest version of the CMP in an effort to strengthen the implementation of the program. The development of an open GATE program at Tully could become a resource for the District and demonstrate how the approaches used there can be used more widely throughout the District whether or not there is a GATE program in the school.

*Special Master's Recommendation:* The Court should allow the implementation of a GATE magnet program at Tully Elementary School. The Special Master notes that this will also meet the requirement of the Court that the District seek to make gifted and talented programs more available in areas of the District most accessible to Latino and African American students.

2.  Deficit Approaches to the Improvement of Student Academic Performance

The Mendoza plaintiffs assert in their objections that the District is focused on so-called deficit approaches to improving student achievement. Clearly, when teachers focus primarily on students' deficits rather than build on their assets, this undermines student learning. On the other hand, when teachers focus on students' cultural, linguistic, and cognitive assets they can design learning situations that enable students to connect what they know to what we want them to learn -- the most basic tenet of learning theory. Accounting for student assets in the context of what we want them to learn and what they still need to learn allows them to use their language and cultural

assets to meet challenges and cross cultural borders and, in the process, elevate their competence and confidence. There is no argument here.

The Mendoza plaintiffs want the Court, in effect, to direct the District not to use deficit approaches to learning and to use "theme-based strategies to enhance achievement." It is not clear how the Court could do this. There is significant debate about whether certain strategies are a reflection of deficit thinking. The Mendoza plaintiffs do not provide the Court with language that they believe would eliminate deficit programs. There are good reasons for focusing attention on building the skills and dispositions of students who are falling behind and need to achieve a higher level. Some of the most successful programs for bringing students up to speed involve small group instruction and individual tutoring -- such as Reading Recovery and some aspects of Success for All -- to focus on improving specific capabilities of students who are behind their peers academically.

Excellent teachers almost always used student groups for specific purposes that relate to learning needs, student interests, particular curriculum goals, and other considerations. Sometimes this results in grouping struggling students together but this, in turn, allows teachers to reduce the teacher-student ratio for periods of time and engage in more individualized instruction. The problem with grouping is that it is often based on a single and inadequate measure performance and this can result in groups of low achieving students being the instructional home for student learning time across subjects. When grouping is not done well it can lead to sustaining differences between students when there is no way out of the group to which they can have been assigned.

However, given that teachers need to adapt instruction to student needs, it is difficult, and indeed undesirable, to establish firm rules for when and how students should be grouped. There are some guidelines. Pullout programs during the school day should be suspect; they can result in

fragmenting students' learning experiences and can result in stigmatizing students who are pulled away from their peers because they and everyone else know that, "they are not as smart as others." But pullout strategies should not be prohibited nor should they be made voluntary as the Mendoza plaintiffs suggest. In some cases, pullout programs are used to bring together students from different classrooms so as to increase the students' opportunities for exceptional instruction. In some cases, students are pulled out to meet with specialists. Further, whether students are grouped in the back of the classroom or out of the classroom may have little effect on the students' self-esteem or how others perceive their abilities.

The vast majority of a student's learning time in a school day should be in a whole class instruction, individual instruction, or flexible groups whose membership changes. Observers should be able to see teachers using a range of instructional strategies -- such as cooperative learning, peer tutoring and differentiated instruction -- that minimize the use of achievement groups. Academic grouping should be for specific purposes. If this grouping works, it should be abandoned because it is no longer needed. If it does not work, there is no reason to keep it and it should be abandoned. But these proposals do not lend themselves to firm restrictions on professional judgment.

The best way to ensure that whatever grouping does take place has positive consequences is to enhance the ability of teachers to employ a repertoire of instructional strategies rooted in culturally responsive pedagogy, create school cultures that are inclusive and supported by leaders and instructional coaches, and be sure that teacher evaluation processes provide evidence when grouping is being inappropriately employed. The USP provides for such measures; the need is to make sure these provisions are effectively implement.

*Special Master's Recommendation:* There is no need for the Court to define instructional strategies reflecting deficit thinking or to otherwise limit the professional judgment of teachers so

long as such judgment is not the product of and does not result in racial, ethnic, cultural, or linguistic discrimination.

