**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Roy and Josie Fisher, et al., | |
|     Plaintiffs, | |
| v. | |
| United States of America, | |
|     Plaintiff-Intervenor, | |
| v. | CV 74-90 TUC DCB |
| Anita Lohr, et al., | (Lead Case) |
|     Defendants, | |
|   and | |
| Sidney L. Sutton, et al., | |
|     Defendants-Intervenors, | |
| Maria Mendoza, et al., | |
|     Plaintiffs, | |
| United States of America, | |
|     Plaintiff-Intervenor, | CV 74-204 TUC DCB |
| v. | (Consolidated Case) |
| Tucson Unified School District No. One, et al., | |
|     Defendants. | |

**SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
RELATING TO PRINCIPAL AND TEACHER EVALUATION**

**Introduction**

On July 20, 2015, the District provided the plaintiffs and the Special Master copies of the teacher and student evaluation plans passed by the Governing Board. (Exhibit A). On July 30, the Mendoza plaintiffs requested an R&R on issues related to the teacher and principal evaluation plans (Exhibit B). On August 10, the District responded to the request for an R&R (Exhibit C). On August 13, the Special Master submitted a draft R&R to the parties in an effort to resolve some of the objections without taking them to the Court (Exhibit D). The Mendoza plaintiffs responded to the draft R&R (Exhibit E). The Fisher plaintiffs and the Department of Justice have not weighed in on the submitted plans.

Research tells us that the two most important in-school influences on student outcomes are teacher and principal effectiveness. Moreover, these are interrelated. Any district's ability to foster improvement of teacher and principal performance depends on having good knowledge of the level of effective practice. Thus, teacher and principal evaluation plans are critically important to achieving the goals of the USP.

This R&R is organized around the objections of the Mendoza plaintiffs. The District contends that the Mendoza plaintiffs do not base their objections on the most recent versions of the plans. The Mendoza plaintiffs contest that. In any event, the Special Master's comments deal with provisions of the July 20 plans.

**Context**

The development of teacher and principal evaluation plans has been a challenge of considerable controversy and has given visibility to the tensions involved in requirements that District practices be reviewed by the plaintiffs, the Special Master, and the Court. For many months, the District refused to submit teacher and principal evaluation plans for review, and a

court order in January 2015 was needed to require the District to develop such plans (Doc. 1760). The District collaborated extensively with the Special Master in the development of the observational instruments that are central to the evaluation. However, the reticence of the District to be responsive to other concerns about the evaluation of teachers and principals and the difficulties in resolving issues among the parties is illustrated by its response to the Mendoza plaintiffs' objections in which the District claims it is not required to do many things the plaintiffs are concerned about even when it does not object to doing some of them. For example, the District denies an obligation to:

1. Develop evaluation processes that are fair, accurate and meaningful.
2. Revise instruments for evaluating teachers and principals because the instruments are not part of the evaluation process (despite the wording of Section IV.H.1 of the USP).
3. Consider the weights assigned to surveys of teachers and students despite analysis of its own staff concluding that the impact of the weights identified in both plans will be negligible.
4. Evaluate the effectiveness of the evaluation plans.

With this context in mind, the specific objections of the Mendoza plaintiffs are addressed below.

**Assessing Academic Performance of Students for Purposes of Evaluating Teachers and Principals**

The plans are less clear than they need to be relating to this issue but in the Special Master's discussions with the District the assurance was given that all teachers will have the equivalent of a pre-and post-test measure of student performance. Tests have been developed by the District that will apply to grades 3-12 covering the material being taught. K-2 students' performance will be assessed using periodic DIBELS tests. This clarification should obviate the need for an R&R dealing with academic growth measures. The Mendoza plaintiffs agree.

**<u>Evaluators of Teachers</u>**

The Mendoza plaintiff (and the Special Master) have contended that teaching practices measured by the observational instrument should be assessed by persons other than or in addition to principals and assistant principals. The District asserts that principal evaluation of teachers is the norm throughout the country, including all districts in Arizona (most do so for the same reasons that TUSD does—political and relative easy to implement--not because it is best practice). But many leading school districts do use different models, including some districts in the Phoenix area where evaluators include teacher mentors or teaching specialists.

