**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Roy and Josie Fisher, et al., | |
|     Plaintiffs, | |
| v. | |
| United States of America, | |
|     Plaintiff-Intervenor, | CV 74-90 TUC DCB |
| v. | (Lead Case) |
| Anita Lohr, et al., | |
|     Defendants, | |
| and | |
| Sidney L. Sutton, et al., | |
|     Defendants-Intervenors, | |
| Maria Mendoza, et al., | |
|     Plaintiffs, | |
| United States of America, | |
|     Plaintiff-Intervenor, | CV 74-204 TUC DCB |
| v. | (Consolidated Case) |
| Tucson Unified School District No. One, et al., | |
|     Defendants. | |

**SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
RELATING TO PRINCIPAL AND TEACHER EVALUATION**

### INTRODUCTION

On July 20, 2015, the District provided the plaintiffs and the Special Master copies of the teacher and student evaluation plans passed by the Governing Board. (*See* Exhibit A).

On July 30, the Mendoza plaintiffs requested a Report and Recommendation on issues related to the teacher and principal evaluation plans (*see* Exhibit B). On August 10, the District responded to the request for an R&R (*see* Exhibit C). On August 13, the Special Master submitted a draft R&R to the parties in an effort to resolve some of the objections without taking them to the Court (*see* Exhibit D). The Mendoza plaintiffs responded to the draft R&R (*see* Exhibit E). The Fisher plaintiffs and the Department of Justice have not weighed in on the submitted plans. The Special Master submitted an R&R to the Court on August 28, 2015. However, because the draft submitted to the parties was labeled as a draft and not the final, the District did not respond, waiting for the ten day "alignment" process with the formal provided for in court orders to respond. In short, the R&R submitted to the Court on August 28, 2015 was premature. The parties agreed to set the date for realignment as September 15. On that date, the District agreed with several proposals made by the Special Master (*see* Exhibits F & G). The Mendoza plaintiffs responded to these realignment proposals on September 22, 2105 (*see* Exhibits H & I). Therefore, this R&R deals only with (a) an unresolved issue regarding principal evaluation and (b) clarification of a request that the District evaluate the weight of the student survey in evaluating teachers. It is the understanding of the Special Master that the Mendoza plaintiffs agree to limit their objections to these two matters. It should be noted that the District contends that the Mendoza plaintiffs do not base their objections on the most recent versions of the plans. The Mendoza plaintiffs contest that (*see* Exhibits H & I). In any event, the Special Master's comments deal with provisions of the July 20 plans.

**<u>CONTEXT</u>**

Research tells us that the two most important in-school influences on student outcomes are teacher and principal effectiveness. Moreover, these are interrelated. Any district's ability to foster improvement of teacher and principal performance depends on having good knowledge of the level of effective practice. Thus, teacher and principal evaluation plans are critically important to achieving the goals of the USP.

The development of teacher and principal evaluation plans has been a challenge of considerable controversy and has given visibility to the tensions involved in requirements that District practices be reviewed by the plaintiffs, the Special Master, and the Court. For many months, the District refused to submit teacher and principal evaluation plans for review, and a court order in January 2015 was needed to require the District to develop such plans (Doc. 1760). The District collaborated extensively with the Special Master in the development of the observational instruments that are central to the evaluation. However, the reticence of the District to be responsive to other concerns about the evaluation of teachers and principals and the difficulties in resolving issues among the parties is illustrated by its response to the Mendoza plaintiffs' objections in which the District claims it is not required to do many things the plaintiffs are concerned about even when it does not object to doing some of them. For example, the District denies an obligation to:

1. Develop evaluation processes that are fair, accurate and meaningful.

2. Consider whether principals are effective evaluators of teachers.

3. Revise instruments for evaluating teachers and principals because the instruments are not part of the evaluation process (despite the wording of Section IV.H.1 of the USP).

4. Consider the weights assigned to surveys of teachers and students despite analysis of its own staff concluding that the impact of the weights identified in both plans will be negligible.

With this context in mind, the specific objections of the Mendoza plaintiffs that are unresolved or require clarification are addressed below.

