**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Roy and Josie Fisher, et al., <br><br>            Plaintiffs, <br><br>    v. <br><br>United States of America, <br><br>            Plaintiff-Intervenor, <br><br>    v. <br><br>Anita Lohr, et al., <br><br>            Defendants, <br><br>    and <br><br>Sidney L. Sutton, et al., <br><br>            Defendants-Intervenors, | CV 74-90 TUC DCB <br> (Lead Case) |
| Maria Mendoza, et al., <br><br>            Plaintiffs, <br><br>United States of America, <br><br>            Plaintiff-Intervenor, <br><br>    v. <br><br>Tucson Unified School District No. One, et al., <br><br>            Defendants. | CV 74-204 TUC DCB <br> (Consolidated Case) |

# REPORT ON USP BUDGET PROCESSES FOR 2014-15 AND REVISED PROCESS FOR 2016-17 USP BUDGET

In order to develop a better understanding of the 910G Budget Development Process for 2015-16, email trails were reviewed with information, requests for information, and responses throughout the process. Below is the finalized 910G Budget Development Process for 2015-16 with dates for submission of the budget drafts and responses. Following each date is a section in bold that includes notes on the results of the process.

| Date(s) | Action |
|---|---|
| February 27, 2015 | The District shall provide the plaintiffs, special master and budget expert with all District formulas used or required in the allocation of funds, including weighted student count, school level allocations, and FTE formulas.<br><br>**While this information was available from the December 9, 2014 Governing Board Meeting agenda file, the information was formally received only after several requests on March 2nd and March 6th. Requests for Title I or other Federal and State requirements were provided after a conversation with the District to clarify the level of information needed.** |
| No later than February 27, 2015 | A meeting of the parties will be scheduled in Tucson between April 6 – April 15 to review and discuss the proposed budget and other issues.<br><br>**This meeting was scheduled prior to the dates noted and held on March 26 and 27th.** |
| **DRAFT #1**<br><br>February 27, 2015 | The 2015-16 Budget Process shall formally initiate with the following information provided as the 2015-16 Proposed USP Budget Draft #1* for each tracked activity:<br><br>• proposed expenditures for the activity in the proposed budget year (2015-16), broken down by expenditure from 910G and any other USP-related funding sources;<br>• aggregation of what was spent on the activity during the last budget year (2013-14), broken down by expenditure from 910G;<br>• current year allocation amount of the current budget year (2014-15), broken down by expenditure from 910G and any other USP-related funding sources, where applicable;<br>• projected expenditures at the completion of the current budget year (2014-15) for the activity, with rationale for any differences between the projected and allocated amounts, and rationale for any non-incremental increase or decrease in funding for the activity during the current budget year (2014-15), if applicable. |

| Date(s) | Action |
|---|---|
|  | **Draft #1 of the proposed 2015-16 budget was received timely.  On March 3, 2015, there was expressed concern from the Special Master that the first draft did not provide sufficient information to allow for meaningful review.  Specifically,**<br><br>• **it was not in the format agreed upon so that one could not, for example, see in the more detailed budget differences with previous years;**<br>• **there were no explanations for major changes of which there were many;**<br>• **there was no explanation for "pending program change;" and**<br>• **many expenditures proposed appeared to be placeholders for the same amounts for different activities even when the previous year's expenditures were quite different for similar programs.**<br><br>**On March 4, 2015, the District replied that the agreed upon format was not used for Draft #1 because the District did not have all the criteria information.  The District stated that the approved format would be used for Draft #2.  They stated that the foundational components (process, format, and criterion) were not finalized until February 15th-17th).  Draft #1 was rolled over from the 2014-15 budget (as revised by the Court's order) as a starting place for evaluation of funding priorities.  To do that, a "crosswalk" between the 2014-15 budget and its fourteen projects was developed to allocate using the 65 activity codes which in some cases resulted in placeholder money figures that required revision (such as an amount being reflected for the RIF plan, activity 408, an item for which the District did not anticipate any meaningful expense).  In addition, the District did not have the new ERP system in place, making it challenging for the first draft to fully conform to the activity codes format.**<br><br>**The implementation of the new ERP system should resolve the problems related to 2015-16 Draft #1 for the Draft #1 of the 2016-17 Budget Development Process.** |
| March, 2015 (no later than 10 days after Draft #1 is received; no later than March 9, 2015) | Plaintiffs and Special Master review and comment period.  A phone conference with the parties may prove supportive of the process during this time.<br><br>On March 2nd, the Mendoza plaintiffs requested copies of all Student Support Forms related to the budget allocations.<br><br>As of March 12th, the Mendoza plaintiffs had not received a response to an RFI related to Draft #1.  On the same date, the Mendoza plaintiffs renewed requests for Student Support Forms and expressed concern to the District regarding the untimeliness of formula information and incompleteness budget format used for Draft #1. |
| **DRAFT #2**<br><br>March 23, 2015 | TUSD provides Draft #2 of the 2015-16 Proposed USP Budget with any allocation revisions using the same format as for Draft #1. |

