1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Roy and Josie Fisher, et al., | |
| Plaintiffs, | |
| v. | |
| United States of America, | |
| Plaintiff-Intervenor, | |
| v. | CV 74-90 TUC DCB (Lead Case) |
| Anita Lohr, et al., | |
| Defendants, | |
| and | |
| Sidney L. Sutton, et al., | |
| Defendants-Intervenors, | |
| Maria Mendoza, et al., | |
| Plaintiffs, | |
| United States of America, | |
| Plaintiff-Intervenor, | CV 74-204 TUC DCB (Consolidated Case) |
| v. | |
| Tucson Unified School District No. One, et al., | |
| Defendants. | |

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SPECIAL MASTER'S REPORT AND RECOMMENDATION**
**RELATING TO FISHER OBJECTIONS TO**
**SPECIAL MASTER'S RECOMMENDATION TO APPROVE THE**
**RECONFIGURATION OF GRADES AT BORMAN K-5 TO K-8**

**Overview**

On May 11, 2016, pursuant to a Court Order (Doc. 1929), the Special Master filed a Report and  Recommendation in response to TUSD's defense of its proposal to create a middle school option at Borman Elementary School on the Davis-Monthan Air Force Base.  *See* Exhibit A.  In that R&R, the Special Master recommended that the Court approve the District's proposal. On May 25, 2016, the Fisher plaintiffs filed an objection to the Special Master's proposal asking the Court to reject the Special Master's recommendation, deny the District's request for approval of a middle school grade configuration at Borman K-5 school, and direct the District to develop a viable proposal for "effecting immediate and substantial improvement in the integration and improved academic achievement of Roberts-Naylor K-8."  *See* Exhibit B.

**Analysis**

The core assumption in the Fisher plaintiffs' objection is that substantial improvements in the quality of education at Roberts-Naylor would draw a significant number of white students who "graduate" from Borman to Roberts-Naylor thereby integrating the school by the criteria defining "integration" in the USP.  Roberts-Naylor is unique among the District schools in that its failure to meet the integration standards is because the number of African American students slightly exceeds the proportion of African American students that would define the school as integrated.

The assertions made by the Fisher plaintiffs can be examined by addressing three questions:

1.    Would reconfiguring Borman as a K-8 school draw students away from Roberts-Naylor thereby noticeably affecting the number of students in the District who attend an integrated school?

2.    What are the motivations of families whose students now attend Borman and who might attend Roberts-Naylor?

3.    Could the academic offerings at Roberts Naylor be sufficiently strengthened so as to alter "current patterns of choice" thereby increasing the opportunities that Roberts-Naylor students (including former Borman students) have to experience an integrated education?

**Would the Addition of Middle Grades at Borman Draw Student Away from Roberts-Naylor?**

It would not. For security reasons, only those students who come from military families or families where one or more of the adults is employed on the base can attend Borman.  The District reports that only two students who formally attended Borman now attend Roberts-Naylor in grades seven and eight (the grades the Special Master asked about).  The vast majority of former Borman students now attend Sonoran Science Academy, an on-base charter school.[1]

**How Would a Borman K-8 School Affect "Patterns of Choice"?**

The Fisher plaintiffs argue that the District inappropriately uses current choice (enrollment) patterns to estimate the effects on integration.  In most cases, when new options for enrollment are introduced – as would have been the case in the creation of a middle school at Sabino High School – families will have significantly different considerations from those upon

---

[1] During the 2015-16 school year, about 70% of former Borman students entered the sixth grade at the on base charter school.  One former Borman student enrolled at Roberts-Naylor and four enrolled at TUSD's Vail Middle School.  The other 10-12 students either left the area or attended private schools or middle school in the Vail School District (which has an A rating from the State).

which they base current decisions about where their students would enroll.  But the proposed

Borman reconfiguration is unique because of (1) restrictions on on-base enrollment and (2)

military families generally prefer on-base schools which tend to be socioeconomically diverse,

promise order and safety, and are the schools their neighbors or co-workers attend.  This common

disposition applies to the Borman instance.

