**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Roy and Josie Fisher, et al., <br>   Plaintiffs, <br> v. <br>United States of America, <br>   Plaintiff-Intervenor, <br> v. <br>Anita Lohr, et al., <br>   Defendants, <br> and <br>Sidney L. Sutton, et al., <br>   Defendants-Intervenors, | CV 74-90 TUC DCB <br>(Lead Case) |
| Maria Mendoza, et al., <br>   Plaintiffs, <br>United States of America, <br>   Plaintiff-Intervenor, <br> v. <br>Tucson Unified School District No. One, et al., <br>   Defendants. | CV 74-204 TUC DCB <br>(Consolidated Case) |

**SPECIAL MASTER'S REPORT AND RECOMMENDATION RELATING TO MENDOZA PLAINTIFFS' OBJECTION TO SPECIAL MASTER'S FINDING THAT TUSD IS IN COMPLIANCE WITH THE USP IN ITS IMPLEMENTATION OF CULTURALLY RELEVANT COURSES**

**Introduction**

In April 2016, the Special Master submitted a Report and Recommendation to the Court recommending that the Court not find the District in noncompliance with Section V.E.6.a.ii of the USP requiring the District to implement culturally relevant courses (CRC) (ECF 1925). This R&R was in response to objections by the Mendoza plaintiffs who asserted that the District had not complied with a stipulation it negotiated with the District embodying an Implementation Plan (IP). This IP spelled out specific actions and expenditures deemed necessary to effectively implement the USP provisions relating to CRC. The stipulation was subsequently approved by the Court without objection.

On May 11, 2016, the Mendoza plaintiffs filed an objection to the Special Master's finding that the District was in compliance with the provisions of the USP related to CRC (ECF 1932). On June 2, 2016, the District filed a response to the Mendoza plaintiffs' objections asking the Court to reject these objections.

**Position of Mendoza Plaintiffs**

In their objection, the Mendoza plaintiffs argue that the District failed to hire the 12 Itinerant Teachers (IT) it had agreed to employ to undertake a range of activities to promote interest and engagement in the CRC among students and teachers, to provide mentoring and professional development of teachers teaching CRC, and, when necessary, to teach courses.[1] The Mendoza plaintiffs also argue that the District failed to expend resources budgeted for the 2015-

---

[1] CR courses are primarily taught by regular certified teachers assigned to particular schools. Itinerant teachers work in the central office under the supervision of the Director for Culturally Responsive Pedagogy and Instruction.

16 fiscal year. The Mendoza plaintiffs conclude that these failures on the part of the District undermined the growth of student enrollment in CRC and thus is in noncompliance with both the stipulated IP and the USP.

**Position of TUSD**

In its response to the Mendoza objection, the District argues:

1. That the tasks it agreed to perform in the Implementation Plan to ensure the growth of the CRC were, in fact, performed, and that this performance is evidenced by the significant growth in the number of students who will be taking CRC during the coming the school year.

2. The commitment to hire 12 IT was meant to apply to a three-year period and that it intends to honor that commitment.

3. That it will expend almost all of the funds budgeted for 2015-16 prior to the end of the school of the fiscal year.

**Analysis**

<u>Did the District Effectively Perform the Tasks in the IP?</u>

As the District points out in some detail in its June 2 filing, the Special Master concluded that the District had performed the tasks to which it had committed. In his R&R to which the Mendoza plaintiffs objected, the Special Master acknowledged some tasks were not as fully achieved as was initially hoped but observed that there were extenuating circumstances. For example, not all of the CRC teachers received the planned professional development because they were hired too late or had other commitments during the summer of 2015 they had agreed prior to their recruitment to teach CRC.

The IP did not include specific goals for student enrollment in CRC. It is arguable that had the District been able to hire a full complement of the six IT that had been budgeted, much

less the 12 that the Mendoza plaintiffs believe the District committed to hire, more courses could have been offered and more students might have enrolled. However, according to the evidence provided in the District's June 2 filing, enrollment in CRC will increase in 2016 from 1841 to 3198, a 73% increase. And, consistent with the provisions of the IP, courses will be offered in all but one high school (all equivalent courses at UHS are AP courses, but UHS students can take CRC courses at the adjacent Rincon HS) and in all middle schools. This growth in both courses and student enrollment testifies to a considerable commitment on the part of the District to do what it can to implement the provisions of the USP concerning CRC.

Appointment of Itinerant Teachers

As noted above, the District says that it planned to appoint 12 IT over a three-year period. However, the IP to which the District agreed to specifies a budget for 2015-16 that provides funding for 12 IT. It appears that the District decided sometime in the spring of 2016 that it would not need 12 IT given the enrollment it anticipated for 2015-16 and, without informing the other parties, submitted a budget that included funding for only six full-time equivalent positions in the 2015-16 budget. While no objections were raised by the plaintiffs or the Special Master to this *de facto* amendment of the IP, it is clear that neither the Mendoza plaintiffs nor the Special Master were aware of this. In any event, the District was unable to fill the six positions with full time certified teachers even though it made a concerted effort to do so, and it seems reasonable to conclude that it could not have filled 12 positions. Nonetheless, the fact that the budget did not provide for the number of positions agreed to in the IP, violates the IP and the provisions of the Court's order approving that plan.

