**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Roy and Josie Fisher, et al., <br><br>            Plaintiffs, <br><br>     v. <br><br> United States of America, <br><br>            Plaintiff-Intervenor, <br><br>     v. <br><br> Anita Lohr, et al., <br><br>            Defendants, <br><br>     and <br><br> Sidney L. Sutton, et al., <br><br>            Defendants-Intervenors, | CV 74-90 TUC DCB <br> (Lead Case) |
| Maria Mendoza, et al., <br><br>            Plaintiffs, <br><br> United States of America, <br><br>            Plaintiff-Intervenor, <br><br>     v. <br><br> Tucson Unified School District No. One, et al., <br><br>            Defendants. | CV 74-204 TUC DCB <br> (Consolidated Case) |

# SPECIAL MASTER'S REPORT AND RECOMMENDATION RELATING TO THE TUSD USP BUDGET FOR 2016-17

**Overview**

On July 12, 2016, TUSD approved its budget for 2016-17. Pursuant to the provisions of the USP, the Mendoza plaintiffs filed objections to the District's budget on July 22, 2016. Subsequently, the Court gave the District five days to respond to the Mendoza objections, which it filed on August 8, and gave the Special Master ten days thereafter to prepare a related R&R to the Court.

It should be noted that the USP does not allow the Special Master to object to the final budget submitted by the District. Rather, the USP requires the Special Master to submit comments to the District and the plaintiffs on the final draft of the budget before it is approved by the Board of Governors. The Special Master submitted his recommendations on June 21, 2016 (see Exhibit A). The District did not incorporate any of the Special Master's recommendations in its budget though it agreed to submit clarifications of expenditures related to professional development and student discipline. These clarifications are to be submitted no later than September 1, 2016.

This R&R has two parts. The first deals with concerns about the budget process; the second with specific expenditures that are inadequately addressed in the budget.

**Part I: The Budget Process**

In their objections, the Mendoza plaintiffs detail numerous problems with the budget process related to timelines and securing information necessary for meaningful comments by the Special Master and the plaintiffs. Some of these problems, as well as others, are also identified in the Special Master's June 21 comments and recommendations. The Mendoza plaintiffs ask the Court to ameliorate these problems in the future by having the Special Master provide recurrent

and frequent reports to the Court on the District's adherence to the provisions of the budget process to which the parties agreed prior to the initiation of the 2016-17 budget development.

The District responded to the Mendoza concerns by saying that it would propose changes to the budget process for consideration by the parties and the Special Master.

As the Court knows, the budget process has been a matter of contention each year. Each year the parties seek to make the process more specific and comprehensive with respect to both timelines and responsibilities.

The Special Master believes that there are no significant problems with the budget process agreed to by the parties. The problem is that the District did not comply with the process established and did not adequately provide information requested by the plaintiffs and the Special Master. This is not to say that changes in the process should not be entertained by the parties but the greater need is to establish a way of ensuring that the provisions in timelines and the budget process are followed. Since such monitoring is within the prerogatives of the Special Master, there is no need for the Court to act on the Mendoza plaintiffs' petition to mandate regular reporting, despite its validity, nor to require the District to alter the process.

The Special Master proposes to develop, in collaboration with the District and the plaintiffs, a detailed PERT chart using the current budget process as the framework. This PERT chart will be maintained online by the budget expert and updated every 10 days so that the parties can see whether the District is acting on the budget in a timely manner. Simultaneously, the budget expert will record and monitor all requests by the plaintiffs for information. In consultation with the District, the budget expert and the Special Master will set dates for a response to each request. Should the District believe that specific requests for information are inappropriate or unduly burdensome, it can ask the Special Master to make such a determination and, if it is unsatisfied with his response, the District can appeal to the Court as provided for in

the USP. All requests for information and responses will be available in a password-protected online file.

Recommendation

The Court should confirm the importance of the District's timely implementation of the budget process and the need to respond to reasonable requests for information and to provide information as fully and promptly as possible.

**Part 2: Inadequacy of Budget Allocations**

These concerns can be thought of as problems in implementing the budget process and/or assertions that there is insufficient funding for particular activities. They are of three types:

1. Budget expenditures that may be insufficient to accomplish the goals of the USP.
2. The need for clarification to reduce ambiguity about actual expenditures and related matters.
3. The use of unexpended funds to meet programmatic needs.

