# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roy and Josie Fisher, et al., | No. CV-74-00090-TUC-DCB |
| Plaintiffs | |
| and | |
| United States of America, | |
| Plaintiff-Intervenor, | |
| v. | |
| Tucson Unified School District, et al., | |
| Defendants, | |
| and | |
| Sidney L. Sutton, et al., | |
| Defendants-Intervenors, | |
| Maria Mendoza, et al., | No. CV-74-0204-TUC-DCB |
| Plaintiffs, | |
| and | |
| United States of America, | |
| Plaintiff-Intervenor, | **ORDER** |
| v. | |
| Tucson Unified School District, et al. | |
| Defendants. | |

SY 2016-2017 USP Budget: Approved, Pursuant to Report and Recommendation

On July 12, 2016, the Tucson Unified School District (TUSD or the District) Governing Board approved the District's 2016-17 School Year (SY) budget, including the Unitary Status Plan (USP) budget.  TUSD failed to file the 2016-2017 USP Budget with the Court for approval, therefore, on July 22, 2016, the Mendoza Plaintiffs filed it attached as an exhibit to their Objections.  On August 8, 2016, TUSD responded to the Mendoza Plaintiffs' objections.  On August 22, 2016, the Special Master filed a Report and Recommendation (R&R), (Doc 1954), which he supplemented on August 31, 2016, (Doc. 1955).  On September 21, 2016, TUSD filed a Response and Limited Objection to the Special Master's R&R, which in large part reflects that on September 1, 2016, the District agreed to follow many of the Special Master's recommendations and "no order is needed."  (Response (Doc. 1957) at 7-10.)

The Court does not agree that an Order is "not needed."  First, the Plaintiffs and the Special Master complain that TUSD failed to comply with review and comment procedures especially designed for the 2016-2017 budget process.  TUSD disagrees and complains that review requests made by the Plaintiffs and the Special Master are too burdensome.  In the case of the budget process, the District reports it "is already working with the Special Master to finalize the process for the budget for the 17-18 school year."  It has submitted, and he has commented on, a proposed timeline and process for the development of the SY 2017-2018 Unitary Status Plan (USP) Budget, and the parties are scheduling meetings to work collaboratively to finalize a draft budget process proposal for the upcoming year.  This is a repeat performance of what happened last year in respect to the parties' inability to work cooperatively in preparing the 2015-16 USP budget and what happened in SY 2014-2015.  In the hope of breaking this dysfunctional cycle, the Court orders the parties to file the 2017-2018 budget process procedures with the Court.  The procedures shall include the review demands of the Plaintiffs and the Special Master for both subject matter and format for TUSD's presentation of budgetary information to them.  The requested budget disclosures should not be burdensome.  The procedures shall include specific review benchmarks and a timeline for development,

review and comment prior to submittal of the budget to the Governing Board for adoption and a date for TUSD to file the adopted budget with the Court.  TUSD shall file with the Court a Notice of Disclosure and/or Compliance within 5 days of each benchmark deadline, or explain any failures to comply.

The Special Master's second recommendation pertains to the Comprehensive Magnet Plan (CMP), which is one of the keystones in the Unitary Status Plan aimed at integration.  The Special Master made recommendations that the District should eliminate funding for noncertified personnel to serve in the capacity of support staff to students who are struggling academically and should modify allocations for technology already addressed by reallocation of unspent funds in 2015-2016.  He complained that TUSD should be required to maintain academic goals for magnet schools that are at least as high as those they have recently achieved.  He also asked that TUSD consider increasing support for administration of the magnet programs.  Here, "no order is needed" because TUSD has agreed to do these things.

The Court notes the eleventh-hour agreement from TUSD and that TUSD's plan to have a single person serve as Magnet Director and ALE Coordinator means that these two very important administrative positions remain understaffed and/or unfilled approximately five-school years after the adoption in SY 2012-2013 of the USP.  Like the CMP, the ALE (Advanced Learning Experience) component to the USP is critical to its success because it is a key mechanism for ensuring equal educational opportunities to all students in the District.  The Court awaits the Special Master's R&R on the ALE program, which will also examine in detail the AP courses being offered district-wide. *See eg.,* (Mendoza Objection (Doc. 1948) at 16-17.)  As the Special Master notes, it is not enough that there is a net increase in AP classes, especially when two-thirds of them are at University High School where most academic courses are offered as AP courses. (R&R (Doc. 1955)).[1]  The Special Master's ALE R&R is due once comprehensive data

---

[1] The racial composition at UHS is 48% Anglo, with minority students as follows: Latino 33%, African-American 3%, Native American 0%, Asian-Pacific Islander 9%, and multiracial 6%.

- 3 -

can be compiled for the 2015-2016 SY.  The Court anticipates it will be forthcoming shortly.  His annual report is due December 15, 2016.

