1

2

3

4

5

6 **UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

7

8  Roy and Josie Fisher, et al.,

9                                 Plaintiffs,

10          v.

11 United States of America,

12                                 Plaintiff-Intervenor,

13                                                                    CV 74-90 TUC DCB

14          v.                                                        (Lead Case)

15 Anita Lohr, et al.,

16                                 Defendants,

17          and

18 Sidney L. Sutton, et al.,

19                                 Defendants-Intervenors,

20 Maria Mendoza, et al.,

21                                 Plaintiffs,

22 United States of America,

23                                 Plaintiff-Intervenor,                CV 74-204 TUC DCB

24                                                                    (Consolidated Case)

25          v.

26 Tucson Unified School District No. One, et al.,

27                                 Defendants.

28

## REPORT AND RECOMMENDATION REGARDING TRANSITION PLAN

### BACKGROUND

On January 17, 2017, the District submitted its transition plans for the six schools that are losing magnet status (*see* Exhibit A).  On January 31, 2017, the Mendoza plaintiffs and the Special Master identified their objections (*see* Exhibits B and C).  The Fisher plaintiffs submitted their objections on February 1, 2017 (*see* Exhibit D).  On February 9, 2017, the Special Master clarified his position on the District's proposals (*see* Exhibit E).  Altogether, there were 48 objections that the District identified and to which it responded on February 7, 2017 (*see* Exhibit F).  The Department of Justice did not file objections; reference to the plaintiffs in this report applies only to the Mendoza and Fisher plaintiffs.

### OBJECTIONS

Exhibit F is a useful description of the specific objections so they are not repeated here.  These objections dealt with a broad range of issues and overlapped to some extent.  Topics dealt with in these objections are:

1. The inadequacy of training and professional development.

2. Additional sites for dual language programs.

3. The inadequacy of efforts to improve the academic achievement of African American students.

4. Inattention to the need for greater school integration.

5. The excessive use of consultants.

6. The inadequacy of family engagement efforts.

7. The need to identify research that supports the introduction of proposed programs.

8. The complexity of the plans.

9. Need to start implementation of plans as soon as possible.

**DISTRICT RESPONSE TO OBJECTIONS**

The responses of the District to these objections can be described, in general terms, as follows:

- The District agrees to adjust the plans to meet the objection (10 instances).

- The District believes that the plans or District-wide initiatives address the issues raised by the plaintiffs and Special Master (25 instances).

- The District had sought to explain elements of its plans but was not given the time to do so (four instances).  The District agreed to meet with the plaintiffs to discuss these concerns.

- The District "noted" the expressed concerns (four instances).

- The remainder of the responses to objections would be (1) "other," (2) should be dealt with during the coming budget process, or (3) seemed unresponsive (probably because the District may have missed the intent of the objection).

**EXPLANATIONS FOR LIMITING RECOMMENDATIONS FOR CHANGING THE DISTRICT'S PROPOSED TRANSITION PLANS**

It would not be productive to consider each of the objections and the District' response thereto.  This would result in another round of arguments about the adequacy of the District's plans.  In its December 27, 2016 order dealing with budget process (Doc. 1981), the Court made clear that the District should be given considerable discretion at this stage of the District's pursuit of unitary status:

In the last years of judicial oversight, the Court finds it is important for the District to act of its own accord and be accordingly held accountable.

This admonition from Court is one of three reasons for limiting the recommendations by the Special Master for changes in the transition plans.  A second is that it is critically important that the transition plans be approved as soon as possible so that:

1. The District can move forward to develop more detailed elements of the plans.

2. Steps necessary to the successful implementation of the plans be taken as soon as possible (*e.g.,* so that leadership teams can be trained and get to work – a need

identified by both the Mendoza plaintiffs and the Special Master in their objections).

3.      Detailed budget proposals can be developed.

4.      The plans can be in place this August when students return to school.

The transition plans did not include budgets for each school or for the support at the District level to facilitate implementation.  As noted above, in many cases the District's response to objections was to say that it is capable of successfully implementing the plans.  This assertion can be examined in the review of the budget.

A third reason for limiting proposals to alter the District's transition plans is that many of the objections raised by the plaintiffs and the Special Master focus on what is missing from these plans.  An example of how difficult it would be for the Court to respond to many of the objections by the plaintiffs and the Special Master is the problem the Court would have in addressing the concerns of the Fisher plaintiffs that the District's plans for the schools do not adequately address the fact that African American students are achieving at lower levels than any ethnic group other than Native Americans.  The District's response to this continuing and justifiable concern of the Fisher plaintiffs, is to say that it is committed to improving the achievement of all students.

