**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Roy and Josie Fisher, et al.,<br>　　　　　　Plaintiffs<br>and<br>United States of America,<br>　　　　　　Plaintiff-Intervenor,<br>v.<br>Tucson Unified School District, et al.,<br>　　　　　　Defendants,<br>and<br>Sidney L. Sutton, et al.,<br>　　　　　　Defendants-Intervenors, | No. CV-74-00090-TUC-DCB<br>(Lead Case) |
| Maria Mendoza, et al.,<br>　　　　　　Plaintiffs,<br>and<br>United States of America,<br>　　　　　　Plaintiff-Intervenor,<br>v.<br>Tucson Unified School District, et al.<br>　　　　　　Defendants. | No. CV-74-0204-TUC-DCB<br>(Consolidated Case)<br><br><br>**ORDER** |

Substantive Issues Raised in 2019-20 Budget Objections

On September 10, 2019, the Court issued an Order adopting the Special Master's recommendation to approve the budget, with a $1,000,000 reservation of 910G funding as an integration contingency set aside. "The Court also ordered the District to provide additional information regarding various objections, with Plaintiffs subsequently being afforded an opportunity to reurge objections." (Order (Doc. 2349) at 2 (referencing Order (Doc. 2272) (calling for District reports for: 1) USP Provision Completion Plans as requested by the Special Master; 2) Magnet School Plans (MSP) Comparison Report; 3) HR Procedures for African American Recruitment; 4) Reading Recovery and Reading Support; 4) Transition Plan Status Report, and 7) Cross-over ratios for future 910G/M&) budgets).[1]

On September 24, 2019, the District filed the HR Procedures for Recruiting Black Professional Staff; the Reading Recovery Support Status Report, and the Transition Plan Status Report. (Doc. 2289.) The Fisher Plaintiffs did not reurge any objection. The Mendoza Plaintiffs reurged questions about Reading Recovery. The Court called for further briefing, which was made by the District on December 4, 2019. (2388.) No further objections were made.

On September 30, 2019, the District filed the MSP Comparison Report and Cross-over benefit Report. (Doc. 2297.)  The Mendoza Plaintiffs reurged objections to the 910G/M&O budget ratios proposed by the District. (Doc. 2331.) [2] On October 30, 2019, the Court clarified its directive regarding the need for review and revision, if appropriate, of the 910G/M&O ratios for future budget use and afforded the parties an opportunity to

---

[1] It allowed the Plaintiffs to reurge objections related to beginning-teachers, subsequent, to the filing of the beginning teacher inventory, which was being prepared to further supplement the Supplemental Notice of Compliance: First Year Teachers (Doc. 2222). (Order (Doc. 2272) at 7-8). The Court shall address beginning teachers in the context of the Notice of Compliance (Second Supplement): Certification and Support for Beginning Teachers (Doc. 2327).

[2] *See* Order (Doc. 2471) at 5 (declining to address alleged arbitrary budget constraints, which had not been reurged by Mendoza Plaintiffs subsequent to the District's filing of the MSP comparison report).

- 2 -

resolve any disputes. (Order (Doc. 2349)).   The Special Master, however, filed a Report and Recommendation specifically aimed at the District's budget process for magnet schools. The District's interests would be well served to consider the Special Master's recommendations, especially in the context of its efforts to improve existing magnet schools where magnet status is in jeopardy. *See* Order (Doc. 2471) at 12-13.)

The majority of the recommendations made by the Special Master are not new, and the Court has adopted them previously. Therefore, the Court orders the District to file a Protocol as recommended by the Special Master reflecting its compliance with these prior Court directives.

The Director of Magnet Schools shall review and attest to the effectiveness of proposed programs[3] and consultants[4] based on a Protocol developed by the District for assessing the extent to which consultants are knowledgeable about and intend to include in the work they are tasked to perform for the District culturally responsive teaching, discipline and leadership methods. When the District is hiring consultants to provide professional learning opportunities or as advisors on the implementation of new programs, it shall identify how it will prepare its own staff to take over the responsibilities of the consultants going forward and budget for that exercise. (R&R (Doc. 2412) at 2-5, 6.)

The protocol for assessing proposed programs shall include an assessment of the strength of the magnet theme and whether the proposed program will buoy the theme or not. *Id.* at 6.

