1
2
3
4
5            **IN THE UNITED STATES DISTRICT COURT**
6                **FOR THE DISTRICT OF ARIZONA**
7

| | |
|---|---|
| 8  Roy and Josie Fisher, et al., | No. CV-74-00090-TUC-DCB |
| 9                    Plaintiffs | (Lead Case) |
| 10  and | |
| 11  United States of America, | |
| 12                    Plaintiff-Intervenor, | |
| 13  v. | |
| 14  Tucson Unified School District, et al., | |
| 15                    Defendants, | |
| 16  and | |
| 17  Sidney L. Sutton, et al., | |
| 18                    Defendants-Intervenors, | |

| | |
|---|---|
| 19  Maria Mendoza, et al., | No. CV-74-0204-TUC-DCB |
| 20                    Plaintiffs, | (Consolidated Case) |
| 21  and | |
| 22  United States of America, | |
| 23                    Plaintiff-Intervenor, | **ORDER** |
| 24  v. | |
| 25  Tucson Unified School District, et al. | |
| 26                    Defendants. | |
| 27 | |

28      SY 2020-21 910G Budget: Adopting R&R for Approving Budget

On June 24, 2020, the District filed the SY 2020-21 USP Budget, it reported that this year's budget process has been difficult because due to the COVID-19 pandemic, the District's plan of operation is in a state of flux, oscillating between school closures and on-line learning, or not. This distinction in operations affects almost every element of the budget, even professional learning. Of course, if the budget keeps changing due to operational changes, it is difficult to pick a point in time for the Plaintiffs and Special Master to review and comment on it.

All parties concerned, including the Special Master, recognize that this year the budget development and approval process needs to be flexible to allow the District to respond to the pandemic rather than responding to objections, which are tentative at best because the budget is equally uncertain. The Court has reviewed the Plaintiffs' objections and finds that the Special Master's Report and Recommendation addresses them. For the reasons stated below. the Court adopts the recommendations as its own.

In large part the Fisher objections are requests for information that were asked and answered in draft three of the budget. (2020-21 USP Budget (Doc. 2487) at 176-178.) The Special Master addresses three of the Fisher objections, which are as follows: 1) there are no dual language programs for non-English speaking African American students; 2) the Trayben Report recommendations are being ignored, and 3) the Court should stay this action due to the COVID-19 pandemic.

The Court notes the request for a stay due to COVID-19 was made in the context of the Supplemental Petition for Unitary Status, not the Budget review for SY 2020-21. (Fisher Objection (Doc. 2478) at 25.) The Court finds no reason to stay the case as of now. The Court rejects the objection related to the Trayben Report ((AAAATF) recommendations)[1] in relation to the budget, especially when the District has responded that funding has increased, not decreased. (TUSD Response (Doc. 2498) at 7.)

It appears that both the District and the Fisher Plaintiffs know what the Trayben &

---

[1] The parties seem to use AAAATF interchangeably to refer to the Trayben Associate's recommendations. The Court does not know what the acronym represents.

Associate's recommendations are, which ones have been adopted and should be implemented, and which ones are allegedly being ignored. This challenge was raised before by the Fisher Plaintiffs in the Response to the District's Notice of Compliance for the Revised AASSD Operating Plan (Doc. 2276), wherein the Fisher Plaintiffs reported that Dr. Benson of Trayben & Associates found the record unclear as to the status of the Trayben recommendations. The Court did not address the general challenge in the context of the Revised AASSD because it lacked specificity related to the AASSD. The Court reviewed the evidentiary record which contained a list of priority recommendations 1-17 out of what seemed to be a total of approximately 68 recommendations, ((Doc. 2276) at 21), wherein the District identified approximately 19 as being "currently in place," *id.* at 23-24, and another 29 as adopted, *id.* at 25-26. The Court is familiar enough with the USP strategies to recognize many of the Trayben recommendations as occurring within the context of the USP, such as: develop a marketing plan that presents Tucson as a destination city; partnership with Historically Black Colleges to recruit teachers; rebranding ALE opportunities and enlisting AASS leaders to include the plan as part of their engagement with African American students; monitoring for consistent PBIS guidelines across schools, or job-embedded training for CRPI. As it did in the context of the AASSD, in the context of the SY 2020-21 budget objections, the Fisher Plaintiffs fail to connect a specific Trayben recommendation to a budget issue.