### 3. Dual Language Programs

The Mendoza plaintiffs object to the District's decision not to implement additional dual language programs. This is certainly a legitimate concern, but it does not seem to be an issue that should be resolved in the context of the CMP. There are two dual language schools that are magnets and neither is integrated -- not even close. Other Districts have found dual language programs to be effective instruments for integration; TUSD has not. If neither Davis nor Roskruge -- both of which have good reputations -- cannot be integrated, it seems reasonable for the District to conclude that adding another dual language <u>magnet</u> would not result in increasing the number of students who have the opportunity to attend an integrated school.

*Special Master's Recommendation:* The Court should not require the District to add a dual language school to it array of magnet programs at this time.

### 4. Inadequate Funding of Magnet Schools

The Mendoza plaintiffs argue that the District has inadequately funded magnet schools and provide specific examples identifying changes in budgets presented in the preliminary school level plans shared in May to those in the final plan submitted to the Court in late June. Much of the May version budgets were proposed by school principals and in many cases had no chance of being funded. The magnet school level budget for 2015-16 is about $2,440,000 greater the amount funded in 2014-15. Whether each decision being made by the District in the allocation of these funds is the best possible use seems an inappropriate issue for the plaintiffs or the Special Master to address. For example, the Mendoza plaintiffs complain that a $14,000 expenditure for an arts integration consultant at Holladay should be retained. Holladay is one of the weakest schools among the magnets and its trajectory is downward. Deciding not to invest in curriculum

development in this context does not seem, on the face of it, unwise. It is not possible, moreover, to know all of the strategies that are being employed in each school simply by looking at magnet budgets because funding from 910 G sources is only one source of funding. For example, the Mendoza plaintiffs argue that too little is being done to address the problems of discipline at Safford Middle School. The District responds by saying that it is using funds from other sources to address the discipline problem and without looking very closely at detailed strategies to be employed during the next school year, it does not seem possible to know whether the discipline problem is being adequately addressed. Moreover, discipline problems often derive from poor training of teachers or discriminatory actions that do not link directly to funding issues, especially when teacher training with respect to discipline is funded outside the magnet program. This does not mean that the plaintiffs or the Special Master should not make recommendations about specific programs that should be adopted or identify practices in the schools that are discriminatory or likely to be ineffective. But no such proposals are part of the Mendoza objections.

*Special Master's Recommendation:* The Court should not amend the budgets proposed for individual magnet schools or programs except in those cases where the stipulations identified in Exhibits H and J apply.

5. <u>Magnet School Plans Do Not Adequately Address the Needs of ELL Students</u>

The Mendoza plaintiffs cite a provision in the CMP which says that schools that did not reclassify enough ELL students to receive additional points from the Arizona letter grade system should include strategies in their plans specifically on the success of the ELL students. Schools in this category include Carillo, Robison and Ochoa. The District's July 7 response to this objection is to identify strategies aimed at increasing the achievement of all students who are underperforming but does not identify any specific strategies to address the needs of ELLs.

*Special Master's Recommendation:*  The Court should direct the District to identify specific strategies to address the learning needs of ELL students in those schools that did not reclassify enough ELL students to receive additional points from the Arizona letter grade system.

6. <u>Aligning Improvement Strategies with Magnet Themes</u>

The Mendoza plaintiffs note that strategies proposed for school improvement do not appear to be related to each school's magnet theme. Ideally, reform strategies being proposed would represent a coherent school-wide approach to instruction and curriculum.  However, it is not clear that all of the magnet themes are very coherent or comprehensive to start with. Requiring schools that are having trouble ensuring that all of their students achieve at reasonably high levels to simultaneously adopt innovative approaches for improvement may be overtaxing capacity.

While it is reasonable to argue that interventions to enhance achievement of underperforming students should be related to magnet themes, it is common for districts to adopt programs that are the same in all schools that need to significantly improve the performance of their lowest achieving students.  Such commonality facilitate s professional development, the assessment of students and program effectiveness, and the provision of support to the schools involved.