The purpose of teacher evaluation is to measure effectiveness accurately and to link the performance assessments to professional development and recognition of excellence. If the assessment of teachers is not accurate, the ability to improve teaching performance through evaluation is obviously undermined. Indeed, if the assessment is not done properly, the District will end up nurturing mediocrity. This is not to say that TUSD teachers are mediocre, but it is to say that it is important to determine, as effectively as possible, the actual level of teacher performance with respect to specific behaviors.

If principals are supposed to be instructional leaders, something on which all parties would surely agree, why can't they perform the evaluation tasks effectively? Some principals can, of course. But the research is replete with evidence that the accuracy of principals is limited in most cases. National studies show that a very small number of teachers are judged to be ineffective. This has been true in TUSD as well. In studies that compare principal evaluations with that of well-trained evaluators, the results show that the latter identify many more teachers as needing significant professional development than is typical when principals alone do the evaluation.

Why do many principals understate teachers' proficiency? First, excellence in teaching is not always the reason why principals are chosen to be principals. Second, principals are part of a social network in a school and they want to be liked and respected by their colleagues. One consequence of this is that when rating teacher performance they almost always give teachers the benefit of the doubt. When one looks at the rubrics for evaluating teachers, one sees that the distinctions between the categories that yield the scores are sometimes subtle and ambiguous but almost always require some level of judgment that is not easily documented. Third, principals want to motivate their teachers and tend to shy away from negative observations which may lead to discouragement, especially for beginning teachers and those who are struggling. Fourth, teaching effectiveness is somewhat subject-specific. In the literature on teaching, the term "content pedagogy" is used to draw attention to the fact that really good teaching requires deep understanding of content and how best to deal with students and abilities to learn that content. Even if principals were good teachers, they are unlikely to have broad subject matter expertise.[1]

Should principals have a role in the evaluation process? Maybe. Should they be the primary evaluators? No. What is the alternative? In some districts, teacher leaders and/or subject matter specialists and instructional coaches are specially trained to be evaluators. In order to avoid the problem of teachers not wanting to open up to coaches who may end up being their evaluator, the person who does the evaluation should not be in an authority position with respect to the teacher. This of course would apply to principals. Would we expect teachers to be open in their discussions with their principal about problems they are having in meeting the needs of particular students if the principal is to be the judge of their effectiveness?

---

[1] In its response to the plaintiffs the District argues that the research provided by the Special Master to justify a different approach to evaluation is not persuasive. Then the District cites from the same article it sees as inadequate to argue that there is no need for change, apparently unaware that the passage cited is meant by the authors to indicate why principals should not play a major role in evaluation of teachers.

Being an instructional leader involves a great deal more than evaluating teachers. It includes using evaluation that has been done as objectively and expertly as possible to identify needs of teachers for further professional development, to identify teachers who can be helpful to others either as coaches or team leaders or simply as members of peer groups and professional learning communities. It involves giving priority to student learning time and involves ensuring that the instructional environment is safe both physically and psychologically. It involves creating a culture of high expectations and collaboration and ensuring that teachers have the resources they need to be effective. It involves making time for teachers to engage in professional learning communities and to reach out to parents and families, including home visits when needed. And more.

The District has said that it will train principals to engage in evaluations by having them evaluate videos of teachers whose performance has been evaluated by experts. This is certainly a sensible strategy but it does not deal with the socio-psychological aspects of evaluation that principals confront when they are undertaking assessments in their own schools with teachers they want to like them and who they want to motivate and to whom they will inevitably give the benefit of the doubt.

The District has argued that we should give principal evaluations a try. But the District has already shown that principals cannot or will not be rigorous evaluators. There is abundant research indicating that the success of this trial is unlikely to be successful. And, if this is what is learned, a full year will have been lost. But how would one know if principals are effective evaluators in any event if there were no other evaluators with subject matter expertise and grade level experience who have been trained to evaluate using the District's instrument with whose evaluations could be compared with principal evaluations?

*Recommendation*

Enhancing teacher effectiveness is the very best way to enhance student learning opportunities and outcomes. Without effective teacher evaluation, this will be very difficult to do. The Special Master therefore proposes that the Court order that a pilot study be conducted that will allow comparison of assessments of teaching practice by principals and assistant principals on the one hand and trained evaluators on the other. It should be possible to design such a pilot within the next 3 to 4 weeks and implement it this school year. The results of the pilot will not affect scores received by teachers from administrators' assessments this year but can be used to demonstrate whether a different approach to teacher evaluation is more effective at identifying what teachers need to do to improve. Further, a system that results in more differentiation will be a useful tool for identifying teacher leaders and instructional coaches and mentors. The Mendoza plaintiffs support this proposal.