### THE WEIGHT OF STUDENT SURVEYS IN THE EVALUATION OF TEACHERS

In discussions among the District, the Mendoza plaintiffs, and the Special Master a compromise was reached relating to the weight to be assigned to student surveys in teacher evaluations. The Mendoza plaintiffs and the Special Master advocated that the weight be 17 percent; the District proposed three percent. This difference was resolved by agreeing on 10 percent with the Mendoza plaintiffs adding a condition that the District assess the effectiveness of the evaluation process. This condition, confirmed in Exhibit H, was omitted from the version of the R&R to which the District responded during the alignment period. Thus, the District did not have an opportunity to accept or reject this condition.

### RECOMMENDATION

Recognizing that the Mendoza plaintiffs will, during the period following the submission of this R&R, object to the 10 percent weight on student surveys in the evaluation of teachers if the District does not agree to evaluate its teacher evaluation process, the Special Master recommends that student survey account for 10 percent of the teacher evaluation points and that the District evaluate the effectiveness of the evaluation process to include the weight given to various elements of the evaluation. This will give the District the opportunity to accept or reject this proposed assessment of the efficacy of the teacher evaluation process.

### THE WEIGHT OF TEACHER AND STUDENT SURVEYS IN PRINCIPAL EVALUATION

The Mendoza plaintiffs point out that only 10 of the 100 points on the principal evaluation

score are derived from the combination of the teacher and principal surveys. No doubt this reflects the wishes of principals. It seems incongruous to have student surveys account for 10% of teacher evaluation but only 4% of evaluation of principals. It is doubtful that teachers believe that their judgments about principal behaviors and school conditions should be given weight that District staff identifies correctly as negligible. The District's principal evaluation plan says that the views of teachers and students don't count.

The Special Master believes that minimizing the influence of teacher and student feedback on teacher effectiveness not only reduces the validity of the evaluation, but is also a clear violation of Section IV.H.1.iii of the USP that provides for "…responses from student and teacher surveys…" The instrument to be used to account for more than half of a principal's evaluation score includes numerous items that can be better, and perhaps only, assessed by teachers and students. This is true for several domains in the principal instrument, especially, but not only, with respect to those items referred to as "School Behaviors." (*See* Exhibit B in TUSD's "alignment response, which is Exhibit G). Many of these items require the evaluator to determine what teachers and students believe and experience. How might they do that? Interviewing a few teachers or students in each school is hardly fair to the principals themselves much less a valid way of determining reality. A great deal of emphasis in virtually all school improvement efforts, and certainly in the USP, is placed on the importance of creating (1) school cultures that are inclusive, respectful, supportive, and reflect high expectations and (2) fostering teacher collaboration, supporting teachers' professional growth, retaining effective teachers, and developing a sense of physical and psychological safety that enhances teaching and student learning. What better way to measure whether principals have accomplished these things than by asking teachers and students.

**RECOMMENDATION**

State guidelines place a constraint on the points that can be assigned to teacher and student surveys in principal evaluation but there's no reason not to use all of those 17 points. The Special Master therefore recommends that of the 100 total points for measuring principal performance, teacher surveys account for 11 points and student surveys account for 6 points. The District does not agree with this recommendation.

Respectfully submitted,

_____/s/_____
Willis D. Hawley
Special Master

Dated:  September 25, 2015

# CERTIFICATE OF SERVICE

I hereby certify that on, September 25, 2015, I electronically submitted the foregoing **SPECIAL MASTER'S REPORT AND RECOMMENDATIONS RELATING TO PRINCIPAL AND TEACHER EVALUATION** for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

J. William Brammer, Jr.
wbrammer@rllaz.com

Oscar S. Lizardi
olizardi@rllaz.com

Michael J. Rusing
mrusing@rllaz.com

Patricia V. Waterkotte
pvictory@rllaz.com

Rubin Salter, Jr.
rsjr@aol.com

Kristian H. Salter
kristian.salter@azbar.org

Zoe Savitsky
Zoe.savitsky@usdoj.gov

Anurima Bhargava
Anurima.bhargava@usdoj.gov

Lois D. Thompson
lthompson@proskauer.com

Andrew H. Marks for
Dr. Willis D. Hawley,
Special Master