| Date(s) | Action |
|---|---|
| | **Draft #2 of the proposed 2015-16 budget was received timely using the agreed upon format and included an additional ten page narrative. The several columns in the agreed upon form that were used to comment "yes" or "no" on the six USP Criteria for funding were generally not of much use in review. (In the future, it may be best to respond to these questions when new or expansion of programs is proposed.) More valuable would have been a column listing the amount proposed in "Draft #1" for each entry to allow for a comparison to "Draft #2." This would have proven helpful in better understanding the changes from "Draft #1."**  **The narrative information was helpful in understanding some changes. Many of the issues discussed in the narrative memo, in particular concerns regarding the "crosswalk" and resulting comparisons from year to year, will not be relevant for 2016-17 since year to year direct comparisons will be possible because of the new ERP system.**  **On March 25, an additional narrative memo was received which provided supplemental information to explain in greater detail some of the year-to-year variances by activity. Much of the explanation continued to be due to the "crosswalk" that was required in the transition from Project to Activity Level Budgeting. This issue will not impact the 910G Budget Development Process for 2016-17 as noted above.** |
| March/April, 2015 (no later than 10 days after Draft #2 is received; no later than April 2, 2015) | Plaintiffs and Special Master review and comment period. A phone conference with the parties may prove supportive of the process during this time. |
| April 2015 | The parties shall meet in Tucson to discuss the proposed USP budget and other issues between April 6 and April 15, 2015  **This meeting was scheduled prior to the dates noted and held on March 26 and 27th. Among many topics discussed, these meetings resulted in a reallocation of $5,000,000 for the 2014-15 budget year.** |
| **DRAFT #3**  April 27, 2015 | TUSD provides Draft #3 of the 2015-16 Proposed USP Budget with any allocation revisions using the same format as for Draft #1.  **Draft #3 of the proposed 2015-16 budget was received timely using the agreed upon format absent the six columns related to the USP funding criteria. A summary page was also included with totals aggregated by activity. There was no narrative discussion or information to compare Draft #3 with Draft #2.** |
| April/May 2015 (no later than 20 days after Draft #3 is received, per USP Court Order; no later than May 7, 2015) | Plaintiff review and comment period. A phone conference with the parties may prove supportive of the process during this time.  **On May 7, the Mendoza plaintiffs sent comments and responses to the District that the District provide a "clear explanation of how the expenditures under [] activity section [0202, the Comprehensive Magnet Plan,] relate to the missions and the improvement plans of each of the magnet schools."**  **On May 11, the Special Master sent comments and questions related** |