The District concludes that the principal factors that most importantly influence patterns

of choice for Borman families do not include the quality of academic programs.  While the survey

upon which they base this conclusion is suspect because of low response, the conclusion has

facial validity.  Only a handful of former Borman students attend TUSD schools for grades 6 to 8

even though TUSD's Vail Middle School, which is as close to Borman as is Roberts-Naylor, is as

highly rated (B) as the charter school on-base alternative (Roberts-Naylor is a C school).  In

addition, Vail offers a self-contained gifted and talented program that would seem to be especially

attractive to families motivated enough to leave the base school.

**Would Enhancing the Quality of Educational Programs Available at Roberts-Naylor Attract Students from the Base and Therefore Integrate Roberts-Naylor?**

The weight that Borman families apparently place on the benefits of attending middle

school on-base is significant and it is not clear that the kinds of improvements that that could

reasonably be expected to be achieved at Roberts-Naylor would change the calculations made by

Borman families.  As noted, Borman families already have a good off-base middle school option

in the form of TUSD's Vail Middle School.  Moreover, it is not clear what TUSD could do to

significantly improve the quality of schooling at Roberts-Naylor.

The best way to improve the school, as the Special Master pointed out in his May 11

R&R, is to substantially increase the quality of teaching.  This is not easily done and could only

be achieved in the short run by replacing a substantial number of current faculty with very highly

effective teachers from throughout the District.  Such a strategy would require significant

financial incentives and would undermine teacher morale, not only at Roberts-Naylor, but in other schools in the District.  The District suggests that a gifted and talented program at Roberts-Naylor might lead to improvement though there is little evidence to believe that this is the case or that having a second self-contained gifted and talented program in relatively close proximity would cause families to choose Roberts-Naylor. Few choose the Vail option now.

The Fisher plaintiffs' case for significantly improving Roberts-Naylor in order to achieve integration assumes that the students that would be drawn to the school would be predominantly white (as is Borman K-5).  This is a highly improbable assumption.  Throughout the country, there are few, if any, cases where a significant number of white families depart predominantly white schools for schools in which their children are outnumbered by nonwhite students almost nine to one (as would be the case at Roberts-Naylor).

**Summary**

Based on the highly improbable possibility that Roberts-Naylor could be turned into an A school that attracted a significant number of white students thus providing African American and Latino students the opportunity to attend a school where they substantially outnumber white students, the Fisher plaintiffs are asking that the District not be allowed to provide, at no increased cost to the taxpayers, a higher quality of education for military families than that which is now available to them in the public sector.

It is important to recognize that the addition of middle school grades to Borman can be accomplished with the extra funding that will come from the state of Arizona's per-pupil funding allocation.  These funds would not otherwise be available to improve Roberts-Naylor unless middle school students now choosing not to attend Roberts-Naylor were to choose to do so in the future.  The analysis above suggests that this is not likely.  In other words, adding grades 6-8 at

Borman will have no effect on the ability of TUSD to enhance the quality of education at Roberts-Naylor.

For these reasons, the Special Master recommends that the Court approve the District's request to create a K-8 school at Borman.  This action by the Court should be expedited so that steps could be taken that would impact fifth grade students now attending Borman and middle school students now attending the on-base charter school in  the next school year.

Respectfully submitted,


_____/s/_____
Willis D. Hawley
Special Master

Dated:  June 1, 2016

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on, June 1, 2016, I electronically submitted the foregoing **SPECIAL
MASTER'S REPORT AND RECOMMENDATION RELATING TO FISHER
OBJECTIONS TO SPECIAL MASTER'S RECOMMENDATION TO
APPROVE THE RECONFIGURATION OF GRADES AT BORMAN K-5 TO
K-8** for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF
registrants:

3

4

5

6

J. William Brammer, Jr.
wbrammer@rllaz.com

7

8

P. Bruce Converse
bconverse@steptoe.com,

9

Oscar S. Lizardi
olizardi@rllaz.com

10

11

Michael J. Rusing
mrusing@rllaz.com

12

13

Patricia V. Waterkotte
pvictory@rllaz.com

14

15

Rubin Salter, Jr.
rsjr@aol.com

16

Kristian H. Salter
kristian.salter@azbar.org

17

18

Zoe Savitsky
Zoe.savitsky@usdoj.gov

19

20

Anurima Bhargava
Anurima.bhargava@usdoj.gov

21

22

Lois D. Thompson
lthompson@proskauer.com

23

24

25

_____
Andrew H. Marks for
Dr. Willis D. Hawley,
Special Master

26

27

28