It is important to recognize that filling these IT positions is even more difficult than filling conventional teacher positions. The success of the CRC depends only in part on the content of the curriculum. More fundamental is how these courses are taught and the level of investment

teachers make in their students. Further, in addition to content knowledge and pedagogical expertise, IT must have the dispositions and the capacity to provide mentoring support to CRC teachers.

In its June 2 filing, the District commits to hiring IT at the ratio of 10 to 1 – that is, one IT for every 10 CRC teachers. How this calculation is arrived at seems to require some further analysis. Although, on the face of it, 10 to 1 seems quite adequate. The District uses a study of mentors in peer assistance and review (PAR) programs citing a 15 to 1 ratio recommended. However, the PAR mentors have no other responsibilities than to work with the struggling teachers to whom they are assigned. IT have additional responsibilities. For example, if an IT had additional responsibility to teach a course – a strategy which has its own pedagogical value – the mentors would be four-fifths time. Further, teachers offering CRC for the first time will require significantly more support than more experienced CRC teachers. While a 1 to 10 ratio may be appropriate for first-year CRC teachers, that level of support for more experienced teachers seems excessive (assuming the teacher involved is performing effectively). There is no need for the Court to resolve this issue, but if the CR courses are to be sustained over time, a more detailed rationale for funding seems necessary.

District Expenditures on CRC

The Mendoza plaintiffs complained that the District is significantly under spending funds budgeted for CRC. They base this analysis on the third-quarter report from the District. The budget expert and the Special Master examined the District's quarterly report and found that more than $440,000 remained unspent or unencumbered. Some of the under expenditure is related to the failure to fully appoint all of the IT and other personnel, some funds are already committed but not technically encumbered, and some unexpended funds are the result of efficiencies. The District says it will spend all of its funds budgeted for 2015-16 on CRC-related activities though

this is not necessarily a virtue. If the District were able to accomplish a great deal without spending all of the funds allocated, finding new ways to spend the money it did not use in order to demonstrate good faith seems problematic. But this is not an issue that needs to be resolved by the Court. If funds are being reallocated from initial purposes provided for in the budget, there are processes for dealing with this.

**Recommendation**

It is disturbing that the District effectively unilaterally amended the agreed-to and court-approved IP without advising, much less consulting with, the plaintiffs and the Special Master. Without in any way suggesting that such noncompliance is acceptable, nevertheless the Special Master concludes that compliance <u>with the USP</u> should be judged, whenever feasible, by whether goals are accomplished, not by how much is spent or whether each and every provision of a plan is acted upon. Focusing on process when evidence of effect is available would discourage organizational learning and promote inefficiency. Since the January 2015 agreement that the District should enhance its efforts with respect to CRC, substantial progress has been made. In 2015-16, the number of students enrolled in CRC increased by almost 300 percent as compared to the previous spring term. Based on current enrollment projections (which are based on school level course selection information), enrollment in CRC will increase from 1841 in the fall term of 2015 to 3200 in the fall term of 2016. In 2015-16, 39 teachers (not counting IT) were teaching CR courses; in 2016-17 CRC teachers will number about 70.

The Special Master therefore recommends that the Court reject the Mendoza plaintiffs' request that the District be found in noncompliance with respect to the provisions of the USP regarding implementation of CRC. The District should not be held accountable for its inability to fill difficult to fill positions given that it made a substantial effort to do so. Similarly, if it will not to spend all of the money allocated for initial purposes and reallocate that money to other

-6-

admirable goals, this could auger well for the future of the program because the less it costs to accomplish significant outcomes, the easier it will be to continue to justify and expand the CRC.

Respectfully submitted,

Dated: June 8, 2016

/s/
Willis D. Hawley
Special Master

# CERTIFICATE OF SERVICE

I hereby certify that on, June 8, 2016, I electronically submitted the foregoing **SPECIAL MASTER'S REPORT AND RECOMMENDATION RELATING TO MENDOZA PLAINTIFFS' OBJECTION TO SPECIAL MASTER'S FINDING THAT TUSD IS IN COMPLIANCE WITH THE USP IN ITS IMPLEMENTATION OF CULTURALLY RELEVANT COURSES** for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

J. William Brammer, Jr.
wbrammer@rllaz.com

P. Bruce Converse
bconverse@steptoe.com,

Oscar S. Lizardi
olizardi@rllaz.com

Michael J. Rusing
mrusing@rllaz.com

Patricia V. Waterkotte
pvictory@rllaz.com

Rubin Salter, Jr.
rsjr@aol.com

Kristian H. Salter
kristian.salter@azbar.org

Zoe Savitsky
Zoe.savitsky@usdoj.gov

Anurima Bhargava
Anurima.bhargava@usdoj.gov

Lois D. Thompson
lthompson@proskauer.com

                                                  Andrew H. Marks for
                                                  Dr. Willis D. Hawley,
                                                  Special Master