Insufficient Funding

*Funding for AP Courses*

The Mendoza plaintiffs expressed concern about the adequacy of funding for Advanced Learning Experiences (ALE) but focus attention on the number of AP courses being offered and the number of students passing AP examinations. The Mendoza plaintiffs assert that the District "… [a]ppears to have reduced the number of AP classes it offered in 2015-16, a reduction it intends to carry into the 2016-17 school year."

The District responds by saying that it did not reduce the number of classes in the period contested by the Mendoza plaintiffs and that enrollment by African American and Latino students increased significantly from 2012-13 to 2015-16. This response does not indicate when the

increases occurred. It is the case that increases in the number of courses AP courses available over the last two years increased in only two of the ten District high schools. Both of these schools have predominantly white student bodies. Data on enrollment in the AP classes for fall 2016 is not yet available, according to the District.

On January 27, 2016, the Court ordered (ECF 1895) the Special Master to prepare an R&R on the progress the District was making with respect to the enrollment of African American and Latino students in ALE, taking into account data from 2016-17 enrollment[1].

When the R&R ordered by the Court is completed, the Special Master will be in a position to make recommendations about the adequacy of AP funding. This, of course, is less than ideal. However, the District claims it will continue to promote enrollment in AP classes and that if student interest warrants additional classes, it will be able to offer these classes by reassigning teachers. Whether the District is making a concerted effort to promote AP enrollment among African American and Latino students will be assessed by the Special Master

*Funding for Magnet Oversight and Support, Setting Goals and the Use of Non-certified Staff*

The Mendoza plaintiffs draw attention to the dramatic cutback in funding for central office oversight and support for magnet programs. The District responds by saying that it is investing substantially more funds at the school level, a response that is not relevant to the Mendoza objection. It would be easy to make a case that central office oversight of school level magnet programs has been inadequate (this is not a new story and transcends the USP). It would follow from such an argument that reducing the funding for such oversight makes little sense.

---

[1] In preparation for this R&R and to provide the District with information it could use in planning for ALE in 2016-17, the Special Master analyzed aggregate data on ALE enrollment and reported to the District that less than half of the schools had increased daily enrollment for African American and Latino students by more than 1% over the last four years.

However, at this stage of the progress toward unitary status, the Special Master believes that the District should enjoy wide latitude in its investments in administration except in those cases where violation of provisions of the USP are at issue.  The District has been advised by the Special Master that the effectiveness of magnet schools in promoting integration is problematic and that its commitment and success in strengthening and enhancing the effectiveness of magnet schools will be a major consideration in any recommendations to be made with respect to the attainment of unitary status.

While the District should be allowed to make decisions about administration programs, it is surprising to see no funding provided for the director of magnet schools to participate in national conferences that virtually all people in his or her position have the opportunity to attend. At such meetings, persons responsible for magnet programs learn about effective practices and funding opportunities.  Unless the District is anticipating that it will eliminate its magnet program should it attain unitary status, it would seem wise to provide for the professional development of the director of magnet programs and the information gathering that goes with this.  Such funding, which would be modest indeed, seems particularly important given that the person the District proposed to hold this position on a half-time basis had no experience with magnet schools.  If the District seeks to hire a different person to fill the full-time position, it is unlikely to attract a highly qualified person who would have no opportunities to learn from and contribute to the other leaders of magnet programs throughout the country.

Some school-level magnet budgets appear to include expenditures to support uncertified personnel who would be teaching struggling students.  Such funding was not allowed in 2016. Some plans request technology which appears to have already been approved with funding from unspent allocations in 2016.  In April 2016 the parties met and allocated substantial funds for technology and magnets schools.  The District did not amend magnet school budgets to take this

funding into account.

The Mendoza plaintiffs in their objection and the Special Master in his June 21 budget comments question whether the magnet school budgets involve supplementation – using 910g funds to support activities that should be funded from other District funds. The Special Master and the budget expert are undertaking an examination of this possibility and will report to the parties during this school term.

While not a funding matter, the District was previously not allowed to ascribe academic goals for magnet schools that were lower than the goals they already attained. That the District permitted this for 2016-17 is unacceptable and sends a bizarre message to families, staff and students: "we are satisfied to do less well this next year than we have in the past."

Recommendations

The District should revise magnet school plans to (1) eliminate funding for noncertified personnel who would be providing support for struggling students and (2) modify the provisions in magnet school plans for technology when the needs for relevant hardware and software were met by the reallocation of unspent funds in 2015-16.