Because "no order is needed" regarding the remainder of the Special Master's recommendations for the 2016-2017 USP Budget, the Court addresses his recommendations in the context of directives for the 2017-2018 USP Budget as it relates to ensuring robust efforts by TUSD in respect to developing and maintaining a disciplinary scheme to satisfy the USP and professional development and support plans to ensure the longevity of improvements attained under the USP.   In the end, TUSD must demonstrate a good faith commitment to maintaining a non-discriminatory system.  "'The good faith component requires TUSD to show past good faith compliance and a good faith commitment to the future operation of the school system, which can be shown through specific policies, decisions, and courses of action that extend into the future.'"  (Order (Doc. 1270) at 55.)  With this in mind, the Court turns to the remainder of the Special Master's recommendations.

He accuses TUSD of underfunding USP provisions that call for the development and implementation of teacher-mentors.  He raised a similar concern when he questioned whether TUSD has developed a rationally based ratio in its Intervention Plan for hiring itinerant mentors for Culturally Relevant Course (CRC) teachers.  (R&R (Doc. 1941)).

The USP § IV, Administrators and Certificated Staff, addresses teacher recruitment, development, and retention aimed at enhancing the racial and ethnic diversity of this staff and ensuring an excellent teacher-pool, well versed in teaching strategies to engage students using culturally responsive pedagogy.  The Special Master complains that TUSD has consolidated expenditures related to two distinct sections of the USP—"the provisions for supporting first and second year teachers and the provision for supporting first-year teachers assigned to schools where students are underperforming." (R&R (Doc. 1954) at 8.)

When the USP was adopted, TUSD had a New Teacher Induction Program (NTIP) which the USP § IV.I.1 required TUSD to expressly amend to provide teachers in their

first two years of teaching with the foundation to become effective educators by, at a minimum: "(a) build beginning teachers' capacity to be reflective and collaborative members of their professional learning communities . . . ; and (b) engage thoughtfully with students from diverse racial, ethnic, cultural, and linguistic backgrounds using culturally responsive pedagogy. The District shall hire or designate an appropriate number of New Teacher Mentors based on the best practices for such mentoring/coaching in the field. These Mentors shall not have direct teaching assignments."

Differently, the USP § IV.E required TUSD to make efforts to increase the number of experienced teachers and reduce the number of beginning teachers hired to teach in racially concentrated schools or schools in which students are underachieving academically. Based on the Special Master's comments, it appears that beginning teachers continue to be hired to teach in both. Assuming such staffing is a matter of necessity,[2] the need for mentors at these schools by these beginning teachers will be greater than those needed by first and second year teachers at other TUSD schools. (R&R (Doc. 1954) at 8-9.)

Therefore, while the key to the success for all new teachers is the number of and quality of mentors, (R&R (Doc. 1954) at 8), according to the Special Master the ratio is not the same for all new teachers. More mentoring is needed when new teachers are hired at racially concentrated schools or schools where students are underperforming. The Special Master challenges TUSD's use of the ratio of one mentor to fifteen teachers. First, he points out that TUSD adopts this ratio for its beginning teachers based on studies of peer assistance and review (PAR) programs, which are generally designed for programs working with experienced teachers. He especially questions it in the context of

---

[2] *See* 2014-2015 Special Master's Annual Report (SMAR) explaining teacher recruitment must be accomplished in the context of a shortage of teacher candidates. (SMAR (Doc. 1890) at 11.) *But see* 2014-2015 SMAR finding that TUSD failed to comply with the spirit of § IV.E.5 because TUSD did not provide data to measure the level of effort made to comply, such as data which over time would reflect reduction or not in the number or proportion of beginning teachers and principals placed in racially concentrated schools or where students are underperforming. (SMAR (Doc. 1890) at 15-16.)

- 5 -

1 mentoring new teachers at racially concentrated schools and where students are
2 underperforming.

3 Like he did in his R&R on itinerant mentors for CRC teachers, the Special Master
4 seeks some rationale for the number of mentors reflected in the 2016-2017 USP budget
5 for new teachers.  The Court agrees.  At this stage in the USP, TUSD should be able to do
6 better than guesstimating.  Using teacher-mentors is not new to TUSD; NTIP existed
7 even prior to the adoption of the USP.  By the time the SY budget is being prepared,
8 TUSD has a fairly clear picture of how many new teachers fall or will fall within the two-
9 year window requiring mentors and who will be teaching in racially concentrated schools
10 or schools where students are performing below the District average.  According to the
11 Special Master, two different ratios should be developed and, accordingly, applied.
12 These are the number of mentors needed.  Whether these needs can be met due to other
13 constraints is a different question, but the number of mentors needed in each budget year
14 is a formalistic reckoning.