The problem the Court would have in requiring the District to meet this concern of the Fisher plaintiffs is that there are no African American-specific ways to teach math or English/language arts.  There are, however, strategies the District has putatively adopted that would, if implemented effectively, improve the achievement of different ethnic groups.  These strategies include:

- Tier 1 instruction (as pointed out by the Fisher plaintiffs) that would be especially effective when such instruction incorporates culturally responsive pedagogy.

- Culturally relevant curricula.

- Family engagement.

The Court could direct the District to do a better job with these strategies and no doubt the District would agree to do its best.  But, of course, the District is trying to do its best already and if classroom instruction were highly effective, achievement in the schools for all students would be higher than it is.  As is the case with many school districts, when problems are identified the initial response is to add a new program rather than to look first at the adequacy of the key influences on student achievement – such as the quality of teaching.

In any event, even if the District were directed to do better, what could the Court mandate?  The reality is that the evaluation of teachers as practiced in TUSD does not appear to provide information that would allow for the identification of teachers who are especially effective teaching African American students or who are in particular need of help in improving their teaching of African American students.[1]  And, there is no ongoing evaluation of the various approaches to introducing culturally relevant curricula or variations in family engagement efforts.

**RECOMMENDATIONS**

**New Programs Should Be Research-Based**

The District should not introduce new programs in the transitioning schools unless it can show either (1) that the efficacy of the program is supported by research that (a) meets the methodological standards required by publication in a peer-reviewed journal and (b) is not conducted by the vendor of this program, or (2) there is empirical evidence that the program has been implemented successfully in TUSD with positive outcomes for students.

**The Introduction of Dual Language Programs Should Be Deferred**

The District should not implement dual language programs at Pueblo or at Ochoa in the coming year.  These schools are struggling and their plans – absent dual language – will require

---

[1] Other than the fraction of teachers who appear to be ineffective with all students.

expertise and commitment that will need to be developed for the plans to be effective.  Adding

dual language programs in the schools is likely to undermine the effectiveness of other aspects of

the plans.  Moreover, implementing dual language programs in the schools is unlikely to have any

effect on integration.  On the other hand, dual language can be a tool for integration if it is

implemented effectively at sites that are likely to draw students in addition to Latino students.

**Plans Should Identify Positions that Will Not be Needed After Initial Implementation**

These plans include a number of new positions and consultants.  The justification for

many of these appointments is that they are needed to facilitate transition.  The District

acknowledges that some of these positions will not be needed over time.  For example, on page

16 of the District's response to the Special Master and the plaintiffs (Exhibit F), the District

states:

> With the exception of specialized training such as reading recovery
> certification and continuing support for balanced literacy implementation,
> the district recommended programs do not require specialized training
> outside of initial implementation and data analysis.

Similarly, the District has identified positions that are not related to specific programs but

are directly related to the transition itself and still others that have no clear relevance to the

content of the transition plans that set the six schools apart from other schools in the District (*see*

Exhibit C, page 3).

The transition plans for the six schools and for central staff needed to support schools in

their initial implementation should identify positions and expenditures that will be phased out no

later than 2019-20.  This will encourage the schools to develop the capacity to perform the

functions these short-term employees will be performing and to avoid further proliferation of non-

instructional roles.

**A Timeline for Essential Steps in Implementing the Transition Plans**

The Court should direct the District to provide a timeline identifying the activities that are

essential to the effective implementation of these plans.  The District informed the Special Master that it had such plans but that it didn't include them for fear that they would result in ongoing debates about the plans which would further delay their approval.  Given that the District professes to have plans for implementation, it should be able to provide the agenda for implementation within 15 business days of the Court approval of the six plans.

**Monitoring**

To expedite the implementation of the transition plans and assure the Court that the recommendations above are implemented by the District, the Special Master, in consultation with the District, should be directed to prepare one or more reports to the plaintiffs and the Court prior to the beginning of the 2017-18 school year.

Respectfully submitted,


_____ /s/ _____
Willis D. Hawley
Special Master

Dated:  February 21, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on, February 21, 2017, I electronically submitted the foregoing

**REPORT AND RECOMMENDATION REGARDING TRANSITION PLAN** for filing and transmittal of a

Notice of Electronic Filing to the following CM/ECF registrants:

J. William Brammer, Jr.
wbrammer@rllaz.com

P. Bruce Converse
bconverse@steptoe.com,

Oscar S. Lizardi
olizardi@rllaz.com

Michael J. Rusing
mrusing@rllaz.com

Patricia V. Waterkotte
pvictory@rllaz.com

Rubin Salter, Jr.
rsjr@aol.com

Kristian H. Salter
kristian.salter@azbar.org

Zoe Savitsky
Zoe.savitsky@usdoj.gov

Anurima Bhargava
Anurima.bhargava@usdoj.gov

Lois D. Thompson
lthompson@proskauer.com

Andrew H. Marks for
Dr. Willis D. Hawley,
Special Master