Program effectiveness, determined at the school level, shall be evidence based and shall not be solely anecdotal or based on a survey. *Id.* at 4-5.

The District shall define enrichment activities which may be exempted from the Protocol.  *Id.* at 3 n.1.

---

[3] The Court assumes this attestation would be made in the context of the annual MSP process, but might be applicable in the context of targeted improvement plans.

[4] The Court assumes this attestation would be made in the context of annual budget preparation but might be applicable in the context of Request for Proposals.

The Special Master reports that principals informed the Implementation Committee that they were told to limit the Magnet School Plans (MSP) proposals to their expenditures for the previous year. The District's responses to discovery said it didn't do this and proffered three magnet school budgets that were greater in SY 2019-20 than before, one by .17 cents. Rather than continue this "he said she said" argument, the Court adopts the recommendation by the Special Master that the District shall develop written instructions for principals for preparing the MSP, including instructions about priorities and spending targets. Instead of having this writing provided to the parties and Special Master, the District is directed to file it as an addendum to the 3-Year PIP: CMP which is due September 1, 2020, pursuant to this Court's Order issued on June 4, 2020. (Order (Doc. 2471)).

Because the Special Master's review of the District's magnet plan program is made in the context of the budget, he also included general budgetary recommendations, which this Court adopts, as follows: "If changes are made to the final version of a budget submitted to the plaintiffs and the Special Master prior to its approval by the governing board, such changes should be submitted to the plaintiff and the Special Master for expedited review if they exceed $50,000 for each change." The Court adopts this recommendation because last-minute changes to the budget, circumventing review, has been a repeated problem in the budgetary process year after year.

On December 20, 2019, the District filed its Guide for 910G Funding. (Doc. 2402.) It agreed to follow guiding principles set out by the Special Master in the SY 2020-21 budget process but continues to argue it is not bound by any provision other than state law A.R.S. § 15-910G. As the Court understands it, 910G funding is available to the District for the pendency of this case and will likely end when unitary status is attained. Therefore, the Plaintiffs and the Special Master may bring any future budget dispute before this Court, including presenting argument that the District is not complying with the Special Master's guiding principles. In other words, the Court will consider any 910G/M&O ratio issue in the context of a specific budget controversy.

On March 9, 2020, the Special Master filed a Report and Recommendation for the $1,000,000 set aside 910G funding for transition schools. (R&R (Doc. 2444)). He reported that in SY 2019-20 approximately $1.5 million in funding ($1,000,000 910G and $550,000 other funds) was spent to implement the Transition Plans at the schools where magnet status was terminated. He reported this was less than the prior year (SY 2018-19) $2 million expenditure of 910G funding on Transition Plans, but in SY 2019-20, the District additionally used $1.6 million in 910G funding for seventh period days at underperforming schools. The Seventh Period strategy is aimed at professional development and implementation of professional learning communities, with the primary purpose being to improve student academic performance and disciplinary issues. The Court adopts the Special Master's recommendation to find that the District sufficiently funded the Transition Plans and improvements related to underperforming schools in SY 2019-20.

**Accordingly,**

**IT IS ORDERED** that the Court adopts the Special Master's recommendations (Doc. 2412) that the District develop a Protocol, as described herein, for future budgetary processes, including those relevant to the annual MSP process and the SY 2020-21 Budget.

**IT IS FURTHER ORDERED** that upon development of the Protocol, the District shall file a Notice of Compliance, with the Protocol attached.

**IT IS FURTHER ORDERED** that the District shall develop written instructions for principals for preparing the MSP, including instructions about priorities and spending targets, and file it as an addendum to the 3-Year PIP: CMP which is due September 1, 2020, pursuant to this Court's Order issued on June 4, 2020.

**IT IS FURTHER ORDERED** that the Court adopts the Special Master's recommendation that if changes are made to the final version of a budget submitted to the plaintiffs and the Special Master prior to its approval by the governing board, such changes should be submitted to the plaintiff and the Special Master for expedited review if they exceed $50,000 for each change.

1 **IT IS FURTHER ORDERED** that the Court adopts the Special Master's
2 recommendation (R&R (Doc. 2444)), to find that the District sufficiently funded the
3 Transition Plans and improvements related to underperforming schools in SY 2019-20.
4 Dated this 29th day of June, 2020.

Honorable David C. Bury
United States District Judge