Based on the record before it, the Court rejects the Fisher Plaintiffs broad allegation that the District has ignored the Trayben recommendations. The Trayben recommendations do not create a Trayben subset of requirements within the USP, but they most certainly provide an expert evidentiary basis upon which the Fisher Plaintiffs may rely to argue that any USP strategy or provision is insufficient or insufficiently funded. Until the Fisher Plaintiffs make such arguments, the Court finds that based on the record currently before it, the District has not ignored the Trayben recommendations.

To the extent the Fisher Plaintiffs raise a budgetary challenge by complaining that "80504 Expansion of Dual Enrollment" does not indicate "what services are planned for

non-English speaking African American students," the Court finds that it has never been suggested that the Two-way Dual Language (TWDL) program should extend to African American non-English speakers. The Special Master points out that these students are from multiple countries, speaking multiple languages, with the primary language being Swahili followed by French. The is no evidence suggesting that a TWDL program could be formed around Swahili or French, or that any party seeks such a program.

The Special Master makes recommendations which he believes address the Mendoza concerns and the District's need to focus on the COVID-19 crises rather than what are now ill-defined budget issues. The Court adopts the Special Master's recommendations for adopting the SY 2020-21 USP budget. He believes the budget protocol issue is being addressed in the context of the magnet school budgets that are currently being developed for magnet schools rated C and D by AZMerit scores, which are not TUSD Magnet Merit grade B schools. The Special Master recommends that the Court reject the Mendoza Plaintiffs' suggestion to shift money away from magnet schools that are very effective to magnet schools which require improvement because the answer to improving a magnet school is not that easily resolved. The Court agrees that the best way to determine a magnet school budget is based on program need, which is currently the subject of the magnet school improvement action plans.

The Special Master recommends that the Court approve the District's proposal to distinguish between budget reallocations for COVID-19 related expenditures and all others. Lastly, the Court finds no basis for the District to believe that directives regarding current protocols for hiring consultants should not extend to consultants hired in the future, and adopts the Special Master's recommendation to again order that "Consultants shall

/////
/////
/////
/////
/////

specify how their services are aligned with the District's commitments to culturally responsive pedagogy and discipline and, more broadly, equity." (R&R (Doc. 2499) at 5.)

**Accordingly,**

**IT IS ORDERED** that the SY 2020-21 USP Budget (Doc. 2487) is approved by the Court, pursuant to the Report and Recommendation (Doc. 2499), which the Court adopts as its own, as follows:

1.     The District shall demonstrate its capacity to develop and implement a protocol for strategic magnet school plans and related budgets by preparing magnet school budgets for those schools identified by the state as having a grade of C or D, that are not TUSD MagnetMerit grade B schools. (R&R (Doc. 2499) at 7.)

2.     This protocol shall be extended to the budget process from this date forward as reviewed by the Plaintiffs and approved by the Special Master on an expedited basis so it can be used beginning with the SY 2021-22 budget process. *Id.*

3.     "Reallocations of funds within the budget filed with the Court [shall] be governed by the policies and practices specified in the budget process for 2019-20 except that reallocations necessary to implement practices and policies related to the COVID pandemic [will] only be reviewed by the plaintiff and the Special Master when they exceeded $250,000. These COVID-related reallocations in excess of $250,000 should be reviewed by the plaintiffs and the Special Master, [pursuant to] current policy, the plaintiffs and the Special Master may review all expenditures in excess of $50,000 when they are reported by the District in quarterly reports." *Id.*

4.     For any reduction in funding of more than $50,000 for a magnet school that has an AZMerit grade C or D, that is not TUSD MagnetMerit grade B school, the District shall describe the research-based strategies it proposes to use for the school's improvement. *Id.*

5.     The protocol, which currently exists for vetting consultants, "shall be used in all such transactions now <u>and in the future</u>: Consultants shall specify how their services are
/////

- 5 -

1  aligned with the District's commitments to culturally responsive pedagogy and discipline

2  and, more broadly, equity. *Id.*

3        Dated this 14th day of August, 2020.

4

5

6

7                                David C. Bury

                         United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28