*Special Master's Recommendation*:  While it is desirable that individual school plans for improving the achievement of low performing students reflect the theme of the school, this is not the time to insist on the infusion of themes into intervention strategies (this would be difficult to assess in any case).  The overall magnet plan should assert the importance of coherence and the infusion of themes throughout instruction and curriculum.  In future years, the extent to which school level plans reflect this coherence should be considered in funding and needs for technical support.

7. <u>Themes and Pipelines</u>

The Mendoza plaintiffs argue that the CMP does not adequately address clarification and enrichment of school themes nor does it develop pipelines between the different grade levels. It is desirable to identify feeder patterns for schools with common themes at different grade levels. But to insist on the identification of such patterns in this version of the CMP seems problematic. A year from now, it is likely that a number of the current magnets will no longer have magnet status. Given the array of themes and the weakness of some of these themes, is not clear what the patterns would be. And, having studied magnet schools for some time, the Special Master is less convinced than those who prepared the 2011 magnet school study for TUSD (cited by the Mendoza plaintiffs in support of their position) that clearer and well-defined pipelines significantly affect family choice. Location, racial and socioeconomic composition, and the perception of school quality often trump themes and pipelines.

*Special Master's Recommendation*: The Court should not require that the CMP be amended so that themes and pipelines are enhanced throughout the District.

**Plaintiff Recommendations**

The Fisher plaintiffs recommend that new programs be located in centrally located schools. It is not clear they are urging that such a provision to be part of the CMP (which is silent with respect to the location of new magnet schools and programs).

The Fisher plaintiffs also recommend that the evaluation of magnet school/program performance take into account the socioeconomic status of the students involved. They rightly point out that schools serving children from low income families may be outperforming schools with higher achievement scores that serve middle income students. This approach to evaluating schools is characterized as "value-added." To some extent, the state grading process takes into account student backgrounds by focusing in part on rates of progress. But this is a weak way to

take student background into account. Implementing the recommendation of the Fisher plaintiffs will be difficult because about three-fourths of students receive some free and reduced meals support, and this is the only indicator we have of socioeconomic status. Because eligibility for free and reduced meals includes a very wide range of family income, using this indicator has limited value. Moreover, as the District argues in its response to this proposal by the Fisher plaintiffs, the January court order identifies criteria for determining the academic quality of a school without reference to student characteristics. If there is a close-call decision to be made by the Special Master about whether a recommendation be made that magnet status should be withdrawn, it may be possible to take school characteristics into account, including other factors that influence achievement -- such as mobility.

The Fisher plaintiffs expressed dismay that the Governing Board was not given accurate information about whether the plaintiffs and the Special Master supported the version of the CMP submitted to the Board on June 9, 2015. In response, the District parses the words used by the plaintiffs and selects certain sections of the transcript to refute the Fisher claim. However, a review of the video of the Board meeting shows that the Board was told, incorrectly, that the plaintiffs and the Special Master supported the plan before them. Indeed, the Special Master wrote a memo to the parties with just such a complaint. That said, whether the Board was accurately informed does not affect the content of the plan. And, the process by which the Board receives information about the opinions of the plaintiffs and the Special Master is now under consideration by the parties pursuant to an order by the Court (Doc.1809).

**Recommendations and Clarifications**

Special Master Recommendations

1. As noted, following the submission of the initial plan and then again after the school level plans were submitted, the District stipulated to several changes to be made in the plans not all of which are reflected in the June 19 plan reviewed by the plaintiffs and the special master (*see* Exhibit H). These stipulations are:

   a. Ochoa Elementary School will not be a lighthouse school.

   b. Categories will be no longer be used.

   c. Magnet funding will not be continued beyond the year in which funding is withdrawn, but schools that had been magnet schools will be funded as needed to meet student needs. This can exceed formula funding.

   d. Recommendations with respect to integration will take place no later than October in each of the two school years remaining, and recommendations relating to academic performance will be made as soon as data from the previous year becomes available.

   e. Transportation will be provided to all students who are involved in activities beyond the school days when individual magnet school plans call for such learning activities.

   f. There is no "exclusionary option" either now or in the future.

   g. Goals for individual schools must be at least as high as the current school measures of academic performance.

   h. Paraprofessionals will not be used to provide remediation for students who are underachieving. The Court should require that the District amend, as needed, both the overall CMP and the individual site

-16-

plans to reflect these stipulations as well as the stipulation related to funding teacher participation in professional learning communities (*see* Exhibit J).