**Cut Scores**

The state requires that the District establish criteria for determining levels of teacher effectiveness. These "cut scores" in TUSD are suspect because only a handful teachers are judged to be ineffective. This may be as much a problem with evaluation as it is with the cut scores themselves.

The District says that the cut scores were established by looking at research on the percentage teachers typically judged to be ineffective, namely 4-6%. If this conclusion is based on reports of how principals and assistant principals rate teachers, then we have to reckon with research that shows that principals and assistant principals rate teachers much higher than do expert evaluators. Even so, the USP cut scores came nowhere near identifying 4-6% teachers as ineffective. It may be that TUSD teachers are significantly more effective than teachers in other districts but given the difficulty that the District says it has recruiting and keeping good teachers,

it seems plausible that the TUSD cut scores do not effectively differentiate teachers on the basis of professional proficiency.

Establishing cut scores is not easy and requires an analysis of various dimensions of teacher performance. It does not seem feasible for the Court to establish what the cut scores should be. The Special Master proposes that this matter be "resolved" by having the District commit to describing and justifying the bases on which it establishes cut scores that differentiate levels of teacher proficiency. Indeed, the District acknowledges that rethinking the cut scores is necessary.

*Recommendation*

The Court should require the District to describe the justification for the cut scores it uses in determining whether teachers are "ineffective" or "developing." While this seems modest and is seen as inadequate by the Mendoza plaintiffs, transparency with respect to the criteria should encourage the District to establish defensible cut scores. This, coupled with a more rigorous application of the observation instrument, should result in a more accurate identification of teachers who need more support to improve. The Mendoza plaintiffs support the pilot proposed above and believe that the pilot should be used to evaluate the cut scores.

**Alignment of Instruments for Measuring Teacher and Principal Effectiveness**

Measurement of teacher effectiveness is inherently "high-inference." In such cases, it is important to have multiple measures of the same phenomena. This means that teacher and student surveys, as well as observational measures of teacher and principal behaviors, should embody similar concepts. The Special Master does not see how there could be reasonable disagreement with this proposition. Indeed, while on the one hand the District says that such an alignment effort would be burdensome and redundant; on the other hand, staff who developed the instruments and vetted the surveys say that they undertook such an alignment.

*Recommendation*

The Special Master suggests that this issue could be resolved by the District developing a chart showing how important aspects of teaching and leadership are reflected in these instruments. This is not a difficult task and has the value of making clear to principals and teachers behaviors that are important for them to know about and be able to do. The Mendoza plaintiffs agree with this proposal.

### Linking Evaluations to Improvement

The Mendoza plaintiffs object to the omission from the teacher evaluation plan of any process for improving the performance of teachers found to be in need of improvement. The District argues that it need not do so because this function is covered by Section IV, I, 2 of the USP and a plan for implementing that section has been completed and approved. While it is not clear why the District would not want to make the consequences of evaluation clear to teachers so that they would not see this plan to be draconian, the Special Master believes that the provisions of what was conventionally known as the "struggling teacher plan" do apply. It is clear that only a handful of teachers have been referred to improvement plans so this matter may be a better candidate for monitoring than for an additional Court order.

*Recommendation*

There is no need for Court action here. The Implementation Committee can monitor how the District integrates the evaluation and professional development elements of the USP.

### Training Evaluators

The efficacy of a measurement tool depends on the capabilities of the person who does the measurement. This is particularly true when one is assessing behaviors not easily defined. The Mendoza plaintiffs want the District to specify how it will prepare those who assess teachers and principals to undertake this evaluation. The response of the District is that the training takes

many forms in many venues and that one could look at the professional development plans to determine what the District proposes to do.

The Special Master has examined the professional development plans, and while there are numerous references to the training of educators with respect to effective teaching practices, this is not the same as the training of evaluators. The observational instruments being used in TUSD are complex, extensive in the range of behaviors being assessed, and presumably discrete items are repeated in somewhat different terms throughout the instruments. The Special Master has supervised studies that involve the observation of educators. In preparation for those studies, considerable time is spent training the observers (evaluators) to ensure inter-rater reliability. If the District is conducting such training, which its staff says that it is, it would seem useful to spell out just how and when that will happen. This would allow the Implementation Committee to monitor this activity. There is no need for the Court to order such a description of how evaluators will be prepared for this difficult task assuming the District is willing to do so. Surely it has a plan; why not make it more transparent?