| Date(s) | Action |
|---|---|
| | to Draft #3 to the District.<br><br>**On May 15, the District responded to the Mendoza plaintiffs' comments. Specific Student Support Forms, enrollment information and job descriptions were also provided.**<br><br>**On May 17, the Mendoza plaintiffs note that only specific Student Support Forms were received rather than the total, which was a request after Draft #1. Plaintiffs also renewed the request for information indicating leadership's decisions concerning the addition, elimination, or expansion of programs.**<br><br>**On May 18, the District provided copies of the remaining fourteen (14) Student Support Forms to the plaintiffs and Special Master.** |
| April/May 2015 (within 10 days of plaintiffs comments on Draft #3, per USP Court Order; no later than May 17, 2015) | Special Master submits any suggestions for modification of Draft #3 to the District.<br><br>**On May 18th, the Special Master commented, "increased math tutoring for Latino students makes sense. But, given that African American math scores are lower than Latino scores, why wouldn't there be equivalent programs for African Americans?"**<br><br>**On May 18th, the Special Master commented "When the District submits its revision of version 3, please highlight the changes. This will expedite the review."**<br><br>**On May 19th, the Special Master sent a two-page memo with specific understandings and questions related to specific proposed allocations to the Parties.** |
| June 2015 | TUSD Governing Board action on the 2015-16 Proposed USP Budget. Any continuing objection by the plaintiffs shall be noted separately and provided to the Governing Board for consideration.<br><br>**On June 1st, District Legal Counsel responded to questions received on May 19th from the Special Master.**<br><br>**On June 3rd, External District Counsel responded to the Plaintiffs and Special Master in an email that the District has been following the Draft 3 budget comment schedule set forth in the District's May 18 email and would respond to any questions during the comment period that ends on June 4 as set forth in the schedule.**<br><br>**It was suggested that a conference call would be scheduled in the near future in which the District will be providing more information on budget programs. Additionally, in order to provide additional time for comment and review, the District scheduled the budget discussions on the Governing Board review agenda on June 23 (instead of June 9) and for Governing Board vote on July 14 (instead of June 23).**<br><br>**On June 4, the Mendoza plaintiffs again sent comments and responses to the District that the District provide a "clear explanation of how the expenditures under [] activity section [0202, the Comprehensive Magnet Plan,] relate to the missions and the improvement plans of** |

-5-

| Date(s) | Action |
|---|---|
| | each of the magnet schools." |
| | On June 15th, the Mendoza plaintiffs wrote to District External Counsel expressing concern that no information from the District concerning revisions to the proposed 910G budget has been received since the legal counsel email of June 1 and no one has reached out to schedule the conference call that was proposed for the "near future" for the purpose of providing additional information on the budget. Plaintiffs requested that the plaintiffs and the Special Master be provided with a copy of the 910G budget that will be proposed at the June 23rd Governing Board Meeting no later than Wednesday, June 17 so that objections and concerns can be communicated to the Governing Board when it undertakes its review, as contemplated by the budget process on file with the Court. |
| | On June 19th, the Plaintiffs received the District's response to feedback and the 910G Proposed Budget for 2015-16 that would be presented at the June 23rd Governing board Meeting for preliminary review and final approval in July. |
| | On June 22nd, the Parties participated in a phone conference regarding questions related to the Proposed 910G Budget. |
| | On June 25, the Fisher Plaintiffs sent an email to the District containing a recommendation related to LSCs. |
| | On June 25th, the Special Master received a response from the District to questions and concerns that may have not been resolved during the June 22 phone call. |
| July 2015 | Governing Board action on 2015-16 USP Budget |
| | On July 2nd, the Fisher Plaintiffs sent a Request for Information related to budget allocations for several positions and issues. The Fisher Plaintiffs requested an in person meeting to discuss. |
| | On July 6, in response to general questions about the budget process itself, the District submitted a memo to the Special Master summarizing the Budget Development Process as compared to the Court approved process. In addition, the District provided a copy of the Budget Recommendations that were and were not accepted by the District. This last document was to be reviewed with the Governing Board at the July 14th meeting. Additional clarifications continued through July 13, 2015. |
| | On July 7th, the Mendoza Plaintiffs emailed District Legal Counsel reiterating a request for the formulas used for ELD coordinator/OCR assistant FTE allocations at the middle and K-8 level. The Mendoza Plaintiffs also reiterated their May 7 and June 4 requests that the District provide a "clear explanation of how the expenditures under [] activity section [0202, the Comprehensive Magnet Plan,] relate to the missions and the improvement plans of each of the magnet schools." |
| | On July 7th, the Parties received an email from District Legal Counsel |