The District should be required to set academic goals for magnet schools that are at least as high as those they had most recently achieved.

The District should consider providing increased support for the administration of magnet programs.

Ambiguity about Actual Expenditures

As the Mendoza plaintiffs explain in their objections to the District's budget, the Special Master and the plaintiffs found it difficult to understand what the District was proposing and the rationale for year-to-year changes. Among the reasons for this difficulty are:

1. The District changed the way in which many expenditures had been coded making it difficult in some cases to determine what was being spent and how it compared with previous years.
2. Explanations for increases or decreases in previous expenditures focused on what was being done; when such explanations were provided, they typically identified changes in allocations rather the reasons for them.
3. The final version of the budget that the plaintiffs and Special Master received -- Version 3 -- did not include comparisons to previous years.

Three sets of activities were especially difficult to comprehend making meaningful comments on the adequacy of the budget proposals very difficult.

*Teacher Induction*

The District has consolidated expenditures related to two sections of the USP -- the provisions for supporting first and second year teachers and the provision for supporting first-year teachers assigned to schools where students are underperforming. But, the budget does not specify what investments should be made in each. The key to success of both of these provisions of the USP is the number of and quality of mentors. The District is justifying its budget by citing the ratio of one mentor to fifteen based on studies of peer assistance and review (PAR) programs. However, PAR programs and induction programs, such as those provided for in the USP, have different purposes and mentors serve different roles. PAR programs work with experienced teachers in most cases.

The USP intentionally makes the distinction between beginning teachers in general and those assigned to schools where students are underperforming. In the latter schools, the ratio should be closer to 1 to 10, a ratio the District has identified as appropriate to support beginning teachers working in culturally relevant courses. The District argued that it could not provide

specifics because it could not predict how many teachers would be involved. But it could have developed an estimate. In any case, it now knows how many new teachers it has appointed and how many of these will be in their first year of teaching. The District can also identify the number of teachers who are eligible for extra support given their appointment to positions in schools where students are performing below the District average. Without such information, the adequacy of the District's support cannot be assessed and the Special Master cannot readily monitor the implementation of those provisions of the USP that are involved.

Recommendation

The District should identify the number of mentors for each of the two programs supporting beginning teachers, provide the rationale for these provisions, and allocate the funds needed.

*Identifying and Sharing Successful Disciplinary Practices*

Section VI.F.3 0f the USP requires the District to identify effective practices for dealing with disciplinary problems and what it takes to implement these practices and to share what is learned throughout the District. Despite the fact that disciplinary problems in TUSD receive considerable negative attention in the community and generate concerns among teachers and principals, the District has not taken this provision of the USP seriously. While the USP does not indicate how this provision should be implemented, in response to concerns expressed by the Mendoza plaintiffs and the Special Master about the District's neglect of this matter in version 3 of the budget, the District added only $25,000 to the 2017 budget. This investment, if it can be called that, would allow MTSS teams to visit other schools and share effective practices. This strategy is likely to have little impact. First, it does not provide for the widespread sharing of effective practices. Second, it provides for no follow-on activities that would allow teachers and principals ongoing access to what is learned about how best to deal with different disciplinary

issues much less provide support this important information. It would be relatively simple for the District to develop a plan which allowed access to information about effective practices when the information is needed.

### Recommendation

The District should develop a viable plan for identifying and sharing effective disciplinary practices and finance that plan. This is not a particularly high-cost endeavor and it is hard to understand why the District would not want to adequately implement the relevant provision of the USP.

*Professional Development*

The most powerful school-based influence on student learning is teacher effectiveness. Therefore, the investment the District makes in well-designed and effectively implemented professional development is among the most important investments that it can make to improve student learning opportunities and outcomes. However, based on the information provided by the District, it is not possible to determine whether the District expenditures for professional development are adequate to meet the requirements of the USP or whether the ways that PD is to be offered are likely to be productive.

### Recommendation

The District should specify who will receive what professional development, in what amount and in what ways, and at what cost. This assessment should be submitted to the plaintiffs and the Special Master no later than September, 1, 2016. The Court required the District to undertake a similar activity in previous budget years. The District has agreed to provide this information but this recommendation makes clear that the information provided shall be reviewed and commented upon by the Special Master and the plaintiffs.