15 It is imperative that TUSD develop meaningful mentor-teacher ratios for first and
16 second year teachers who teach in racially concentrated schools and schools where
17 student performance is below the District average and for beginning teachers at all other
18 TUSD schools.  These ratios shall be developed and used for the 2017-2018 USP Budget.
19 The Special Master shall review the ratios to ensure full compliance with the provisions
20 in the USP § IV requiring mentors for beginning teachers.  The Special Master shall
21 develop a data gathering and review plan, both substantive and procedural, to enable him
22 to monitor the effectiveness of TUSD's beginning teacher mentoring plans for use in the
23 2016-2017 SMAR.  If the development of mentor ratios reflects a need for mentors that is
24 greater than TUSD's ability to staff these positions, the Special Master and the parties
25 may consider, and if necessary propose, an interim plan for teacher mentors.

26 The Special Master is concerned that TUSD has failed to specify who will receive
27 what professional development, in what amount and in what ways, and at what cost.  *See*
28 2014-2015 SMAR (Doc. 1890) at 18-19) (describing the level of detail to describe

TUSD's professional development strategies as including: "the core content and its relationship to provisions in the USP, the number of people in different roles receiving such professional development, mode of delivery, and the number of hours for learner participation). The Special Master recommends the Court repeat the requirement made in previous budget years that TUSD make this same assessment for its professional development plan.

TUSD has now agreed to make this assessment for the 2016-2017 USP Budget. While "no order is needed" for purposes of the SY 2016-2017 USP budget, the Court makes this assessment mandatory for all future USP budgets. Because "the most powerful school-based influence on student learning is teacher effectiveness," (R&R (Doc. 1954) at 10), professional development and professional support ensures that TUSD will be able to develop and retain strong teachers capable of carrying out the mandates of the USP. If the development of mentor ratios reflects a need for mentors that is greater than TUSD's ability to staff these positions, the Special Master and the parties shall consider, and if necessary propose, an interim plan for teacher mentors.

Lastly, the Court turns to the Special Master's recommendations regarding the USP § VI, Discipline. The Special Master notes "that disciplinary problems in TUSD receive considerable negative attention in the community and generate concerns among teachers and principals, [yet] the District has not taken this provision of the USP seriously." (R&R (Doc. 1954) at 9.) The Court notes that since the 1974 inception of this case, TUSD has failed to take its disciplinary practices and procedures seriously. Discipline was one of the *Green*-factor challenges raised by the Plaintiff Fishers and remedied by the Settlement Agreement of 1978, paragraph 13, which required TUSD to implement good faith efforts that no student is discriminated against in the implementation of the District's uniform suspension and expulsion policy. In 2008, when this Court considered whether unitary status had been attained after approximately 30 years of operations pursuant to the 1978 Settlement Agreement, it questioned whether paragraph 13 had been addressed in good faith because there was no evidence of any

ongoing monitoring and review of TUSD's disciplinary practices and policies to ensure the District maintained over all those years a uniform suspension and expulsion policy and no student was discriminated against. (Order (Doc. 1270) at 33-37.)

This Court, therefore, does not take lightly the Special Master's concern that $25,000 in the 2017 budget fails to move TUSD forward in respect to satisfying the USP § VI.F.3, disciplinary provision to identify and share successful disciplinary practices. He criticizes TUSD's plan to have Multi-tiered Student Support (MTSS)[3] teams visit other schools and share effective practices. He explains that an effective sharing plan should provide for widespread sharing of effective practices, have follow-on activities that allow teachers and principals ongoing access to what is learned about how best to deal with different disciplinary issues. He describes it as fairly simple to design a plan that would allow access to information about effective practices when the information is needed by a teacher or principal. TUSD agreed to this, but the Court notes that the Special Master made this recommendation to TUSD in his 2014-2015 Annual Report to the Court. (2014-2015 SMAR (Doc. 1890) at 28.)

Additionally, TUSD agreed, as recommended by the Special Master, to specify how it proposes to invest more than $7 million it is allocating to student behavior, engagement and discipline, and to indicate what it is proposing to do more of, what it is doing less of, what it is proposing to do differently, and to identify the expenditures involved, and to report this to the Plaintiffs and the Special Master. Although it may please the Court that "no order is needed" for purposes of the 2016-2017 USP Budget, it asks the Special Master to provide a detailed progress report in his 2015-2016 annual report or separately by R&R for section VI of the USP. This assessment should be timely so that the 2017-2018 USP Budget may catch-up TUSD, if necessary, in respect to progress in attaining unitary status, pursuant to the USP § VI, Discipline.

The Court understands that TUSD has not deferred funding in respect to plans and activities aimed at USP provisions for CRCs, ALEs, dual language programs and staff

---

[33] Replaces Learning Support Coordinators.