2. The Court should direct the District to identify specific strategies to address the learning needs of ELL students in those schools that did not reclassify enough ELL students to receive additional points from the Arizona letter grade system.

3. Assuming that the changes to the overall plan and the school level plans identified in Recommendations 1 and 2 are made, the Special Master recommends that the Court approve the CMP plans submitted by the District on June 11 and June 19, 2015, and in so doing reject the other objections by the Fisher and Mendoza plaintiffs.

**Clarifications**

In their filings, both the DOJ (*see* Exhibit E) and the District (*see* Exhibit I, pp. 1-3) argue that the content of the Fisher and Mendoza plaintiffs' objections exceeds the scope of concerns that can be properly addressed (the District describes the Mendoza objections as "fundamentally improper"). Such efforts to narrow the range of issues that the plaintiffs and the Special Master can address have been repeated often by both DOJ and the District. No doubt they will arise again. Because these assertions do not affect the Special Master's recommendations contained herein, demonstrating that the Court has consistently asserted the appropriateness of objections and proposals by the plaintiffs and Special Master that deal with strategies that affect the quality of education in TUSD seems a task for another day.

As Recommendation No. 1 above suggests, there are errors of fact in the plans. Five additional errors should be corrected so as to ensure that the plan is accurate.

-17-

1. On page 4 of the overall plan, the role of the Special Master in the development of the plan is characterized as "supervisory." The Special Master has not dictated any particular strategy nor did the Special Master supervise any personnel. The Special Master did work closely with the District and many of his suggestions were incorporated in the plan.

2. The Special Master does not endorse the establishment of Carillo as a communication and creative arts school as it is suggested he did on page 4. The Special Master has consistently urged that Carillo be what the District now wants to call a lighthouse school and that it lose its magnet status. There is no reason to add a new theme to a school that may result in diminishing the school's rather extraordinary achievements as an A school.

3. On page 5, the plan says that schools that show substantial progress towards integration will have until June 2017 to meet the USP integration standards. That is not correct. The Special Master will be making recommendation to the Court with respect to magnet status based on integration no later than October 2015 and then again no later than October 2016. For schools that lose magnet status in the fall of 2016, there would be no way that such a school could change its integration status.

4. On page 6, the plan says that funding for D schools is to be focused on student achievement. While this may make sense, the plan also allows some D schools to use magnet funding to improve their integration status.

5. In the June 11 version of the plan, a schedule for briefings, reviews, and comments is described on page 9. This schedule is not correct and should be updated.

6.

-18-

Respectfully submitted,

_____/s/_____
Willis D. Hawley
Special Master

Dated: July 9, 2015

# **CERTIFICATE OF SERVICE**

I hereby certify that on, July 9, 2015, I electronically submitted the foregoing **NOTICE OF FILING BY SPECIAL MASTER OF REPORT AND RECOMMENDATIONS REGARDING THE REVISION OF TUSD'S COMPREHENSIVE MAGNET PLAN** for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

J. William Brammer, Jr.
wbrammer@rllaz.com

Oscar S. Lizardi
olizardi@rllaz.com

Michael J. Rusing
mrusing@rllaz.com

Patricia V. Waterkotte
pvictory@rllaz.com

Rubin Salter, Jr.
rsjr@aol.com

Kristian H. Salter
kristian.salter@azbar.org

Zoe Savitsky
Zoe.savitsky@usdoj.gov

Anurima Bhargava
Anurima.bhargava@usdoj.gov

Lois D. Thompson
lthompson@proskauer.com

Andrew H. Marks for
Dr. Willis D. Hawley,
Special Master