### *Recommendation*

If the District does not agree to make explicit its plans for training those who will evaluate teachers and principals when it reviews this R&R, the Court should require it to do so.

**Assessing the Capabilities of Teachers and Administrators to Use Data on Student Outcomes**

The Mendoza plaintiffs claim rightly that the USP is specific about the measurement of teachers' and administrators' capacity to utilize data to improve student performance. Moreover, this is a high priority of the Superintendent. In response to the Mendoza plaintiffs' concern, the District says that the structure of the evaluation as prescribed by the state is an impediment and that this skill is covered by student surveys. This assertion apparently misunderstands what is

involved. Assessing the capabilities of educators to utilize data on student behavior and achievement, among other things, is an appropriate component of the observational instruments. Indeed, those instruments do include relevant rubrics. The District's refusal to identify these rubrics is difficult to comprehend.

### *Recommendation*

There is no need for the Court to take action on this issue.

### **The Weight of Teacher and Student Surveys in Principal Evaluation**

The Mendoza plaintiffs point out that only 10 of the 100 points on the principal evaluation score are derived from the combination of the teacher and principal surveys. No doubt this reflects the wishes of principals. It seems incongruous to have student surveys account for 10% of teacher evaluation but only 4% of evaluation of principals. Perhaps teachers believe that their judgments about principal behaviors and school conditions should be given only negligible weight. Practically, the principal evaluation plan says that the views of teachers and students don't count.

The Special Master believes that minimizing the influence of teacher and student feedback on teacher effectiveness not only reduces the validity of the evaluation, it a clear violation of Section IV.H.1.iii of the USP that provides for "…responses from student and teacher surveys…" The instrument to be used to account for more than half of a principal's evaluation score includes numerous items that can be better, and perhaps only, assessed by teachers and students. This is true for several domains in the principal instrument, especially with respect to those items referred to as "School Behaviors." Many of these items require the evaluator to determine what teachers and students believe and experience. How might they do that? Interviewing a few teachers or students in each school is hardly fair to the principals themselves much less a valid way of determining reality. A great deal of emphasis in virtually all school improvement efforts,

and certainly in the USP, is placed on the importance of creating (1) school cultures that are inclusive, respectful, supportive, and reflect high expectations and (2) fostering teacher collaboration, supporting teachers' professional growth, retaining effective teachers, and developing a sense of physical and psychological safety that enhances teaching and student learning.  What better way to measure whether principals have accomplished these things than by asking teachers and students.

### *Recommendation*

State guidelines place a constraint on the points that can be assigned to teacher and student surveys in principal evaluation but there's no reason not to use all of those 17 points.  The Special Master therefore recommends that of the 100 total points for measuring principal performance, teacher surveys account for 11 points and student surveys account for six.  Alternatively, 12 points could be for teacher surveys and five for student surveys.  If the District agrees to one of these options, the Mendoza plaintiffs withdraw their objection.

Respectfully submitted,

/s/
Willis D. Hawley
Special Master

Dated:  August 28, 2015

# **CERTIFICATE OF SERVICE**

I hereby certify that on, August 28, 2015, I electronically submitted the foregoing **SPECIAL MASTER'S REPORT AND RECOMMENDATIONS RELATING TO PRINCIPAL AND TEACHER EVALUATION** for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

J. William Brammer, Jr.
wbrammer@rllaz.com

Oscar S. Lizardi
olizardi@rllaz.com

Michael J. Rusing
mrusing@rllaz.com

Patricia V. Waterkotte
pvictory@rllaz.com

Rubin Salter, Jr.
rsjr@aol.com

Kristian H. Salter
kristian.salter@azbar.org

Zoe Savitsky
Zoe.savitsky@usdoj.gov

Anurima Bhargava
Anurima.bhargava@usdoj.gov

Lois D. Thompson
lthompson@proskauer.com

Dated:  August 28, 2015

Andrew H. Marks for
Dr. Willis D. Hawley,
Special Master