| Date(s) | Action |
|---|---|
| | stating that a written response was not planned but that perhaps their questions could be referred to the Budget Expert.<br><br>On July 8th, the Mendoza Plaintiffs emailed District Legal Counsel reiterating July 7th request and further clarifying the need for staff to respond.<br><br>On July 8th, District Legal Counsel responded to the Mendoza Plaintiffs suggesting a phone call with a senior staff member could be helpful in providing information needed.<br><br>On July 13th, the Fisher Plaintiffs made additional recommendations related to allocations.<br><br>On July 15th, the Special Master sent a compilation of questions generated by plaintiff budget challenges to the Parties.<br><br>On July 15th, the Fisher Plaintiffs wrote the Special Master and counsel to clarify the time frame for responding to the budget.<br><br>On July 16th, the Mendoza Plaintiffs responded that they were planning to file objections on July 24, 2015.<br><br>On July 17th, the District provided the Plaintiffs and Special Master requested information related to year to year comparisons of Transportation Expenditures.<br><br>On July 21st, the District responded to the July 15th Special Master compilation of questions.<br><br>On July 23rd, the Special Master emailed a response that the July 21st response did not deal fully with the question and as a result suggested a phone call to discuss. |
| July, 2015 | Within ten (10) days of Governing Board action, if necessary, objections filed for any plaintiff disagreement with the budget, as approved.<br><br>On July 24th, the Fisher and Mendoza Plaintiffs filed objections to the 2015-16 USP Budget with the Court. |

**This information will be not be available in 2013-14 but will be available in future years.

# EXPECTATIONS FOR THE 910G
# BUDGET DEVELOPMENT PROCESS FOR 2016-17

The following schedule and budget information for the 910G Budget Development Process for 2016-17 is delineated below.

| Date(s) | Action |
|---|---|
| February 15, 2016 | The District shall provide the plaintiffs, Special Master and budget expert with all District formulas used or required in the allocation of funds (with all changes from 2015-16 noted), including ELD FTE and Teacher Assistant formulas, weighted student count, school level allocations, and FTE formulas.<br><br>The District shall provide the Special Master with a budget format that includes the information delineated below for all budget drafts. |
| No later than February 24, 2016 | A meeting of the parties will be scheduled in Tucson between April 11 – April 22 to review and discuss the proposed budget and other issues. |
| **DRAFT #1**<br><br>March 9, 2016 | The 2016-17 Budget Process shall formally initiate with the following information provided as the 2016-17 Proposed USP Budget Draft #1 format for each tracked activity:<br>• a summary of the Draft #1 proposed aggregated allocations by activity with the 2016-17 Proposed Allocation, the 2015-16 Allocation, and the variance between the two.<br>**For Each Activity**<br>• Draft #1 proposed allocation for the activity in the proposed budget year (2016-17), broken out by allocation from 910G and any other USP related funding sources;<br>• the allocation for the activity in the current budget year (2015-16), broken out by allocation from 910G and any other USP related funding sources;<br>• the allocation for the activity in the last budget year (2014-15*), broken out by expenditure from 910G and any other USP related funding sources, where applicable;<br>• the variance between the Draft #1 2016-17 proposed allocation and the 2015-16 allocation, broken out by allocation from 910G and any other USP-related funding sources, where applicable;<br>• a rationale for any differences between the Draft #1 proposed 2016-17 and the 2015-16 allocated amounts, including a rationale for any non-incremental increase or decrease in funding for the activity during the current budget year (2015-16), if applicable; and<br>• 910G budget detail, including specific line item allocations by department, with Draft #1 proposed 2016-17 allocations, current |