*Activity Related to Student Behavior, Engagement and Discipline*

Understanding what changes are being made in policies and practices in many areas of District action is complicated by the District's continuing changes in the way it codes particular expenditures. And, while it has provided expenditure changes for aggregate categories of expenditure, the budget itself provides no such information at an adequate level of specificity. This not only makes it difficult to compare proposed with current and past expenditures, it is difficult to identify the purposes of some proposed activities. This is particularly the case with respect to a significant range of activities the District has combined under the heading, "Student Behavior, Engagement and Discipline." For example, in Attachment 1 of the District's May 10 explanation of allocations related to student behavior, engagement and discipline, the District says that, "Attachment 1 outlines the District's prior and current expenditures and proposed allocation for each activity and describes how various components function as parts and of the District's overall approach…." However, for many of the proposed expenditures there is no comparison to current or past allocations. On page 8 of Attachment 1 of the District's explanation, the District essentially zeros out over $1 million of expenditures on important activities by explaining that, "The following activities do not have specific funding lines although resources necessary to implement these activities are found in other sections of the budget and/or draw upon position structures and/or resources that exist outside the USP budget." There is no roadmap that would guide one to information about how much is being spent, if anything, on these activities.

Among the proposed expenditures that appear to be inadequate is the proposed investment in training and evaluation of the Positive Behavior Intervention and Support (PBIS) process that is at the core of the District's efforts to prevent discipline problems. The District has acknowledged that its approach to PBIS is significantly lacking but proposes to spend less than

-11-

$100,000 in PBIS training. And there is no indication of how this compares to past expenditures.

Recommendation

The District should specify how it proposes to invest the more than $7 million that it wishes to allocate to student behavior, engagement and discipline, and to indicate what it is proposing to do more of, what it is doing less of, what it is proposing to do differently, and to identify the expenditures involved. This report to the plaintiffs and the Special Master should be submitted no later than September 1, 2016. The District has agreed to provide this information but this recommendation makes clear that the information provided shall be reviewed and commented upon by the Special Master and the plaintiffs.

*"Funding" Important Programs with Unexpended Funds*

In its response to some objections and concerns related to the final version of the budget received by the plaintiffs and the Special Master, the District responded by saying that if additional action was required as it moves forward during the school year, it would finance these activities by reallocating funds unspent from the approved budget.

These activities about which the District has deferred funding are:

- Culturally Relevant Courses
- Utterback Auditorium
- Outreach , Recruitment and Retention
- Advanced Learning Experiences
- Dual Language Programs

It should be noted that the last two of these activities involve potential shortcomings in implementation that are the focus of relatively recent Court Orders.

Based on past experience, a significant amount of money is likely to go unspent for a number of different reasons -- some intentional, most not.  However, there appear to be a number of potential problems with this approach, especially when the issues to which these funds would be directed are of great importance.  First, it alters the budget reallocation process agreed to by the parties.  Second, when the need arises for reallocation, these funds may not yet be available.  Third, it creates an incentive to hold off on low priority expenditures to ensure that the relatively high priority issues that the District has identified it would address with this strategy could be dealt with.  Fourth, it allows the District to avoid making a commitment to dealing with issues the Special Master and/or the plaintiffs consider important thus denying them the opportunity to comment that s provided for in the USP.  In short, the strategy that the District proposes is highly problematic and should not be allowed.

Recommendation

The District should be required to provide the plaintiffs and the Special Master with specific expenditures needed to effectively implement the five sets of activities identified above.

Respectfully submitted,

/s/
Willis D. Hawley
Special Master

Dated:  August 22, 2016

# **CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2016, I electronically submitted the foregoing **SPECIAL MASTER'S REPORT AND RECOMMENDATION RELATING TO OBJECTIONS TO THE TUSD USP BUDGET FOR 2016-17** for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

J. William Brammer, Jr.
wbrammer@rllaz.com

P. Bruce Converse
bconverse@steptoe.com,

Oscar S. Lizardi
olizardi@rllaz.com

Michael J. Rusing
mrusing@rllaz.com

Patricia V. Waterkotte
pvictory@rllaz.com

Rubin Salter, Jr.
rsjr@aol.com

Kristian H. Salter
kristian.salter@azbar.org

Zoe Savitsky
Zoe.savitsky@usdoj.gov

Anurima Bhargava
Anurima.bhargava@usdoj.gov

Lois D. Thompson
lthompson@proskauer.com

Andrew H. Marks for
Dr. Willis D. Hawley,
Special Master