- 8 -

outreach, recruitment and retention (ORR) programs, and commends TUSD in earmarking these programs for additional funding through reallocations in the event extra money become available. The Court is certain that TUSD likewise understands that compliance with a directive from this Court to remedy a shortcoming in its implementation of any of these programs requires it to budget adequate funding, which cannot be dependent on reallocations. The Court agrees with TUSD that "no order is needed."

The Court recognizes that since his appointment, this Court has directed the Special Master to work with the parties to design and develop, first, the USP and then the various programs to be implemented pursuant to the USP provisions. In this way the Parties and Special Master have weighed in on the development of the programs to be implemented in TUSD to attain unitary status under the USP. (USP (Doc. 1713) § I.D.) From here forward, any need for review and comment pursuant to USP § I.D shall be determined by the Special Master. The time has come to begin reviewing the progress made towards unitary status since the adoption of the USP. In these last years of judicial oversight, the Court finds it is important for the District to act of its own accord and be accordingly held accountable. Therefore, review and comment, with the exception of the budget process, should generally be given after TUSD acts. The Court will defer to the Special Master regarding data needs, both substantive and format, for this review.[4] The Special Master may advise the Court regarding any procedural changes necessary to ensure a smooth transition from the developmental stages of the USP to its review, with the understanding that supplemental to his SY 2016-2017 SMAR he will file an R&R regarding unitary status.

The Court neither adopts nor orders any amendment or supplementation to either the District's 2014-2015 Annual Report (DAR) or the Special Master's 2014-2015

---

[4] The parties are always free to bring any objection to the attention of the Court, but are advised to work cooperatively with the Special Master in this context.

1 Annual Report (SMAR).  Both stand on their own, and the documents speak for
2 themselves.

3 **Accordingly,**

4 **IT IS ORDERED** the Report and Recommendations (Docs. 1954 and 1955) are
5 adopted by the Court, with the record reflecting that TUSD agrees with the
6 recommendations.

7 **IT IS FURTHER ORDERED** that there being no objection, the Court adopts the
8 Report and Recommendation (Doc. 1915) for the USP 910G budget development process
9 for 2015-2016.

10 **IT IS FURTHER ORDERED** that the parties shall develop and TUSD shall file
11 the 2017-2018 budget process procedures with the Court.  The procedures shall include
12 the review demands of the Plaintiffs and the Special Master for both subject matter and
13 format for TUSD's presentation of budgetary information to them, which shall not be
14 burdensome.  The procedures shall include specific review benchmarks and a timeline for
15 development, review and comment prior to submittal of the budget to the Governing
16 Board for adoption and a date for TUSD to file the adopted budget with the Court.
17 TUSD shall file with the Court a Notice of Disclosure and Compliance within 5 days of
18 each benchmark deadline, and explain any failures to comply.  TUSD shall file the 2017-
19 2018 Budget Process and Procedures with the Court within 45 days of the filing date of
20 this Order.

21 **IT IS FURTHER ORDERED** that future budgetary assessments shall specify
22 who will receive professional development in what amounts and in what ways, and at
23 what cost i.e.: its core content and relationship to provisions in the USP, the number of
24 people in different roles receiving such professional development, mode of delivery, and
25 the number of hours for learner participation.

26 **IT IS FURTHER ORDERED** that TUSD shall develop a meaningful mentor-
27 teacher ratio for first and second year teachers and a meaningful mentor-teacher ratio for
28 beginning teachers who teach in racially concentrated schools and schools where student

performance is below the District average.  These ratios shall be developed and used for the 2017-2018 USP Budget.  If the development of mentor ratios reflects a need for mentors that is greater than TUSD's ability to staff these positions, the Special Master and the parties may consider, and if necessary propose, an interim plan for teacher mentors.  The Special Master shall develop a data gathering and review plan, both substantive and procedural, to monitor the effectiveness of TUSD's beginning teacher mentoring plans for his use in the 2016-2017 SMAR.

**IT IS FURTHER ORDERED** that the Special Master shall provide a detailed progress report in his 2015-2016 SMAR or separately by R&R for section VI of the USP.  This assessment should be timely so that the 2017-2018 USP Budget may catch-up, if necessary, TUSD's efforts in respect to progress in attaining unitary status, pursuant to the USP §  VI, Discipline.

**IT IS FURTHER ORDERED** that review and comment pursuant to USP § I.D shall be determined by the Special Master.  The Special Master may advise the Court regarding any procedural changes necessary to ensure a smooth transition from the developmental stages of the USP to its review.  The Special Master shall establish the data needs, both substantive and format, for this review.

**IT IS FURTHER ORDERED** that supplemental to his SY 2016-2017 SMAR, the Special Master shall file his First R&R regarding unitary status.

Dated this 27th day of December, 2016.

Honorable David C. Bury
United States District Judge