| Date(s) | Action |
|---|---|
| | year (2015-16) budgeted allocations, and comments relating to any position and/or program changes.<br>• On a separate form, the USP Funding Criteria information shall be provided for each new or expanded program in Draft #1 of the budget.<br>• All Student Support Forms shall be provided separately. Any systematic evaluation of the program should be attached. |
| March, 2016 (no later than 10 business days after Draft #1 is received) | Plaintiffs and Special Master review and comment period. A phone conference with the parties may prove supportive of the process during this time. |
| **DRAFT #2**<br><br>April 8, 2016 | TUSD provides Draft #2 of the 2016-17 Proposed USP Budget with any allocation revisions using the Draft #2 format for each tracked activity:<br>• a summary of the Draft #2 proposed aggregated allocations by activity with the 2016-17 Proposed Allocation, the 2015-16 Allocation, and the variance between the two.<br>**For Each Activity**<br>• Draft #2 proposed allocation for the activity in the proposed budget year (2016-17), broken out by allocation from 910G and any other USP-related funding sources;<br>• the allocation for the activity in the current budget year (2015-16), broken out by allocation from 910G and any other USP-related funding sources;<br>• the variance between the Draft #2 and the Draft #1 2016-17 proposed allocation, broken out by allocation from 910G and any other USP-related funding sources, where applicable;<br>• a rationale for any differences between the Draft #1 and Draft #2 proposed allocations, including a rationale for any non-incremental increase or decrease in funding for the activity, if applicable; and<br>• 910G budget detail, including specific line item allocations by department, with Draft #2 proposed 2016-17 allocations, Draft #1 proposed 2016-17 allocations, current year (2015-16) budgeted allocations, and comments relating to any position and/or program changes.<br>• On a separate form, the USP Funding Criteria information shall be provided for each new or expanded program in Draft #2 of the budget. |
| March/April 2016 (no later than 10 business days after Draft #2 is received) | Plaintiffs and Special Master review and comment period limited to newly proposed allocations in Draft #2 except when new changes in proposed allocations affect specific proposals in Draft #1 or when a rationale is provided as to why the comment was not provided in Draft#1. The Plaintiffs and Special Master may also restate comments related to prior |

| Date(s) | Action |
|---|---|
| | drafts. A phone conference with the parties may prove supportive of the process during this time. |
| April 2016 | The parties shall meet in Tucson to discuss the proposed USP budget and other issues between April 11 and April 22, 2016 |
| **DRAFT #3** <br><br> May 11, 2016 | TUSD provides Draft #3 of the 2016-17 Proposed USP Budget with any allocation revisions using the Draft #3 format for each tracked activity: <br><br>• a summary of the Draft #3 proposed aggregated allocations by activity with the 2016-17 Proposed Allocation, the 2015-16 Allocation, and the variance between the two. <br><br>**For Each Activity** <br><br>• Draft #3 proposed allocation for the activity in the proposed budget year (2016-17), broken out by allocation from 910G and any other USP-related funding sources; <br><br>• Draft #2 proposed allocation for the activity in the proposed budget year (2016-17), broken out by allocation from 910G and any other USP-related funding sources; <br><br>• Draft #1 proposed allocation for the activity in the proposed budget year (2016-17), broken out by allocation from 910G and any other-USP related funding sources; <br><br>• the allocation for the activity in the current budget year (2015-16), broken out by allocation from 910G and any other USP-related funding sources; <br><br>• the variance between the Draft #3 and the Draft #2 2016-17 proposed allocation, broken out by allocation from 910G and any other USP-related funding sources, where applicable; <br><br>• a rationale for any differences between the Draft #3 and Draft #2 proposed allocations, including a rationale for any non-incremental increase or decrease in funding for the activity, if applicable; and <br><br>• 910G budget detail, including specific line item allocations by department, with Draft #3 proposed 2016-17 allocations, Draft #2 proposed 2016-17 allocations, Draft #1 proposed 2016-17 allocations, current year (2015-16) budgeted allocations, and comments relating to any position and/or program changes. <br><br>• On a separate form, the USP Funding Criteria information shall be provided for each new or expanded program in Draft #3 of the budget. |
| May 2016 (no later than 20 business days after Draft #3 is received, per USP Court Order) | Plaintiffs' review and comment period limited to newly proposed allocations in Draft #3 except when new changes in proposed allocations affect specific proposals in Draft #2 or when a rationale is provided as to why the comment was not provided in Draft#1. The Plaintiffs may also restate comments related to prior drafts. A phone conference with the |

| Date(s) | Action |
|---|---|
| | parties may prove supportive of the process during this time. |
| May 2016 (within 10 business days of plaintiffs comments on Draft #3, per USP Court Order) | Special Master submits any suggestions for modification related to proposed allocations reflected in Draft #3 to the District. |
| June 2016 | TUSD provides a copy of the "Final Draft" – 2016-17 Proposed USP Budget that will be considered by the Governing Board with any allocation revisions using the Final Draft format for each tracked activity. Any changes from Draft #3 and other previous drafts shall be noted in the same way as described in previous formats.<br><br>TUSD Governing Board action on the 2016-17 Proposed USP Budget. Any continuing objection by the plaintiffs shall be noted separately and provided to the Governing Board for consideration. |
| July 2016 | Governing Board action on the 2016-17 USP Budget. |
| July 2016 | Within ten (10) days of Governing Board action, if necessary, objections filed for any plaintiff disagreement with the budget, as approved. Any subsequent agreed upon changes will be addressed in the December, 2016 Budget Revision. |

\*2014-15 allocation determined through "Crosswalk."

**YEARLY REVIEW OF EXPENDITURES (AUDIT) OF 910G FUNDS**

The Yearly Review of Expenditures (Audit) required by the USP shall report expenditures for each of the revised descriptions of activities in the Implementation Addendum as amended in November of 2014. For 2013-14, the audit shall focus only on the expenditure of 910G funds. Thereafter, the audit shall include expenditures for the entire USP budget, including the expenditure of related funds from non-910G sources.

The District should recode past budget information using the IA structure by activity for budget years 2013-14 (Original IA) and 2014-15 (Revised IA) to allow for an accurate and meaningful audit. If such recoding is difficult, at the very least, a crosswalk shall be developed and implemented by the District for prior years that shall allow for relevant and accurate auditing of 910G funds by activity for years 2013-14 and 2014-15. As a result, the Review of Expenditures for 2013-14 and 2014-15 will have "crosswalked" information which may not be

particularly relevant.  However, the Review of Expenditures for 2015-16 will contain actual expenditure information since this will be the first year that the coding method and the new ERP System will be in place.

**CRITERIA FOR USE OF 910G FUNDS**

910G funds may be used to fund activities that meet the applicable criteria below.  Criteria six and seven apply to all expenditures.  **AS ANY NEW OR EXPANDED PROGRAMS ARE PROPOSED, THE DISTRICT SHALL PROVIDE THE PLAINTIFFS WITH THE INFORMATION BELOW.**

1. **Does the expenditure support meeting an OCR Agreement objective?**

2. **Does the expenditure support a specific USP provision?**  Provide the USP reference(s).

3. **Does the expenditure support a USP-related activity as described by a Court Order?**  Provide the Court Order reference(s), and an explanation of the demonstrated or likely efficacy of the action of activity to be implemented. *Example:  the Court Order on School Closings mandated that the District provide additional resources to D and C – receiving schools.  To comply with that Order, the District allocated over $500,000 to D and C – receiving schools.*

4. **If the purpose of the funding is not directly related to a specific provision of the USP, is that funding targeted on African American and/or Latino students who have special needs or are underachieving**? Example: Funds are allocated to exceptionally effective racially concentrated school so that the schools can serve as models and provide support for improvement in other racially concentrated schools.

5. **Does the expenditure support a new dual language program**?

6. **Is the expenditure related to provisions of approved transition plans for magnet schools and programs that lost their magnet status in 2016-17?** Provide an explanation of the demonstrated or likely efficacy of the action or activity to be implemented.  Cite evidence from District studies or relevant research.  If such evidence is not available, say, "NA."

7. **Is the funding being used to supplement (not supplant) other funding that would be expended in the absence of the related USP provision?** This can be determined by using a "formula plus rule": the cost of services provided exceed the expenditures that would've been made in accordance with Governing Board approved funding formulas. Example: if culturally relevant courses that substitute for core courses are offered with 20 students per course rather than the 27 students in conventional core courses, the cost of teaching the additional seven students (averaged over several courses) can be funded from 910G funds.

**REALLOCATION REPORTING DURING THE YEAR**

Beginning in January 2015, and thereafter, the District shall provide the plaintiffs with information quarterly related to mid-year under or over-expenditures of 910G funds and/or needed reallocations. This information will be available more timely than in the past due to the implementation of the new ERP System. The proposals for the use of these funds (reallocations) shall be shared with the plaintiffs and Special Master for comment. The District shall provide specific dates by which such proposed reallocations shall be shared. The plaintiffs shall provide comments on proposed reallocations within ten days of each quarterly proposed reallocation communication.

Reallocation does not include recoding per the USFR for essentially the same function." (*i.e.* teachers who are retired are paid out of contracted services rather than FTE; instructional aids, like computer software, are sometimes M&O and sometimes capital; etc.).

**CRITERIA FOR MIDYEAR REALLOCATION OF 910G FUNDS**

1. All reallocations of less than $50,000 are at the discretion of the District unless the reallocation involves the deletion or addition of a professional position. Such reallocations will be reported in the quarterly reports.

2. If funds to be reallocated result from not filling positions at the school level, the District shall provide explanations for why the positions could not be filled. If candidates were referred to the school principal for appointment and a decision was made not to select the person, the reason should be provided.

3. If funds to be reallocated are freed up from budgets of schools serving significant proportions of student achieving below the district average, 50 percent of the funds should be reallocated to activities in that school. The funds available for reallocation from schools would be returned to the District which would determine how to reallocate the funds. Reallocations of over $50,000 would be subject to the review processes and criteria identified below.

4. For a proposed reallocation of more than $50,000, the District shall submit these proposals to the plaintiffs and the Special Master indicating whether they meet the following criteria:

    a. The intent of the reallocation shall be consistent with the intent of the original allocation (*e.g.*, funds from an unfilled position can be used to support the goals that would've been pursued/achieved by the person that would've been hired).

    b.    The reallocation increases funding for an approved purpose (*e.g.*, instead of computers in 10 classrooms, the reallocation could provide computers for 15 classrooms).

    c.    The reallocation fits a priority for reallocation previously agreed upon by the parties (*e.g.*, enhance the learning opportunities of the lowest achieving students in the school).

If the proposal does not meet one of these criteria, the District shall explain in detail how the reallocation facilitates implementation of provisions of the USP. The Special Master and the budget expert will make their recommendations to the plaintiffs within five days focusing attention on the intent of the proposed reallocation. The plaintiffs will have an additional five days to object. If there is an objection, the district shall have five days to respond. If agreement cannot be reached, the Special Master will submit his recommendations to the court and there shall be no further briefing.

5.    Should any proposal for reallocation of more than $50,000 be subject to the I.D.1 provisions of USP or the NARA provisions of the USP, the processes spelled out in the I.D.1 provisions shall apply before reallocation.

6.    All reallocations will be reported in quarterly reports that explain the reasons for the reallocations.

7.    No later than ninety (90) days of close of the fiscal year, the District must identify any unspent funds that it does not intend to retain in future budgets (prior to the award of unitary status).

8.    If there is only one objection from the plaintiffs, the Special Master has the authority to approve any proposed reallocation. If the plaintiff who objected feels strongly about an objected item approved through this process, it can be appealed to the Court. Any item with two or more objections, which might include the special master and one or more of the plaintiffs, would not be approved. The district could then appeal to the court if it felt strongly enough about the proposal.

Respectfully submitted,

/s/
Willis D. Hawley
Special Master

Dated: March 29, 2016

# **CERTIFICATE OF SERVICE**

I hereby certify that on, March 29, 2016, I electronically submitted the foregoing **REPORT ON USP BUDGET PROCESSES FOR 2014-15 AND REVISED PROCESS FOR 2016-17 USP BUDGET** for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

J. William Brammer, Jr.
wbrammer@rllaz.com

P. Bruce Converse
bconverse@steptoe.com,

Oscar S. Lizardi
olizardi@rllaz.com

Michael J. Rusing
mrusing@rllaz.com

Patricia V. Waterkotte
pvictory@rllaz.com

Rubin Salter, Jr.
rsjr@aol.com

Kristian H. Salter
kristian.salter@azbar.org

Zoe Savitsky
Zoe.savitsky@usdoj.gov

Anurima Bhargava
Anurima.bhargava@usdoj.gov

Lois D. Thompson
lthompson@proskauer.com

Andrew H. Marks for
Dr. Willis D. Hawley,
Special Master